UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Carlos Bello Nogueda,
  a/k/a Karla Bello,

        Plaintiff,

vs.                              Case No. 8:20-cv-02005-TPB-AEP

Robert A. Gualtieri, et al.,

        Defendants.
_____/

**MOTION TO DISMISS OF
COLONEL DANZIG AND CAPTAIN NAPIER**

Colonel David Danzig and Captain Jesse Napier of the Pinellas County Sheriff's Office move to dismiss the amended complaint for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6), because it is prolix and an impermissible shotgun pleading in violation of Fed. R. Civ. P. 8(a)(2) & 8(d)(1), and because they are entitled to qualified immunity.

**MEMORANDUM OF LAW**

**I.    BACKGROUND PERTINENT TO BELLO'S CLAIMS AGAINST COL. DANZIG AND CAPT. NAPIER**

1.    Colonel Danzig and Capt. Napier are among the dozen members of the Pinellas County Sheriff's Office the plaintiff is suing, claiming constitutional dissatisfaction with the conditions of her 12-day incarceration in the Pinellas County Jail. The general facts and circumstances surrounding Bello and her lawsuit are set

forth in Deputy Cox's motion to dismiss, which Col. Danzig and Capt. Napier adopt and incorporate by reference. Dkt. 35, at 1-4.

2. Despite suing Col. Danzig and Capt. Napier, Bello does not claim that they engaged in any of the allegedly unconstitutional conduct that forms the basis for this suit. See id. at 2 ¶ 4. Indeed, there are only two factual averments concerning Col. Danzig and Capt. Napier in the 51-page amended complaint.

3. First, Bello claims that an incident where she complained of chest pain was "reported to" Col. Danzig and Capt. Napier. Dkt. 33 ¶ 70 (citing Dkt. 33-1, at 55). Bello does not claim that Col. Danzig and Capt. Napier had anything to do with this incident other than that they received a report of it.

4. Second, Bello claims that a separate "incident" involving the inventory and placing of some of her personal items in inmate property was "reported to Napier and Danzig." Id. ¶ 79 (citing Dkt. 33-1, at 59). Again, Bello does not claim that Col. Danzig and Capt. had anything to do with this incident.

5. In short, the sole basis for the claims against Col. Danzig and Capt. Napier is that their names are typed on two reports. See Dkt. 33-1, at 55 & 59. Neither report mentions any involvement that Col. Danzig or Capt. Napier had with Bello. Neither report describes any involvement of either of them with any of the activity described in the reports. Id.

6. Nevertheless, Bello asserts two § 1983 claims against Col. Danzig and Capt. Napier. She claims that they "violated [her] Fourteenth Amendment rights by ratifying, condoning, and approving of the . . . actions in treating transgender people

differently than non-transgender people who are similarly situated." Dkt. 33 ¶ 214 (Count VI). She also claims that they are responsible as supervisors for the allegedly unconstitutional acts of their subordinates. Id. ¶ 248 (Count VII).

7. Specifically, Bello seeks to hold Col. Danzig and Capt. Napier constitutionally liable because she was not housed with women, permitted to use the women's bathroom and shower facilities, or provided with hormone replacement therapy despite her never having been prescribed such therapy prior to her incarceration. Id. ¶¶ 44, 215, 217, 248-50 & 255. Bello's complaints are not actionable under ratification, supervisory liability, or any other theory.

## II. STANDARDS OF REVIEW

Deputy Cox's motion to dismiss sets forth the standards of review applicable to motions to dismiss and qualified immunity. Dkt. 35, at 4-6. Col. Danzig and Capt. Napier incorporate those standards of review in their motion.

## III. THE AMENDED COMPLAINT IS PROLIX AND A SHOTGUN PLEADING

Col. Danzig and Capt. Napier similarly adopt and incorporate Deputy Cox's arguments concerning the amended complaint's multitude of Rule 8 violations that necessitate its dismissal. Dkt. 35, at 6-8.

## IV. BELLO FAILS TO STATE A CLAIM AGAINST COL. DANZIG AND CAPT. NAPIER FOR RATIFICATION

As best as can be gleaned from the amended complaint, Count VI is a ratification claim under the Fourteenth Amendment. Dkt. 33 ¶¶ 214-15, 218-22 &

229. Bello claims that Col. Danzig and Capt. Napier (and five other defendants lumped into the same cause of action) ratified and condoned "treating transgender people differently than non-transgender people who are similarly situated." Id. Bello's ratification claim is fatally flawed for several reasons.

First, Bello purports to sue Col. Danzig and Capt. Napier in both "their individual and official capacities." Dkt. 33, at 41 (prefatory material to Count VI, comingling both the individual and official capacity claims in one claim for relief). An official capacity constitutional claim is one for municipal liability under Monell v. Department of Soc. Servs., 436 U.S. 658 (1978), and "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Id. at 690, n. 55. However, a defendant cannot be held liable under § 1983 under a theory of *respondeat superior*, i.e., simply because someone the defendant employed or supervised caused injury in the line of duty, even a constitutional injury. Id. at 691. Stripped of its verbosity, this is all Bello's suit against Col. Danzig and Capt. Napier is: their names show up on two reports and, therefore, Bello claims they are liable for the actions described in those reports. The Supreme Court in Monell expressly foreclosed this as a basis for constitutional liability. Because there is no, non-vicarious liability basis for an official capacity claim against Col. Danzig and Capt. Napier, that claim must be dismissed as a matter of law.

Second, Bello seeks to hold Col. Danzig and Capt. Napier liable on a ratification theory based on her alleged treatment during her 12-day incarceration. However, § 1983 liability can only be established under a theory of ratification based

on a single incident when the "policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis," or when based on a "persistent failure to take disciplinary action against officers." Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1174 n. 12 (11th Cir. 2001), cert. granted, judgment vacated sub nom. Thomas v. Roberts, 536 U.S. 953 (2002), opinion reinstated, 323 F.3d 950 (11th Cir. 2003)). Here, whatever involvement Col. Danzig and Capt. Napier had with Bello, it did not occur until after all the events complained of had already happened: their names were typed on reports of already-occurred activity. Under settled case law, they could not have "caused" these actions it unless they had an opportunity to "review" the decisions about how to treat Bello and agreed with the decisions and their bases before they "became final" — e.g., before they occurred. See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion); Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015). Simply put, single-incident ratification theory cannot be based — as it is here — on after-the-fact conduct. Simmons v. Bradshaw, 879 F.3d 1157, 1168 (11th Cir. 2018) (holding that the manner in which an investigation was conducted could not serve as a basis for Monell liability because it did not "occur[ ] *before* the shooting and . . . could [not] have been the *cause* of the injury.").

Next, while liability on a ratification theory might alternatively be premised on an allegedly consistent, historical failure to adequately investigate misconduct, to succeed on such a theory the plaintiff must show that a policymaker failed to adequately and correctly investigate numerous prior similar incidents and routinely

5

exonerated his deputies in "whitewashed" internal investigations in a manner that would create an atmosphere of complacency, encouraging deputies to violate the Constitution without fear of repercussion. See, e.g., Vann v City of New York, 72 F.3d 1040 (2d Cir. 1995); Fiacco v. City of Rensselaer, 783 F.2d 319 (2d Cir. 1986). Despite its 258 paragraphs, the amended complaint only concerns Bello's 12-day incarceration. There are no factual — rather than conclusory — averments concerning how anyone other than Bello was actually treated in the jail, let alone factual averments about prior instances of unconstitutional conduct that went unpunished.

Finally, there is no such thing as an individual capacity ratification claim. Bello made up this theory; no case law supports it. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion) (describing ratification as a potential basis for municipal liability). Furthermore, an individual capacity constitutional claim requires personal participation in the events that caused the plaintiff's constitutional rights to be violated. Kentucky v. Graham, 473 U.S. 159, 165 (1985). There are no such averments in the amended complaint and it should be dismissed.

## V. BELLO'S SUPERVISORY LIABILITY CLAIMS FAILS AS A MATTER OF LAW

Bello's supervisory liability claims against Col. Danzig and Capt. Napier — again, brought as both individual and official capacity claims — fare no better than her ratification claims. Her official-capacity supervisory liability claims are fatally flawed for the reasons set forth above: neither are alleged to be policymakers and

vicarious constitutional liability does not exist. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

Bello's supervisory liability claims against Col. Danzig and Capt. Napier in their individual capacities are not viable, either. The standard by which a supervisor can be held liable for the actions of subordinates is "extremely rigorous." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). The Eleventh Circuit has held that "to prevail against [government officers] in their individual capacities, [the plaintiff] was required to show that they were personally involved in acts or omissions that resulted in the constitutional deprivation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). As noted above, the amended complaint contains no averments of personal involvement by Col. Danzig and Capt. Napier in any of the acts that form the basis for this lawsuit.

Put another way, nothing Col. Danzig or Capt. Napier did, personally, violated the Constitution and caused harm to Bello. Furthermore, Col. Danzig and Capt. Napier are also, as an individually named law enforcement officers, entitled to qualified immunity based on the legal framework set forth in Deputy Cox's motion to dismiss. As explained in Deputy Cox's motion, there is no clearly established law that would have informed them — and every other reasonable law enforcement officer in their position — that any of the actions Bello complains of were illegal. They are entitled to qualified immunity and the amended complaint should be dismissed.

## VI. CONCLUSION

For the reasons set forth above, Bello's complaint against Col. Danzig and Capt. Napier should be dismissed and the Court should grant such other relief as it deems just and appropriate.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
FBN: 75948
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:  (727) 582-6459
*prozelle@pcsonet.com*
*amarcott1@pcsonet.com*
Attorney for Col. Danzig and Capt. Jesse Napier

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Paul G. Rozelle