UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Carlos Bello Nogueda,
 a/k/a Karla Bello,

       Plaintiff,

vs.                                         Case No. 8:20-cv-02005-TPB-AEP

Robert A. Gualtieri, et al.,

       Defendants.
_____/

**MOTION TO DISMISS AMENDED COMPLAINT OF SHERIFF GUALTIERI**

Pinellas County Sheriff Bob Gualtieri, who is sued in both his individual and official capacities, moves to dismiss the amended complaint for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6) and because the complaint is an impermissible shotgun pleading in violation of Fed. R. Civ. P. 8(a)(2) and is prolix in violation of Fed. R. Civ. P. 8(d)(1). The grounds for this motion are as follows.

**MEMORANDUM OF LAW**

**I.    BACKGROUND RELEVANT TO THE CLAIMS AGAINST SHERIFF GUALTIERI**

1.    Karla Bello is a transgender woman who is suing the Sheriff and numerous other defendants claiming, among other things, that the Sheriff's policies, practices, and customs concerning the treatment of transgender inmates at the Pinellas County Jail violate the Fourteenth Amendment. Bello also claims that the

Sheriff discriminated against her because she is a transgender woman and, she claims, he is personally liable for the conditions of her confinement.

2. The gravamen of Bello's official capacity claims against the Sheriff is her belief that the Constitution requires that (1) jail inmates must be housed according to their gender identity — i.e., a male inmate who identifies as a woman must be housed with cisgender women; (2) transgender inmates must be permitted to access "restrooms and other single-sex facilities consistent with their gender identity;" and (3) transgender jail inmates must be provided with "medical care consistent with their gender identity." Dkt. 33 ¶¶ 114 & 215.

3. The medical care in issue in this case is hormone replacement therapy — i.e., a medical regimen to treat Bello's gender dysphoria and help her physical appearance align better with her gender identity. Id. ¶¶ 44-47.

4. However, Bello admits that she "has not had access to proper health care for her gender dysphoria" and that, "for several years prior to this action, [she] has been taking hormone replacement therapy . . . medications without a prescription." Id. ¶¶ 43-44. Other than hormone therapy — which Bello was illegally taking — the amended complaint does not identify any other medical care or treatment that Bello claims was constitutionally required but was denied to her.

5. Bello also admits that despite identifying and living as a female, her birth certificate and other identification documents identify her as "male," id. ¶¶ 115, 193 & 216, which is also how she is identified on the host of traffic tickets that resulted in her incarceration when she failed to pay them and failed to show up to

court when ordered to do so, Dkt. 33-1, at 2, 4 & 6, and on the arrest affidavit, id. at 9, that ultimately landed her in jail.

6.  Notably absent from the amended complaint is mention of the Sheriff's policies, practices, or customs concerning the provision of hormone replacement therapy, housing, or bathroom use with respect to transgender inmates. The amended complaint contains only the generic, conclusory statement — made "on information and belief" — that "the policies, practices, and customs of PCSO were to treat transgender inmates according to their sex assigned at birth, putting transgender women in jail with men, and transgender men in jail with women." Dkt. 33 ¶ 97.

7.  Bello's individual liability claims against the Sheriff are founded on the same grab-bag of conduct delineated in Deputy Cox's motion to dismiss. See Dkt. 35, at 2-3 ¶ 4. However, nowhere in the complaint does Bello identify any conduct that Sheriff Gualtieri engaged in concerning her 12-day incarceration, let alone the conduct that forms the basis for her individual liability claims.

8.  Bello seeks declaratory and injunctive relief, Dkt. 33, at 23-24 & 28-29, and specifically an order requiring the Sheriff "to allow individuals, including transgender people, to be assigned to jail housing, and to use single-sex facilities in accordance with their gender identity; and requiring . . . Sheriff Gualtieri . . . to enact and to continue to enforce antidiscrimination protections for transgender people . . . ." Id. at 23.

**II.   STANDARD OF REVIEW**

To withstand a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must still provide the factual grounds for his entitlement to relief. Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 555). It is not enough for a complaint to contain mere "labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal quotation omitted) (citing Twombly, 550 U.S. at 545).

In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well-pleaded facts must be accepted as true and construed in the light most favorable Plaintiff. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). And although the well-pled allegations in the complaint are "viewed in the light most favorable to the plaintiff," Watts v. Florida Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007), "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 677 (internal quotation omitted). Even if the facts are well-pled, the court cannot "infer more than the mere possibility of

misconduct" if the complaint merely alleges and does not "show" that the pleader is entitled to relief.  Id. at 678.

Finally, while a court must generally accept all factual allegations in a complaint as true, it need not accept "conclusory allegations and unwarranted deductions of fact."  South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss.").  "[B]ald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).  See also Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995) ("[A]s we have noted, several of [the plaintiff's] claims for relief rely solely upon conclusory statements of law.  Such statements — and their unwarranted inferences — are not sufficient to defeat a motion to dismiss for failure to state a claim.").

### III. BELLO'S FOURTEENTH AMENDMENT CLAIMS AGAINST THE SHERIFF MUST BE DISMISSED

The amended complaint contains three separate Fourteenth Amendment municipal liability claims against Sheriff Gualtieri — Counts I, II, and III — all of which are confusingly overlapping but the gist of which is that she was discriminated against during her 12-day incarceration and that the Sheriff's policies, customs, and practices were the moving force behind allegedly unconstitutional conduct.  See Monell v. Department of Soc. Servs., 436 U.S. 658 (1978).

With respect to Bello's discrimination claim, there is no authority for the proposition that federal courts can use Title VII's framework of protected class discrimination to remedy past wrongs against incarcerated persons. This is especially the case since Bostock v. Clayton County, 590 U.S. __, 140 S. Ct. 1731 (2020), the case on which Bello's claim must necessarily lie, was not decided until after Bello's incarceration ended. The lack of a legally cognizable claim aside, the Supreme Court expressly prohibits what Bello attempts to do here: hold the Sheriff vicariously liable under the Constitution for the alleged misdeeds of his employees. Monell, 436 U.S. at 691, 694.

Bello's traditional Monell claims fare no better. She can establish § 1983 liability against the Sheriff in only three ways. First, § 1983 liability attaches when the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," *or* the action is "visited pursuant to governmental 'custom,' even though such custom has not received formal approval through the body's official decision making channels." Id. at 690-91. Second, a § 1983 claim can be made against a municipality based on the failure to adequately train its employees. To establish liability under this theory, Bello must show that the Sheriff's failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Finally, § 1983 liability can be established under a theory of ratification based on a single incident, but only when the "policymakers had an opportunity to

6

review the subordinate's decision and agreed with both the decision and the decision's basis," or when based on a "persistent failure to take disciplinary action against officers." Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1174 n. 12 (11th Cir. 2001), cert. granted, judgment vacated sub nom. Thomas v. Roberts, 536 U.S. 953 (2002), opinion reinstated, 323 F.3d 950 (11th Cir. 2003)).

At the outset, the amended complaint is silent on the Sheriff's policies and the alleged unconstitutionality of the relevant policies. Bello's lengthy amended complaint details what happened *to her*, but does not describe any policy of the Sheriff let alone how other inmates — whether transgender or cisgender — were treated while incarcerated in the jail. Furthermore, to the extent Bello claims the Sheriff violated the Constitution by failing to prescribe her hormone replacement therapy (when she had never been prescribed it prior to her 12-day incarceration), by not housing her with cisgender women, and by not allowing her to use the restroom with cisgender women, no precedental court has ever held that such "policies" in a county jail violate the Constitution. Specifically, no court has ever found or held that the Constitution prohibits transgender inmates from being housed with cisgender inmates or that the inmates themselves must be allowed to choose with whom they are housed. Her Fourteenth Amendment claims should be dismissed.

Second, in the absence of a policy or custom that is facially unconstitutional, Bello must establish a causal link between agency action taken with deliberate indifference as to its known or obvious consequences and the constitutional deprivation in issue in this case. City of Canton, 489 U.S. at 387. In this context, a

longstanding practice or "custom" is one that is so "persistent and widespread" that it constitutes a "permanent and well-settled" governmental policy. Monell, 436 U.S. at 691. Put another way, a widespread practice of unconstitutional behavior is tantamount to an unofficial municipal custom, practice, or policy. Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). To create liability under this theory, the agency action must be the "moving force" behind the constitutional violation in issue. Monell, 436 U.S. at 694. Specifically, a plaintiff must demonstrate a tolerance for the unconstitutional conduct that befell her that was so persistent and widespread throughout the agency that it had the force of an official policy. See McDowell v. Brown, 392 F.2d 1283, 1289 (11th Cir. 2004); Young v. City of Augusta, 59 F.3d 1160, 1171 (11th Cir. 1995).

Nowhere does Bello claim that anything that she allegedly endured in the jail happened to anyone other than her. The Eleventh Circuit has held that prior, similar cases are required to establish custom or practice liability under Monell. In Gold v. City of Miami, 151 F.3d 1346 (11th Cir. 1998), the Eleventh Circuit held that a plaintiff could not establish a Monell claim if he could not point to any other incidents involving similar facts. Id. at 1351. See also Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming summary judgment to municipal defendant where plaintiff failed to show that any prior uses of force "involved factual situations that are substantially similar to the case at hand"); McDowell, 392 F.3d at 1290-91 (requiring persistent and wide-spread practice; random acts or isolated incidents insufficient); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1294

8

(11th Cir. 2004) ("Our precedents are clear that, for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency . . . ."). Lacking such factually supported averments of similar, prior, unconstitutional conduct, Bello's amended complaint must be dismissed.

Bello's claims fare no better under a failure-to-train theory, which is where municipal liability under § 1983 "is at its most tenuous." Connick v. Thompson, 563 U.S. 51, 61 (2011), citing Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell."). There are "limited circumstances" where an alleged failure to train can support § 1983 liability. City of Canton, 489 U.S. at 387. The plaintiff must prove (1) the Sheriff knew of a need to train and supervise in a particular area, (2) the Sheriff made the deliberate choice not to do so, and (3) this failure to train and supervise constituted a custom or policy that was the moving force behind the deprivation of Bello's constitutional rights. Gold, 151 F.3d at 1351. The Supreme Court has emphasized that, to establish Monell liability on this theory, a plaintiff must show a municipality's failure to train its employees in a relevant respect is tantamount to "deliberate indifference to the rights of persons with whom the [untrained employees] will interact." City of Canton, 489 U.S. at 388.

"Deliberate indifference" is a "stringent," elevated standard, requiring proof that a municipal actor disregarded a known, obvious consequence of his or her action. Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997);

9

Gold, 151 F.3d at 1351.  To prove deliberate indifference, the plaintiff must show a pattern of similar constitutional violations by untrained employees.  Connick, 563 U.S. at 62.  See also West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."); Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that establishing a failure to discipline claim requires plaintiff showing agency knew there was a need to control or discipline for unconstitutional behavior and failed to do so).

     As noted above, the amended complaint contains no fact-based averments that the Sheriff failed to train, supervise, or discipline his employees in any relevant, material way to the harm that allegedly befell Bello.  Failing this — and because Bello does not aver a pattern of similar, prior incidents that put the Sheriff on notice of the need to supervise, train, or discipline — dismissal is warranted.  See, e.g., McDowell v. Brown, 392 F.3d 1283, 1290, 1302 (11th Cir. 2004) (necessary to show a persistent and wide-spread practice; random acts or isolated incidents insufficient); Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) (random acts or isolated incidents are insufficient to establish a policy or custom).

     Finally, Bello claims that the Sheriff ratified the conduct in issue in this case because he failed to discipline the members who committed it.  Under a ratification theory based on a single incident, the Sheriff can only be held liable after he had an opportunity to review the relevant subordinates' decisions and agreed with both the

decisions and their bases. See Thomas, 261 F.3d at 1174 n.12. The Sheriff, however, cannot be held liable under § 1983 for a single failure to investigate a constitutional violation. Salvato v. Miley, 790 F.3d 1286, 1296-98 (11th Cir. 2015). The approval of the subordinate's decision must occur before the subordinate acts. See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 127, (1988) (plurality opinion); Salvato, 790 F.3d at 1296. See also Simmons v. Bradshaw, 879 F.3d 1157, 1168 (11th Cir. 2018) (same). Bello does not aver that the Sheriff reviewed, much less ratified, any part of the conduct in issue in this case. Dismissal is warranted.

## IV. BELLO'S INDIVIDUAL LIABILITY CLAIMS AGAINST THE SHERIFF SHOULD BE DISMISSED

Bello also seeks to hold the Sheriff personally liable for the conditions of her confinement. Dkt. 33, at 40-41 (Count VI) & 45 (Count VII) (asserting claims against the Sheriff in his individual capacity). The sole stated basis for the individual liability claims against the Sheriff is the enumerated parade of horribles in paragraphs 215, 229 & 255. Nowhere in the amended complaint, however, does Bello claim that the Sheriff personally engaged in any of these alleged acts or omissions.

Furthermore, the standard by which a supervisor, such as the Sheriff, can be held liable for the actions of subordinates is "extremely rigorous." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on vicarious liability principles. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, when, as here, there are no allegations of personal participation — Bello

does not claim that the Sheriff was not present for any part of Bello's incarceration or that he directly supervised anyone who was — supervisor liability is permissible only if there is a "causal connection" between a supervisor's actions and the alleged constitutional violation.  Cottone, 326 F.3d at 1360.

The Eleventh Circuit has held that "to prevail against [government officers] in their individual capacities, [the plaintiff] was required to show that they were personally involved in acts or omissions that resulted in the constitutional deprivation."  Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  The amended complaint is bereft of any averment about the Sheriff's personal participation in Bello's treatment at the jail.  In short, nothing the Sheriff did, personally, between November 29, 2019, and December 10, 2019, violated the Constitution and caused Bello harm.  The Sheriff is also, as an individually named law enforcement officer, entitled to qualified immunity based on the legal framework set forth in Deputy Cox's motion to dismiss.  Dkt. 35.  Dismissal is warranted.

## V. BELLO'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED

To establish entitlement to injunctive relief from a constitutional violation, a plaintiff must first show that there has, in fact, been a constitutional violation. Newman v. State of Ala., 683 F.2d 1312, 1319 (11th Cir. 1982) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)).  Once a constitutional violation is established, she "must then demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law."  Id.

12

(citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506 (1959)).  As noted above, Bello has not pleaded a viable constitutional claim against the Sheriff.

Bello also lacks standing to seek injunctive relief.  Article III requires Bello to establish (1) a concrete and particularized injury, actual or imminent, (2) traceable to the defendant; and (3) proof that a favorable outcome would redress the harm. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Bello's 12-day incarceration in the Pinellas County Jail is over.  The amended complaint's bald averment that Bello's alleged injury is "capable of repetition, yet evading review," Dkt. 33 ¶ 25, is entirely unburdened by factual support and is the kind of conclusory allegation that courts disregard on consideration of Rule 12(b)(6) motions.  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  Bello does not make any factual averment about impending future injury or suggest why it is that she might be arrested again and booked into the Pinellas County Jail.  It is notable that Bello is not even a Pinellas County resident.  Since the events that gave rise to this case occurred, she moved to Wimauma, in Hillsborough County, where she currently lives.  Dkt. 33 ¶ 4.  There is no underlying unconstitutional conduct and Bello lacks standing to purse injunctive relief.  Her claim should be dismissed.

## VI. THE AMENDED COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING AND IS PROLIX

For the reasons set forth in Deputy Cox's motion to dismiss, which the Sheriff adopts and incorporates into this motion, see Dkt. 35, at 6-8, the amended complaint

is an impermissible shotgun pleading and is prolix in violation of Fed. R. Civ. P. 8. It should be dismissed for the reasons set forth in Deputy Cox's motion.

### VII. BELLO'S EIGHTH AMENDMENT CLAIMS AGAINST THE SHERIFF SHOULD BE DISMISSED WITH PREJUDICE

Finally, to the extent that Bello asserts claims under the Eighth Amendment against the Sheriff, those claims should be dismissed for the reasons set forth in Deputy Cox's motion to dismiss, which the Sheriff adopts and incorporates into this motion. See Dkt. 35, at 10-11 (arguing that there can be no Eighth Amendment claim for conduct occurring prior to an incarcerated person's adjudication).

### VIII. CONCLUSION

For the reasons set forth above, Bello's amended complaint against Sheriff Gualtieri should be dismissed and the Court should grant such other relief as it deems just and appropriate.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
FBN: 75948
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:   (727) 582-6459
*prozelle@pcsonet.com*
*amarcott1@pcsonet.com*
Attorney for Sheriff Bob Gualtieri

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 13, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                                /s/ Paul G. Rozelle