UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. GUALTIERI, in his official capacity as Sheriff of Pinellas County, PINELLAS COUNTY, FLORIDA, et al.,<br><br>Defendants. | Case No.: 8:20-cv-02005-TPB-AEP |

**PLAINTIFF'S RESPONSE TO DEFENDANT STEVE COX, JR.'S MOTION TO DISMISS AMENDED COMPLAINT OF DEPUTY COX AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Plaintiff, CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO (hereinafter, "Plaintiff" or "Karla"), by and through her undersigned attorney, and hereby responds in opposition to Defendant Steve Cox, Jr.'s "Motion to Dismiss Amended Complaint of Deputy Cox" (hereinafter, the "Motion to Dismiss") and states as follows:

1. This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for the Defendants' individual and collective personal, malicious, and unlawful violations under color of state law of Plaintiff's individual rights.

2. The Defendant, Steve Cox, Jr. (hereinafter, "Cox", or the "Defendant") filed the Motion to Dismiss on October 6, 2020.

3. The Motion to Dismiss argues that the Plaintiff's claims against the Defendant should be dismissed "because the amended complaint is prolix and a shotgun pleading in violation

of Fed. R. Civ. P. 8(a)(2) & 8(d)(1), for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), and because he alleges that he is entitled to qualified immunity.

## PRELIMINARY ISSUES

4. First off, the Motion to Dismiss is intentionally flippant and insulting towards the Plaintiff's status as a transgender woman, and as such is in violation of Florida Rule of Professional Conduct 4-8:4(d).

5. Given that the Undersigned is also a transgender woman, this is particularly insulting.

6. An example of this is the fact that the very first paragraph states that "Karla Bello" is a "*nom de plume*"[1] (i.e., suggesting that this name is used as an intent to deceive) and then, for no other reason other than spite, states that, "[s]he is identified as male on her birth certificate" as if such is in any way relevant to a motion to dismiss. *Motion to Dismiss* (Dkt. 35), p. 1, ¶ 1.

7. Most of the motions to dismiss filed by Pinellas County Sheriff's Office attorney Paul G. Rozelle (hereinafter, "Mr. Rozelle"), who represents all of the defendants in this action save Pinellas County, Florida, contain similar attempts to "troll" or insult the Plaintiff solely due to her being a transgender woman, and this example is by no means the most offensive, but suffice to say that this appears to be the beginning of a rather unprofessional course of conduct.

8. As such, the Plaintiff would ask this Court that direct Mr. Rozelle to confine his personal prejudices and biases to himself, rather than degrading these proceedings with such venom.

---

[1] The term "nom de plume" is defined by the Merriam-Webster Dictionary as, "a name that a writer uses instead of his or her real name" and is generally only used in situation where one is attempting to deceive or cloak their identity. Merriam-Webster. (n.d.). *Nom de plume*. In Merriam-Webster.com dictionary. Retrieved October 20, 2020, from https://www.merriam-webster.com/dictionary/nom%20de%20plume.

9. Furthermore, Mr. Rozelle's characterization of the Plaintiff's license being suspended "after she failed to pay several traffic citations" (*Motion to Dismiss* (Dkt. 35), p. 1, ¶ 2) is a further intentional misstatement of the record, as there were not "several" of anything; her license was suspended after **she failed to pay <u>two</u> red-light camera citations**, nothing more. (*See*, Hillsborough County cases 19-TR-023944 - AB8S6OE and 19-TR-048308 - AAUXT5E).

10. Then, to make light of the Plaintiff's suffering, the Motion to Dismiss states that, "Bello was in jail for just 12 days". *Motion to Dismiss* (Dkt. 35), p. 2, ¶ 3.

11. Finally, Mr. Rozelle alleges that the First Amended Complaint was filed improperly, reading a requirement into Fed. R. Civ. P. 15(a)(1)(B) that does not exist. [2]

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW.

**A. Motions for Dismiss for Failure to State a Claim.**

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. <u>Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.</u>, 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (*citing* <u>Sanjuan v.</u>

---

[2] Rule 15(a)(1)(B) states that a pleading may be amended, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of *a* motion under Rule 12(b)". (emphasis added). It does not say "21 days after service of *the first* motion under Rule 12(b)". In any case, it is irrelevant, as at the time of the filing of this Response, the Court had already mooted the prior Rule 12(b) motions. (Dkt. 46).

American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Quality Foods, 711 F.2d at 995 (*quoting* Conley, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 602 (5th Cir.1981); Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc., 540 F.2d 824, 826-827 (5th Cir. 1976).

### B. Qualified Immunity.

The three individual Defendants, sued in their individual capacities, have pled the affirmative defense of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lumley v. City of Dade City, 327 F.3d 1186, 1193-94 (11th Cir. 2003) ("[q]ualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' "). Qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986) ).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his individual capacity involves a two-step analysis. Hope v. Pelzer, 536 U.S. 730 (2002). Before applying the test, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (*quoting* Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) ).

If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions "violated clearly established constitutional law" or a federal statute. Id.; Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., at 201. Furthermore, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

II. ARGUMENT.

    A. **The First Amended Complaint is not "prolix", and it is certainly not subject to dismissal based upon Rule 8.**

First off, it should be noted that the Defendant's argument regarding the alleged "prolix" nature of the First Amended Complaint do not comport with its arguments regarding a "shotgun pleading". One is left wondering how a detailed, allegedly "prolix" pleading could simultaneously be too specific and not specific enough, and given the nature of the Defendant's arguments, it is clear that were the First Amended Complaint shorter, he would be arguing that it did not set forth sufficient facts.

The First Amended Complaint, at 51 pages and 258 paragraphs, is simply a well-researched and detailed explanation of the various issues and complex concepts described therein, which is especially important given the many defendants. Further, the introductory factual allegations are only 19 pages and 103 paragraphs. The rest of the First Amended Complaint consists of Counts I to VII.

Compared to other pleadings deemed "prolix" by this Court, the First Amended Complaint does not even come close. For example, this Court found that a complaint consisting of 134 pages and 566 paragraphs long, where the "recitation of the various counts does not begin until page 126, paragraph 526", such was a good example of a "prolix" claim. Lawrie v. The Ginn Companies, LLC, 309-CV-446-J-32JBT, 2010 WL 3746725, at *3 (M.D. Fla. Sept. 21, 2010)

Another example, in Al-Rayes v. Willingham, 3:15-CV-107-J-34JBT, 2016 WL 6080826, at *3 (M.D. Fla. Aug. 15, 2016), report and recommendation adopted, 3:15-CV-107-J-34JBT, 2016 WL 6071636 (M.D. Fla. Oct. 17, 2016), the complaint was deemed "prolix" by this Court where it had 66 pages *but* the first 41 pages and 202 paragraphs preceded any of the counts.

The Southern District found that a complaint spanning 142 pages was "prolix". Lawrie v. Ginn Dev. Co., LLC, 3:09-CV-446-J-32JBT, 2014 WL 4788067, at *3 (M.D. Fla. Sept. 19, 2014), aff'd, 656 Fed. Appx. 464 (11th Cir. 2016). The same court found that a complaint consisting of 507 pages (inclusive of exhibits), 341 paragraphs, and 7 counts was also "prolix". Shaprio v. Unum Life Ins. Co. of Am., 17-CV-23992-UU, 2017 WL 10379581, at *1 (S.D. Fla. Nov. 29, 2017).

To the contrary, because of the nature of this suit, it was important to address the medical issues therein, particularly where issues of transgender health and terminology might not be well known to the reader, as well as by laying out as many of the facts of the specific incidents in the

County Jail that led to the Counts as could be stated to explain how all of the different Defendants contributed.

### B. The First Amended Complaint is not an impermissible "shotgun pleading".

This allegation is simply untrue, as the Defendant argues that the Plaintiff has re-alleged all preceding counts and is "vague" and what-not. In fact, one of the chief differences between the initial Complaint and the First Amended Complaint is that the Plaintiff corrected all of the re-allegations in each count, such that they only re-allege the introductory facts and explanations up to paragraph 103. Furthermore, for the Defendant to allege that the First Amended Complaint is "vague" and "conclusory", it is quite interesting that this section of the Motion to Dismiss is, well…vague and conclusory.

### C. The Fourteenth Amendment claims are well pleaded and backed up by sound case-law.

First off, it should be noted that the same Defendant who complained of the First Amended Complaint being "prolix" is now arguing that the allegations against the Defendant are not sufficiently detailed enough to describe his specific actions and involvement. While the specifics of the Defendant's participation in the specific allegations pleaded, it is not in dispute that he was involved in the December 6, 2019 incident where Corporal Merritt forced the Plaintiff to strip and hand over her "personal undergarments". See, *DDC Incident Detail Report*, attached to the First Amended Complaint as **Exhibit "H"**, 059.

Furthermore, the time for the Defendant to argue about the Supreme Court's seminal decision in Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020), and whether it applies to the Fourteenth Amendment and disparate impact claims is likely not yet upon the parties at this initial stage. However, it should be noted that the Eleventh Circuit recently upheld this Court's decision in Adams by & through Kasper v. Sch. Bd. of St. Johns County, Florida, 318 F. Supp. 3d

1293 (M.D. Fla. 2018), aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns County, 968 F.3d 1286 (11th Cir. 2020), whereupon the Eleventh Circuit discussed the applicability of Bostock outside of the realm of Title VII, stating, "Bostock confirmed that workplace discrimination against transgender people is contrary to law. Neither should this discrimination be tolerated in schools." Id., at 1310. The Eleventh Circuit also affirmed that the violations against the plaintiff in that suit were violations of the Fourteenth Amendment. Id.

If it is clearly a violation of the Fourteenth Amendment to not allow a transgender student to use a bathroom consistent with his gender, then surely it is a violation of the Fourteenth Amendment to force a female transgender detainee to strip for a male deputy and give him her underwear, which she was not allowed to wear for some unreasonable and not-even-close-to rational basis.

> **D. The Fourteenth Amendment claims are solidly pleaded, and any references to the Eighth Amendment that are contained in the First Amended Complaint are solely in reference to the fact that the standards for cruel and unusual punishment claims are identical.**

Jail guards, deputies, correctional officers, and the like are, "of course, bound by the Eighth Amendment's prohibition against cruel and unusual punishment". Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). However, technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees like the Plaintiff. Goebert, 510 F.3d at 1326; Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1268 (11th Cir.2005). However, **"the standards under the Fourteenth Amendment are identical to those under the Eighth"**. Goebert, 510 F.3d at 1326 (emphasis added); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir.2005).

Any remnants of references to the Eighth Amendment appearing in the First Amended Complaint that are outside of the applicability of the standards being identical are unintentional, and it is clear that the Plaintiff therein is not alleging counts based upon the Eighth Amendment, but rather, the Fourteenth Amendment.

## CONCLUSION

In short, the Defendant has *not* proved that it is entitled to dismissal, and this Court should not grant the Defendant's requested relief, particularly at such an early stage of these proceedings. In the alternative, and "giving recognition to the well established principle that liberality in amendments to pleadings are to be favored by the courts", the Plaintiff would request that this Court permit the filing of an amended complaint. Baugher v. Alachua County, 305 So. 2d 838, 839–40 (Fla. 1st DCA 1975).

WHEREFORE, the Plaintiff respectfully requests that this Court deny Defendant Steve Cox, Jr.'s Motion to Dismiss Amended Complaint of Deputy Cox, and for any and all other relief as this Court deems in the interests of justice.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

 **I HEREBY CERTIFY** that on October 20, 2020, a copy of the foregoing has been furnished by CM/ECF to: Kelly L. Vicari, Esq., Pinellas County Attorney's Office, 315 Court Street, Sixth Floor, Clearwater, Florida 33756, kvicari@pinellascounty.org, eservice@pinellascounty.org, and to Paul G. Rozelle, Esq., Pinellas County Sheriff's Office, 10750 Ulmerton Road, Largo, FL 33778, prozelle@pcsonet.com, amarcott1@pcsonet.com.

 Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
*Attorney for Plaintiff*