UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. GUALTIERI, in his official capacity as Sheriff of Pinellas County, PINELLAS COUNTY, FLORIDA, et al.,<br><br>Defendants. | Case No.: 8:20-cv-02005-TPB-AEP |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OF COLONEL DANZIG AND CAPTAIN NAPIER
AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Plaintiff, CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO (hereinafter, "Plaintiff" or "Karla"), by and through her undersigned attorney, and hereby responds in opposition to the Defendants, Colonel Danzig and Captain Napier's Motion to Dismiss of Colonel Danzig and Captain Napier (hereinafter, the "Motion to Dismiss") and states as follows:

1. This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for the Defendants' individual and collective personal, malicious, and unlawful violations under color of state law of Plaintiff's individual rights.

2. The Defendants, Colonel David Danzig (hereinafter, "Danzig") and Captain Jesse Napier (hereinafter, "Napier") (hereinafter collectively, the "Defendants") filed the Motion to Dismiss on October 8, 2020.

3. The Motion to Dismiss argues that the Plaintiff's claims against the Defendants should be dismissed "because the amended complaint is prolix and a shotgun pleading in violation of Fed. R. Civ. P. 8(a)(2) & 8(d)(1), for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), because they allege that they are entitled to qualified immunity, and because they allege that they are not responsible under supervisory liability claims.

4. Given that the Motion to Dismiss incorporates arguments from other Defendants' motions to dismiss, the Plaintiff's responses against those incorporated arguments are recreated herein so as not to require this Court to switch back and forth between various motions.

## PRELIMINARY ISSUES

5. First off, the Motion to Dismiss is intentionally flippant and insulting towards the Plaintiff's claims, which include behavior on the part of the Defendants in this action which have been held to be violations of the Eighth Amendment's prohibition on cruel and unusual punishment.

6. An example of the unprofessional and flippant commentary in the Motion to Dismiss is the characterization of the Plaintiff's claims as "claiming constitutional *dissatisfaction*". *Motion to Dismiss* (Dkt. 36), p. 1, ¶ 1 (emphasis added).

## MEMORANDUM OF LAW

**I.    STANDARD OF REVIEW.**

**A. Motions for Dismiss for Failure to State a Claim.**

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (*citing* Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Quality Foods, 711 F.2d at 995 (*quoting* Conley, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 602 (5th Cir.1981); Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc., 540 F.2d 824, 826-827 (5th Cir. 1976).

### B. Qualified Immunity.

The Defendants have moved to dismiss based upon the affirmative defense of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); *see also,* Lumley v. City of Dade City, 327 F.3d 1186, 1193-94 (11th Cir. 2003).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his individual capacity involves a two-step analysis. Hope v. Pelzer, 536 U.S. 730 (2002). Before applying the test, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (*quoting* Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) ).

If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions "violated clearly established constitutional law" or a federal statute. Id.; Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., at 201. Furthermore, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

II. ARGUMENT.

    A. **The First Amended Complaint is not "prolix", and it is certainly not subject to dismissal based upon Rule 8.**

First off, it should be noted that the Defendants' argument regarding the alleged "prolix" nature of the First Amended Complaint do not comport with their arguments regarding a "shotgun pleading". One is left wondering how a detailed, allegedly "prolix" pleading could simultaneously be too specific and not specific enough, and given the nature of the Defendants' arguments, it is clear that were the First Amended Complaint shorter, they would be arguing that it did not set forth sufficient facts.

The First Amended Complaint, at 51 pages and 258 paragraphs, is simply a well-researched and detailed explanation of the various issues and complex concepts described therein, which is

especially important given the many defendants. Further, the introductory factual allegations are only 19 pages and 103 paragraphs. The rest of the First Amended Complaint consists of Counts I to VII.

Compared to other pleadings deemed "prolix" by this Court, the First Amended Complaint does not even come close. For example, this Court found that a complaint consisting of 134 pages and 566 paragraphs long, where the "recitation of the various counts does not begin until page 126, paragraph 526", such was a good example of a "prolix" claim. Lawrie v. The Ginn Companies, LLC, 309-CV-446-J-32JBT, 2010 WL 3746725, at *3 (M.D. Fla. Sept. 21, 2010)

Another example, in Al-Rayes v. Willingham, 3:15-CV-107-J-34JBT, 2016 WL 6080826, at *3 (M.D. Fla. Aug. 15, 2016), report and recommendation adopted, 3:15-CV-107-J-34JBT, 2016 WL 6071636 (M.D. Fla. Oct. 17, 2016), the complaint was deemed "prolix" by this Court where it had 66 pages *but* the first 41 pages and 202 paragraphs preceded any of the counts.

The Southern District found that a complaint spanning 142 pages was "prolix". Lawrie v. Ginn Dev. Co., LLC, 3:09-CV-446-J-32JBT, 2014 WL 4788067, at *3 (M.D. Fla. Sept. 19, 2014), aff'd, 656 Fed. Appx. 464 (11th Cir. 2016). The same court found that a complaint consisting of 507 pages (inclusive of exhibits), 341 paragraphs, and 7 counts was also "prolix". Shaprio v. Unum Life Ins. Co. of Am., 17-CV-23992-UU, 2017 WL 10379581, at *1 (S.D. Fla. Nov. 29, 2017).

To the contrary, because of the nature of this suit, it was important to address the medical issues therein, particularly where issues of transgender health and terminology might not be well known to the reader, as well as by laying out as many of the facts of the specific incidents in the County Jail that led to the Counts as could be stated to explain how all of the different Defendants contributed.

      **B.   The First Amended Complaint is not an impermissible "shotgun pleading".**

This allegation is simply untrue, as the Defendants argue that the Plaintiff has re-alleged all preceding counts and is "vague" and what-not. In fact, one of the chief differences between the initial Complaint and the First Amended Complaint is that the Plaintiff corrected all of the re-allegations in each count, such that they only re-allege the introductory facts and explanations up to paragraph 103. Furthermore, for the Defendants to allege that the First Amended Complaint is "vague" and "conclusory", it is quite interesting that this section of the Motion to Dismiss is, well…vague and conclusory.

### C. The Fourteenth Amendment claims are well pleaded and backed up by sound case-law.

First off, it should be noted that the same Defendants who complained of the First Amended Complaint being "prolix" is now arguing that the allegations against the Defendants are not sufficiently detailed enough to describe their specific actions and involvement. While the specifics of the Defendants' participation in the specific allegations pleaded will become clearer through discovery, it is not in dispute that Danzig was the Department Commander, and Captain Napier was the Division Commander, both specified in the December 2, 2019 incident report where the Plaintiff was disciplined for being upset that she was not being given her medication, in violation of the Fourteenth Amendment's prohibition on cruel and unusual punishment. See, *Contact Log Report*, attached to the First Amended Complaint as **Exhibit "F"**, 020.

Danzig was also the Department Commander, and Captain Napier was the Division Commander, both specified in the incident report where their subordinates refused to treat the Plaintiff's serious chest pains resulting from the withdrawal symptoms caused by the failure to

give the aforementioned medication. See, *DDC Incident Detail Report*, attached to the First Amended Complaint as **Exhibit "G"**, 055[1].

Furthermore, the time for the Defendants to argue about the Supreme Court's seminal decision in Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020), and whether it applies to the Fourteenth Amendment and disparate impact claims is likely not yet upon the parties at this initial stage. However, it should be noted that the Eleventh Circuit recently upheld this Court's decision in Adams by & through Kasper v. Sch. Bd. of St. Johns County, Florida, 318 F. Supp. 3d 1293 (M.D. Fla. 2018), aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns County, 968 F.3d 1286 (11th Cir. 2020), whereupon the Eleventh Circuit discussed the applicability of Bostock outside of the realm of Title VII, stating, "Bostock confirmed that workplace discrimination against transgender people is contrary to law. Neither should this discrimination be tolerated in schools." Id., at 1310. The Eleventh Circuit also affirmed that the violations against the plaintiff in that suit were violations of the Fourteenth Amendment. Id.

Furthermore, while the Eleventh Circuit in Keohane v. Florida Dep't of Corr. Sec'y determined that they could no longer address a policy as it had been rescinded as moot, they affirmed that gender dysphoria (the psychological term for being transgender) clearly constitutes a "serious medical need" and stated:

> It seems to us that responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of "deliberate indifference"—anti-medicine, if you will.

952 F.3d 1257, 1266–67 (11th Cir. 2020).

In addition, the court went on to state that:

---

[1] Notably, this is also one of the places in the jail records where the authors of the comments mock the Plaintiff by referring to "alleged 'chest pains'" and repeatedly describing her with he/him/his pronouns.

> Unsurprisingly to us, other courts considering similar policies erecting blanket bans on gender-dysphoria treatments—without exception for medical necessity—have held that they evince deliberate indifference to prisoners' medical needs in violation of the Eighth Amendment. *See, e.g.,* Fields v. Smith, 653 F.3d 550, 559 (7th Cir. 2011); *see also* Hicklin v. Precynthe, No. 4:16-CV-01357-NCC, 2018 WL 806764, at *11 (E.D. Mo. Feb. 9, 2018); Soneeya v. Spencer, 851 F. Supp. 2d 228, 247 (D. Mass. 2012).

Id., at 1267. Notably, the case under review by the court in that case, Keohane v. Jones, 328 F. Supp. 3d 1288 (N.D. Fla. 2018), vacated sub nom. Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020), had found a more expansive view of the application of the Eighth Amendment prohibition of cruel and unusual punishment with relation to social transitioning items than the Eleventh Circuit would uphold, but that decision was in place from August 22, 2018 to March 11, 2020, and all of the conduct in this case took place during that time period, so any of the Defendants' claims that they were unaware of the established constitutional rights of the Plaintiff fail as a matter of law. Further, unlike in Keohane v. Florida Dep't of Corr. Sec'y, this issue is not "moot".

In addition, if it is clearly a violation of the Fourteenth Amendment to not allow a male transgender student to use a bathroom consistent with his gender, then surely it is a violation of the Fourteenth Amendment to force a female transgender detainee to strip for a male deputy and give him her underwear, which she was not allowed to wear for some unreasonable and not-even-close-to rational basis.

> **D. The Fourteenth Amendment claims are solidly pleaded, and any references to the Eighth Amendment that are contained in the First Amended Complaint are solely in reference to the fact that the standards for cruel and unusual punishment claims are identical.**

Jail guards, deputies, correctional officers, and the like are, "of course, bound by the Eighth Amendment's prohibition against cruel and unusual punishment". Goebert v. Lee County, 510 F.3d

1312, 1326 (11th Cir. 2007). However, technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees like the Plaintiff. Goebert, 510 F.3d at 1326; Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1268 (11th Cir.2005). However, **"the standards under the Fourteenth Amendment are identical to those under the Eighth"**. Goebert, 510 F.3d at 1326 (emphasis added); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir.2005).

Any remnants of references to the Eighth Amendment appearing in the First Amended Complaint that are outside of the applicability of the standards being identical are unintentional, and it is clear that the Plaintiff therein is not alleging counts based upon the Eighth Amendment, but rather, the Fourteenth Amendment.

### E.  The Defendants are liable under a supervisory liability theory.

"Supervisory officials cannot be held vicariously liable under section 1983 for the actions of their subordinates unless the supervisor 'personally participates in the alleged unconstitutional conduct' or 'there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.' " Smith v. Deal, No. 18-13424, 2019 WL 378568, at *2 (11th Cir. Jan. 30, 2019) (*quoting* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) ). "A causal connection can be established when facts support an inference that the supervisor directed the subordinates to act unlawfully **or knew that the subordinates would act unlawfully and failed to stop them from doing so**." Smith v. LePage, 834 F.3d 1285, 1298 (11th Cir. 2016) (emphasis added) (quotations and citation omitted). A causal connection also " 'can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' " Knight through Kerr v. Miami-Dade Cty., 856 F.3d

795, 820 (11th Cir. 2017) (*quoting* Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ). "But one incident will not suffice; rather, [t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. (quotations and citation omitted). Manago v. Glass, 3:16-CV-1508-J-32JBT, 2019 WL 1014440, at *11 (M.D. Fla. Mar. 4, 2019).

A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003), or that a supervisor's "custom or policy ... resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir.1991); Powers v. Jones, 3:15-CV-595-J-34PDB, 2015 WL 2402363, at *2 (M.D. Fla. May 20, 2015).

Here, the Plaintiff has shown multiple reports consisting of flagrant constitutional abuses, and at least two of these reports were approved and ratified by the Defendants, and they were most certainly aware of this behavior on the part of the other Defendants. This is not in dispute, because as noted previously, this is all in the DDC Incident Detail Reports, which name the Defendants as having been notified of the incidents. Because there are more than one report, and the incidents consist of actions which are clearly the "norm" and policy of the County Jail, the Defendants were on notice that the other Defendants were continuing to act unlawfully and failed to do anything about it. *See also,* N.R. by Ragan v. Sch. Bd. of Okaloosa County, Florida, 418 F. Supp. 3d 957, 983 (N.D. Fla. 2019). In addition, the Plaintiff, on multiple occasions, complained and/or lodged grievances about the unconstitutional conditions of her confinement and the unlawful actions of the Defendants.

Finally, this is the preliminary Rule 12(b)(6) dismissal stage, not the summary judgment stage, and as such, the Plaintiff should have the opportunity to conduct discovery and find out more about the official policies of the Defendants and their hands in failing to stop the other Defendants from conducting these unlawful actions, and by approving, condoning, and ratifying the unlawful actions on multiple occasions.

While the Defendants surely appear to think that the Plaintiff's claims are 'trivial', such does more to prove the Plaintiff's claims that the Defendants are liable. As shown herein, these constitutional deprivations have certainly been considered significant in cases before the Eleventh Circuit and other Florida federal courts. As such, the Defendants' Motion to Dismiss must be denied.

## **CONCLUSION**

In short, the Defendants have *not* proved that they are entitled to dismissal, and this Court should not grant the Defendants' requested relief, particularly at such an early stage of these proceedings. In the alternative, and "giving recognition to the well established principle that liberality in amendments to pleadings are to be favored by the courts", the Plaintiff would request that this Court permit the filing of an amended complaint. Baugher v. Alachua County, 305 So. 2d 838, 839–40 (Fla. 1st DCA 1975).

WHEREFORE, the Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss of Colonel Danzig and Captain Napier, and for any and all other relief as this Court deems in the interests of justice.

Respectfully Submitted,

*/s/ Rook Ringer*

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 22, 2020, a copy of the foregoing has been furnished by CM/ECF to: Kelly L. Vicari, Esq., Pinellas County Attorney's Office, 315 Court Street, Sixth Floor, Clearwater, Florida 33756, kvicari@pinellascounty.org, eservice@pinellascounty.org, and to Paul G. Rozelle, Esq., Pinellas County Sheriff's Office, 10750 Ulmerton Road, Largo, FL 33778, prozelle@pcsonet.com, amarcott1@pcsonet.com.

Respectfully Submitted,

*/s/ Rook Ringer*

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
*Attorney for Plaintiff*