UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. GUALTIERI, in his official capacity as Sheriff of Pinellas County, PINELLAS COUNTY, FLORIDA, et al.,<br><br>Defendants. | Case No.: 8:20-cv-02005-TPB-AEP |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OF DEPUTY ALVARO BERJE
AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Plaintiff, CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO (hereinafter, "Plaintiff" or "Karla"), by and through her undersigned attorney, and hereby responds in opposition to the Defendant's Motion to Dismiss of Deputy Alvaro Berje (hereinafter, the "Motion to Dismiss") and states as follows:

1. This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for the Defendants' individual and collective personal, malicious, and unlawful violations under color of state law of Plaintiff's individual rights.

2. The Defendant, Deputy Alvaro Berje (hereinafter, the "Defendant") filed the Motion to Dismiss on October 12, 2020.

3. The Motion to Dismiss argues that the Plaintiff's claims against the Defendant should be dismissed "because the amended complaint is prolix and a shotgun pleading in violation

of Fed. R. Civ. P. 8(a)(2) & 8(d)(1)", and because they allege that he is entitled to qualified immunity.[1]

4. Given that the Motion to Dismiss incorporates arguments from other Defendants' motions to dismiss, the Plaintiff's responses against those incorporated arguments are recreated herein so as not to require this Court to switch back and forth between various motions.

## PRELIMINARY ISSUES

5. First off, the Motion to Dismiss is intentionally flippant and insulting towards the Plaintiff's claims, which include behavior on the part of the Defendants in this action which have been held to be violations of the Eighth Amendment's prohibition on cruel and unusual punishment.

6. An example of the unprofessional and flippant commentary in the Motion to Dismiss is the characterization of the Plaintiff's allegations as claiming, "a constitutional right to wear makeup in jail." *Motion to Dismiss*, p. 2, ¶ 1.

## MEMORANDUM OF LAW

I. STANDARD OF REVIEW.

A. Motions for Dismiss for Failure to State a Claim.

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts"

---

[1] The Motion to Dismiss also states that it "Finally, Deputy Berje joins in, adopts, and incorporates the entirety of Deputy Cox's motion to dismiss", and as a result, the arguments against the other issues raised in the response to that motion are included herein.

standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (*citing* Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Quality Foods, 711 F.2d at 995 (*quoting* Conley, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 602 (5th Cir.1981); Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc., 540 F.2d 824, 826-827 (5th Cir. 1976).

### B. Qualified Immunity.

The Defendants have moved to dismiss based upon the affirmative defense of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); *see also,* Lumley v. City of Dade City, 327 F.3d 1186, 1193-94 (11th Cir. 2003).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his individual capacity involves a two-step analysis. Hope v. Pelzer, 536 U.S. 730 (2002). Before applying the test, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (*quoting* Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) ).

If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions "violated clearly established constitutional law" or a federal statute. Id.; Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., at 201. Furthermore, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

## II.    ARGUMENT.

### A.  The Defendants are arguing out of both sides of their mouths.

First off, it should be noted that the Defendant's argument here regarding Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257, 1275, 1279 (11th Cir. 2020) (hereinafter, Keohane II), is interesting, considering that in Deputy Steve Cox, Jr.'s Motion to Dismiss (the "entirety" of which is incorporated into the Defendant's Motion to Dismiss) states that, "Because amendment would be futile — Bello cannot change the state of the law in December 2019 — dismissal with prejudice on a finding that Deputy Cox is entitled to qualified immunity is warranted." *Motion to Dismiss Amended Complaint of Deputy Cox* [Dkt. 35], p. 10, ¶ 1.

The reasoning for why this is interesting is because the law in place during the entirety of the time that the Plaintiff was in the County Jail was the Southern District's decision in Keohane v. Jones (hereinafter, Keohane I), which ordered that the Florida Department of Corrections:

> permit Ms. Keohane access to the same undergarments, hair-length policy, and makeup items available for inmates housed in Defendant's female facilities so that she can socially transition to treat her gender dysphoria.

328 F. Supp. 3d 1288, 1318 (N.D. Fla. 2018), vacated sub nom. Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020).

So if this Court were to proceed on the perspective that the Defendant is not liable because of "the state of the law in December 2019", well, **the state of the law at that time was that transgender women must be permitted to access the same undergarments, hair-length policy, and makeup items available for non-transgender women in jail facilities**.

### B. The Defendant either completely misunderstands, or has deliberately misstated, the holding in Keohane II.

The holding in Keohane II did not state that the undergarments, hair, and makeup issue (hereinafter, the "social transitioning issue") could lawfully be denied to transgender women. The court found that, because there was at the time a disagreement among the medical staff as to whether the social transitioning issue was medically necessary, their denial of that inmate's ability was "mere negligence", and did not rise to the level of the "deliberate indifference" needed to state a claim for Eighth Amendment cruel and unusual punishment.

In fact, a very telling aspect of the Keohane II decision states as follows:

> The FDC has given Keohane some, but not all, of what she wants—although it has denied her social-transitioning requests (at least as they pertain to clothing and grooming), it has provided mental-health counseling, hormone therapy, the use of female pronouns, safer housing accommodations, and private shower facilities. And like the prison officials in Kosilek, the FDC has struck that balance both because Keohane's treatment team has determined that her current regimen is sufficient to treat her gender

dysphoria and because it has rationally concluded that her social-transitioning requests—to dress and groom herself as a woman—would present significant security concerns in an all-male prison.

Keohane II, 952 F.3d at 1277. It is all there in black and white: the reason that the Eleventh Circuit found that the social transitioning issue was only "mere negligence" was because there was a "current regimen" that was sufficient to treat the inmate's gender dysphoria. Id.

Here, to the contrary, **the Defendants refused to treat the Plaintiff's gender dysphoria in any way, and even refused to stop calling her "Sir" and "Mister" and deliberately refusing to even acknowledge any aspect of her gender identity whatsoever.** While the defendants in Keohane II might have successfully argued that by treating some, but not all, of that inmate's serious medical needs, they had only committed "mere negligence" with respect to the social transitioning issues, that is not in any way, shape, or form applicable to the instant case, where the Defendants were literally taunting and mocking the Plaintiff's serious medical needs.

To compare to the serious medical need of an injury that is bleeding, the decision in Keohane II is akin to the court saying that, because a medic has already put a bandage on the wound, it was only "mere negligence" for that medic to fail to *also* give the injured person an antibiotic to deal with infection, as the medic was clearly attempting to care for the injured person. To read Keohane II the way that the Defendant has argued would be to say that, if the medic failed to put a bandage on the wound, it could also ignore the antibiotic treatment. Again, the Defendant's interpretation of the holding in Keohane II defies logic and common sense.

### C. There is no debate that gender dysphoria is a "serious medical need" requiring treatment, and that this Defendant refused, and indeed punished, the Plaintiff for attempting to treat herself.

And while on the subject of serious medical needs, here is what the Eleventh Circuit stated in Keohane II with respect to the serious medical need component:

> Here, as already noted, there's no debate about the objective component. **The [Florida Department of Corrections] admits—and the parties thus agree—that Keohane's gender dysphoria constitutes a "serious medical need."**

952 F.3d at 1266 (emphasis added).

If the Florida Department of Corrections recognizes that gender dysphoria is a serious medical need, and they *also* agreed that it was a serious medical need even back in 2018 in <u>Keohane I</u>, 328 F. Supp. 3d at 1293, why are the Defendants here trying to argue that they had no duty to do *anything* to treat this serious medical need?

### D.  The Defendant's other citations are also distinguishable and inapplicable.

For example, it should be noted that the unpublished case cited by the Defendant was later affirmed, but criticized, by the Eleventh Circuit, which stated that, "[t]he district court dismissed the claims against Wilkins and Montaldi in their individual capacities because it found that Hood failed to allege any personal refusals to treat gender dysphoria", and that the dismissal with prejudice ruling was in error, thus remanding to the district court for the plaintiff to amend her complaint. <u>Hood v. Dep't of Children & Families</u>, 700 Fed. Appx. 988, 990 (11th Cir. 2017). In <u>Hood</u>, one of the main issues was that when filed, the institution did not have *any* treatment program for transgender inmates, but it had later enacted one, making the claims as originally pled "moot". Here, the Defendants argue that they are under no obligation to do *anything* for transgender prisoners, not even the basic human decency of referring to the Plaintiff by her proper female pronouns (she/her/hers), **which would have cost the County Jail absolutely *nothing*.**

Furthermore, the Defendant's citation to a 1997 Sixth Circuit case is patently *ridiculous* and insulting, as in 1997, most people did not even know what a transgender person was, and obviously, the state of transgender civil rights has changed immensely since then, not to mention the fact that such a decision carries far less weight than the Florida district court cases that he

omitted. In fact, the decision in Edmo v. Corizon, Inc., 935 F.3d 757 (9th Cir. 2019), cert. denied sub nom. ID DOC, et al. v. Edmo, Adree, 19-1280, 2020 WL 6037411 (U.S. Oct. 13, 2020), would be a much more applicable ruling to cite with respect to persuasive authority (transgender prisoner must be afforded gender confirmation surgery).

### E. The First Amended Complaint is not "prolix", and it is certainly not subject to dismissal based upon Rule 8.

Secondly, it should be noted that the Defendant's argument regarding the alleged "prolix" nature of the First Amended Complaint do not comport with his arguments regarding a "shotgun pleading". One is left wondering how a detailed, allegedly "prolix" pleading could simultaneously be too specific and not specific enough, and given the nature of the Defendant's arguments, it is clear that were the First Amended Complaint shorter, he would be arguing that it did not set forth sufficient facts.

The First Amended Complaint, at 51 pages and 258 paragraphs, is simply a well-researched and detailed explanation of the various issues and complex concepts described therein, which is especially important given the many defendants. Further, the introductory factual allegations are only 19 pages and 103 paragraphs. The rest of the First Amended Complaint consists of Counts I to VII.

Compared to other pleadings deemed "prolix" by this Court, the First Amended Complaint does not even come close. For example, this Court found that a complaint consisting of 134 pages and 566 paragraphs long, where the "recitation of the various counts does not begin until page 126, paragraph 526", such was a good example of a "prolix" claim. Lawrie v. The Ginn Companies, LLC, 309-CV-446-J-32JBT, 2010 WL 3746725, at *3 (M.D. Fla. Sept. 21, 2010)

Another example, in Al-Rayes v. Willingham, 3:15-CV-107-J-34JBT, 2016 WL 6080826, at *3 (M.D. Fla. Aug. 15, 2016), report and recommendation adopted, 3:15-CV-107-J-34JBT,

2016 WL 6071636 (M.D. Fla. Oct. 17, 2016), the complaint was deemed "prolix" by this Court where it had 66 pages *but* the first 41 pages and 202 paragraphs preceded any of the counts.

The Southern District found that a complaint spanning 142 pages was "prolix". Lawrie v. Ginn Dev. Co., LLC, 3:09-CV-446-J-32JBT, 2014 WL 4788067, at *3 (M.D. Fla. Sept. 19, 2014), aff'd, 656 Fed. Appx. 464 (11th Cir. 2016). The same court found that a complaint consisting of 507 pages (inclusive of exhibits), 341 paragraphs, and 7 counts was also "prolix". Shaprio v. Unum Life Ins. Co. of Am., 17-CV-23992-UU, 2017 WL 10379581, at *1 (S.D. Fla. Nov. 29, 2017).

To the contrary, because of the nature of this suit, it was important to address the medical issues therein, particularly where issues of transgender health and terminology might not be well known to the reader, as well as by laying out as many of the facts of the specific incidents in the County Jail that led to the Counts as could be stated to explain how all of the different Defendants contributed.

### F.  The First Amended Complaint is not an impermissible "shotgun pleading".

This allegation is simply untrue, as the Defendant argues that the Plaintiff has re-alleged all preceding counts and is "vague" and what-not. In fact, one of the chief differences between the initial Complaint and the First Amended Complaint is that the Plaintiff corrected all of the re-allegations in each count, such that they only re-allege the introductory facts and explanations up to paragraph 103. Furthermore, for the Defendant to allege that the First Amended Complaint is "vague" and "conclusory", it is quite interesting that this section of the Motion to Dismiss is, well…vague and conclusory.

### G. The Fourteenth Amendment claims are well pleaded and backed up by sound case-law.

First off, it should be noted that the same Defendant who complained of the First Amended Complaint being "prolix" is now arguing that the allegations against the Defendant are not

sufficiently detailed enough to describe their specific actions and involvement. While the specifics of the Defendant's participation in the specific allegations pleaded will become clearer through discovery, it is not in dispute that the Defendant was involved in the December 6, 2019 Incident where the Plaintiff's undergarments were "confiscated". See, *DDCI Incident Detail Report*, attached to the First Amended Complaint as **Exhibit "H"**, 059. It is also not in dispute that the Defendant was the person who disciplined the Plaintiff for attempting to self-treat her gender dysphoria the only way that she could, by applying colored pencils to her eyebrows. See, *Contact Log Report*, attached to the First Amended Complaint as **Exhibit "F"**, 020.

Furthermore, the time for the Defendants to argue about the Supreme Court's seminal decision in Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020), and whether it applies to the Fourteenth Amendment and disparate impact claims is likely not yet upon the parties at this initial stage. However, it should be noted that the Eleventh Circuit recently upheld this Court's decision in Adams by & through Kasper v. Sch. Bd. of St. Johns County, Florida, 318 F. Supp. 3d 1293 (M.D. Fla. 2018), aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns County, 968 F.3d 1286 (11th Cir. 2020), whereupon the Eleventh Circuit discussed the applicability of Bostock outside of the realm of Title VII, stating, "Bostock confirmed that workplace discrimination against transgender people is contrary to law. Neither should this discrimination be tolerated in schools." Id., at 1310. The Eleventh Circuit also affirmed that the violations against the plaintiff in that suit were violations of the Fourteenth Amendment. Id.

Furthermore, while the Eleventh Circuit in Keohane II determined that they could no longer address a policy as it had been rescinded as moot, they affirmed that gender dysphoria (the psychological term for being transgender) clearly constitutes a "serious medical need" and stated:

> It seems to us that responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider

> whether a particular course of treatment is appropriate is the very definition of "deliberate indifference"—anti-medicine, if you will.

952 F.3d at 1266–67.

In addition, the court went on to state that:

> **Unsurprisingly to us, other courts considering similar policies erecting blanket bans on gender-dysphoria treatments—without exception for medical necessity—have held that they evince deliberate indifference to prisoners' medical needs in violation of the Eighth Amendment.** *See, e.g.*, Fields v. Smith, 653 F.3d 550, 559 (7th Cir. 2011); *see also* Hicklin v. Precynthe, No. 4:16-CV-01357-NCC, 2018 WL 806764, at *11 (E.D. Mo. Feb. 9, 2018); Soneeya v. Spencer, 851 F. Supp. 2d 228, 247 (D. Mass. 2012).

Id., at 1267 (emphasis added). Notably, the case under review by the court in that case, Keohane I, had found a more expansive view of the application of the Eighth Amendment prohibition of cruel and unusual punishment with relation to social transitioning items than the Eleventh Circuit would uphold, but that decision was in place from August 22, 2018 to March 11, 2020, and all of the conduct in this case took place during that time period, so any of the Defendants' claims that they were unaware of the established constitutional rights of the Plaintiff fail as a matter of law. Further, unlike in Keohane II, this issue is not "moot".

In addition, if it is clearly a violation of the Fourteenth Amendment to not allow a male transgender student to use a bathroom consistent with his gender, then surely it is a violation of the Fourteenth Amendment to force a female transgender detainee to strip for a male deputy and give him her underwear, which she was not allowed to wear for some unreasonable and not-even-close-to rational basis, and the same goes with respect to disciplining the Plaintiff for attempting to alleviate her gender dysphoria, which was going completely untreated due to the Defendants completely refusing to address any aspect of this serious medical need, by using colored pencils on her eyebrows, as if such is some kind of legitimate "threat" to jail security or something.

**H. The Fourteenth Amendment claims are solidly pleaded, and any references to the Eighth Amendment that are contained in the First Amended Complaint are solely in reference to the fact that the standards for cruel and unusual punishment claims are identical.**

Jail guards, deputies, correctional officers, and the like are, "of course, bound by the Eighth Amendment's prohibition against cruel and unusual punishment". Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). However, technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees like the Plaintiff. Goebert, 510 F.3d at 1326; Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1268 (11th Cir.2005). However, **"the standards under the Fourteenth Amendment are identical to those under the Eighth"**. Goebert, 510 F.3d at 1326 (emphasis added); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir.2005).

Any remnants of references to the Eighth Amendment appearing in the First Amended Complaint that are outside of the applicability of the standards being identical are unintentional, and it is clear that the Plaintiff therein is not alleging counts based upon the Eighth Amendment, but rather, the Fourteenth Amendment.

## CONCLUSION

In short, the Defendant has *not* proved that he is entitled to dismissal, and this Court should not grant the Defendant's requested relief, particularly at such an early stage of these proceedings. In the alternative, and "giving recognition to the well established principle that liberality in amendments to pleadings are to be favored by the courts", the Plaintiff would request that this Court permit the filing of an amended complaint. Baugher v. Alachua County, 305 So. 2d 838, 839–40 (Fla. 1st DCA 1975).

WHEREFORE, the Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss of Deputy Alvaro Berje, and for any and all other relief as this Court deems in the interests of justice.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 26, 2020, a copy of the foregoing has been furnished by CM/ECF to: Kelly L. Vicari, Esq., Pinellas County Attorney's Office, 315 Court Street, Sixth Floor, Clearwater, Florida 33756, kvicari@pinellascounty.org, eservice@pinellascounty.org, and to Paul G. Rozelle, Esq., Pinellas County Sheriff's Office, 10750 Ulmerton Road, Largo, FL 33778, prozelle@pcsonet.com, amarcott1@pcsonet.com.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
*Attorney for Plaintiff*