UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Carlos Bello Nogueda,
  a/k/a Karla Bello,

        Plaintiff,

vs.                                   Case No. 8:20-cv-02005-TPB-AEP

Robert A. Gualtieri, et al.,

        Defendants.
_____/

**REPLY BRIEF OF DIXON AND HILERY IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to this Court's order, Dkt. 55, Ms. Dixon and Ms. Hilery file this brief in further support of their motions to dismiss the amended complaint, Dkt. 37-38, and in reply to the plaintiff's responses to those motions, Dkt. 51-52.

Despite their combined 18 pages, neither response argues that Ms. Dixon or Ms. Hilery were personally involved in any unconstitutional conduct. With respect to Ms. Dixon, Bello claims in her response that

> it is not in dispute that she was involved in the December 6, 2019 incident where Corporal Merritt forced the Plaintiff to strip and hand over her "personal undergarments."

Dkt. 51, at 6. This is fiction. Bello's only averment in the amended complaint concerning Ms. Dixon — a mental health counselor — is that Ms. Dixon saw Bello in her office and placed her on close-observation status. Dkt. 33 ¶ 73. Nowhere in her amended complaint does Bello aver that Ms. Dixon had any involvement in

"forc[ing] the Plaintiff to strip and hand over her 'personal undergarments.'" Bello's argument concerning Ms. Hilery — the only medical professional sued in this case — is equally strained. The only averments concerning Ms. Hilery in the amended complaint are that she advised Bello to sign up for sick call, Dkt. 33 ¶ 80, and evaluated Bello in response to her complaint of chest pains and cleared her to remain in her current housing assignment, id. ¶¶ 67-68. The lack of personal participation in unconstitutional conduct requires dismissal. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("[T]he plaintiff in a suit such as the present one must plead that each Government-official defendant, through his own individual actions, has violated the Constitution."); Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (same).

Bello does not cite any case finding or holding that an employee at a county jail can be denied qualified immunity on such limited, generic, and conclusory allegations devoid of personal participation in unconstitutional conduct. As with her allegations concerning Deputy Cox, Bello's averments in the amended complaint concerning Ms. Dixon and Ms. Hilery are identical to the averments concerning them in the original complaint. Compare Dkt. 1 ¶¶ 68-69, 74 & 81, with Dkt. 33 ¶¶ 67-68, 73 & 80. Dismissal is warranted because further amendment would be futile. Lucas v. USAA Cas. Ins. Co., 716 F. App'x 866, 870 (11th Cir. 2017) (per curiam) (affirming dismissal where subsequent pleadings did not resolve previously identified deficiencies).

Second, Bello's reliance on Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020), is misplaced.  See Dkt. 51, at 6-7; Dkt. 52, at 6-7.  Keohane involved whether the Constitution requires a prison to provide a transgender prisoner with pharmaceutical therapy for her gender identity disorder and accommodate her social transitioning.  Setting aside that Bello fails to allege any personal involvement of Ms. Dixon and Ms. Hilery in connection with any of these matters as they pertain to her, the Eleventh Circuit held that the former issue was moot and the latter was not constitutionally required.  Keohane, 952 F.3d at 1272, 1277-78.

Furthermore, Keohane involved a prisoner who was prescribed hormone replacement therapy by a doctor prior to her 15-year incarceration.  Id. at 1262.  Bello, however, was in jail for 12 days and was "taking hormone replacement therapy . . . medications without a prescription."  Dkt. 33 ¶ 44.  This is, of course, illegal.  The Constitution does not require jail staff to maintain an inmate's illicit pharmaceutical regimen.

Additionally, Keohane was decided *after* the events giving rise to Bello's lawsuit took place and, therefore, was unavailable to guide the defendants with respect to whether their conduct was constitutional or violated "clearly established" law.  Bello nevertheless argues — incorrectly — that the defendants were bound by the now-vacated district court's decision in Keohane.  See Dkt. 51, at 7; Dkt. 52, at 7.  District court decisions, even ones that were not vacated on appeal, are of no moment in defining what constitutes clearly established law.  "In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest

court of the state in which the case arose." Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 955 (11th Cir. 2003). Marsh v. Butler County, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc) ("We do not expect public officials to sort out the law of every jurisdiction in the country.").

Rather, "clearly established," with reference to a right that a government official allegedly has violated, means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In her responses, Bello fails to identify any case in which a mental health counselor or an LPN was ever held constitutionally liable in connection with the treatment of a transgender person incarcerated in a county jail. "[U]nless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

In the absence of fact-specific case law clearly establishing the rights in question, Bello's only escape from the bar of qualified immunity is to claim that the unlawfulness of the defendants' conduct was readily apparent notwithstanding the lack of case law clearly establishing the right — i.e., that it would have been obvious to everyone that to act as the defendants did under the circumstances violates the Constitution. Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam). No case has ever applied the obvious clarity doctrine to the rights of transgender inmates. Indeed, even were Bello to aver that the defendants personally participated

in every allegedly unconstitutional act identified in her amended complaint, see Dkt. 35 at 2 ¶ 4, it is not obvious that the Constitution mandates that transgender female inmates be housed with and use the bathroom with cisgender women, that hormone replacement therapy be provided to an inmate who has never been prescribed it, that strip searches be conducted only by cisgender females, or that inmates must be addressed only by their preferred pronouns.  No amount of repleading can alter the state of the law.  The defendants are entitled to qualified immunity and this case should be dismissed.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
FBN: 75948
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:  (727) 582-6459
*prozelle@pcsonet.com*
*amarcott1@pcsonet.com*
Attorney for Ms. Dixon and Ms. Hilery

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Paul G. Rozelle

5