UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO | Case No.: 8:20-cv-02005-TPB-AEP |
| Plaintiff, | |
| v. | |
| ROBERT A. GUALTIERI, in his official capacity as Sheriff of Pinellas County, PINELLAS COUNTY, FLORIDA, JASON P. FRANJESEVIC, Sergeant, Pinellas County Sheriff's Office, Pinellas County Sheriff's Office, RICHARD MERRITT, Corporal, Pinellas County Sheriff's Office, CHRIS MOSES, Deputy, Pinellas County Sheriff's Office, DARLENE HILERY, ARNP, and YVETTE DIXON, LMHC, | |
| Defendants. | |

## SECOND AMENDED COMPLAINT
### AND DEMAND FOR JURY TRIAL
### INJUNCTIVE RELIEF SOUGHT

Plaintiff, CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO (hereinafter, "Plaintiff" or "Karla"), by and through her undersigned attorney, sues Defendants ROBERT A. GUALTIERI (hereinafter, "Sheriff Gualtieri"), PINELLAS COUNTY, FLORIDA (hereinafter, "Pinellas County", JASON P. FRANJESEVIC, Sergeant, Pinellas County Sheriff's Office (hereinafter, "Franjesevic"), RICHARD

MERRITT, Corporal, Pinellas County Sheriff's Office (hereinafter, "Merritt"), CHRIS MOSES, Deputy, Pinellas County Sheriff's Office (hereinafter, "Moses"), DARLENE HILERY, ARNP (hereinafter, "Hilery"), and YVETTE DIXON, LMHC (hereinafter, "Dixon"), (hereinafter collectively, the "Defendants"), and avers as follows:

## NATURE OF THE ACTION

1. This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and under the Eighth and Fourteenth Amendments of the United States Constitution as applied to the states under the United States Constitution's Fourteenth Amendment for the Defendants' individual and collective personal, malicious, and unlawful violations under color of state law of Plaintiff's individual rights.

2. Defendants committed these unlawful violations of Plaintiff's constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's human and safety rights.

3. Plaintiff seeks relief, including declaratory and injunctive relief, compensatory damages, punitive damages, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988.

## PARTIES

4. Plaintiff is a natural person residing in Wimauma, Hillsborough County, Florida. At all times relevant to this action, Plaintiff was a resident of Pinellas County, Florida.

5.     Upon information and belief, Defendant Sheriff Gualtieri is a natural person residing in Pinellas County, Florida, and at all times relevant to this action, was the Sheriff of Pinellas County, Florida.

6.     Upon information and belief, Defendant Pinellas County is a political subdivision of the State of Florida with the capacity to sue and be sued.

7.     Upon information and belief, Defendant Franjesevic is a natural person residing in Pinellas County, Florida, and at all times relevant to this action, was a Sergeant in the Pinellas County Sheriff's Office working in the Pinellas County Jail.

8.     Upon information and belief, Defendant Merritt is a natural person residing in Pinellas County, Florida, and at all times relevant to this action, was a Corporal in the Pinellas County Sheriff's Office working in the Pinellas County Jail.

9.     Upon information and belief, Defendant Moses is a natural person residing in Pinellas County, Florida, and at all times relevant to this action, was a Deputy in the Pinellas County Sheriff's Office working in the Pinellas County Jail.

10.     Upon information and belief, Defendant Hilery is a natural person residing in Pinellas County, Florida, and at all times relevant to this action, was an Advanced Registered Nurse Practitioner (hereinafter, "ARNP") working for or with the Pinellas County Sheriff's Office in the Pinellas County Jail.

11.     Upon information and belief, Defendant Dixon is a natural person residing in Pinellas County, Florida, and at all times relevant to this action, was licensed mental health counselor (hereinafter, "LMHC") working for or with the Pinellas County Sheriff's Office in the Pinellas County Jail.

## VENUE AND JURISDICTION

12.     Venue is proper in the Middle District Court of Florida, pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.02 (c), and Defendants' independent and collective malicious and unlawful violations under color of state law of Plaintiff's constitutional rights giving rise to the claims herein accrued within this district and division, as all Defendants work and/or reside in this district and division, and all of the acts and omissions giving rise to this action occurred in Pinellas County, which is in this district and division.

13.     The Court has subject-matter jurisdiction over the Plaintiff's federal law claims, pursuant to 28 U.S.C. §§ 1331 (federal question), and 1343(a)(3) (civil rights).

14.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, as well as Federal Rule of Civil Procedure 65.

15.     The Plaintiff is not immediately arguing any state law tort claims related to these federal claims that may form a part of the same case or controversy, due to conditions precedent to the filing of those claims as set forth in Florida Statute § 768.28. This Court would have supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a), but cannot bring those claims at this stage, and will reassess at a later time whether to seek leave to amend this Complaint or to pursue those claims in state court.

16.     At all material times, the Defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of the Plaintiff's human and safety rights.

17.    These constitutional law violations are "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 125 (1973) (*citing* Southern Pacific Terminal Co. v. ICC, 219 U. S. 498, 515 (1911), Moore v. Ogilvie, 394 U. S. 814, 816 (1969), Carroll v. Princess Anne, 393 U. S. 175, 178-179 (1968), United States v. W. T. Grant Co., 345 U. S. 629, 632-633 (1953)).

18.    All conditions precedent to the maintenance of this action have been performed, have occurred prior to its institution or have been waived.

## FACTS COMMON TO ALL COUNTS

### A.    An Overview of Certain Medical Concepts Discussed Herein.

19.    "Gender identity" is a well-established medical concept, referring to a person's internal sense of their own gender. All human beings develop this elemental conviction of belonging to a particular gender.

20.    Gender identity is innate and immutable.

21.    Typically, people who are designated female at birth based on their external anatomy identify as girls or women, and people who are designated male at birth identify as boys or men.

22.    For transgender individuals, however, one's gender identity differs from the sex assigned to them at birth. Transgender men are men who were assigned "female" at birth but have a male gender identity. Transgender women are women who were assigned "male" at birth but have a female gender identity.

23.    The medical diagnosis for the incongruence between one's gender identity and one's sex assigned at birth and the clinical distress resulting from this

incongruence is Gender Dysphoria (previously known as Gender Identity Disorder).

24.     Gender Dysphoria is a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (hereinafter, the "DSM-5")[1] and International Classification of Diseases-10[2], World Health Organization (1992) (hereinafter, the "ICD-10").

---

[1] The DSM-5 describes the criteria as follows:

Gender Dysphoria in Adolescents and Adults 302.85 (F64.1)

A. A marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months' duration, as manifested by at least two of the following:

1. A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics).

2. A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender(or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics).

3. A strong desire for the primary and/or secondary sex characteristics of the other gender.

4. A strong desire to be of the other gender (or some alternative gender different from one's assigned gender).

5. A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender).

6. A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

B. The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

Diagnostic and Statistical Manual of Mental Disorders, *American Psychiatric Association*, 452-53 (5th ed. 2013).

[2] International Classification of Diseases-10, *World Health Organization* (1992).

25.     If left untreated, Gender Dysphoria can lead to serious medical problems, including clinically significant psychological distress, dysfunction, debilitating depression, and, for some people without access to appropriate medical care and treatment, self-harm, suicidality, and death.

26.     Leading medical and mental-health professional groups—including the American Medical Association, the American Psychological Association, the American Psychiatric Association, the American Academy of Family Physicians, the American Congress of Obstetricians and Gynecologists, the Endocrine Society, the National Association of Social Workers, and the World Professional Association for Transgender Health—all agree that Gender Dysphoria is a serious medical condition, and that treatment for Gender Dysphoria is medically necessary for many transgender people.

27.     The accepted standards of care for treating Gender Dysphoria are published by the World Professional Association for Transgender Health (hereinafter, "WPATH"), a professional association dedicated to establishing the standards for treating Gender Dysphoria.

28.     The WPATH Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People (hereinafter, the "WPATH Standards of Care") identify clinical guidance for health professionals to assist with safe and effective care for individuals with Gender Dysphoria. Eli Coleman et al., *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People*, Version 7, World Professional Association for Transgender Health (WPATH)

(2012).

29.     The WPATH Standards of Care are recognized by the leading medical and mental-health professional groups as the authoritative standards for treating Gender Dysphoria.

30.     The Standards of Care apply equally to inmates, and expressly state:

> Health care for transsexual, transgender, and gender-nonconforming people living in an institutional environment should mirror that which would be available to them if they were living in a non-institutional setting within the same community. . . . All elements of assessment and treatment as described in the SOC can be provided to people living in institutions. Access to these medically necessary treatments should not be denied on the basis of institutionalization or housing arrangements. If the in-house expertise of health professionals in the direct or indirect employ of the institution does not exist to assess and/or treat people with gender dysphoria, it is appropriate to obtain outside consultation from professionals who are knowledgeable about this specialized area of health care.

Id., at 67.

31.     The National Commission on Correctional Healthcare ("NCCHC") recommends that the medical management of prisoners with gender dysphoria "should follow accepted standards developed by professionals with expertise in transgender health," citing the WPATH Standards of Care. *NCCHC*, "NCCHC Policy Statement, Transgender Health Care in Correctional Settings" (October 18, 2009; *reaffirmed with revision* April 2015), http://www.ncchc.org/transgender-health-care-in-correctional-settings (visited August 14, 2020) (footnote omitted); *see also*, Smith, Brenda K., & Brisbin, Lorie, *PREA Standards and Policy Development Guidelines for Lesbian, Gay, Bisexual, Transgender and Intersex Inmates*, The Project on Addressing

Prison Rape – National PREA Resource Center (December 18, 2012) https://www.prearesourcecenter.org/sites/default/files/library/lgbtiadultwebinarfin aljdi121812.pdf (visited August 14, 2020).

32.     Under the WPATH Standards of Care, treatment for Gender Dysphoria is designed to help individuals live congruently with their gender identity and thus eliminate the clinically significant distress. Treatment protocols include socially transitioning (dressing, grooming, and presenting oneself to others in accordance with one's gender identity), hormone replacement therapy, and surgeries. The particular course of medical treatment varies based on the individualized needs of the person.

33.     Transgender individuals experience discord between their self-identified gender identity and the sex with which they were "assigned" at birth. Transgender men are individuals who were assigned female at birth but identify as men, and transgender women are individuals who were assigned male at birth but identify as women. *See, ex.*, Unger, Cécile A. (December 2016). "Hormone therapy for transgender patients". *Translational Andrology and Urology*. 5 (6): 877–884.

### B.     Plaintiff's Gender Dysphoria and Treatment.

34.     At all times relevant to this action, and for several years prior to this action, Plaintiff has been living publicly as a woman, in accordance with her gender dysphoria.

35.     At all times relevant to this action, and for several years prior to this action, Plaintiff has not had access to proper health care for her gender dysphoria.

36.     As a result, and at all times relevant to this action, and for several years

prior to this action, Plaintiff has been taking hormone replacement therapy (hereinafter, "HRT" or "hormone therapy") medications without a prescription.

37.   Common effects of HRT medications on transgender women can include the following: growth of female breasts, an emotional sense of well-being, a significantly decreased sexual drive, loss of body hair, reversal of (head) hair loss, loss of muscle mass, redistribution of body fat to a more standard female presentation, and many other positive effects.

38.   However, abrupt withdrawal of HRT medications can cause the following: severe depression, suicide, chest pains, psychosis, mood disorders, autonomic hyperactivity, heart palpitations, and many other serious health issues, as well as a partial reversal of the "feminizing" effects of the HRT.

39.   Due to HRT, the Plaintiff has and had at all relevant times to this case, a completely female presentation, including full-sized female breasts, which require the wearing of female brassieres.

### C.   The Arrest and Incarceration of Karla Bello.

40.   On March 11, 2019, the Plaintiff was issued by mail a citation for failing to stop for a red light on December 3, 2018, having been documented by a "Red Light Camera" with a fine of $261.00 due by April 10, 2019. (*See*, Traffic Citation AB8S6OE, attached hereto as **Exhibit "A"**, p. 002).

41.   The Plaintiff failed to pay the $261 fine for Traffic Citation AB8S6OE.

42.   On May 20, 2019, the Plaintiff was issued by mail a citation for failing to stop for a red light on October 11, 2018, having been documented by a "Red Light

Camera" with a fine of $261.00 due by June 19, 2019. (*See*, Traffic Citation AAUXT5E, attached hereto as **Exhibit "B"**, p. 004).

43.     The Plaintiff failed to pay the $261 fine for Traffic Citation AAUXT5E.

44.     As a result of the Plaintiff's failure to pay traffic citations AB8S6OE and AAUXT5E, her driver's license was administratively suspended.

45.     On October 4, 2019, the Plaintiff was issued a citation for driving with a suspended license, a misdemeanor. (*See*, Traffic Citation AC7QEYE, attached hereto as **Exhibit "C"**, pp. 006-007).

46.     On November 4, 2019, the Plaintiff failed to appear for the initial arraignment hearing in traffic case AC7QEYE, and a capias warrant was issued by Pinellas County traffic court judge Robert Dittmer.

47.     On November 29, 2019, the Plaintiff was arrested by the Gulfport Police Department pursuant to a capias warrant issued in the AC7QEYE case, with a bond of $513. (*See*, Complaint/Arrest Affidavit GP19-25811, attached hereto as **Exhibit "D"**, 009-010).

**D.     Karla Bello at the Pinellas County Jail.**

48.     On November 29, 2019, at 12:20PM, the Plaintiff was booked into the Pinellas County Jail (hereinafter, the "Jail"). (*See*, Pinellas County Sheriff's Office Subject Charge Report, attached hereto as **Exhibit "E"**, p. 012).

49.     In the Plaintiff's redacted inmate records, in the section for "Admission Assessment", under the category for "SVP Assessment 'Vulnerability'", the term

"Inmate is LGBTI or gender non-conforming" is indicated by a "check" and is specified as "Transgender", showing that all Defendants were fully aware of Plaintiff's transgender status. (attached hereto as **Exhibit "F"**, p. 038).

### a. The Housing History Report.

50.    The "Housing History" notes the following information:

| Housing | Arrival | Departure | House Change Reason | Status |
|---|---|---|---|---|
| CSOD-INTAK-REC-01-00 | 8 11/29/2019 12:21 | 11/29/2019 13:02 | Inmate Record Creation | Accepted |
| CSOD-INTAK-PRO-01-00 | 11/29/2019 13:02 | 11/29/2019 14:50 | | Unscheduled |
| CEN-2C1-UN01-U3-002 | 11/29/2019 14:50 | 12/02/2019 02:44 | Misdemeanor- House in Male Holding. se8712 | Scheduled |
| CEN-6C1-UN01-L7-001 | 12/02/2019 02:44 | 12/06/2019 11:12 | Minimum Custody Misd. SVP - Potential Victim. Veteran - no space in 2C2. ap7541 | Scheduled |
| HD-2H2-2H2B-B1-001 | 12/06/2019 11:12 | 12/09/2019 18:02 | Close Observation.  Minimum Misdemeanor Custody, SVP Potential Victim, Veteran - notified Dep Corkum 5891 | Scheduled |
| HD-3H4-3H4A-A-006 | 12/09/2019 18:02 | 00/00/0000 00:00 | Cleared Close Observation & Placed on Psych Observation (MHTU) Approved by Supervisor Holler, Minimum Misd. Custody SVP Potential Victim Veteran rg9825 | Scheduled |

(**Ex. "F"**, p. 019).

51.    As can be seen above, on December 2, 2019, there is a mention of her being housed "in Male Holding". (**Ex. "F"**, p. 019).

52.    Additionally, she is noted as "SVP Potential Victim" on December 2, 2019, December 6, 2019, and December 9, 2019. (**Ex. "F"**, p. 019).

53.    Furthermore, she is noted as placed in "Close Observation" from December 6, 2019 to December 9, 2019 and placed in "Psych Observation (MHTU)" from December 9, 2019 until her release. (**Ex. "F"**, p. 019).

### b. DDC Incident Detail Report (02 DEC 2019).

54.    On December 2, 2019, Karla complained of having chest pains. (*See*, DDC Incident Detail Report DDCI-205807, attached hereto as **Exhibit "G"**, p. 055).

55.    Specifically, Karla entered the following narrative into the kiosk at 3:53 P.M.:

> i have not recived hrt.[3] i signed to se amp nurse on friday. iv been off spironlactone,finersteride, and can feel chest pains. hormones unbalalanced. the lack of feedback about when ill see the arnp.

(**Ex. "G"**, p. 056).

56.    The DDC Incident Detail Report DDCI-205807 (hereinafter, "Report 205807) was created by Moses, Merritt, and Franjesevic. (**Ex. "G"**, p. 055).

57.    In Report 205807, Karla is referred to with male pronouns and it lists her "sex" as "M". (**Ex. "G"**, p. 055).

58.    Report 205807 also states that Karla was "pat searched" prior to being permitted to see the nurse. (**Ex. "G"**, p. 055).

59.    Notably, in the "Supplement" section, the following is stated by Franjesevic, mocking Karla's medical issues:

> I was notified and responded. I agree with the actions taken by staff as outlined in this report. **Inmate Nogueda was medically evaluated for his alleged, "chest pains" by Nurse Hilery** and cleared to remain in his current housing assignment. Kiosk Case Message is attached to this report. Acting Shift Commander, Sergeant Vieno was notified.

(**Ex. "G"**, p. 055).

---

[3] "HRT" is short for "Hormone Replacement Therapy", as described in ¶¶ 44-47.

60.     Report 205807 is concluded by Franjesevic at 04:48PM, stating:

>   Inmate Nogueda was medically evaluated for his "Chest Pains" on 12/02/2019 at 1645 hours. Per Nurse Hillary, the inmate was cleared to remain in current housing.

(**Ex. "G"**, p. 055).

61.     Notably, again Franjesevic uses male pronouns to describe Karla, and also uses mocking scare-quotes around the words "chest pains". Id.

62.     This incident was also reported to Sergeant Jennifer Vieno (hereinafter, "Vieno") (listed here as "Shift Commander"), Captain Jesse Napier (hereinafter, "Napier") (listed here as "Division Commander"), and Colonel David Danzig (hereinafter, "Danzig") (listed here as "Department Commander"). (**Ex. "G"**, p. 055).

63.     Additionally, the "Sub-Catgory[sic]" on the following pages categorizes it as a "Division Commander Request". (**Ex. "G"**, pp. 056-057).

### c. DDC Incident Detail Report (06 DEC 2019).

64.     On December 6, 2019, Merritt removed and "confiscated" Karla's underwear. (*See*, DDC Incident Detail Report DDCI-206012, attached hereto as **Exhibit "H"**, 059-061).

65.     In DDC Incident Detail Report DDCI-206012 (hereinafter, "Report 206012"), Merritt himself described the incident as follows:

>   Inmate Bello-Nogueda was seen by LMHC Dixon in her office on the 6th floor. Per LMHC Dixon, Bello-Nogueda was placed on Close Observation status. **Utilizing the Attorney Visitation room for privacy, his personal undergarments were confiscated by me.** He was then seated adjacent to the Officer's Station in the 6th floor hallway and kept under constant observation. Once his relocation

was scheduled in JIMS, I escorted him to Pre-Housing to await transport to the Healthcare Building. All of his personal property was inventoried and sent to the Property Room. Classification Specialist Widau authorized the relocation in JIMS. Sergeant Franjesevic was notified.

(**Ex. "H"**, p. 059).

66.    In Report 206012, Karla is referred to with male pronouns and lists her "sex" as "M". (**Ex. "H"**, p. 059).

67.    Notably, Franjesevic is listed as having "Level 1 Approved" Report 206012, and stated the following in the "Supplement" section:

I was notified and agree with the actions taken by staff as outlined in this report. Acting Shift Commander, Sergeant Vieno was notified.

(**Ex. "H"**, p. 059).

68.    Vieno is also listed as having "Level 2 Approved" this Report.

69.    The "Inmate's Personal Property Inventory Form" attached to Report 206012 also shows that, in addition to her underwear, "Pencils (Colored)", Coffee, and "Other" were also taken.  (**Ex. "H"**, pp. 060-061).

70.    This incident was also reported to Napier and Danzig, who took no steps to punish Merritt's outrageous and shocking actions, instead ratifying and approving of such behavior. (**Ex. "H"**, p. 059).

**d.  Contact Log Report.**

71.    In the "Contact Log Report", on December 2, 2019 at 3:54 P.M., Moses entered the following "Informal Discipline" narrative:

> INFORMAL DISCIPLINE- WHILE NURSE HILERY WAS IN THE POD FOR DIABETIC CHECKS, BELLO BECAME EXTREMELY IRATE YELLING THAT HE NEEDS HIS MEDICATION. NURSE HILERY INSTRUCTED HIM TO SIGN UP FOR NURSE SICK CALL AS I DID BEFORE SHE ARRIVED. BELLO WAS VERBALLY COUNSELED AND PROGRESSIVE DISCIPLINE SHOULD FOLLOW ON FUTURE OCCURENCES.

(**Ex. "F"**, p. 020).

72.     In the "Contact Log Report", on December 3, 2019 at 10:45 A.M., "aberje" (on information and belief Deputy Alvaro Berje) entered the following "Informal Discipline" narrative:

> INFORMAL DISCIPLINE- CAUGHT IN THE LOWER TIER BATHROOM APPLYING COLORED PENCIL TO HIS EYEBROWS AND TO HIS FACE AS MAKEUP. VERBALLY COUNSELED THAT THIS IS NOT ALLOWED AND WILL NOT BE TOLERATED

(**Ex. "F"**, p. 020).

73.     In the "Case Note Details", user "semanuels"[4] entered the following on November 29, 2019: "Misdemeanor- House in Male Holding. se8712". (**Ex. "F"**, p. 027).

74.     In the "Case Note Details", user "apaolillo"[5] entered the following on December 2, 2019: "Minimum Custody Misd. SVP - Potential Victim. Veteran - no space in 2C2. ap7541". (**Ex. "F"**, p. 027).

75.     In the "Case Note Details", user "cwidua" (on information and belief

---

[4] The Plaintiff does not currently know to whom this username refers at present.
[5] The Plaintiff does not currently know to whom this username refers at present.

Classification Specialist Crystal Widua) entered the following on December 6, 2019:

"Close Observation. Minimum Misdemeanor Custody, SVP Potential Victim, Veteran - notified Dep Corkum 5891 -cw9431". (**Ex. "F"**, p. 027).

76.    In the "Case Note Details", user "rgreen"[6] entered the following on December 9, 2019: "Cleared Close Observation & Placed on Psych Observation (MHTU) Approved by Supervisor Holler, Minimum Misd. Custody SVP Potential Victim Veteran rg9825". (**Ex. "F"**, p. 027).

77.    On December 9, 2019, Karla filed the following "Property Request":

> need debit card number to order comisary. can i request my make up bag please. i have property like my underwear in a bag. i had a coffee bag colored pencils.

(**Ex. "F"**, p. 035).

78.    In response to that request, "Dep. Mari #55653" responded:

> You can't receive your debit card number to place commissary orders. No make up ids allowed. If you have personal under garments that would not be considered contraband, you can request those items.

(**Ex. "F"**, p. 035).

79.    On December 10, 2019, Karla filed the following "Property Grievance":

> i ned a bra at minimum. im a ts woman,transgender, and ben on hrt over three years. to grow a bust. why do i have to show everyman my boobs when i get changed. my chest huts due to anxiety or potassium levels unbalanced. due not geting hrt since ive ben here. its hard to breath at times.

(**Ex. "F"**, p. 032).

---

[6] The Plaintiff does not currently know to whom this username refers at present.

80.     On December 10, 2019, at 11:30 A.M., the undersigned visited Karla via video-call, and learned of her placement in the "male" section of the Jail, and of the various other incidents described herein. (**Ex. "F"**, p. 031).

81.     It is clear that the actions of Defendants Franjesevic, Vieno, Merritt, Moses, Hilery, and Dixon reflect a custom, policy, and practice of Defendants Pinellas County and Sheriff Gualtieri.

### E. The customs, policies, and practices of Defendants Pinellas County and Sheriff Gualtieri with respect to transgender pre-trial detainees.

82.     The customs, policies, and practices of the Pinellas County Sheriff's Officer (hereinafter, "PCSO"), as implemented by Defendants Pinellas County and Sheriff Gualtieri, constituted moving forces of the unconstitutional conduct that proximately caused the injuries and deprivations of constitutional rights to the Plaintiff.

83.     On information and belief, Defendants Sheriff Gualtieri and Pinellas County (collectively, the "Policy-Maker Defendants") were responsible for the creation and dissemination of the policies, procedures, customs, and practices used and adhered to by the other Defendants in this action.

84.     On information and belief, the actions, omissions, and decisions constituting the majority of the conduct described herein include, but are not limited to, Defendants Merritt, Moses, Franjesevic, Hilery, and Dixon (hereinafter, the "Actor Defendants").

85.     On information and belief, the supervisory personnel involved in the

ratification, approval, condoning, and endorsement of the Defendants include, but are not limited to, Danzig, Napier, Vieno, Holler, Merritt, Franjesevic, and Gualtieri[7] (hereinafter, the "Supervisory Personnel").

86.     In fact, the actions, decisions, omissions, and other conduct of Defendants were so widespread and accepted that none of the actions of the Actor Defendants appear in any way to have been challenged by any of the Supervisory Personnel in any of the reports or records relating to the Plaintiff's detainment.

87.     The policies, practices, and/or customs of PCSO constituted moving forces of the unconstitutional conduct that proximately caused the injuries and deprivations of constitutional rights to the Plaintiff.

88.     On information and belief, at the time of the Plaintiff's detainment at the Pinellas County Jail, the policies, practices, and customs of PCSO were to treat transgender inmates according to their sex assigned at birth, putting transgender women in jail with men, and transgender men in jail with women, regardless of their physical or medical characteristics.

89.     The Policy-Maker Defendants failed to create, produce, and enact procedures to properly address the needs of certain inmates which are and have been ignored solely because they are transgender.

90.     All of these policies were the moving force of the constitutional violations

---

[7] Notably, some Defendants (Merritt, Franjesevic, and Gualtieri) appear in more than one category, as Merritt and Franjesevic acted directly with the Plaintiff, but also acted in supervisory roles relating to other Defendant Actors in approving their reports, and Defendant Gualtieri is both the chief supervisory officer and a policy-maker.

that resulted in the deprivation of the Plaintiff's (and all other transgender inmates or detainees currently or previously under the control of the Defendants) well-settled Constitutional rights.

91.    The Policy-Maker Defendants failed to discipline officers who refuse to properly address the needs of certain inmates which are and have been ignored solely because they are transgender.

92.    The Policy-Maker Defendants failed to properly train officers with respect to the needs of certain inmates which are and have been ignored solely because they are transgender.

93.    The PSCO also has a persistent and widespread practice of denying hormone replacement therapy to transgender detainees and refusing to address the medical dangers of the side effects caused by withdrawal of hormone replacement therapy medications. These practices are so widespread that they constitute a custom that fairly represents municipal policy and are so obvious that they demonstrate the Policy-Maker Defendants' deliberate indifference toward transgender detainees' constitutional rights.

94.    The aforementioned customs, policies, practices, and procedures, the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate and discipline and the unconstitutional orders, approvals, and tolerance of wrongful conduct of the Policy-Maker Defendants were a moving force and/or a proximate cause of the deprivations of the Plaintiff's clearly established and well settled constitutional rights under the Fourteenth amendment in violation of 42 U.S.C.

§1983.

**F. Sheriff Gualtieri's public admission of the harmful nature of the policies and procedures of PCSO and the Pinellas County Jail with respect to transgender detainees.**

95.     Sheriff Gualtieri was asked by the media about the Plaintiff's treatment in the Pinellas County Jail, at which time he made multiple public statements, as memorialized in the Tampa Bay Times:

> Pinellas Sheriff Bob Gualtieri said his jail staff does the best it can to address the needs of inmates, but **he acknowledged they at times mistreated Bello over her 11 days in jail — particularly in misgendering her**.
>
> The Sheriff's Office encourages deputies to use the names and pronouns true to the individual, he said. But it's not a written policy.
>
> "**We don't need to traumatize these people**," Gualtieri said, "so I'll look at that."

Varn, Kathryn. "Misgendered and mistreated in jail: A Pinellas transgender woman shares her story", *Tampa Bay Times*, March 10, 2020; retrieved October 27, 2020, from: https://www.tampabay.com/special-reports/2020/03/10/misgendered-and-mistreated-in-jail-a-pinellas-transgender-woman-shares-her-story/        (attached hereto as **Exhibit "I"**, p. 065) (emphasis added).

96.     Furthermore that article noted:

> The jail classification policy calls for assessing the needs of each inmate. But in practice, trans inmates generally have only two options: **protective custody, or male or female general population housing based on their genitalia, Gualtieri said**.
>
> "I know enough about operating that facility and the issues and

the challenges that **I'm not going to put someone with male genitalia in the female side**," he said. "There's no way I'm going to do that and have a situation where people are having sex in the jail."

The sheriff said there have been complaints when trans people were housed with the gender they identify with — but that has happened at Safe Harbor, a homeless shelter his agency runs in the jail complex, he said, not inside the jail itself.

Using only genitalia to determine housing is a violation of the federal Rape Elimination Act. Gualtieri said his agency is not violating federal policy because inmates who don't feel safe have the option of protective custody.

Studies, though, show that option puts inmates at risk of severe psychological harm.

**Even Gualtieri himself described that option as "hell."**

Id., p. 072 (emphasis added).

97.    In other words, the treatment that the Plaintiff endured was described by Sheriff Gualtieri himself as "hell" and "traumatizing".

## COUNT I
## DEPRIVATION OF EQUAL PROTECTION – INJUNCTIVE RELIEF
### U.S. Const. Amend. XIV
### (Pinellas County & Sheriff Gualtieri)

Plaintiff, KARLA BELLO, hereby sues the Policy-Maker Defendants (Pinellas County and Sheriff Gualtieri) for purposes of seeking declaratory and injunctive relief pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

98.    Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97 as though fully set forth herein.

99. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

100. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

101. It is well settled that "discrimination against a transgender individual because of [his or] her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender." Glenn v. Brumby, 663 F.3d 1312, 1317 (11th Cir. 2011); cf. Bostock v. Clayton County, 590 U.S. ——, 140 S. Ct. 1731, 1741, 207 L.Ed.2d 218 (2020) (confirming that "it is impossible to discriminate against a person for being ... transgender without discriminating against that individual based on sex").

102. As a result, the policies at issue in this case are subject to review based upon heightened scrutiny. *See, ex.*, Adams by & through Kasper v. Sch. Bd. of St. Johns County, 318 F. Supp. 3d 1293 (M.D. Fla. 2018), aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns County, 968 F.3d 1286 (11th Cir. 2020).

103. Defendants Pinellas County and Sheriff Gualtieri violated the Plaintiff's Fourteenth Amendment rights by enacting and following policies and practices that cause constitutional violations to transgender people, including the Plaintiff (hereinafter, the "Policies").

104.    The Plaintiff hereby facially challenges the Policies regarding transgender people.

105.    The Policies discriminate against transgender people on the basis of sex, which includes discrimination based on gender nonconformity, gender identity, transgender status, and gender transition.

106.    The Policies facially classify people based on sex, gender identity, and transgender status.

107.    The Policies treat transgender people differently than non-transgender people who are similarly situated.

108.    Under the Policies, non-transgender people are able to be assigned to jail housing according to their gender identity, to access restrooms and other single-sex facilities consistent with their gender identity, and to receive medical care consistent with their gender identity, but transgender people are prevented from jail housing consistent with their gender identity, banned from restrooms and other single-sex facilities consistent with their gender identity, and are denied medical care consistent with their gender identity.

109.    The Policies facially discriminate against transgender people based on gender nonconformity. For example, although the Plaintiff is a woman, is perceived as a woman in public, and has had medical treatment to bring their body into alignment with her female gender identity, her birth certificate and other identification documents have "male" gender markers that do not conform to the societal expectations of women. Furthermore, had the Plaintiff been assigned female at birth,

she would not have been excluded from the female housing, from the restrooms and other single-sex facilities consistent with her gender identity, and would have been given the medications consistent with well-established medical guidelines. No person has any control over the sex that person is assigned at birth.

110.   The Policies' discrimination against transgender people based on sex is not substantially related to any important government interest. Indeed, it is not even rationally related to any legitimate government interest.

111.   The Policies endanger the safety, privacy, security, and well-being of transgender individuals. For example, transgender women are highly likely to be harassed, attacked, sexually assaulted, or even murdered by male prisoners who believe that she should not be in the men's housing, restrooms, or other male-only locations of the Jail.

112.   The Policies do not promote the safety, privacy, security, or well-being of non-transgender people.

113.   The Policies deprive transgender people of their right to equal dignity, liberty, and autonomy by branding them as second-class citizens.

114.   The Policies' discrimination against transgender people based on sex denies them the equal protection of the laws, in violation of the Equal Protection Clause of the Fourteenth Amendment.

115.   Discrimination based upon transgender status warrants heightened scrutiny for the additional following reasons.

116.   Transgender people have suffered a long history of extreme

discrimination in Florida and across the country and continue to suffer such discrimination to this day.

117.   Transgender people are a discrete and insular group and lack the political power to protect their rights through the legislative process. Transgender people have largely been unable to secure explicit local, state, and federal protections to protect them against discrimination.

118.   A person's gender identity or transgender status bears no relation to a person's ability to contribute to society.

119.   Gender identity is a core, defining trait and is so fundamental to one's identity and conscience that a person cannot be required to abandon it as a condition of equal treatment.

120.   Gender identity generally is fixed at an early age and highly resistant to change through intervention.

121.   Plaintiff is a transgender woman with Gender Dysphoria, which is universally recognized as a serious medical condition. Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257, 1273 (11th Cir. 2020) ("all agree that [a transgender woman's] gender dysphoria constitutes a 'serious medical need' within the meaning of Eighth Amendment precedent").

122.   Nevertheless, the Policy-Maker Defendants enacted a policy that refused to provide Plaintiff with hormone therapy or to recommend that she be permitted access to female clothing and grooming standards. This refusal was not based on a medical judgment concerning Plaintiff's medical needs.

123.   As a result of being denied access to female clothing and grooming standards and of being cut off from and denied hormone therapy by the Policy-Maker Defendants, Plaintiff has suffered severe psychological distress and physical harm, including suicidal ideation/suicide attempts, such that she was placed on psychiatric observation in the Pinellas County Jail's Mental Health Treatment Unit.

124.   the Policy-Maker Defendants were aware that transgender detainees such as the Plaintiff required seeking medically-necessary hormone therapy and access to female clothing and grooming standards to treat their Gender Dysphoria; that proper, necessary medical care for Gender Dysphoria includes allowing transgender women to live as females and providing them with hormone therapy; and that the denial of this needed medical care causes serious harm to transgender detainees. Yet they deliberately denied that care.

125.   This denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

126.   In the medical community, hormone therapy is the medically recognized, accepted and appropriate treatment for Gender Dysphoria.

127.   It is medically necessary for transgender women such as the Plaintiff to live as females, to wear appropriate female undergarments, and to receive all other treatment for Gender Dysphoria deemed medically necessary by a qualified provider.

128.   Nevertheless, the Policy-Maker Defendants refused to provide transgender women detainees such as the Plaintiff with female undergarments or to recommend that they be permitted access to female clothing and grooming standards.

This refusal was <u>not</u> based on a medical judgment concerning their medical needs.

129.   In fact, the Policy-Makers instead enacted written and unwritten policies designed to humiliate and cause emotional and psychological trauma to transgender detainees, including but not limited to the following treatment suffered by the Plaintiff: refusal to provide hormone therapy treatment or any kind, or even to arrange for a doctor to prescribe the same during detainment and incarceration; dehumanizing and refusing to provide any medical aid for the Plaintiff's serious, life-threatening, and debilitating withdrawal symptoms directly caused by their refusal to provide her with hormones and other medications; forcing her to live in the male population; forcing her to shower with and expose herself and her fully-formed female breasts to members of the male sex, including both inmates and Pinellas County Jail employees; forced removal of her female undergarments by male Pinellas County Jail employees; refusal to allow the Plaintiff to wear female undergarments; forcible searches by male officers; and by dehumanizing Plaintiff's gender identity by refusal to acknowledge that she is a woman.

130.   As a result of being denied access to female clothing and grooming standards by the Policy-Maker Defendants, Plaintiff has suffered severe psychological distress and physical harm, including suicidal ideation/suicide attempts, such that she was placed on psychiatric observation in the Pinellas County Jail's Mental Health Treatment Unit.

131.   Plaintiff continues to suffer severe psychological distress as a result of the Policy-Maker Defendants' actions, which was the foreseeable outcome of their

reckless, cruel, and inhumane actions.

132.   The Policy-Maker Defendants were aware that Plaintiff was seeking access to female clothing and grooming standards to treat her Gender Dysphoria; that proper, necessary medical care for Plaintiff's Gender Dysphoria includes allowing her to live as female; and that the denial of this needed medical care caused serious harm to Plaintiff. Yet they deliberately denied her that care.

133.   This denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

134.   In the medical community, hormone therapy is the medically recognized, accepted and appropriate treatment for Gender Dysphoria.

135.   At all relevant times, the Policy-Maker Defendants were acting under color of state law and the declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

136.   These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

137.   Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to equal protection (*See, ex.*, Adams, 318 F. Supp. 3d at 1293, aff'd sub nom. Adams, 968 F.3d at 1286), and because it is "obvious" that it is a deprivation of equal protection to treat a transgender person in the way in which the Plaintiff was treated herein. Hope v. Pelzer, 536 U.S.

730, 731 (2002).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a. Declaring that the provisions of and enforcement by Defendants Pinellas County and Sheriff Gualtieri of the Policies as discussed above violate the Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

b. Preliminarily and permanently enjoining enforcement by Defendants Pinellas County and Sheriff Gualtieri of the Policies as discussed above;

c. Requiring Defendants Pinellas County and Sheriff Gualtieri in their official capacities to allow individuals, including transgender people, to be assigned to jail housing, and to use single-sex facilities in accordance with their gender identity; and requiring Defendants Pinellas County and Sheriff Gualtieri in their official capacities to enact and to continue to enforce anti-discrimination protections for transgender people;

d. Awarding the Plaintiff her costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

e. Granting such other and further relief as the Court deems just and proper.

**COUNT II**
**DEPRIVATION OF EQUAL PROTECTION – DAMAGES (MONELL)**
**U.S. Const. Amend. XIV**
**(Pinellas County, Sheriff Gualtieri)**

Plaintiff, KARLA BELLO, hereby sues the Policy-Maker Defendants (Pinellas County and Sheriff Gualtieri) for damages pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

138.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97, and paragraphs 99 through 137 as though fully set forth herein.

139.   The denial of the Plaintiff's access to HRT, and to female undergarments and other grooming items given to other female prisoners, was based either upon a deliberate and official policy or custom, or in the alternative, was due to a failure to train employees in how to properly deal with transgender inmates.

140.   As is clearly shown in Exhibits "G" and "H", the entire chain of command approved and ratified the unconscionable behavior of Defendants Moses, Hilery, Merritt, Franjesevic, and Dixon.

141.   The Policy-Makers approved of and ratified these persistent and widespread policies, customs, and tortious acts.

142.   These policies, customs, and tortious acts were the moving force behind the violations of the Plaintiff's Constitutional rights.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

     a.   Awarding Plaintiff compensatory and punitive damages against Defendants Pinellas County and Sheriff Gualtieri;

b.  Awarding the Plaintiff her costs, expenses, and reasonable attorneys'
fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

c.  Granting such other and further relief as the Court deems just and
proper.

## COUNT III
## CRUEL AND UNUSUAL PUNISHMENT – INJUNCTIVE RELIEF
### U.S. Const. Amend. XIV
### (Pinellas County, Sheriff Gualtieri)

Plaintiff, Karla Bello, hereby sues the Policy-Maker Defendants (Pinellas
County and Sheriff Gualtieri), for purposes of seeking declaratory and injunctive relief
pursuant to the Fourteenth Amendment to the United States Constitution and 42
U.S.C. § 1983, and alleges:

143.    Plaintiff repeats and reavers each and every allegation of paragraphs 1
through 97 as though fully set forth herein.

144.    The Fourteenth Amendment has been found by U.S. courts to prohibit
deliberate indifference to a serious medical need.

145.    However, the standards under the Fourteenth Amendment are identical
to those under the Eighth. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir.
2007).

146.    In order to prove the deliberate indifference to a serious medical need
standard constituting cruel and unusual punishment under the Fourteenth
Amendment, a detainee must shoulder three burdens. First, she must satisfy the
objective component by showing that she had a serious medical need. Second, she

must satisfy the subjective component by showing that the prison official acted with deliberate indifference to her serious medical need. Third, as with any tort claim, she must show that the injury was caused by the defendant's wrongful conduct. <u>Goebert</u>, 510 F.3d at 1326.

147.   "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' " <u>Taylor v. Hughes</u>, 920 F.3d 729, 733 (11th Cir. 2019) (quotation omitted), and, in either instance, "that, if left unattended, poses a substantial risk of serious harm," <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (<i>quoting</i> <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)).

148.   A deliberate indifference claim entails both an objective and a subjective component. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004).

149.   First, the inmate must establish "an objectively serious medical need"— that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"—that, "if left unattended, poses a substantial risk of serious harm." <u>Id.</u> (alteration adopted) (quotation omitted).

150.   Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had "subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." <u>Id.</u>; <u>Harper v. Lawrence Cty.</u>, 592 F.3d 1227, 1234 (11th Cir. 2010); <u>Patel v. Lanier County Georgia</u>, 969 F.3d 1173, 1188 (11th Cir. 2020).

151. The Fourteenth Amendment applies to prevent jail personnel from acting or failing to act in a manner that shows a deliberate indifference to a pre-trial detainee's serious medical needs. Lancaster v. Monroe Cty., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

152. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (internal quotation and citation omitted).

153. Alternatively, it is one that "is determined by whether a delay in treating the need worsens the condition." Id. The condition "must be one that, if left unattended, poses a substantial risk of serious harm." Id. (internal quotation marks and citation omitted). See, Prescott v. Oakley, 8:16-CV-060-T-27TBM, 2016 WL 8919458, at *4–5 (M.D. Fla. Dec. 6, 2016).

154. Plaintiff is a transgender woman with Gender Dysphoria, which is universally recognized as a serious medical condition. Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257, 1273 (11th Cir. 2020) ("all agree that [a transgender woman's] gender dysphoria constitutes a 'serious medical need' within the meaning of Eighth Amendment precedent").

155. The decision to deny the Plaintiff hormone therapy was based on an unconstitutional rule with no foundation in medical judgment, and the minimization

of the Plaintiff's condition needlessly prolonged her suffering.[8]

156.   Defendants Pinellas County, and Sheriff Gualtieri were aware that Plaintiff has Gender Dysphoria and was receiving hormone therapy and expressing her female gender in all aspects of her life prior to her incarceration.

157.   It is medically necessary for Plaintiff to live as female, to receive hormone therapy, and to receive all other treatment for Gender Dysphoria deemed medically necessary by a qualified provider.

158.   Defendants Pinellas County and Sheriff Gualtieri nevertheless refused to provide Plaintiff with hormone therapy or to recommend that she be permitted access to female clothing and grooming standards. This refusal was not based on a medical judgment concerning Plaintiff's medical needs.

159.   As a result of being denied access to female clothing and grooming standards and of being cut off from and denied hormone therapy by Defendants Pinellas County and Sheriff Gualtieri, Plaintiff has suffered severe psychological distress and physical harm, including suicidal ideation/suicide attempts, such that she was placed on psychiatric observation in the Pinellas County Jail's Mental Health Treatment Unit.

160.   Defendants Pinellas County and Sheriff Gualtieri were aware that Plaintiff was seeking hormone therapy and access to female clothing and grooming

---

[8] See, Keohane v. Jones, 328 F. Supp. 3d 1288, 1305 (N.D. Fla. 2018), vacated sub nom. Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020) (failing to reach or vacate the issue of the denial of hormone therapy on mootness grounds, since the facility in question reversed its policy after litigation had begun).

standards to treat her Gender Dysphoria; that proper, necessary medical care for Plaintiff's Gender Dysphoria includes allowing her to live as female and providing her with hormone therapy; and that the denial of this needed medical care caused serious harm to Plaintiff. Yet they deliberately denied her that care.

161.    This denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

162.    In the medical community, hormone therapy is the medically recognized, accepted and appropriate treatment for Gender Dysphoria.

163.    Defendants Pinellas County and Sheriff Gualtieri knew of the Plaintiff's Gender Dysphoria, that she was a transgender woman, that she had been on hormone replacement therapy for at least three years, that she had a continuing medical need for continued hormone replacement therapy, and that she was in severe physical and emotional distress due to the failure of the Policy-Maker Defendants to provide hormone replacement therapy to her.

164.    Defendants Pinellas County and Sheriff Gualtieri knowingly refused to provide the Plaintiff with this medically necessary hormone treatment for her Gender Dysphoria, even though they knew that this was the recognized, accepted, and medically necessary treatment for Gender Dysphoria, and thus were deliberately indifferent to a serious medical need. *See, ex.*, Kothmann v. Rosario, 558 Fed. Appx. 907, 911 (11th Cir. 2014).

165.    The Plaintiff facially challenges the policies that have resulted in this denial of treatment.

166.   At all relevant times, Defendants Pinellas County and Sheriff Gualtieri were acting under color of state law, and the declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

167.   Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to be free from cruel and unusual punishment (Keohane v. Jones, 328 F. Supp. 3d 1288, 1305 (N.D. Fla. 2018), vacated sub nom. on other grounds Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020)) and because it is "obvious" that it is reckless indifference to treat a transgender person in the way in which the Plaintiff was treated herein. Hope v. Pelzer, 536 U.S. 730, 731 (2002).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

    a.  Declaring that the Defendants Pinellas County and Sheriff Gualtieri are denying Plaintiff medically necessary treatment for Gender Dysphoria in violation of the Fourteenth Amendment to the United States Constitution;

    b.  Entering a permanent injunction directing Defendants Pinellas County and Sheriff Gualtieri to provide to transgender individuals hormone therapy, access to female clothing and grooming standards, and all other treatment for Gender Dysphoria deemed medically necessary by a qualified professional in the treatment of the condition,

including where that individual was undergoing hormone therapy outside of the treatment of such a professional;

c.  Awarding Plaintiff her reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988; and

d.  Awarding all other relief that this Court deems just and proper

<u>**COUNT IV**</u>
<u>**CRUEL AND UNUSUAL PUNISHMENT – DAMAGES (MONELL)**</u>
**U.S. Const. Amend. XIV**
**(Pinellas County, Sheriff Gualtieri)**

Plaintiff, Karla Bello, hereby sues the Policy-Maker Defendants (Pinellas County and Sheriff Gualtieri), for purposes of seeking declaratory and injunctive relief pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

168.  Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97 and 143 through 167 as though fully set forth herein.

169.  The denial of the Plaintiff's access to HRT, and to female undergarments and other grooming items given to other female prisoners, was based either upon a deliberate and official policy or custom, or in the alternative, was due to a failure to train employees in how to properly deal with transgender inmates.

170.  As is clearly shown in Exhibits "G" and "H", the entire chain of command approved and ratified the unconscionable behavior of Defendants Moses, Hilery, Merritt, Franjesevic, and Dixon.

171.   The Policy-Makers approved of and ratified these persistent and widespread policies, customs, and tortious acts.

172.   These policies, customs, and tortious acts were the moving force behind the violations of the Plaintiff's Constitutional rights.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

    a.   Awarding Plaintiff compensatory and punitive damages against Defendants Sheriff Gualtieri and Pinellas County;

    b.   Awarding the Plaintiff her costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

    c.   Granting such other and further relief as the Court deems just and proper.

**COUNT V**
**42 U.S.C. § 1983 – RECKLESS INDIFFERENCE TO PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS - DAMAGES (MONELL)**
**U.S. Const. Amend. XIV**
**(Pinellas County, Sheriff Gualtieri)**

Plaintiff, Karla Bello, hereby sues the Policy-Maker Defendants (Pinellas County and Sheriff Gualtieri), in his official capacity, for purposes of seeking declaratory and injunctive relief pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

173.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97 as though fully set forth herein.

174.   Defendants Pinellas County, Florida, and Sheriff Gualtieri's official and unofficial policies and customs encouraged, caused, allowed, and/or enabled

Defendants Franjesevic, Merritt, Moses, Hilery, and Dixon to violate Plaintiff's constitutional rights without fear of discipline for those violations. *See*, <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

175.   Defendants Pinellas County, Florida, and Sheriff Gualtieri have not disciplined Defendants Franjesevic, Merritt, Moses, Hilery, and Dixon for their violations of Plaintiff's constitutional rights and therefore has implicitly approved, ratified, or adopted, Defendants Franjesevic, Merritt, Moses, Hilery, and Dixon unconstitutional actions, yet Defendants Pinellas County, Florida, and Sheriff Gualtieri is responsible for Defendants' supervision, training, and discipline through its policy-making powers and personnel decisions.

176.   There is an obvious need for Defendants Pinellas County, Florida, and Sheriff Gualtieri to train all of the Pinellas County Jail employees and agents on Fourteenth Amendment rights, particularly with respect to transgender people. Defendants Pinellas County, Florida, and Robert A. Gualtieri have therefore demonstrated a policy of deliberate indifference to such civil rights violations. *See*, <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989).

177.   Defendants Pinellas County, Florida, and Sheriff Gualtieri's callous, reckless, wanton, and malicious actions under color of state law before, during, and after the incidents described herein, have caused the Plaintiff to suffer and continue to suffer the damages that the Plaintiff has described.

178.   These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

179.   Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to equal protection (*See, ex.*, Adams, 318 F. Supp. 3d at 1293, aff'd sub nom. Adams, 968 F.3d at 1286), and to be free from cruel and unusual punishment (Keohane v. Jones, 328 F. Supp. 3d 1288, 1305 (N.D. Fla. 2018), vacated sub nom. on other grounds Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020)) and because it is "obvious" that it is a deprivation of equal protection and reckless indifference to treat a transgender person in the way in which the Plaintiff was treated herein. Hope v. Pelzer, 536 U.S. 730, 731 (2002).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a. Awarding Plaintiff compensatory and punitive damages against Defendants Pinellas County, Florida, and Robert A. Gualtieri;

b. Award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988; and

c. Award all other relief that this Court deems just and proper.

## COUNT VI
## 42 U.S.C. § 1983 – DEPRIVATION OF PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS - CRUEL AND UNUSUAL PUNISHMENT (DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED - HRT)
### U.S. Const. Amend. XIV
### (Franjesevic, Moses, & Hilery)

Plaintiff, Karla Bello, hereby sues Defendants Franjesevic, Moses, and Hilery),

in their individual capacities, for purposes of seeking damages pursuant to the

Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and

alleges:

180.    Plaintiff repeats and reavers each and every allegation of paragraphs 1

through 97 as though fully set forth herein.

181.    The Fourteenth Amendment has been found by U.S. courts to prohibit

deliberate indifference to a serious medical need.

182.    However, the standards under the Fourteenth Amendment are identical

to those under the Eighth. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir.

2007).

183.    In order to prove deliberate indifference to a serious medical need under

the Fourteenth Amendment, a prisoner must shoulder three burdens. First, she must

satisfy the objective component by showing that she had a serious medical need.

Second, she must satisfy the subjective component by showing that the prison official

acted with deliberate indifference to her serious medical need. Third, as with any tort

claim, she must show that the injury was caused by the defendant's wrongful conduct.

<u>Goebert</u>, 510 F.3d at 1326.

184.    "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' " <u>Taylor v. Hughes</u>, 920 F.3d 729, 733 (11th Cir. 2019) (quotation omitted), and, in either instance, "that, if left unattended, poses a substantial risk of serious harm," <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (<i>quoting</i> <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)).

185.    A deliberate indifference claim entails both an objective and a subjective component. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004).

186.    First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"—that, "if left unattended, poses a substantial risk of serious harm." <u>Id.</u> (alteration adopted) (quotation omitted).

187.    Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had "subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." <u>Id.</u>; <u>Harper v. Lawrence Cty.</u>, 592 F.3d 1227, 1234 (11th Cir. 2010); <u>Patel v. Lanier County Georgia</u>, 969 F.3d 1173, 1188 (11th Cir. 2020).

188.    The Fourteenth Amendment applies to prevent jail personnel from acting or failing to act in a manner that shows a deliberate indifference to a pre-trial detainee's serious medical needs. <u>Lancaster v. Monroe Cty.</u>, 116 F.3d 1419, 1425 n.6 (11th Cir.

1997).

189.    "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal quotation and citation omitted).

190.    Alternatively, it is one that "is determined by whether a delay in treating the need worsens the condition." <u>Id.</u> The condition "must be one that, if left unattended, poses a substantial risk of serious harm." <u>Id.</u> (internal quotation marks and citation omitted). *See*, <u>Prescott v. Oakley</u>, 8:16-CV-060-T-27TBM, 2016 WL 8919458, at *4–5 (M.D. Fla. Dec. 6, 2016).

191.    Plaintiff is a transgender woman with Gender Dysphoria, which is universally recognized as a serious medical condition. <u>Keohane v. Florida Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1273 (11th Cir. 2020) ("all agree that [a transgender woman's] gender dysphoria constitutes a 'serious medical need' within the meaning of Eighth Amendment precedent").

192.    On December 2, 2019, the Plaintiff complained of chest pains caused by withdrawal from HRT medications, as detailed in paragraphs 54-63.

193.    Defendant Moses did not take these medical issues seriously, as attested to by his own description of the incident, but did take the Plaintiff to see Defendant Hilery.

194.    Defendant Hilery also did not take these medical issues seriously and denied the Plaintiff hormone therapy or any avenue for allowing HRT while

incarcerated.

195.    Defendant Franjesevic participated and further adopted the actions taken by staff in this incident, deliberately mocking the Plaintiff's severe medical issues and minimizing this cruel and unusual treatment in his comments on the report (DDCI-205807), which set the standard for future treatment of the Plaintiff's requests for HRT.

196.    The decision to deny the Plaintiff hormone therapy was based on an unconstitutional rule with no foundation in medical judgment, and the minimization of the Plaintiff's condition needlessly prolonged her suffering.[9]

197.    Defendants Franjesevic, Moses, and Hilery were aware, through the Plaintiff's own records at the Jail, that Plaintiff has Gender Dysphoria and was receiving hormone therapy and expressing her female gender in all aspects of her life prior to her incarceration.

198.    It is medically necessary for Plaintiff to live as female, to receive hormone therapy, and to receive all other treatment for Gender Dysphoria deemed medically necessary by a qualified provider.

199.    Nevertheless, Defendants Franjesevic, Moses, and Hilery refused to provide Plaintiff with hormone therapy or to recommend that she be permitted access to medical or psychological personnel willing to prescribe HRT. This refusal was <u>not</u> based on a medical judgment concerning Plaintiff's medical needs.

---

[9] *See*, Keohane v. Jones, 328 F. Supp. 3d 1288, 1305 (N.D. Fla. 2018), vacated sub nom. Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020) (failing to reach or vacate the issue of the denial of hormone therapy on mootness grounds, since the facility in question reversed its policy after litigation had begun).

200.    As a result of being denied access to hormone therapy by Defendants Franjesevic, Moses, and Hilery, Plaintiff has suffered severe psychological distress and physical harm, including suicidal ideation/suicide attempts, such that she was placed on psychiatric observation in the Pinellas County Jail's Mental Health Treatment Unit.

201.    Defendants Franjesevic, Moses, and Hilery were aware that Plaintiff was seeking hormone therapy to treat her Gender Dysphoria; that proper, necessary medical care for Plaintiff's Gender Dysphoria includes allowing her to live as female and providing her with hormone therapy; and that the denial of this needed medical care caused serious harm to Plaintiff. Yet they deliberately denied her that care.

202.    This denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

203.    In the medical community, hormone therapy is a medically recognized, accepted and appropriate treatment for Gender Dysphoria.

204.    Defendants Franjesevic, Moses, and Hilery of the Plaintiff's Gender Dysphoria, that she was a transgender woman, that she had been on hormone replacement therapy for at least three years, that she had a continuing medical need for continued hormone replacement therapy, and that she was in severe physical and emotional distress due to the failure of the Actor Defendants to provide hormone replacement therapy to her.

205.    Defendants Franjesevic, Moses, and Hilery knowingly refused to provide the Plaintiff with this medically necessary hormone treatment for her Gender

Dysphoria, even though they knew that this was the recognized, accepted, and medically necessary treatment for Gender Dysphoria, and thus were deliberately indifferent to a serious medical need. *See, ex.*, <u>Kothmann v. Rosario</u>, 558 Fed. Appx. 907, 911 (11th Cir. 2014).

206.   Defendants Franjesevic, Moses, and Hilery repeatedly, willfully, and maliciously deprived the Plaintiff of her Fourteenth Amendment rights by subjecting her to cruel and unusual punishment, solely because of her transgender status, including, but not limited to: refusal to provide hormone therapy treatment or any kind, or even to arrange for a doctor to prescribe the same during her detainment and incarceration; dehumanizing the Plaintiff and refusing to provide any medical aid for her serious, life-threatening, and debilitating withdrawal symptoms directly caused by their refusal to provide Plaintiff with her hormones and other medications.

207.   At all relevant times, Defendants Franjesevic, Moses, and Hilery were acting under color of state law.

208.   These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

209.   Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to be free from cruel and unusual punishment (<u>Keohane v. Jones</u>, 328 F. Supp. 3d 1288, 1305 (N.D. Fla. 2018), <u>vacated sub nom. on other grounds</u> <u>Keohane v. Florida Dep't of Corr. Sec'y</u>, 952 F.3d 1257 (11th Cir. 2020)) and because it is "obvious" that it is reckless indifference to treat a transgender person in the way in which the Plaintiff was treated herein. <u>Hope v.</u>

Pelzer, 536 U.S. 730, 731 (2002).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a. Award the Plaintiff compensatory and punitive damages against Defendants Defendants Franjesevic, Moses, and Hilery;

b. Award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988; and

c. Award all other relief that this Court deems just and proper.

**COUNT VII**
**42 U.S.C. § 1983 – DEPRIVATION OF PLAINTIFF'S**
**CLEARLY ESTABLISHED CONSTITUTIONAL**
**RIGHTS – EQUAL PROTECTION – SOCIAL**
**TRANSITIONING**
**U.S. Const. Amend. XIV**
**(Defendants Merritt and Dixon)**

Plaintiff, Karla Bello, hereby sues Defendants Merritt and Dixon in their individual capacities, for purposes of seeking damages pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

210.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97 as though fully set forth herein.

211.   The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

212.    Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

213.    It is well settled that "discrimination against a transgender individual because of [his or] her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender." Glenn v. Brumby, 663 F.3d 1312, 1317 (11th Cir. 2011); cf. Bostock v. Clayton County, 590 U.S. ——, 140 S. Ct. 1731, 1741, —— L.Ed.2d —— (2020) (confirming that "it is impossible to discriminate against a person for being ... transgender without discriminating against that individual based on sex").

214.    As a result, the policies at issue in this case are subject to review based upon heightened scrutiny. See, ex., Adams by & through Kasper v. Sch. Bd. of St. Johns County, 318 F. Supp. 3d 1293 (M.D. Fla. 2018), aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns County, 968 F.3d 1286 (11th Cir. 2020).

215.    Defendants Merritt and Dixon violated the Plaintiff's Fourteenth Amendment rights by treating transgender people differently than non-transgender people who are similarly situated.

216.    For example, although the Plaintiff is a woman, is perceived as a woman in public, and has had medical treatment to bring their body into alignment with her female gender identity, her birth certificate and other identification documents have "male" gender markers that do not conform to the societal expectations of women.

217.    Furthermore, had the Plaintiff been assigned female at birth, she would

not have been excluded from wearing female undergarments consistent with her gender identity, nor would she have been forced to expose her breasts to male prisoners and jail employees like Defendant Merritt. No person has any control over the sex that person is assigned at birth.

218.   On December 6, 2019, Defendant Dixon saw the Plaintiff in her office in accordance with her duties as a licensed mental health counselor.

219.   During the course of that session, Defendant Dixon became aware of the Plaintiff's use of a bra to properly contain her breasts.

220.   Defendant Dixon notified Defendant Merritt of this alleged "contraband" and placed the Plaintiff on "Close Observation" status. (**Ex. "H"**, 059).

221.   Defendant Merritt then placed the Plaintiff in an attorney visitation room and forced her to undress and hand over her underwear to him.

222.   Defendants Merritt and Dixon were aware, through the Plaintiff's own records at the Jail, that Plaintiff has Gender Dysphoria and was expressing her female gender in all aspects of her life prior to her incarceration.

223.   Defendants Merritt and Dixon were also aware that the Plaintiff had fully formed female breasts which necessitated the use of female undergarments and required privacy from male inmates.

224.   It is medically necessary for Plaintiff to live as female, to wear appropriate female undergarments, and to receive all other treatment for Gender Dysphoria deemed medically necessary by a qualified provider.

225.   Nevertheless, Defendants Merritt and Dixon refused to provide Plaintiff

with female undergarments or to recommend that she be permitted access to female clothing and grooming standards. This refusal was <u>not</u> based on a medical judgment concerning Plaintiff's medical needs.

226.    In fact, Defendants Merritt and Dixon instead deliberately and humiliatingly removed her female undergarments and prohibited her from any social transitioning whatsoever.

227.    As a result of being denied access to female clothing and grooming standards by Defendants Merritt and Dixon, Plaintiff has suffered severe psychological distress and physical harm, including suicidal ideation/suicide attempts, such that she was placed on psychiatric observation in the Pinellas County Jail's Mental Health Treatment Unit.

228.    Plaintiff continues to suffer severe psychological distress as a result of Defendants Merritt and Dixon's actions, which was the foreseeable outcome of their reckless, cruel, and inhumane actions.

229.    Defendants Merritt and Dixon were aware that Plaintiff was seeking access to female clothing and grooming standards to treat her Gender Dysphoria; that proper, necessary medical care for Plaintiff's Gender Dysphoria includes allowing her to live as female; and that the denial of this needed medical care caused serious harm to Plaintiff. Yet they deliberately denied her that care.

230.    This denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

231.    Defendants Merritt and Dixon were aware of the Plaintiff's Gender

Dysphoria, that she was a transgender woman, and that she was in severe physical and emotional distress due to Merritt and Dixon's removal of her underwear.

232.    Defendants Merritt and Dixon knowingly refused to provide the Plaintiff with this medically necessary treatment for her Gender Dysphoria, even though they knew that this was a recognized, accepted, and medically necessary treatment for Gender Dysphoria, and thus were deliberately indifferent to a serious medical need. *See, ex.*, <u>Kothmann v. Rosario</u>, 558 Fed. Appx. 907, 911 (11th Cir. 2014).

233.    Defendants Merritt and Dixon repeatedly, willfully, and maliciously deprived the Plaintiff of her Fourteenth Amendment rights by treating her differently from other prisoners, solely because of her transgender status, including, but not limited to: forcing her to expose herself and her fully-formed female breasts to members of the male sex, including both inmates and Pinellas County Jail employees; forced removal of her female undergarments by male Pinellas County Jail employees; refusal to allow the Plaintiff to wear female undergarments; forcible searches by male officers; and by dehumanizing Plaintiff's gender identity by refusal to acknowledge that she is a woman.

234.    At all relevant times, Defendants Merritt and Dixon were acting under color of state law.

235.    Defendants Merritt and Dixon's discrimination against transgender people based on sex is not substantially related to any important government interest. Indeed, it is not even rationally related to any legitimate government interest.

236.    Defendants Merritt and Dixon's discrimination against transgender

people based on sex endangers the safety, privacy, security, and well-being of transgender individuals. For example, transgender women are highly likely to be harassed, attacked, sexually assaulted, or even murdered by male prisoners who believe that she should not be in the men's housing, restrooms, or other male-only locations of the Jail.

237.   Defendants Merritt and Dixon's discrimination against transgender people based on sex does not promote the safety, privacy, security, or well-being of non-transgender people.

238.   Defendants Merritt and Dixon's discrimination against transgender people based on sex deprives transgender people of their right to equal dignity, liberty, and autonomy by branding them as second-class citizens.

239.   Defendants Merritt and Dixon's discrimination against transgender people based on sex denies them the equal protection of the laws, in violation of the Equal Protection Clause of the Fourteenth Amendment.

240.   Transgender people have suffered a long history of extreme discrimination in Florida and across the country and continue to suffer such discrimination to this day.

241.   Transgender people are a discrete and insular group and lack the political power to protect their rights through the legislative process. Transgender people have largely been unable to secure explicit local, state, and federal protections to protect them against discrimination.

242.   A person's gender identity or transgender status bears no relation to a

person's ability to contribute to society.

243.   Gender identity is a core, defining trait and is so fundamental to one's identity and conscience that a person cannot be required to abandon it as a condition of equal treatment.

244.   Gender identity generally is fixed at an early age and highly resistant to change through intervention.

245.   However, Defendants Merritt and Dixon repeatedly, willfully, and maliciously deprived the Plaintiff of her Fourteenth Amendment rights by subjecting her to completely different standards than similarly situated non-transgender women, solely because of her transgender status, including, but not limited to: forcing her to shower with and/or expose herself and her fully-formed female breasts to members of the male sex, including both inmates and Pinellas County Jail employees, including Defendant Merritt; forced removal of her female undergarments by Defendant Merritt; refusal to allow the Plaintiff to wear female undergarments; dehumanizing the Plaintiff and causing psychological and emotional trauma caused by their refusal to provide Plaintiff with her proper undergarments and grooming items; and by dehumanizing Plaintiff's gender identity by their refusal to acknowledge that she is a woman.

246.   These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

247.   Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to equal protection (*See, ex.*, Adams, 318 F. Supp. 3d at 1293, aff'd sub nom. Adams, 968 F.3d at 1286), and

because it is "obvious" that it is a deprivation of equal protection to treat a transgender person in the way in which the Plaintiff was treated herein. Hope v. Pelzer, 536 U.S. 730, 731 (2002).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a. Awarding the Plaintiff compensatory and punitive damages against Defendants Merritt and Dixon;

b. Awarding Plaintiff her reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988; and

c. Awarding all other relief that this Court deems just and proper.

## COUNT VIII
## 42 U.S.C. § 1983 – DEPRIVATION OF PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS - CRUEL AND UNUSUAL PUNISHMENT (DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED – HRT)
## U.S. Const. Amend. XIV
## (Merritt & Dixon)

Plaintiff, Karla Bello, hereby sues Defendants Merritt and Dixon in their individual capacities, for purposes of seeking damages pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

248.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97 and 181 through 191 as though fully set forth herein.

249.   This denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

250.    In the medical community, social transitioning (including wearing women's undergarments, clothing, and grooming standards) is viewed as a medically recognized, accepted and appropriate treatment for Gender Dysphoria.[10]

251.    Defendants Merritt and Dixon were aware of the Plaintiff's Gender Dysphoria, that she was a transgender woman, that she had been socially transitioned and living as a woman for many years, and that she was in severe psychological and emotional distress due to the failure of the Actor Defendants to provide hormone replacement therapy to her.

252.    Defendants Merritt and Dixon knowingly refused to provide the Plaintiff with this medically necessary treatment for her Gender Dysphoria, even though they knew that this was a recognized, accepted, and medically necessary treatment for Gender Dysphoria, and thus were deliberately indifferent to a serious medical need. *See, ex.*, Kothmann v. Rosario, 558 Fed. Appx. 907, 911 (11th Cir. 2014).

253.    Defendants Merritt and Dixon repeatedly, willfully, and maliciously deprived the Plaintiff of her Fourteenth Amendment rights by subjecting her to cruel and unusual punishment, solely because of her transgender status, including, but not limited to: forcing her to expose herself and her fully-formed female breasts to members of the male sex, including both inmates and Pinellas County Jail employees; forced removal of her female undergarments by male Pinellas County Jail employees; refusal to allow the Plaintiff to wear female undergarments; forcible searches by male

---

[10] *See, ex.*, Konitzer v. Wall, 12-CV-874-BBC, 2013 WL 2297059, at *2 (W.D. Wis. May 24, 2013)

officers; and by dehumanizing Plaintiff's gender identity by refusal to acknowledge that she is a woman.

254.    At all relevant times, Defendants Merritt and Dixon were acting under color of state law.

255.    These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

256.    Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to be free from cruel and unusual punishment (Keohane v. Jones, 328 F. Supp. 3d 1288, 1305 (N.D. Fla. 2018), vacated sub nom. on other grounds Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020)) and because it is "obvious" that it is reckless indifference to treat a transgender person in the way in which the Plaintiff was treated herein. Hope v. Pelzer, 536 U.S. 730, 731 (2002).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a.    Award the Plaintiff compensatory and punitive damages against Defendants Merritt and Dixon;

b.    Award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988; and

c.    Award all other relief that this Court deems just and proper.

## COUNT IX
### 42 U.S.C. § 1983 – DEPRIVATION OF PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS – EQUAL PROTECTION - HRT
### U.S. Const. Amend. XIV
### (Franjesevic, Moses, & Hilery)

Plaintiff, Karla Bello, hereby sues Defendants Franjesevic, Moses, and Hilery, in their individual capacities, for purposes of seeking damages pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

257.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 97, 191 through 204, and 240 through 244 as though fully set forth herein.

258.   Defendants Franjesevic, Moses, and Hilery's actions violated the Equal Protection Clause of the Fourteenth Amendment.

259.   Defendants Defendants Franjesevic, Moses, and Hilery were aware of the Plaintiff's Gender Dysphoria, that she was a transgender woman, that she had been socially transitioned and living as a woman for many years, and that she was in severe psychological and emotional distress due to their failure to provide hormone replacement therapy to her.

260.   Defendants Defendants Franjesevic, Moses, and Hilery knowingly refused to provide the Plaintiff with this medically necessary treatment for her Gender Dysphoria, even though they knew that this was a recognized, accepted, and medically necessary treatment for Gender Dysphoria, and thus were deliberately indifferent to a serious medical need. *See, ex.*, Kothmann v. Rosario, 558 Fed. Appx. 907, 911 (11th

Cir. 2014).

261.    Defendants Merritt and Dixon repeatedly, willfully, and maliciously deprived the Plaintiff of her Fourteenth Amendment rights by subjecting her to completely different standards than similarly situated non-transgender women, solely because of her transgender status, including, but not limited to: refusal to provide hormone therapy treatment or any kind, or even to arrange for a doctor to prescribe the same during her detainment and incarceration, although similarly-situated non-transgender women would be able to obtain hormone therapy or other necessary medical care; and by dehumanizing the Plaintiff and refusing to provide any medical aid for her serious, life-threatening, and debilitating withdrawal symptoms directly caused by their refusal to provide Plaintiff with her hormones and other medications, where similarly-situated non-transgender women would not have been subjected to this mistreatment.

262.    At all relevant times, Defendants Franjesevic, Moses, and Hilery were acting under color of state law.

263.    These deprivations were committed under color of state law and are actionable under and may be redressed by 42 U.S.C. § 1983.

264.    Qualified immunity does not apply to this case, both because of precedent establishing the rights of transgender people to equal protection (*See, ex.*, Adams, 318 F. Supp. 3d at 1293, aff'd sub nom. Adams, 968 F.3d at 1286), and because it is "obvious" that it is a deprivation of equal protection to treat a transgender person in the way in which the Plaintiff was treated herein. Hope v. Pelzer, 536 U.S.

730, 731 (2002).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

    a.  Awarding the Plaintiff compensatory and punitive damages against Defendants Franjesevic, Moses, and Hilery;

    b.  Awarding Plaintiff her reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988; and

    c.  Awarding all other relief that this Court deems just and proper.

Amended: <u>October 20, 2021</u>.

           Respectfully Submitted,

ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*
TRIAL COUNSEL

JOSEPH D. LENTO, ESQ.
(*Pro Hac Vice* to be applied for)
LENTO LAW GROUP, P.A.

1500 Market Street – 12th Floor
East Tower
Philadelphia, PA 19106
267.833.0200 (Office)
267.833.0300 (Fax)
jdlento@lentolawgroup.com
*Attorney for Plaintiff*
TRIAL COUNSEL

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 20, 2020, a copy of the foregoing has been furnished by CM/ECF to: Kelly L. Vicari, Esq., Pinellas County Attorney's Office, 315 Court Street, Sixth Floor, Clearwater, Florida 33756, kvicari@pinellascounty.org, eservice@pinellascounty.org, and to Paul G. Rozelle, Esq., Pinellas County Sheriff's Office, 10750 Ulmerton Road, Largo, FL 33778, prozelle@pcsonet.com, amarcott1@pcsonet.com.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
*Attorney for Plaintiff*

# EXHIBIT "A"

**001**

City of Tampa, FL
Violations Processing Center
PO Box 22091
Tempe, AZ 85285-2091
Customer Service # 1-866-224-2354

**Tracking Number**
920719011289252677 9630

# Florida Uniform Traffic Citation

NOTICE #: **3441800958665**
PIN: **7658**

View your video online at:
**www.ViolationInfo.com**

PAYMENTS AND HEARING REQUESTS NOT ACCEPTED AT THIS ADDRESS

**CARLOS RAUL BELLO NOGUEDA**
**2900 DREW ST**
**CLEARWATER, FL 33776**

**Amount Due:** $261.00
**Due Date:** **04/10/2019**

ISSUE DATE: 03/11/2019     FINE AMOUNT: $261.00

Location: SB S 50TH ST / S TAMIAMI TRAIL @ ADAMO DR

Violation Date and Time: 12/3/2018   1:53:31PM

Vehicle License Number: JEVP49   FL

**Important instructions to individuals charged with a non criminal traffic infraction.** You have been issued a Uniform Traffic Citation for a violation of **State Statute code 547-Red-Light Camera, Section, 316.075(1)(c)1 failure to stop at a red traffic signal pursuant to F.S. 316.0083 of the Florida State Statutes.** You are required to comply with one of the options listed below. If you fail to comply with one of the options by the date listed your driving privilege may be suspended until you comply and you may incur additional cost associated with non-compliance.

---

| FLORIDA UNIFORM TRAFFIC CITATION | | | | | AB8S6OE | |
|---|---|---|---|---|---|---|

COUNTY OF
**HILLSBOROUGH**

☐ (1) F.H.P.   ☑ (2) P.D.   ☐ (3) S.O.   ☐ (4) OTHER

CITY (IF APPLICABLE)
**TAMPA**

AGENCY NAME: City of Tampa, FL
AGENCY #: 50

IN THE COURT DESIGNATED BELOW THE UNDERSIGNED CERTIFIES THAT HE/SHE HAS JUST AND REASONABLE GROUNDS TO BELIEVE AND DOES BELIEVE THAT:

SUMMONS
(VIOLATOR'S COPY)

| DAY OF WEEK | MONTH | DAY | YEAR | | |
|---|---|---|---|---|---|
| Monday | Dec | 3 | 2018 | 1:53:31 | ☐ A.M. ☐ P.M. |

| NAME (PRINT) FIRST | MIDDLE | LAST |
|---|---|---|
| CARLOS   RAUL | | BELLO NOGUEDA |

STREET
**2900 DREW ST**            IF DIFFERENT THAN DRIVER'S LICENSE, "X" HERE →

| CITY | STATE | ZIP CODE |
|---|---|---|
| CLEARWATER | FL | 33776 |

| TELEPHONE NUMBER | DATE OF BIRTH  MO | DAY | YR | RACE | SEX | HGT |
|---|---|---|---|---|---|---|
| | Aug | 23 | 1982 | | M | |

| DRIVER LICENSE NUMBER | STATE | CLASS | CDL LICENSE | YR. LICENSE EXP. | COMMERCIAL VEHICLE |
|---|---|---|---|---|---|
| B452116823030 | FL | E | YES ☐ NO ☐ | | YES ☐ NO ■ |

| YR. VEHICLE | MAKE | STYLE | COLOR | PLACARDED HAZARDOUS MATERIAL |
|---|---|---|---|---|
| 2010 | NISS | 4D | BLU | YES ☐ NO ☐ |

| VEHICLE LICENSE NO. | TRAILER TAG. NO. | STATE | YEAR TAG EXPIRES | ≥16 PASSENGERS |
|---|---|---|---|---|
| JEVP49 | | FL | 20190823 | YES ☐ NO ☐ |

UPON A PUBLIC STREET OR HIGHWAY, OR OTHER LOCATION, NAMELY
SB S 50TH ST / S TAMIAMI TRAIL @ ADAMO DR

MOTORCYCLE
YES ☐ NO ☐

COMPANION CITATION NUMBER(S)

FT_____ MILES_____   ☐ ☐ ☐ ☐  N  S  E  W   OF NODE _____

DID UNLAWFULLY COMMIT THE FOLLOWING OFFENSE:
VIOLATION OF STATE STATUTES §§ 316.075(1)(c)1 and 316.074(1) FAILURE TO STOP AT A RED TRAFFIC SIGNAL PURSUANT TO F.S. § 316.0083

SIGNATURE OF VIOLATOR _____   DATE _____

BRYAN ALOFS                955

TROOPER/OFFICER NAME & RANK          BADGE NUMBER

*Brian Alofs*

SIGNATURE OF OFFICER          ID NUMBER

**VIEW YOUR IMAGES AND VIDEO EVIDENCE OBTAINED FOR THIS CASE:** The recorded images and video of your violation will be submitted as evidence for the disposition of this violation. You have the right to examine and observe your images and video online at **www.ViolationInfo.com**. You will need your Notice # and PIN printed on the top of this Citation inside the red box. If you do not have internet access, you have the right to examine and observe your video and images at the local library.

---

## DIRECTIONS TO RESOLVE THIS CITATION

OPTIONS: MARK **ONLY ONE**

☐ **Option A: MAKE A PAYMENT**

● **PAYMENT BY MAIL** $261.00 must be received by 04/10/2019 payable by check or money order directly to the Clerk of the Court. Sign and mail this original Citation with your payment. Please keep a copy for your records. **MAILING ADDRESS FOR THE CLERK OF COURT:** Clerk of the Circuit Court, P.O. Box 3360, Tampa FL 33601-3360. **DO NOT MAIL CASH.**

● **PAYMENT IN PERSON** $261.00 may be paid in person at Clerk of Circuit Court Customer Service Center, George E. Edgecomb Courthouse, 800 Twiggs Street, Room 101, Tampa, FL 33602, or check the Clerk of Courts website for other locations on or before 04/10/2019. Include this original Citation with your payment. Please keep a copy for your records.

● **PAYMENT ONLINE http://www.hillsclerk.com / or Call 813-276-8100 24/7.**

☐ **Option B: REQUEST A HEARING** To challenge this Citation, request a court hearing prior to 04/10/2019. Sign and mail this original Citation to the Clerk of Circuit Court Customer Service Center, George E. Edgecomb Courthouse, 800 Twiggs Street, Room 101, Tampa, FL 33602. Please keep a copy for your records. If the official determines no infraction has been committed, no costs or penalties shall be imposed and any costs or penalties which have been paid shall be returned in accordance with Florida Statute § 318.20. **IF THIS BOX IS NOT CHECKED, A HEARING WILL NOT BE SCHEDULED. THE COURT WILL SCHEDULE YOUR HEARING AND NOTIFY YOU OF THE DATE, TIME AND LOCATION.**

☐ **Option C: AFFIDAVIT** If you are the registered owner of the vehicle, you are deemed responsible for the penalty unless, in compliance with Florida Statute § 316.0083(1)(d)(1)-(4), you establish by a notarized affidavit that a statutory exemption applies. Please visit and log in **www.ViolationInfo.com**





# EXHIBIT "B"

Hillsborough County Board of County Commissioners
Violations Processing Center
PO Box 22091
Tempe, AZ 85285-2091
Customer Service # 1-866-224-2354

**Tracking Number**
92071901128925274899958

# Florida Uniform Traffic Citation

NOTICE #: **1721800463960**
PIN: **6902**

View your video online at:
**www.ViolationInfo.com**

PAYMENTS AND HEARING REQUESTS NOT ACCEPTED AT THIS ADDRESS

**Amount Due:** $261.00
**Due Date:** 06/19/2019

CARLOS RAUL BELLO NOGUEDA
2900 DREW ST
CLEARWATER, FL 33776

ISSUE DATE: 05/20/2019      FINE AMOUNT: $261.00

Location: NB BRANDON TOWN CENTER DR @ W BRANDON BLVD

Violation Date and Time: 10/11/2018  7:37:03PM

Vehicle License Number: JEVP49  FL

**Important instructions to individuals charged with a non criminal traffic infraction.** You have been issued a Uniform Traffic Citation for a violation of **State Statute code 547-Red-Light Camera, Section, 316.075(1)(c)1 failure to stop at a red traffic signal pursuant to F.S. 316.0083 of the Florida State Statutes.** You are required to comply with one of the options listed below. If you fail to comply with one of the options by the date listed your driving privilege may be suspended until you comply and you may incur additional cost associated with non-compliance.

## DIRECTIONS TO RESOLVE THIS CITATION

OPTIONS: MARK **ONLY ONE**

☐ Option A: MAKE A PAYMENT

● **PAYMENT BY MAIL** $261.00 must be received by 06/19/2019 payable by check or money order directly to the Clerk of the Court. Sign and mail this original Citation with your payment. Please keep a copy for your records. **MAILING ADDRESS FOR THE CLERK OF COURT:** Hillsborough County Clerk of the Court, PO Box 3360, Tampa, FL 33601. **DO NOT MAIL CASH.**

● **PAYMENT IN PERSON** $261.00 may be paid in person at the Clerk of the Court, 800 E Twiggs Street, Room 101, Tampa, FL 33602, or check the Clerk of Courts website for other locations on or before 06/19/2019. Include this original Citation with your payment. Please keep a copy for your records.

● **PAYMENT ONLINE www.hillsclerk.com / or call 813-276-8100 24/7**

☐ Option B: REQUEST A HEARING To challenge this Citation, request a court hearing prior to 06/19/2019. Sign and mail this original Citation to the Hillsborough County Clerk of the Court, PO Box 3360 Tampa, FL 33601. Please keep a copy for your records.  If the official determines no infraction has been committed, no costs or penalties shall be imposed and any costs or penalties which have been paid shall be returned in accordance with Florida Statute § 318.20. **IF THIS BOX IS NOT CHECKED, A HEARING WILL NOT BE SCHEDULED. THE COURT WILL SCHEDULE YOUR HEARING AND NOTIFY YOU OF THE DATE, TIME AND LOCATION.**

☐ Option C: AFFIDAVIT If you are the registered owner of the vehicle, you are deemed responsible for the penalty unless, in compliance with Florida Statute § 316.0083(1)(d)(1)-(4), you establish by a notarized affidavit that a statutory exemption applies. Please visit and log into **www.ViolationInfo.com** to obtain an affidavit.

---

**FLORIDA UNIFORM TRAFFIC CITATION**          **AAUXT5E**

| COUNTY OF | (1) F.H.P. | (2) P.D. | ■ (3) S.O. | (4) OTHER |
|---|---|---|---|---|
| HILLSBOROUGH | | | | |

| CITY OR TOWN | AGENCY NAME | |
|---|---|---|
| UNINCORPORATED | Hillsborough County Board of County Commissioners  AGENCY #: 3 | |

IN THE COURT DESIGNATED BELOW THE UNDERSIGNED CERTIFIES THAT HE/SHE HAS JUST AND REASONABLE GROUNDS TO BELIEVE AND DOES BELIEVE THAT ON:

SUMMONS (VIOLATOR'S COPY)

| DAY OF WEEK | MONTH | DAY | YEAR | 7:37:03 | ☐ A.M. ☐ P.M. |
|---|---|---|---|---|---|
| Thursday | Oct | 11 | 2018 | | |

| NAME (PRINT) FIRST | | MIDDLE | LAST |
|---|---|---|---|
| CARLOS | RAUL | | BELLO NOGUEDA |

| STREET | IF DIFFERENT THAN DRIVER'S LICENSE, "X" HERE → |
|---|---|
| 2900 DREW ST | |

| CITY | STATE | ZIP CODE |
|---|---|---|
| CLEARWATER | FL | 33776 |

| TELEPHONE NUMBER | DATE OF BIRTH | MO | DAY | YR | RACE | SEX | HGT |
|---|---|---|---|---|---|---|---|
| | | Aug | 23 | 1982 | | M | |

| DRIVER LICENSE NUMBER | STATE | CLASS | CDL LICENSE | YR. LICENSE EXP. | COMMERCIAL VEHICLE |
|---|---|---|---|---|---|
| B452116823030 | FL | E | YES ☐ NO ☐ | | YES ☐ NO ■ |

| YR. VEHICLE | MAKE | STYLE | COLOR | PLACARDED HAZARDOUS MATERIAL |
|---|---|---|---|---|
| 2010 | NISS | 4D | BLU | YES ☐ NO ☐ |

| VEHICLE LICENSE NO. | TRAILER TAG NO. | STATE | YEAR TAG EXPIRES | ≥16 PASSENGERS |
|---|---|---|---|---|
| JEVP49 | | FL | 20190823 | YES ☐ NO ☐ |

| UPON A PUBLIC STREET OR HIGHWAY, OR OTHER LOCATION, NAMELY | MOTORCYCLE |
|---|---|
| NB BRANDON TOWN CENTER DR @ W BRANDON BLVD | YES ☐ NO ☐ |

| | COMPANION CITATION NUMBER(S) |
|---|---|

FT_____ MILES_____   N  S  E  W   OF NODE _____

DID UNLAWFULLY COMMIT THE FOLLOWING OFFENSE:
VIOLATION OF STATE STATUTES §§ 316.075(1)(c)1 and 316.074(1) FAILURE TO STOP AT A RED TRAFFIC SIGNAL PURSUANT TO F.S. § 316.0083

_____   _____
SIGNATURE OF VIOLATOR                    DATE

DEP. KENNETH AKINS                    0362
_____   _____
TROOPER/OFFICER NAME & RANK        BADGE NUMBER

_____   _____
SIGNATURE OF OFFICER                    ID NUMBER

**VIEW YOUR IMAGES AND VIDEO EVIDENCE OBTAINED FOR THIS CASE:** The recorded images and video of your violation will be submitted as evidence for the disposition of this violation. You have the right to examine and observe your images and video online at **www.Violationinfo.com**. You will need your Notice # and PIN printed on the top of this Citation inside the red box. If you do not have internet access, you have the right to examine and observe your video and images at the local library.





**004**

# EXHIBIT "C"

**FLORIDA UNIFORM TRAFFIC CITATION**

AC7QEYE

| COUNTY OF | | | (1) F.H.P. ☐ (2) P.D. ☒ (3) S.O. ☐ (4) OTHER ☐ |
|---|---|---|---|
| PINELLAS 04 | | AGENCY NAME | GULFPORT PD |
| CITY (IF APPLICABLE) GULFPORT 40 | | AGENCY # | |

IN THE COURT DESIGNATED BELOW THE UNDERSIGNED CERTIFIES THAT HE/SHE HAS JUST AND REASONABLE GROUNDS TO BELIEVE AND DOES BELIEVE THAT ON

**COMPLAINT** (RETAINED BY COURT)

| DAY OF WEEK | MONTH | DAY | YEAR | |
|---|---|---|---|---|
| FRI | 10 | 4 | 2019 | 11:10 ☐ AM ☒ PM |

| NAME (PRINT) FIRST | MIDDLE | LAST |
|---|---|---|
| CARLOS RAUL | BELLO NOGUEDA | |

Street 2520 1ST AVE N                    IF DIFFERENT THAN ON DRIVER LICENSE "X" HERE ▶

| CITY | STATE | ZIP CODE |
|---|---|---|
| ST PETERSBURG | FL | 33713 |

| TELEPHONE NUMBER | DATE OF BIRTH MO | DAY | YR | RACE | SEX | HGT |
|---|---|---|---|---|---|---|
| | 08 | 23 | 82 | H | M | 600 |

| DRIVER LICENSE NUMBER | B 4 5 2 1 1 6 8 2 3 0 3 0 |
|---|---|

| | STATE | CLASS | CDL LICENSE | YR. LICENSE EXP. | COMMERCIAL VEHICLE |
|---|---|---|---|---|---|
| | FL | E | ☐ YES ☒ NO | 22 | ☐ YES ☒ NO |

| YR VEHICLE | MAKE | STYLE | COLOR | PLACARDED HAZARDOUS MATERIAL |
|---|---|---|---|---|
| 10 | NISS | 4D | BLU | ☐ YES ☒ NO |

| VEHICLE LICENSE NO. | TRAILER TAG NO. | STATE | YEAR TAG EXPIRES | ≥ 16 PASSENGERS |
|---|---|---|---|---|
| JEVP49 | | FL | 2019 | ☐ YES ☒ NO |

UPON A PUBLIC STREET OR HIGHWAY, OR OTHER LOCATION, NAMELY
5700 19TH AVE S

| MOTORCYCLE | ☐ YES ☒ NO |
|---|---|
| COMPANION CITATION NUMBER(S) | ☐ YES ☒ NO |

| FT. | MILES | ☒ | ☐ | ☐ | ☐ | OF NODE |
|---|---|---|---|---|---|---|
| | | N | S | E | W | |

**DID UNLAWFULLY COMMIT THE FOLLOWING OFFENSE.  CHECK ONLY ONE OFFENSE EACH CITATION.**

☐ UNLAWFUL SPEED _____ MPH SPEED APPLICABLE _____ MPH
  ☐ INTERSTATE  ☐ SCHOOL ZONE  ☐ CONSTRUCTION/WORKERS PRESENT

SPEED MEASUREMENT DEVICE:

| ☐ CARELESS DRIVING | ☐ CHILD RESTRAINT | ☐ EXPIRED DRIVER LICENSE SIX (6) MONTHS OR LESS |
|---|---|---|
| ☐ VIOLATION OF TRAFFIC CONTROL DEVICE | ☐ SAFETY BELT VIOLATION | |
| ☐ FAILURE TO STOP AT TRAFFIC SIGNAL | ☐ IMPROPER OR UNSAFE EQUIPMENT | ☐ EXPIRED DRIVER LICENSE MORE THAN SIX (6) MONTHS |
| ☐ IMPROPER LANE CHANGE OR COURSE | ☐ EXPIRED TAG SIX (6) MONTHS OR LESS | ☐ NO VALID DRIVER LICENSE |
| ☐ NO PROOF OF INSURANCE | ☐ EXPIRED TAG MORE THAN SIX (6) MONTHS | ☐ DRIVING UNDER THE INFLUENCE |
| ☐ VIOLATION OF RIGHT-OF-WAY | ☐ DRIVING WHILE LICENSE SUSPENDED OR REVOKED | ☐ PASSENGER UNDER 18 YRS. |
| ☐ IMPROPER PASSING | | |

BAL _____

OTHER VIOLATIONS OR COMMENTS PERTAINING TO OFFENSE
DWLS - (SPECIFY REASON)

| RE-EXAM | ☐ YES ☐ NO |
|---|---|
| DL SEIZED | ☐ YES ☐ NO |

SUSPENDED:8/19/19 FAILURE TO PAY

| ☐ AGGRESSIVE DRIVING | IN VIOLATION OF STATE STATUTE | SECTION 322.34(2) | SUB-SECTION |
|---|---|---|---|

| CRASH ☐ YES ☒ NO | PROPERTY DAMAGE ☐ YES ☒ NO 0 | INJURY TO ANOTHER ☐ YES ☒ NO | SERIOUS BODILY INJURY OR DEATH ☐ YES ☒ NO |
|---|---|---|---|

☒ CRIMINAL VIOLATION COURT APPEARANCE REQUIRED AS INDICATED BELOW.

☐ INFRACTION COURT APPEARANCE REQUIRED AS INDICATED BELOW.

☐ INFRACTION WHICH DOES NOT REQUIRE APPEARANCE IN COURT.        AC7QEYE

CIVIL PENALTY IS _____

| COURT INFORMATION | 11/04/2019 DATE | 01:30 PM TIME |
|---|---|---|
| CLERK OF THE COURT | | |
| 14250 49TH ST. N. | COURT | |
| CLEARWATER, FL 33762 | LOCATION | |

Additional Comments:

ARREST DELIVERED TO _____                    DATE _____

I AGREE AND PROMISE TO COMPLY AND ANSWER TO THE CHARGES AND INSTRUCTIONS SPECIFIED IN THIS CITATION. WILLFUL REFUSAL TO ACCEPT AND SIGN THE CITATION MAY RESULT IN ARREST. I UNDERSTAND THAT MY SIGNATURE IS NOT AN ADMISSION OF GUILT OR WAIVER OF RIGHTS. IF YOU NEED REASONABLE FACILITY ACCOMMODATIONS TO COMPLY WITH THIS CITATION, CONTACT THE CLERK OF THE COURT.

X SIGNATURE OF VIOLATOR (SIGNATURE IS REQUIRED IF INFRACTION REQUIRES APPEARANCE IN COURT)

| RANK - NAME OF OFFICER | BADGE NO. | ID. NO. | TROOP/UNIT |
|---|---|---|---|
| SGT R. BURKHART | GP9203 | | |

☒ I CERTIFY THIS CITATION WAS DELIVERED TO THE PERSON CITED ABOVE AND CERTIFY THE CHARGES ABOVE

| RANK - NAME OF OFFICER | BADGE NO. | ID. NO. | TROOP/UNIT |
|---|---|---|---|

HSMV 72501 (Rev. 06/19)

CASE # GP19-21410        GRID: 667        SPIN: 02185173

**006**

Clerk: 10/8/2019 3:40 PM

## OFFICER'S WORKSHEET

Name: CARLOS RAUL BELLO NOGUEDA

Citation No. AC7QEYE

Criminal Offense  X          Infraction

Investigative Costs $  35

Attitude  GOOD          Drinking  No      Acc.  No

Liability Insurance  No          Est. of Damages $  N/A

Remarks to the Court:

DEF WAS STOPPED FOR PASSENGER SIDE TAIL
LIGHT NOT WORKING. DEF'S LICENSE WAS
SUSPENDED ON 8/19/19 FOR FAILURE TO PAY
TRAFFIC FINE.  DEF HAD A GOOD ATTITUDE AND
WAS RESPECTFUL.

Re-exam:  No          Reason:

## REQUEST FOR INVESTIGATIVE COST RECOVERY
## <u>CRIMINAL</u> TRAFFIC ONLY

The GULFPORT PD                    (law enf. agency) requests and has
documented investigative costs amounting to $ _____
which have been incurred as a direct result of investigating this case. The above
referenced law enf. agency requests in accordance with Florida State Statute
939.01(1), "Judgment for Costs on Conviction" that this amount be included and
entered in judgment rendered against the defendant(s).

| Date | Officer | Hours | X | Pay Rate | Cost |
|------|---------|-------|---|----------|------|
| 10/04/19 | BURKHART | 1.00 | | 35.00 | 35.00 |
| | | | | | |
| | | | | | |
| Other Describe: | | | | | |
| Continuation Sheets | | | | | |
| | | | | Total | 35.00 |

Officer

LAW ENFORCEMENT

73T-1 (Revised 05/13)          WD2/Traffic D87/05/13

**007**

# EXHIBIT "D"

**008**

UCN: 522019CT076013000APC                                                    FL0520500

## COMPLAINT/ARREST AFFIDAVIT – CIRCUIT/COUNTY COURT – PINELLAS COUNTY, FLORIDA

| OBTS # | | REPORT # GP19-25811 | | DOCKET # 1822742 |
|---|---|---|---|---|

| Person ID 310765947 | | SSN# ▇▇▇▇▇▇▇ |
|---|---|---|

| Charge Description | Felony [X] Misdemeanor | Warrant | Traffic | Ordinance | Traffic Citation # (if any) | Court Case # |
|---|---|---|---|---|---|---|
| **Charge** WARRANT ARREST (DWLSR W/KNOWLEDGE - FTA) | | | | | | AC7QEYE-1 |

| Defendant's Name (Last, First, Middle) | DOB | Sex | Race | Ht | Wt | Hair | Eyes | Skin |
|---|---|---|---|---|---|---|---|---|
| BELLO NOGUEDA, CARLOS RAUL | 08/23/1982 | M | H | 511 | 175 | BLN | BRO | MED |

| Alias KARLA BELLO | DL # B-452-116-82-303-0 | State FL | Scars/Marks/Tattoos/Physical Features NONE |
|---|---|---|---|

| Local Address (Street, City, State, Zip Code) 5701 12TH AVE S GULFPORT FL 33707 | Telephone 7273423147 | Place of Birth MEXICO | Citizenship RESIDENCY |
|---|---|---|---|
| Permanent Address (Street, City, State, Zip Code) 5701 12TH AVE S GULFPORT FL 33707 | Telephone 7273423147 | Employed by / School PEOPLE'S CHOICE | |

| Weapon Seized –Type [ ] Yes [X] No | Indication of Drug Influence [ ] Y [X] N [ ] UNK | Indication of Mental Health Issues [ ] Y [X] N [ ] UNK | Indication of Alcohol Influence [ ] Y [X] N [ ] UNK |
|---|---|---|---|

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody [ ]Yes [ ]No [ ]Felony [ ]Misdemeanor |
|---|---|---|---|---|

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody [ ]Yes [ ]No [ ]Felony [ ]Misdemeanor |
|---|---|---|---|---|

The undersigned swears that he/she has reasonable grounds to believe that the above named defendant on the __29__ day of __NOVEMBER__ __2019__

at approximately __10:51__ AM , at __5701 12TH AVE S, GULFPORT FL 33707__ ,in Pinellas County did:

PINELLAS COUNTY WARRANT

ARREST ON WARRANT/CAPIAS # AC7QEYE

I HAVE NO KNOWLEDGE OF THIS CASE

BOND: $513

ISSUE DATE: 11/04/2019

WARRANT CANCELLED:
DATE: 11/29/2019 12:24:21 PM
CLERK: 55478
DEPUTY: 56952

Contrary to Florida Statute/Ordinance __901.02 / 322.34(2)__

ARREST DATE: __11/29/2019__  Time __11:07 AM__ . Aggravating/Mitigating Factors _____

Booking Officer: __WILLIAMS, M 56952__  Amount of Bond __513.00__  Bond Out Date _____ Time _____ [ ]a.m. [ ]p.m.

Victim Notified of Advisory?  [ ]Yes  [ ] No        Injuries to Victim?  [ ] Yes  [ ] No        Medical Treatment to Victim?  [ ]Yes  [ ] No

The Court reviewed this complaint and finds there: [ ]is probable cause [ ]is not probable cause to detain defendant [ ]Bond Action, if any:_____

The probable cause determination is passed for: [ ]24 Hrs [ ]24 Hrs on showing of extraordinary circumstances   Received by Booking: 11/29/2019 12:24:23 PM

| Pursuant to F.S. 92.525 and under penalty of perjury, I declare that I have read the foregoing document and that the facts in it are true. | REQUEST FOR INVESTIGATIVE COSTS, F.S. 938.27(1) | | | | |
|---|---|---|---|---|---|
| *Dvd Snvs* (signature) | DATE 11/29/2019 | OFFICER JANOVICH | HOURS X PAY RATE 1      30.32 | OR | COST $30.32 |
| GULFPORT POLICE DEPT. | | | | | |
| **Declarant Signature**        Agency | | | | | |
| OFFICER DAVID JANOVICH GP9274/625  02490251 | OTHER – Describe | | | | |
| **Printed Name**        **Declarant ID#** | Continuation sheet [ ]Yes [ ]No | | TOTAL $ $30.32 | | |

COCR59 (Revised 10/2014)
815417    Copies to:

Court

**009**

**Defendant**   BELLO NOGUEDA, CARLOS RAUL          **Court Case No:**   AC7QEYE-1

## ADVISORY AND SOLVENCY HEARING

The above named Defendant came before me for Advisory and Solvency hearing and was advised by me of the charge(s) against him; his right to remain silent; that any statements by him may be used against him; his right to counsel, and, if he is financially unable to afford counsel, that counsel forthwith will be appointed; of his right to communicate with his counsel, family or friends, and that reasonable implementation will be afforded him to contact the foregoing.

### I FURTHER CERTIFY THAT:

☐ A.  Defendant has advised the Court that he has retained counsel or will retain counsel.
☐ B.  The Court investigated Defendant's solvency and found the Defendant financially able to secure counsel.
☐ C.  The Court investigated Defendant's solvency and provisionally appointed the Public Defender.
☐ D.  The Defendant waived the right to counsel at the first appearance only.

_____                   _____
              DATE AND TIME                                          JUDGE

☐  I hereby waive the right to counsel at the first appearance only.
☐  I, having been found solvent and financially able to secure counsel, hereby waive counsel until my attorney files an appearance in this case or until I file a written request for a review of my solvency and ability to secure counsel.

                                                   _____
                                                      DEFENDANT'S SIGNATURE
Thumb Print

I HEREBY acknowledge receipt of a copy of the foregoing Complaint and Advisory.

_____      _____      _____
    DEFENDANT'S SIGNATURE        DEFENDANT'S ATTORNEY'S SIGNATURE              DATE

COCR59  (Revised 02/2014)

**010**

# EXHIBIT "E"

**011**

# Pinellas County Sheriff's Office
## Subject Charge Report

The data on this site provides arrest and booking information and should not be relied upon to determine an individual's actual criminal record. This data may not reflect charging decisions made by the State Attorney's Office or the outcome of criminal trials. An acquittal or dismissal of a criminal charge does not necessarily negate the validity of an arrest. To obtain the final disposition of any criminal charges, contact the Clerk of the Court's Office.

 

| Name | Docket No. | Booking Date | Arresting Agency | |
|---|---|---|---|---|
| **BELLO NOGUEDA, CARLOS RAUL** | **1822742** | **11/29/2019 12:20:36 PM** | **GULFPORT POLICE** | |

| Address | | City | State | Zip Code |
|---|---|---|---|---|
| **5701 12TH AVE SO** | | **GULFPORT** | **FL** | **33707** |

| Race | Sex | DOB | Place of Birth | Arrest Age |
|---|---|---|---|---|
| **HISPANIC** | **MALE** | **8/23/1982** | **MM** | **37** |

| Eyes | Hair | Complexion | Height | Weight |
|---|---|---|---|---|
| **BRO** | **BLN** | **MED** | **511** | **175** |

| Scars, Marks & Tattoos |
|---|
| |

| Cell Location/Status | Proj Release Date | Commissary Balance | SPIN | Booking Type |
|---|---|---|---|---|
| **HD-2H2-2H2B-B1-001** | **NONE** | **$-29.88** | **310765947** | **MISDEMEANOR** |

| Aliases |
|---|
| |

## Charges

| | |
|---|---|
| **Charge Number:** | 1 |
| **Agency Report Number:** | GP19025811 |
| **Offense Description:** | FTA DWLSR W/KNOWLEDGE |
| **Statute:** | 843.15(1)(B)/M |
| **Court Case Number:** | AC7QEYE-1 |
| **Bond Assessed:** | $513.00 |
| **Bond Amount Due:** | $513.00 |
| **Charge Status:** | AWAITING TRIAL |
| **Arrest Type:** | TRAFFIC - FTA |
| **OBTS:** | 5211060203 |

2019 Pinellas County Sheriff's Office

**012**

# EXHIBIT "F"

**013**

**Inmate Charge Summary**

## PINELLAS COUNTY SHERIFF'S OFFICE

02/21/2020 15:41

| Docket No. | SPN | Inmate Name | Housing Location | Security Level | SRA | *Projected Release Date:* |
|---|---|---|---|---|---|---|
| 1822742 | 310765947 | BELLO NOGUEDA,CARLOS R | | Minimum Misd | MH37 | Actual: |

Scheduled:

**Amt. Due:** $0.00

**Charges:**

| Statute | Statute Description | Degree | Chrg Type | UCR Code | Chrg Status | Case No. | Disposition |
|---|---|---|---|---|---|---|---|
| 843.15(1)(B)/M | ILURE TO APPEAR (MISDEMEANC | 1 | M | 5015 | BOND | AC7QEYE-1 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Sent Start 00/00/0000 00:00 | Sent Date 00/00/0000 00:00 | Replace | Years 0  0 | Months 0  0 | Days 0  0 | Hours 0  0 | |
| Admit Date 11/29/2019 12:20 | Activate Dt 11/29/2019 12:24 | Classify Value: | | Time in Jail: **11 Day(s) and 8 Hour(s)** | | | |
| Concurrent | Gain 0 | Good 0 | ☐ Weekender ☐ RTS | Bond $513.00 | Fine $.00 | Purge $.00 | Bond Grp |

**Charge Cmts:**

**Sentence Cmts:**   AC7QEYE-1 sucessfully added.

### November 29 2019

Unscheduled Event HOUS-UNSCH    occurred at 11/29/2019 12:21 - 11/29/2019 12:21
    Checked out of I on the way to CSOD-INTAK-REC-01-008 at 11/29/2019 12:21
    Completed event at 11/29/2019 12:21
Unscheduled Event HOUS-UNSCH    occurred at 11/29/2019 13:02 - 11/29/2019 13:02
    Checked out of CSOD-INTAK-REC-01-008 on the way to CSOD-INTAK-PRO-01--50 at 11/29/2019 13:02
    Completed event at 11/29/2019 13:02
Event HOUS-CSO-CE (9762837)  scheduled at 11/29/2019 14:30 - 15:30  occurred at 11/29/2019 14:45 - 11/29/2019 14:50
    Checked out of CSOD-INTAK-PRO-01-003 on the way to CSOD-PRE-HOUSE-01-1 at 11/29/2019 14:45
    Checked into CSOD-PRE-HOUSE-01-1 at 11/29/2019 14:46
    Checked out of CSOD-PRE-HOUSE-01-1 on the way to CEN-2C1-UN01-U3-002 at 11/29/2019 14:46
    Completed event at 11/29/2019 14:50

### November 30 2019

Event CCJC-R101 (9763325)    scheduled at 11/30/2019 8:30 - 11:30  occurred at 11/30/2019 8:14 - 11/30/2019 10:07
    Checked out of CEN-2C1-UN01-U3-002 on the way to CJC-MISDEMEANOR ADVISORY at 11/30/2019 8:14
    Completed event at 11/30/2019 10:07

### December 02 2019

Event HOUS-SCHED (9764874)   scheduled at 12/02/2019 2:30 - 3:30  occurred at 12/02/2019 2:23 - 12/02/2019 2:44
    Checked out of CEN-2C1-UN01-U3-002 on the way to CEN-6C1-UN01-L7-001 at 12/02/2019 2:23
    Completed event at 12/02/2019 2:44
Event PREA-CPREA1 (9052047)  scheduled at 12/02/2019 14:30 - 15:30  occurred at 12/02/2019 14:33 - 12/02/2019 15:05
    Checked out of CEN-6C1-UN01-L7-001 on the way to CD 6TH FL MPR at 12/02/2019 14:33
    Completed event at 12/02/2019 15:05

### December 04 2019

Event MED-6CHP (9767797)    scheduled at 12/04/2019 15:00 - 15:15  occurred at 12/04/2019 15:25 - 12/04/2019 16:02
    Checked out of CEN-6C1-UN01-L7-001 on the way to CD 6TH FLR NURSES ST at 12/04/2019 15:25
    Completed event at 12/04/2019 16:02

### December 06 2019

Event MED-NUR 2C (9769800)   scheduled at 12/06/2019 9:45 - 10:00  occurred at 12/06/2019 9:50 - 12/06/2019 10:39
    Checked out of CEN-6C1-UN01-L7-001 on the way to CEN DIV. 2ND FLR at 12/06/2019 9:50
    Completed event at 12/06/2019 10:39
Event HOUS-CEN-HD (9775193)  scheduled at 12/06/2019 10:30 - 11:30  occurred at 12/06/2019 10:47 - 12/06/2019 11:12
    Checked out of CEN-6C1-UN01-L7-001 on the way to CSOD-PRE-HOUSE-01-4 at 12/06/2019 10:47
    Checked into CSOD-PRE-HOUSE-01-4 at 12/06/2019 10:55
    Checked out of CSOD-PRE-HOUSE-01-4 on the way to HD-CLIN-CL_WT-01-91 at 12/06/2019 10:55
    Checked into HD-CLIN-CL_WT-01-91 at 12/06/2019 10:59
    Checked out of HD-CLIN-CL_WT-01-91 on the way to HD-2H2-2H2B-B1-001 at 12/06/2019 10:59
    Completed event at 12/06/2019 11:12

### December 09 2019

Event HOUS-SCHED (9778647)   scheduled at 12/09/2019 18:00 - 19:00  occurred at 12/09/2019 17:58 - 12/09/2019 18:02
    Checked out of HD-2H2-2H2B-B1-001 on the way to HD-3H4-3H4A-A-006 at 12/09/2019 17:58
    Completed event at 12/09/2019 18:02

### December 10 2019

Event VIS-REG (9778510)      scheduled at 12/10/2019 11:30 - 12:10  occurred at 12/10/2019 11:38 - 12/10/2019 12:15
    Checked out of HD-3H4-3H4A-A-006 on the way to HD-3H4-A at 12/10/2019 11:38
    Completed event at 12/10/2019 12:15
Event In Process REL-HDREL (9779906)    scheduled at 12/10/2019 17:55 - 18:55  occurred at 12/10/2019 19:11 - 12/10/2019 19:52
    Checked out of HD-3H4-3H4A-A-006 on the way to HD-CLIN-HOLD1-01-1 at 12/10/2019 19:11
    Checked into HD-CLIN-HOLD1-01-1 at 12/10/2019 19:13

**015**

Checked out of HD-CLIN-HOLD1-01-1 on the way to CSOD-PRE-HOUSE-01-8 at 12/10/2019 19:43
Checked in

**016**

Mugshot - 1822742  BELLO NOGUEDA,CARLOS RAUL

**Inmate Detail**

| Docket No. | SPN | Inmate Name | Housing Location | Security Level | RSA |
|---|---|---|---|---|---|
| 1822742 | 310765947 | BELLO NOGUEDA,CARLOS RA | | Minimum Misd | HM37 |



Print    Close

**017**

February 21, 2020 15:42

## Jail Inmate Management System
## Incompatible with  - 1822742  BELLO NOGUEDA,CARLOS RAUL

| Docket No. | SPN | Last Name | First Name | Housing Location |
|---|---|---|---|---|

Total: 0

**018**

February 21, 2020 15:43

# Jail Inmate Management System
## Housing History - 1822742  BELLO NOGUEDA,CARLOS RAUL

| Housing | Arrival | Departure | House Change Reason | Status |
|---------|---------|-----------|---------------------|--------|
| CSOD-INTAK-REC-01-008 | 11/29/2019 12:21 | 11/29/2019 13:02 | Inmate Record Creation | Accepted |
| CSOD-INTAK-PRO-01-00 | 11/29/2019 13:02 | 11/29/2019 14:50 | | Unscheduled |
| CEN-2C1-UN01-U3-002 | 11/29/2019 14:50 | 12/02/2019 02:44 | Misdemeanor- House in Male Holding. se8712 | Scheduled |
| CEN-6C1-UN01-L7-001 | 12/02/2019 02:44 | 12/06/2019 11:12 | Minimum Custody Misd. SVP - Potential Victim. Veteran - no space in 2C2. ap7541 | Scheduled |
| HD-2H2-2H2B-B1-001 | 12/06/2019 11:12 | 12/09/2019 18:02 | Close Observation.  Minimum Misdemeanor Custody, SVP Potential Victim,  Veteran - notified Dep Corkum 5891 | Scheduled |
| HD-3H4-3H4A-A-006 | 12/09/2019 18:02 | 00/00/0000 00:00 | Cleared Close Observation & Placed on Psych Observation (MHTU) Approved by Supervisor Holler, Minimum Misd. Custody SVP Potential Victim Veteran rg9825 | Scheduled |

**019**

# Contact Log Report

| Code: | | CIS No: | 1822742 | Location: | | From: | 00/00/0000 00:00 | To: | 00/00/0000 00:00 | User ID: | |
|-------|--|---------|---------|-----------|--|-------|------------------|-----|------------------|----------|--|

| Code | Description | CIS No. | Inmate Name | Date | User ID | Special Housing |
|------|-------------|---------|-------------|------|---------|-----------------|
| Infor Disc | INFORMAL DISCIPLINE- WHILE NURSE HILERY WAS IN THE POD FOR DIABETIC CHECKS, BELLO BECAME EXTREMELY IRATE YELLING THAT HE NEEDS HIS MEDICATION. NURSE HILERY INSTRUCTED HIM TO SIGN UP FOR NURSE SICK CALL AS I DID BEFORE SHE ARRIVED. BELLO WAS VERBALLY COUNSELED AND PROGRESSIVE DISCIPLINE SHOULD FOLLOW ON FUTURE OCCURENCES. | 1822742 | RLOS BELLO NOGUE | 12/02/19 15:54 | cmoses | |
| Infor Disc | INFORMAL DISCIPLINE- CAUGHT IN THE LOWER TIER BATHROOM APPLYING COLORED PENCIL TO HIS EYEBROWS AND TO HIS FACE AS MAKEUP. VERBALLY COUNSELED THAT THIS IS NOT ALLOWED AND WILL NOT BE TOLERATED | 1822742 | RLOS BELLO NOGUE | 12/03/19 10:45 | aberje | |
| Meal | Received a Meal | 1822742 | RLOS BELLO NOGUE | 12/05/19 11:27 | adiaz | |
| Supervisor | Supervisor Check | 1822742 | RLOS BELLO NOGUE | 12/05/19 14:54 | adiaz | |
| Per Ck Cmp | PERIODIC CHECK COMPLETED AND TERMINATED BY - PLACED ON CLOSE OBSERVATION STATUS PER LCSW DIXON. | 1822742 | RLOS BELLO NOGUE | 12/06/19 10:37 | scoxjr | |
| Meal | RECEIVED A LUNCH MEAL | 1822742 | RLOS BELLO NOGUE | 12/06/19 11:19 | dhughes | |
| Meal | RECEIVED A MEAL-DINNER | 1822742 | RLOS BELLO NOGUE | 12/06/19 16:26 | dhughes | |
| Supervisor | Supervisor Check | 1822742 | RLOS BELLO NOGUE | 12/06/19 18:40 | mstowell | |
| REVIEW | Reviewed Contact Log | 1822742 | RLOS BELLO NOGUE | 12/06/19 18:41 | mstowell | |
| DayTime | Dayroom Time | 1822742 | RLOS BELLO NOGUE | 12/06/19 22:30 | twillis | |
| Meal | Received a Meal | 1822742 | RLOS BELLO NOGUE | 12/07/19 04:01 | twillis | |
| Meal | Received a Meal | 1822742 | RLOS BELLO NOGUE | 12/07/19 10:43 | nsweeney | |
| Meal | RECEIVED A MEAL - LUNCH | 1822742 | RLOS BELLO NOGUE | 12/07/19 11:16 | nsweeney | |
| Supervisor | Supervisor Check | 1822742 | RLOS BELLO NOGUE | 12/07/19 14:38 | rcampbell | |
| Meal | RECEIVED A MEAL - DINNER | 1822742 | RLOS BELLO NOGUE | 12/07/19 16:18 | nsweeney | |
| Other | ZONE INSPECTIONS CONDUCTED IN CELL WITH CPL. SMITH AND DEP.'S SIDERIS AND APPEL. DA7930 | 1822742 | RLOS BELLO NOGUE | 12/07/19 19:32 | jlopezii | |
| Meal | Received a Meal | 1822742 | RLOS BELLO NOGUE | 12/08/19 03:45 | jlopezii | |
| Meal | RECEIVED A MEAL. | 1822742 | RLOS BELLO NOGUE | 12/08/19 04:06 | jlopezii | |
| Supervisor | Supervisor Check | 1822742 | RLOS BELLO NOGUE | 12/08/19 15:17 | rcampbell | |
| Meal | Received a Meal | 1822742 | RLOS BELLO NOGUE | 12/08/19 15:42 | mjsmith | |
| Meal | RECEIVED A MEAL DINNER | 1822742 | RLOS BELLO NOGUE | 12/08/19 15:44 | mjsmith | |
| Other | ZONE INSPECTIONS WERE CONDUCTED AND COMPLETED IN EACH CELL BY CPL. SMITH AND DEP.'S LOPEZ AND SIDERIS. DA7930 | 1822742 | RLOS BELLO NOGUE | 12/08/19 19:33 | jlopezii | |
| Meal | RECEIVED A MEAL. DA7930 | 1822742 | RLOS BELLO NOGUE | 12/09/19 04:23 | jlopezii | |
| Other | LMHC MATHEW VISITING CELL SIDE | 1822742 | RLOS BELLO NOGUE | 12/09/19 14:51 | tcassidy | |
| CellClean | CLEANED CELL TODAY DURING ZONES. | 1822742 | RLOS BELLO NOGUE | 12/09/19 15:33 | chole | |
| Meal | RECEIVED A MEAL - DINNER TRAY | 1822742 | RLOS BELLO NOGUE | 12/09/19 15:40 | tcassidy | |
| Meal | RECEIVED A MEAL - LUNCH TRAY | 1822742 | RLOS BELLO NOGUE | 12/09/19 17:30 | tcassidy | |
| REVIEW | REVIEWED CONTACT LOG.CH6921 | 1822742 | RLOS BELLO NOGUE | 12/09/19 17:37 | chole | |
| Meal | Received a Meal | 1822742 | RLOS BELLO NOGUE | 12/10/19 04:19 | cmari | |
| Supervisor | Supervisor Check | 1822742 | RLOS BELLO NOGUE | 12/10/19 05:37 | rdaniels | |

**020**

February 21, 2020 15:43

# Jail Inmate Management System
## Demographics - 1822742  BELLO NOGUEDA, CARLOS



| Docket No: | 1822742 | | SPN: | 310765947 | SSN: | | Date Admitted: | 11/29/2019 12:20 |
|---|---|---|---|---|---|---|---|---|
| Last Name: | BELLO NOGUEDA | | First Name: | CARLOS | Middle Name: | RAUL | Suffix: | |
| Address: | TRANSIENT | | City: | GULFPORT | State: | FL | Zip Code: | 33707-0000 |
| ID Type: | Driver license | ID Number: | B452116823030 | | ID State: | FL | PIN: 18227423358 | Phone: (727) 342-3147 |

| | | | | |
|---|---|---|---|---|
| Booking Type: | Misdemeanor | Education: | Diploma | Arrest Type: Traffic - FTA |
| Incident No: | 0 | Marital Status: | Single | Arrest Officer: JANOVICH   02490251 |
| OBTS No: | 0 | Occupation: | Nurse | Arrest Agency: Gulfport |
| SID: | 98109889 | Language: | English | Arrest Date/Time: 11/29/2019 11:07 |
| SO ID: | 520000651167 | Religion: | None | Location of Arrest: |

| | | | | |
|---|---|---|---|---|
| Sex: Male | Current Age: 37 | Height: 511 | Eye: Brown | FBI No: |
| Race: Hispanic | Age at Arrest: 37 | Weight: 175 | Hair: Blond | INS No: |
| DOB: 08/23/1982 | POB: MEXICO | POB: MM | SPOT: Complexion: MED | FDCN: |
| Consulate: Yes | Citizenship: OT | | Acct. Class: GENERAL PO | DNA: |

Comments: NCIC/FCIC 1229 WA/VIPAR

**021**

February 21, 2020 15:43

# Jail Inmate Management System
## Aliases - 1822742  BELLO NOGUEDA, CARLOS



**022**

February 21, 2020 15:44

## Jail Inmate Management System
## Scars, Marks and Tattoos - 1822742  BELLO NOGUEDA, CARLOS

| Category: | Type: | Description: |
|---|---|---|
| | | |

**023**

February 21, 2020 15:44

# Jail Inmate Management System
## Contacts - 1822742  BELLO NOGUEDA, CARLOS

**LOCAL ADDRESS**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  |  |  | Phone: | ( )   - |
| Address: |  | City: |  | State: | Zip:    - |

**NEXT OF KIN**     Relationship:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Last: |  | First: |  | Middle: |  | Phone: | ( )   - |
| Address: |  | City: |  | State: |  | Zip:    - |

**EMERGENCY CONTACT**     Relationship:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Last: | NONE | First: |  | Middle: |  | Phone: | ( )   - |
| Address: |  | City: |  | State: |  | Zip:    - |

**ATTORNEY**     Relationship:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Last: |  | First: |  | Middle: |  | Phone: | ( )   - |
| Address: |  | City: |  | State: |  | Zip:    - |

**EMPLOYER**     Relationship:          Yrs. Employed:  0     Mnths. Employed:  0

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Last: |  | First: |  | Middle: |  | Phone: | ( )   - |
| Address: |  | City: |  | State: |  | Zip:    - |

**PHYSICIAN**     Relationship:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Last: |  | First: |  | Middle: |  | Phone: | ( )   - |
| Address: |  | City: |  | State: |  | Zip:    - |

**OTHERS**     Relationship:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| Last: |  | First: |  | Middle: |  | Phone: | ( )   - |
| Address: |  | City: |  | State: |  | Zip:    - |

**024**

February 21, 2020 15:44

## Jail Inmate Management System
## Classification - 1822742  BELLO NOGUEDA, CARLOS

| Classification Reason | Custody Score | Lower Bunk Required | Acct. Class: | Reclassification Date |
|---|---|---|---|---|
| Scheduled Reclassification | | | GENERAL POPULAT | 05/21/2020 |

| Security Level | Housing Type |
|---|---|
| Minimum Misd | Medical |

**Special Considerations**

30 day Reassessment: 1-1-20

**Reason for Current Housing Assignment**

**025**

February 21, 2020 15:44

## Jail Inmate Management System
## Release Information - 1822742  BELLO NOGUEDA, CARLOS

**Released Date:** 12/10/19 20:20          **Release Reason:** Cash Bond

**Release Auth By:** MSC9670          **Release To Agency:**

**Comments:** CB # 422687

**026**

**PINELLAS COUNTY SHERIFF'S OFFICE**

### Case Note Details for 1822742-BELLO NOGUEDA,CARLOS :                2/21/2020

| | | |
|---|---|---|
| **Note Id:** 183386 | | |
| **Entry Type:** Class Notes | **Housing Location:** CSOD-INTAK        PRO | **User ID:** semanuels |
| **Contact Date:** | **Entry Date:** 11/29/2019 14:38 | **Last Update:** 11/29/2019 14:38 |

Misdemeanor- House in Male Holding. se8712

| | | |
|---|---|---|
| **Note Id:** 183440 | | |
| **Entry Type:** Class Notes | **Housing Location:** CEN-2C1      UN01 | **User ID:** apaolillo |
| **Contact Date:** | **Entry Date:** 12/02/2019 02:13 | **Last Update:** 12/02/2019 02:13 |

Minimum Custody Misd. SVP - Potential Victim. Veteran - no space in 2C2. ap7541

| | | |
|---|---|---|
| **Note Id:** 183459 | | |
| **Entry Type:** PREA Education | **Housing Location:** CEN-6C1      UN01 | **User ID:** showell |
| **Contact Date:** | **Entry Date:** 12/02/2019 15:33 | **Last Update:** 12/02/2019 15:33 |

12-2-19 PREA Education Recieved          sh59283

| | | |
|---|---|---|
| **Note Id:** 183610 | | |
| **Entry Type:** Class Notes | **Housing Location:** CEN-6C1      UN01 | **User ID:** cwidua |
| **Contact Date:** | **Entry Date:** 12/06/2019 10:43 | **Last Update:** 12/06/2019 10:43 |

Close Observation.  Minimum Misdemeanor Custody, SVP Potential Victim,  Veteran - notified Dep Corkum 5891 -cw9431

| | | |
|---|---|---|
| **Note Id:** 183707 | | |
| **Entry Type:** Class Notes | **Housing Location:** HD-2H2      2H2B | **User ID:** rgreen |
| **Contact Date:** | **Entry Date:** 12/09/2019 17:57 | **Last Update:** 12/09/2019 17:57 |

Cleared Close Observation & Placed on Psych Observation (MHTU) Approved by Supervisor Holler, Minimum Misd. Custody SVP Potential Victim Veteran rg9825

**027**

PROPERTY RECORD RECEIPT

# PINELLAS COUNTY SHERIFF'S OFFICE

Consolidated

| Docket No. | SPN | Inmate Name | Housing Location | Security Level | RSA |
|---|---|---|---|---|---|
| 1822742 | 310765947 | BELLO NOGUEDA, CARLOS RA | | Minimum Misd | HM37 |

Form 1 of 1

Received By: akass   Location: CSOD   Property Roc   Container: V142   P   Date: 12/10/2019 20:00

| Item | | Description | Item | | Description |
|---|---|---|---|---|---|
| | Belt | | | Bulk Bag(s) | |
| 1 | Cell Phone | | | Glasses | |
| | Hair Tie / Clip | | | Hat / Cap | |
| | Key(s) | | | Lighter | |
| | Medical Items | | | Medication Bt | |
| | Misc. Items | | | Purs | |
| 1 | Wallet | | 1 | X - Other 1 | pfc invt 6491 verf 5891 |
| | X - Other 2 | | 1 | X - Other 3 | bulk from intake |

**RELEASED**

| Jewelry | | Description | Yellow Color | White Color | Ston |
|---|---|---|---|---|---|
| | Bracelet 1 | | | | |
| | Bracelet 2 | | | | |
| 1 | Earring 1 | | | | |
| | Earring 2 | | | | |
| | Necklace 1 | | | | |
| | Necklace 2 | | | | |
| | Piercing 1 | | | | |
| | Piercing 2 | | | | |
| | Ring 1 | | | | |
| | Ring 2 | | | | |
| | Watch | | | | |
| | X - Other Jewelry | | | | |

Comments: blk purse, blond hair, blk boots, blk cardagan, nude wire bra, dress

**Property Receipt**
This receiving officer hereby certifies that the above listing accurately represents property received from prisoner/inmate.
Receiving Officer_____ Badge #_____ Arresting Officer_____ Badge #_____

2nd Officer if prisoner/inmate refuses or unable to sign_____ Badge #_____
Prisoner acknowledges that any personal property and/or clothing stored for more than 30 days from release or discharge will be disposed without court order as agreed to by the prisoner.
Prisoner_____ I.D. #_____ PIN: 18227423358

**Property Release**
This is to certify that all items listed above have been released or have been stored for more than 30 days from discharge date and have been disposed of as authorized upon property receipt.

Release Reason:_____ Release Date:_____ Release Officer_____ Badge #_____

Prisoner/Person Receiving_____ Date_____ Officer_____ Badge #_____
Recipient:_____ Relation_____ Phone Number_____
Address_____ City_____ State____ Zip Code_____

**028**

PROPERTY RECORD RECEIPT

# PINELLAS COUNTY SHERIFF'S OFFICE

**Consolidated**

| Docket No. | SPN | Inmate Name | Housing Location | Security Level | RSA |
|---|---|---|---|---|---|
| 1822742 | 310765947 | BELLO NOGUEDA, CARLOS RA | | Minimum Misd | HM37 |

**Form 1 of 1**

**Comments:** PFC - 1 pr uw, colored pencils, coffee, misc papers

**Inmate's Signature**

**Date:** 12/10/2019 20:01

<u>**Property Receipt**</u>
This receiving officer hereby certifies that the above listing accurately represents property received from prisoner/inmate.
Receiving Officer_____ Badge #_____ Arresting Officer_____ Badge #_____

2nd Officer if prisoner/inmate refuses or unable to sign_____ Badge #_____
Prisoner acknowledges that any personal property and/or clothing stored for more than 30 days from release or discharge will be disposed without court order as agreed to by the prisoner.
Prisoner_____ I.D. #_____ PIN: <u>18227423358</u>

<u>**Property Release**</u>
This is to certify that all items listed above have been released or have been stored for more than 30 days from discharge date and have been disposed of as authorized upon property receipt.

Release Reason:_____ Release Date:_____ Release Officer_____ Badge #_____

Prisoner/Person Receiving_____ Date_____ Officer_____ Badge #_____

Recipient:_____ Relation_____ Phone Number_____

Address_____ City_____ State_____ Zip Code_____

**029**

Attorney Visits

2/21/2020

| Event ID | Description | Event Time | Check in | Visitor | Attend |
|----------|-------------|------------|----------|---------|--------|

1

030

# Pinellas County Sheriff's Office
## Leading the Way For A Safer Pinellas

# INMATE VISITATION QUERY

**Docket Inquiry:**   Docket #:
1822742

**Visitor Name:**   Last Name:   First Name:   Visitor ID:

**Inmate Name:**   Last Name:   First Name:   Submit   Clear

Click the Clear button then re-search your query

STATUS: P = PENDING, C = CANCELED, Y = COMPLETED, E = EXCUSED, U = UNEXCUSED

A network-related or instance-specific error occurred while establishing a connection to SQL Server. The server was not found or was not accessible. Verify that the instance name is correct and that SQL Server is configured to allow remote connections. (provider: Named Pipes Provider, error: 40 - Could not open a connection to SQL Server)

1

| Visit Time | Docket # | Inmate | Visitor Name | Address | City/State | ID Type | ID Number | Phone | Status |
|---|---|---|---|---|---|---|---|---|---|
| 12/10/2019 11:30:00 AM | 1822742 | BELLO NOGUEDA,CARLOS | RINGER,ROOK | 3405 MYRICA ST. | TAMPA,FL | D | R526725739640 | 8139536788 | Y |
| 12/10/2019 11:30:00 AM | 1822742 | BELLO NOGUEDA,CARLOS | RINGER,ROOK | 3405 MYRICA ST. | TAMPA,FL | D | R526-725-73-964 | 8139536788 | Y |

1

**031**

ASK Admin Reports

2/21/2020
3:48 PM

**Pinellas County**
**Print Message Report**
**From 11/29/2019  To 2/21/2020**

**Case #:** 817475

| | | |
|---|---|---|
| **Inmate:** BELLO NOGUEDA, CARLOS | **ID:** 1822742 | **Type:** Permission |
| **Recipient:** HOUSING DEPUTY | **Created:** 12/10/2019 1:53 PM | **Category:** Property Grievance |
| **Cellblock:** | | **Sub-Catgory:** |
| **Case Cellblock:** HD-3H4-3H4A-A-006 | | **Status:** Closed, Unfounded |

| From | To | Message | Entered |
|---|---|---|---|
| BELLO NOGUEDA, CARLOS | HOUSING DEPUTY | i ned a bra at minimum. im a ts woman,transgender, and ben on hrt over three years. to grow  a bust. why do i have to show everyman  my boobs when i get changed. my chest huts due to anxiety or potasium levels unbalanced. due not geting hrt since ive ben here. its hard to breath  at times. | 12/10/2019 1:54:00 PM |
| SGT. MOON #54062 | BELLO NOGUEDA, CARLOS | You have received permission to file a grievance. Inmates have 72 hours to file the grievance once approval has been granted. The approved category of the grievance is listed in the "Subject" line above. In order to file a grievance, click the back button, click on "New", select "Grievance" and select the approved category. | 12/11/2019 6:09:00 AM |
| SUPPORT/DDC ADMIN | BELLO NOGUEDA, CARLOS | Case closed by System due to inmate being released. | 12/11/2019 9:40:00 PM |

Page 1

**032**

**ASK Admin Reports**

2/21/2020
3:48 PM

**Pinellas County**
**Print Message Report**
**From 11/29/2019  To 2/21/2020**

**Case #:** 809314

| | |
|---|---|
| **Inmate:** BELLO NOGUEDA, CARLOS | **ID:** 1822742 |
| **Recipient:** HOUSING DEPUTY | **Created:** 12/2/2019 3:53 PM |
| **Cellblock:** | |
| **Case Cellblock:** CEN-6C1-UN01-L7-001 | |

**Type:** Request
**Category:** 01. General Request
**Sub-Catgory:** 4. Division Commander Request
**Status:** Closed, Unfounded

| From | To | Message | Entered |
|---|---|---|---|
| BELLO NOGUEDA, CARLOS | HOUSING DEPUTY | i have not recived hrt. i signed to se arnp nurse on friday. iv been off spironlactone,finersteride, and can feel chest pains. hormones unbalalanced.  the lack of feedback about when ill see the arnp. | 12/2/2019 3:53:00 PM |
| SGT. FRANJESEVIC #55432 | BELLO NOGUEDA, CARLOS | Inmate Nogueda was medically evaluated for his "Chest Pains" on 12/02/2019 at 1645 hours.  Per Nurse Hillary, the inmate was cleared to remain in current housing. | 12/2/2019 4:48:00 PM |

**033**

**Case #:** 810406

| | | |
|---|---|---|
| **Inmate:** BELLO NOGUEDA, CARLOS | **ID:** 1822742 | **Type:** Request |
| **Recipient:** HOUSING DEPUTY | **Created:** 12/3/2019 2:46 PM | **Category:** 01. General Request |
| **Cellblock:** | | **Sub-Catgory:** 1. Housing Deputy Request |
| **Case Cellblock:** CEN-6C1-UN01-L7-001 | | **Status:** Closed, Unfounded |

| From | To | Message | Entered |
|---|---|---|---|
| BELLO NOGUEDA, CARLOS | HOUSING DEPUTY | requesting pillow.  my bed ive obsereved didnt come with a pillow . ive requested one and was told not all bds come with them. | 12/3/2019 2:47:00 PM |
| DEP. BERJE #54153 | BELLO NOGUEDA, CARLOS | When one becomes available it can be given to you | 12/3/2019 2:51:00 PM |

**034**

**Case #:** 816598

| | |
|---|---|
| **Inmate:** BELLO NOGUEDA, CARLOS | |
| **Recipient:** HOUSING DEPUTY | |
| **Cellblock:** | |
| **Case Cellblock:** HD-3H4-3H4A-A-006 | |

**ID:** 1822742
**Created:** 12/9/2019 7:42 PM

**Type:** Request
**Category:** 06. Property Request
**Sub-Catgory:** Property Request
**Status:** Closed, Unfounded

| From | To | Message | Entered |
|---|---|---|---|
| BELLO NOGUEDA, CARLOS | HOUSING DEPUTY | need debit card number to order comisary. can i request my make up bag please.  i have property like my underwear in a bag. i had a coffee bag colored pencils. | 12/9/2019 7:42:00 PM |
| DEP. MARI #55653 | BELLO NOGUEDA, CARLOS | You can't receive your debit card number to place commissary orders. No make up ids allowed. If you have personal under garments that would not be considered contraband, you can request those items. | 12/9/2019 8:55:00 PM |

**035**

*Classification Assessment: Admissions Assessment - 1822742 BELLO NOGUEDA, CARLOS RAUL*

*Classification Form*

## PART I. ADMISSION ASSESSMENT

Category: 1. SEVERITY OF CURRENT CHARGES/CONVICTIONS | Category Score: 0

Low - 0
✓

Moderate - 2

High - 8

Highest - 11

(The Severity of Offense Scale used and the most serious charge/conviction, including detainers/warrants was rated.)

---

Category: 2. SERIOUS OFFENSE HISTORY | Category Score: 0

None or Low - 0
✓

Moderate - 1

High - 7

Highest - 11

(The Severity of Offense Scale used and the most serious charge/conviction, including detainers/warrants was rated.)

---

Category: 3. ESCAPE HISTORY (EXCLUDING CURRENT CHARGES) | Category Score: 0

No Escape or Attempts - 0
✓

Walkaway or attempted escape from minimum security facility or failure to return from authorized absence - 8

Escape or attempted escape from medium or maximum security setting - 11

---

Category: 4. INSTITUTIONAL DISCIPLINARY HISTORY | Category Score: 0

None or minor disciplinary reports - 0
✓

One or more major disciplinary reports and/or time in segregation - 3

---

Category: 5. PRIOR FELONY CONVICTIONS | Category Score: 0

None - 0
✓

One - 2

Two or more - 4

Current charges were excluded and the last five years of street time was reviewed.

---

Category: 6. ALCOHOL/DRUG ABUSE (CHOOSE ONE) | Category Score: 0

No social, economic, or legal problems related to abuse - 0
✓

Abuse resulting in social, economic, or legal problems - 1

**036**

## PART I. ADMISSION ASSESSMENT

Category: 6. ALCOHOL/DRUG ABUSE (CHOOSE ONE)          Category Score:  0

   Abuse resulting in assaultive behavior - 3

Category: 7. STABILITY FACTORS (DEDUCT INDICATED POINTS)          Category Score:  -2

   Age 26 or over - (-1)          -1
   ✓

   Employed or attending school for 6 months prior to arrest - (-1)          -1
   ✓

   Lived at same address for 12 or more months prior to arrest - (-1)

Category: 8. CUSTODY LEVEL          Category Score:  0

   0 to 5 points ..................................................................Minimum
   ✓

   0 to 5 points with detainer/warrant .....................................Medium

   6 to 10 points ..................................................................Medium

   11 to 39 points ................................................................Maximum

   40+ points .......................................................Close Custody

   Military/ICE Hold Only .......................................PC Housing

Category: 9. SPECIAL MANAGEMENT ISSUES (CHECK ALL APPLICABLE)          Category Score:  0

   Red Dot Aggressive

   Red Dot Death Row

   Red Dot Escape Risk

   Administrative Segregation

   Threat Group Member

   Protective Custody

   Sex Offender

   Jimmy Ryce

   Ice Hold Only

   Juvenile

   Suicide Risk

   Close Observation

   Psychiatric Observation

**037**

**PART I.  ADMISSION ASSESSMENT**

Category: 9. SPECIAL MANAGEMENT ISSUES (CHECK ALL APPLICABLE)                     Category Score:  0

Medical Observation

Other

    Please explain:

Category: 10. SVP ASSESSMENT "VULNERABILITY"                                      Category Score:  0

1. Inmate has been sexually victimized while incarcerated.

    Reported - verified   (Known Victim)
    Where and when did it occur?
    Reported - not verified (Potential Victim)
    Where and when did it occur?
    Not reported  (Potential Victim)
    Where and when did it occur?

2. Inmate has been sexually abused (excluding incarcerations).
✓

3. The inmate and/or the interviewer is concerned with being sexually victimized while incarcerated.
    If so, please specify:

4. Inmate is LBGTI or gender non-conforming.
✓    If so, please specify:   Transgender

5. Does the inmate require special accommodations?.
    If so, please specify:

6. Inmate has never been incarcerated longer than 90 days.
✓

7. Inmate has a history of consensual sex while incarcerated in the last 10 years.

8. Inmate is 26 years of age or younger or 65 years of age or older.

9. Inmate is of small physical stature (5'6" or less and 140 lbs. or less (Males only).

10. Inmate has prior convictions for sex offenses.

11. Inmate refused to answer one or more of the first 10 questions in the "Vulnerability Factors" section.
    If so, which question(s)?

12. Item #1 is checked. Enter "Known or Potential Victim" code in category 12 based on information provided.
    If so, please specify:

13. Inmate answered "Yes" to 3 or more (excluding item #1). I have entered "Potential Victim" code in Category 12.
✓

14. Neither items 12 or 13 are checked. I have entered "No Score" code in category 12.

Category: 11. SVP ASSESSMENT "PREDATORY"                                          Category Score:  0

1. Inmate has a substantiated sexual abuse case while incarcerated.

2. Inmate has been convicted of Sex Battery,Agg Battery,Fel Dom Battery, or other violent crimes toward others (Felony).

3. Inmate has displayed a pattern of institutional predatory behavior.

4. Inmate has a history of consensual sex while incarcerated.

**038**

## PART I. ADMISSION ASSESSMENT

Category: 11. SVP ASSESSMENT "PREDATORY"                                   Category Score: 0

5. Inmate has a gang or security threat group affiliation.

    If so, please specify:

6. Item 1 was checked. I have entered "Known Predator" code in category 12.

7. Two or more (excluding item 1) were checked. I have entered "Potential Predator" code in category 12.

8. Neither item 6 or 7 was checked. I have entered "No Score" code in category 12.
    ✓

Category: 12. SVP ASSESSMENT CODE                                          Category Score: 0

Potential Victim
    ✓

Potential Predator

Known Victim

Known Predator

No Score

Category: 13. OTHER FACTORS                                                Category Score: 0

Inmate was uncooperative and not interviewed.

Inmate's Arrest Affidavit(s) was reviewed.
    ✓

FCIC/NCIC and prior/current institutional records were reviewed.
    ✓

Inmate is a Veteran.
    ✓    If so, which branch?    Army

Referred to the inmate handbook on the housing kiosks
    ✓    Comment:

Inmate was given orientation.
    ✓    Comment:

Category: 14. ACCOMMODATIONS                                               Category Score: 0

Vision
    Comment:

Hearing
    Comment:

Physical
    Comment:

Developmental
    Comment:

Psychiatric
    Comment:

Interpreter Provided
    Comment:

## Comments and Status

**039**

**Classification Assessment: Admissions Assessment - 1822742 BELLO NOGUEDA, CARLOS RAUL**

| Officer ID: | apaolillo | Comments: | Minimum Custody Misd  SVP - Potential Victim. Veteran. ap7541 | Custody Score: | -2 |

Time : 12/2/2019 00:40:10

Inmate's Signature _____

Date: 12/02/2019 02:12

**040**

December 10, 2019 17:56
Jail Inmate Management System
Release Form - 1822742 BELLO NOGUEDA,CARLOS RAUL

## PINELLAS COUNTY SHERIFF'S OFFICE
### *Release Form*                                    *12/10/2019 17:56*

| Docket No. | SPN | Inmate Name | Housing Location | Security Level | RSA |
|---|---|---|---|---|---|
| 1822742 | 310765947 | BELLO NOGUEDA,CARLOS R | HD-3H4-3H4A-A-006 | Minimum Misd | MH37 |

Scheduled Release Date: 12/10/2019 17:55          Release Reason: Cash Bond

Release Event: REL -                              Release To Agency:

Release Auth By: MSC9670

Comments: CB # 422687

Authorized By: _MXRG70_                  Date: _12/10/19_

Officer's name: _MVB_                    Badge number: _9900_

Released to: _____             Time: _2020_

Inmate Signature: _CAOR_

**041**

PMF 7226

November 29, 2019 13:47

## Jail Inmate Management System
## Demographics - 1822742  BELLO NOGUEDA, CARLOS

| | |
|---|---|
| **Docket No:** 1822742 | **SPN:** 310786947  **SSN:** ▇▇▇▇  **Date Admitted:** 11/29/2019 12:20 |

**Last Name:** BELLO NOGUEDA    **First Name:** CARLOS    **Middle Name:** RAUL    **Suffix:** ▾

**Address:** 5701 12TH AVE SO    **City:** GULFPORT    **State:** FL ▾    **Zip Code:** 33707-0000

**ID Type:** Driver license ▾    **ID Number:** B452116823030    **ID State:** FL ▾    **PIN:** 16227423358    **Phone:** (727) 342-3147

**Booking Type:** Misdemeanor ▾    **Education:** ▾    **Arrest Type:** Traffic - FTA ▾

**Incident No:** 0    **Marital Status:** ▾    **Arrest Officer:** JANOVICH    02490251

**OBTS No:** 0    **Occupation:** ▾    **Arrest Agency:** Gulfport ▾

**SID:** 00000000    **Language:** ▾    **Arrest Date/Time:** 11/29/2019 11:07

**SO ID:** 520000651167    **Religion:** ▾    **Location of Arrest:**

**Sex:** Male ▾    **Current Age:** 37    **Height:** 511    **Eye:** Brown ▾    **FBI No:**

**Race:** Hispanic ▾    **Age at Arrest:** 37    **Weight:** 175    **Hair:** Blond ▾    **INS No:**

**DOB:** 08/23/1982    **POB:** MEXICO    **POB:** MM ▾    **SPOT:** ☐    **Complexion:** MED ▾    **FDCN:**

**Consulate:** ▾    **Citizenship:** OT    **Acct. Class:** GENERAL PI ▾    **DNA:**

**Comments:** NCIC/FCIC 1229 WA/VIPAR

CB

422687



NCIC ✓
WA ✓
VPR ✓
RU ✓

**042**

FL0520500

**COMPLAINT/ARREST AFFIDAVIT ~ CIRCUIT/COUNTY COURT – PINELLAS COUNTY, FLORIDA**

| OBTS # | | REPORT # GP19-25811 | | DOCKET # 1822742 |
|---|---|---|---|---|
| Person ID | | | SSN# | |

| Charge Description | Felony | X Misdemeanor | Warrant | Traffic | Ordinance | Traffic Citation # (If any) | Court Case # |
|---|---|---|---|---|---|---|---|

Charge
WARRANT ARREST (DWLSR W/KNOWLEDGE - FTA)

| Defendant's Name (Last, First, Middle) | DOB | Sex | Race | Ht | Wt | Hair | Eyes | Skin |
|---|---|---|---|---|---|---|---|---|
| BELLO NOGUEDA, CARLOS RAUL | 08/23/1982 | M | H | 511 | 175 | BLN | BRO | MED |

| Alias | DL # | State | Scars/Marks/Tattoos/Physical Features |
|---|---|---|---|
| KARLA BELLO | B-452-116-82-303-0 | FL | NONE |

| Local Address (Street, City, State, Zip Code) | Telephone | Place of Birth | Citizenship |
|---|---|---|---|
| 5701 12TH AVE S GULFPORT FL 33707 | 7273423147 | MEXICO | RESIDENCY |

| Permanent Address (Street, City, State, Zip Code) | Telephone | Employed by / School |
|---|---|---|
| 5701 12TH AVE S GULFPORT FL 33707 | 7273423147 | PEOPLE'S CHOICE |

| Weapon Seized Type | Indication of Drug Influence | Y | N X | UNK | Indication of Mental Health Issues | Y | N X | UNK | Indication of Alcohol Influence | Y | N X | UNK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Yes ☒ No | | | | | | | | | | | | |

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody ☐ Yes ☐ No ☐ Felony ☐ Misdemeanor |
|---|---|---|---|---|

| Co-Defendant's Name (Last, First, Middle) | DOB | Sex | Race | In Custody ☐ Yes ☐ No ☐ Felony ☐ Misdemeanor |
|---|---|---|---|---|

The undersigned swears that he/she has reasonable grounds to believe that the above named defendant on the **29** day of **NOVEMBER** **2019**

at approximately **10:51 AM**, at **5701 12TH AVE S, GULFPORT FL 33707** in Pinellas County did:

PINELLAS COUNTY WARRANT

ARREST ON WARRANT/CAPIAS # AC7QEYE

I HAVE NO KNOWLEDGE OF THIS CASE

BOND: $513

ISSUE DATE: 11/04/2019

WARRANT CANCELLED:
DATE: 11/29/2019 12:24:21 PM
CLERK: 55478
DEPUTY: 56952

Contrary to Florida Statute/Ordinance **901.02 / 322.34(2)**

| ARREST DATE: 11/29/2019 | Time 11:07 AM | Aggravating/Mitigating Factors |
|---|---|---|

| Booking Officer: WILLIAMS, M 56952 | Amount of Bond 513.00 | Bond Out Date | Time | ☐ a.m. ☐ p.m. |
|---|---|---|---|---|

| Victim Notified of Advisory? ___ Yes ___ No | Injuries to Victim? ___ Yes ___ No | Medical Treatment to Victim? ☐ Yes ☐ No |
|---|---|---|

The Court reviewed this complaint and finds there: ☐ is probable cause ☐ is not probable cause to detain defendant ☐ Bond Action, if any:

The probable cause determination is passed for: ☐ 24 Hrs ☐ 24 Hrs on showing of extraordinary circumstances   Received by Booking: 11/29/2019 12:24:23 PM

Pursuant to F.S. 92.525 and under penalty of perjury, I declare that I have read the foregoing document and that the facts in it are true.

GULFPORT POLICE DEPT

Declarant Signature                              Agency

OFFICER DAVID JANOVICH GP9274/625      02490251

Printed Name                              Declarant ID#

**REQUEST FOR INVESTIGATIVE COSTS, F.S. 938.27(1)**

| DATE | OFFICER | HOURS X PAY RATE | OR | COST |
|---|---|---|---|---|
| 11/29/2019 | JANOVICH | 1    30.32 | | $30.32 |
| | | | | |
| | | | | |

OTHER – Describe

Continuation sheet ☐ Yes ☐ No      TOTAL $ $30.32

COCR59 (Revised 10/2014)
815417   Copies to:

Jail

**043**

## CIRCUIT / COUNTY, PINELLAS COUNTY, FLORIDA
## CRIMINAL DIVISION

### CAPIAS

STATE OF FLORIDA
VS.
CARLOS RAUL BELLO NOGUEDA

Case Number:  AC7QEYE
UCN:  522019CT076013000APC
Person ID:  310765947

Race:  Hispanic                 Sex:  Male              DOB:  08/23/1982
Height:  6 Ft. 0 In.            Weight:                 Hair:  Unknown or Bald
Eyes:  Unknown

Alias(es):  Carlos Bellonogueda; Carlos Raul Bellonogueda

Address:  2520 1st Ave N
          St Petersburg Fl 33713

In the name of the State of Florida, to all and singular the sheriffs of the said states,

Greetings,

These are to command you as have heretofore been commanded to take CARLOS RAUL BELLO
NOGUEDA, if he be found in your county, and he safely keep, so that you have his body before the judge of
above court, at the courthouse in Clearwater, Pinellas County, instanter to answer an information found and
now pending in said court, for said county, for

Warrant Type:      FTA CAPIAS

Condition(s):

| Charge(s): | Statute(s): | Type: |
|---|---|---|
| Driving/while License/susp/revoked Had Knowledge | 322.34(2) | MISDEMEANOR |

Total Bond:   513.00

And have then and there this writ, with due return of your action endorsed thereon.

This Capias is issued at the direction of the Court

Witness, Ken Burke, as Clerk of the Circuit Court and , the seal of said court, at the courthouse at
Clearwater, Florida

Date:   November 04, 2019

Ken Burke
Clerk of the Circuit Court and Comptroller

By:  _____
                    Deputy Clerk

WARRANT CANCELLED
DATE
CLERK  5478
DEPUTY

**044**

**Pinellas County Sheriff's Office**
**Department of Detention and Corrections**

**Foreign National Notification Request**

Inmate Name: _Bello Noguedo, Carlos_    Docket: _1822742_

DOB: _Aug 23, 1982_    POB: _MEXICO_    Nationality: _MEXICAN_

Receiving Officer: _Mentzarts_    Date of Arrest: _11-29-19_

☒ Requested by Inmate    ☐ Refused by Inmate    ☐ *Mandatory Notification
*Mandatory notification must be made to the countries below, regardless of inmate's refusal

## Mandatory Notification Countries and Jurisdictions

| | | | |
|---|---|---|---|
| Albania | Ghana | St. Kitts & Nevis | United Kingdom (Fax Affidavits) |
| Algeria | Grenada | St. Lucia | - Anguilla |
| Antigua & Barbuda | Guyana | St. Vincent & Grenadines | - Ascension |
| Armenia | Hungary | Seychelles | - Bermuda |
| Azerbaijan | Jamaica | Sierra Leone | - British Antarctic |
| Bahamas | Kazakhstan | Singapore | - Cayman Islands |
| Barbados | Kiribati | Slovakia | - Chagos Archipelago |
| Belarus | Kuwait | Tajikistan | - England |
| Belize | Kyrgyzstan | Tanzania | - Falkland Islands |
| Brunei | Malaysia | Tonga | - Gibralter |
| Bulgaria | Malta | Trinidad & Tobago | - Guernsey |
| China | Mauritius | Tunisia | - Isle of Man |
| -Hong Kong | Moldova | Turkmenistan | - Jersey |
| -Macao | Nigeria | Tuvalu | - Montserrat |
| Costa Rica | Philippines | Ukraine | - Northern Ireland |
| Cyprus | USSR | Uzbekistan | - Pitcairn Islands |
| Czech Republic | Poland | Zambia | - Scotland |
| Dominica | Romania | Zimbabwe | - St. Helena |
| Fiji | Russia | | - Tristan Da Dunha |
| Gambia | | | - Turks & Caicos |
| Georgia | | | - Virgin Islands (British) |
| | | | -Wales |

*Completed in accordance with Article 36, Section (b), of the Vienna Convention on Consular Relations.*

Revised 09/25/19

**045**







# PINELLAS COUNTY SHERIFF'S OFFICE
# DETENTION AND CORRECTIONS BUREAU
# INMATE RECORDS UNIT

## FOREIGN NATIONAL NOTIFICATION

DATE: 11/30/2019                           DOCKET: 1822742
TIME: 0208
TO: Embassy/Consulate of Mexico                    Orlando        FL
                          (Country or Jurisdiction)      (City)      (State)

☒ Faxed to (407) 422-9633          ☐ Called _____
              (Fax Number)                        (Name and Title of Official)

FROM: Egelie #59768
Pinellas County Sheriff's Office, Pinellas County Jail
14400 49th Street North
Clearwater, FL  33762
Telephone: (727) 464-6415
Fax: (727) 464-6113

**Subject: Notification of Arrest/Detention of a National of Your Country**
We arrested/detained the following foreign national, whom we understand to be a
national of your country, on 11/29/2019                    .
Name: Mr./Ms. Carlos Bello Nogueda
DOB: 8/23/1982
POB: Mexico
Alien Registration Number (ARN) _____
Admission Number (ADM) _____
Passport Number (PP) _____
Case#: FTA DWLSR          Charge: AC7QEYE-1
Case#:_____      Charge: _____
Case#:_____      Charge: _____

To arrange for consular access, please call (727) 464-6415 between the hours of 0800
and 1600 hours.  You may also visit our website for additional information:
www.pcsoweb.com

**049**

## Cash Appearance Bond
### State of Florida
### Pinellas County

Offender:  BELLO NOGUEDA,CARLOS RAUL

Cash Bond number:  422687

Docket Number:  1822742          SPN:  310765947

Defendant.
BELLO NOGUEDA,CARLOS RAUL
5701 12TH AVE SO
GULFPORT          FL     33707-0000

Depositor:
FOGLIA, STEPHEN P
1902 ALDER WAY
BRANDON          FL     33510-

I, the above named person, have deposited with the Pinellas County Sheriff's Office the sum of $513.00 as security for the appearance of the defendant named above to answer to the following charge(s):

Charge(s):
1.  FTA DWLSR W/KNOWLEDGE

Case number:
AC7QEYE-1

Bond amount:
$513 00

The above bond was taken and sum received this 10 day of December, 2019.

BY: _____          58205
_____

     Goodrich                                    Payroll number

F.S. 903.286 requires the Clerk of the Court to withhold from the return of a cash bond posted on behalf of a criminal defendant by a person other than a bail bond agent, sufficient funds to pay any unpaid court fees, court costs, and criminal penalties.

**This means that if the defendant for whom you are posting bond owes costs and penalties, those fees will be taken out of the bond money you have posted.  You may receive only a portion or none of the posted bond money back even though the defendant makes all timely required court appearances.**

**However, if the defendant fails to appear at the time, date and place required, the bond money will be forfeited.**
F.S. 903.26 (2)(b)

_____
Depositor (signature)

Comments:  CASH BOND REF 27431429

**050**



Government Payment Service
GovPayNet
7102 Lakeview Parkway West Drive
Indianapolis, IN 46268
24hr. Customer Service #: 888-604-7888

# Cash Bail/bond Payment Confirmation (Ref #: 27431429)

**PLC:** **Pinellas County Sheriff's Office**                     **Date:** 12/10/2019 16:49 EST
**6343**     **14400 49th St N**
          **Clearwater, Florida 33762**
          **For: Cash Bail/bond**

## TRANSACTION INFORMATION

| | | | |
|---|---|---|---|
| **Defendant's Name:** | Carlos Raul Bello Nogueda | **Transaction Reference #:** | 27431429 |
| **Docket #:** | 1822742 | **Transaction Date/Time:** | 12/10/2019 15:27 EST |
| **Case #:** | Ac7qeye-1 | | |

## BILLING INFORMATION

**Name:**          Stephen P Foglia
**Address:**       1902 Alder Way
**City, State Zip:**  Brandon, De 33510
**Phone #:**       (813)494-3634
**Card #:**

## PAYMENT INFORMATION

| | |
|---|---|
| **Approval #:** | 02112A |
| **Payment Amount:** | $513.00 |
| **Service Fee:** | $35.91 |
| **Total Amount:** | $548.91 |

## The service fee is not refundable.

**ATTENTION CARDHOLDER**
If you have questions about the processing of your payment, please call GovPayNet at 888-604-7888.

### Thank you for using GovPayNet

© 2007-2019 Government Payment Service, Inc.                                    Form #: EUR



STRIP SEARCH

P/R 9837

Date: 12-1-19

P/R 9180

Time: 0228

# Movement Sheet

RECORD #: 152707301
LAST NAME: BELLONOGUEDA
FIRST NAME: CARLOS
DOCKET #: 1822742



*Cash Bond*

ATW

**Pinellas County Sheriff's Office**
Department of Detention and Corrections
14400 49th Street North Clearwater, FL 33762 (727) 464 6415

| NAME: | CARLOS BELLONOGUEDA | RACE: | Hispanic |
| ALIAS: | KARLA BELLO | SEX: | M |
| DOB: | 08/23/1982 | HEIGHT: | 5' 11" |
| | | WEIGHT: | 175 lbs |
| HAIR COLOR: | Black | EYE COLOR: | Brown |

| | | HEAD | CHEST | BACK | ARM L. R | HAND L. R | FINGERS L. R | LEG L. R | FOOT L. R |
|---|---|---|---|---|---|---|---|---|---|
| SCARS | | N | N | N | N N | N N | N N | N N | N N |
| MARKS | | N | N | N | N N | N N | N N | N N | N N |
| TATTOOS | | N | N | N | N N | N N | N N | N N | N N |
| MISSING | | N | N | N | N N | N N | N N | N N | N N |

SMT
COMMENTS:

Video Booked
P/R# 1314A Date: 11/29/2019
Fingerprints
P/R# Beag Date: 11/29/19
Phone Call Offered
P/R# 4r3y Date: 11-29-19
Pre-Classified
P/R# Date:

Medical Screening Complete
Nurse:
Date: 11/29/17

| DATE | FROM | TO | INIT | DATE | FROM | TO | INIT |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| 11/29/19 | UDV | 3CL | | | | | |
| 12/2 | 3CL | 3CX | | | | | |
| 12/6 | 3CX | 3HC-B | | | | | |
| 2/6/19 | 3HC | 344 | | | | | |
| | 344 | ATW | | | | | |

**053**

# EXHIBIT "G"

# DDC Incident Detail Report

Report Number:  DDCI-**205807**
Incident Date: **12/2/2019 1615**
Report Type: **General**
Division: **CENTRAL DIVISION**

## Incident Information

| | | | |
|---|---|---|---|
| **Primary Incident Nature:** | MEDICAL | **Incident Location:** | 6C1 |
| **Secondary Incident Nature:** | INFORMATION | **Date/Time Occurred:** | 12/2/2019 1615 |
| **Tertiary Incident Nature:** | | **Date/Time Reported:** | 12/2/2019 1640 |
| **Serious Incident Report:** | N  **CRT:** N | **Evidence/Contraband Dispo:** | N/A |

## Subjects Involved

| Position | First Name | MI | Last Name | Docket/PR | Sex | IM Housed | IM Relocated | Involvement |
|---|---|---|---|---|---|---|---|---|
| DEPUTY | | | MOSES | 60017 | | | | REPORTING PERSON |
| CORPORAL | | | MERRITT | 56491 | M | | | STAFF MEMBER |
| LIC'D PRACT NURSE | | | HILERY | 57925 | F | | | NURSE |
| | CARLOS | C | BELLO NOGUEDA | 1822742 | M | CEN-6C1-UN01 | REMAINS | INMATE |

## Narrative

While viewing my ASK requests in 6C1, Inmate Bello Nogueda complained of having chest pains via the Kiosk. He showed no medical distress while eating his meal tray so a "Code 99" wasn't initiated. I notified 6th Floor Control via telephone who advised me to send him out to see Nurse Hilery. He was pat searched prior to exiting 6C1. Nurse Hilery medically evaluated and cleared him to remain in his current housing situation. Corporal Merritt was made aware of the situation.

## Supplements

| Date/Time | User | Supplement |
|---|---|---|
| 12/2/2019 5:06:05 PM | CORPORAL MERRITT (56491) | I agree with the authored report generated by Deputy Moses and the actions taken. Sergeant Franjesevic responded. |
| 12/2/2019 5:07:27 PM | SERGEANT FRANJESEVIC (55432) | I was notified and responded. I agree with the actions taken by staff as outlined in this report. Inmate Nogueda was medically evaluated for his alleged, "chest pains" by Nurse Hilery and cleared to remain in his current housing assignment. Kiosk Case Message is attached to this report. Acting Shift Commander, Sergeant Vieno was notified. SGT. JF55432 |

## Notifications

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Shift Supervisor:** | Sergeant Franjesevic | **Time:** | 1615 | **Shift Commander:** | Sergeant Vieno | **Time:** | 1615 |
| **Division Commander:** | Captain Napier | **Time:** | | **Department Commander:** | Colonel Danzig | **Time:** | |
| **Medical:** | Nurse Hilery | **Time:** | 1630 | **Classification:** | N/A | **Time:** | N/A |
| **911:** | | **Time:** | N/A | **Fire Rescue:** | N/A | **Time:** | N/A |
| **DIU:** | N/A | **Time:** | N/A | **Adm Invest Div:** | N/A | **Time:** | N/A |
| **Other:** | N/A | **Time:** | N/A | | | | |

## Other

| | |
|---|---|
| **Disciplinary Report.:** | N |
| **Photo(s)** | N |
| **Use Of Force:** | N |
| **Acc Injury** | N |
| **Other** | N |

## Actions

| Date/Time | User | Action |
|---|---|---|
| 12/2/2019 5:08:56 PM | SERGEANT FRANJESEVIC 55432 | Level 1 Approved |
| 12/2/2019 5:19:37 PM | SERGEANT FRANJESEVIC (55432) 55432 | Submitted |
| 12/2/2019 5:19:41 PM | SERGEANT VIENO 56189 | Level 2 Approved |

## Attachments

| File Name | Comment | User | Date |
|---|---|---|---|
| Nogueda #1822742 (Case #809314).pdf | Kiosk Message | SERGEANT JASON P FRANJESEVIC (55432) | 12/2/2019 5:08:35 PM |
| RPT 205807.tif | | ADMINISTRATIVE ASSISTANT MARK J MURPHY (59443) | 12/3/2019 8:09:04 AM |

Print

**055**

ASK Admin Reports

12/2/2019
4:48 PM

**Pinellas County**
**Print Message Report**
**From 1/1/1900 To 12/2/2019**

Case #: 809314

| | | |
|---|---|---|
| **Inmate:** BELLO NOGUEDA, CARLOS | **ID:** 1822742 | **Type:** Request |
| **Recipient:** HOUSING DEPUTY | **Created:** 12/2/2019 3:53 PM | **Category:** 01. General Request |
| **Cellblock:** CEN-6C1-UN01-L7-001 | | **Sub-Catgory:** 4. Division Commander Request |
| **Case Cellblock:** CEN-6C1-UN01-L7-001 | | **Status:** Closed, Unfounded |

| From | To | Message | Entered |
|---|---|---|---|
| BELLO NOGUEDA, CARLOS | HOUSING DEPUTY | i have not recived hrt. i signed to se arnp nurse on friday. iv been off spironlactone,finersteride, and can feel chest pains. hormones unbalalanced.  the lack of feedback about when ill see the arnp. | 12/2/2019 3:53:00 PM |
| SGT. FRANJESEVIC #55432 | BELLO NOGUEDA, CARLOS | Inmate Nogueda was medically evaluated for his "Chest Pains" on 12/02/2019 at 1645 hours.  Per Nurse Hillary, the inmate was cleared to remain in current housing. | 12/2/2019 4:48:00 PM |

**056**

ASK Admin Reports

12/2/2019
4:48 PM

**Pinellas County**
**Print Message Report**
**From 1/1/1900 To 12/2/2019**

DDCI - 205807

**Case #:** 809314
    **Inmate:** BELLO NOGUEDA, CARLOS
    **Recipient:** HOUSING DEPUTY
    **Cellblock:** CEN-6C1-UN01-L7-001
    **Case Cellblock:** CEN-6C1-UN01-L7-001

**ID:** 1822742
**Created:** 12/2/2019 3:53 PM

**Type:** Request
**Category:** 01. General Request
**Sub-Catgory:** 4. Division Commander Request
**Status:** Closed, Unfounded

| From | To | Message | Entered |
|---|---|---|---|
| BELLO NOGUEDA, CARLOS | HOUSING DEPUTY | i have not recived hrt. i signed to se arnp nurse on friday. iv been off spironlactone,finersteride, and can feel chest pains. hormones unbalalanced.  the lack of feedback about when ill see the arnp. | 12/2/2019 3:53:00 PM |
| SGT. FRANJESEVIC #55432 | BELLO NOGUEDA, CARLOS | Inmate Nogueda was medically evaluated for his "Chest Pains" on 12/02/2019 at 1645 hours.  Per Nurse Hillary, the inmate was cleared to remain in current housing. | 12/2/2019 4:48:00 PM |

**057**

# EXHIBIT "H"

# DDC Incident Detail Report

Report Number: DDCI-**206012**
Incident Date: **12/6/2019 1030**
Report Type: **General**
Division: **CENTRAL DIVISION**

## Incident Information

| | | | |
|---|---|---|---|
| **Primary Incident Nature:** | CLOSE OBSERVATION STATUS | **Incident Location:** | 6th Floor Nurse's Station |
| **Secondary Incident Nature:** | INMATE RELOCATION | **Date/Time Occurred:** | 12/6/2019 1030 |
| **Tertiary Incident Nature:** | | **Date/Time Reported:** | 12/6/2019 11:50 |
| **Serious Incident Report:** | N  **CRT:** N | **Evidence/Contraband Dispo:** | n/a |

## Subjects Involved

| Position | First Name | MI | Last Name | Docket/PRS | Sex | IM Housed | IM Relocated | Involvement |
|---|---|---|---|---|---|---|---|---|
| CORPORAL | | | MERRITT | 56491 | | | | REPORTING PERSON |
| CLASSIFICATION SPECIALIST | | | WIDUA | 59431 | F | | | CLASS SPECIALIST |
| DEPUTY | | | COX JR | 54381 | M | | | STAFF MEMBER |
| DEPUTY | | | BERJE | 54153 | M | | | STAFF MEMBER |
| LIC'D MENTAL HEALTH COUNSELOR | | | DIXON | 59068 | F | | | OTHER |
| | CARLOS | C | BELLO NOGUEDA | 1822742 | M | 6C1 | HD-2H2-2H2B | INMATE |

## Narrative

Inmate Bello-Nogueda was seen by LMHC Dixon in her office on the 6th floor. Per LMHC Dixon, Bello-Nogueda was placed on Close Observation status. Utilizing the Attorney Visitation room for privacy, his personal undergarments were confiscated by me. He was then seated adjacent to the Officer's Station in the 6th floor hallway and kept under constant observation. Once his relocation was scheduled in JIMS, I escorted him to Pre-Housing to await transport to the Healthcare Building. All of his personal property was inventoried and sent to the Property Room. Classification Specialist Widau authorized the relocation in JIMS. Sergeant Franjesevic was notified.

## Supplements

| Date/Time | User | Supplement |
|---|---|---|
| 12/6/2019 12:49:21 PM | SERGEANT FRANJESEVIC (55432) | I was notified and agree with the actions taken by staff as outlined in this report. Acting Shift Commander, Sergeant Vieno was notified. SGT. JF55432 |

## Notifications

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Shift Supervisor:** | Sergeant Franjesevic | **Time:** | 1030 | **Shift Commander:** | Sergeant Vieno | **Time:** | 1030 |
| **Division Commander:** | Captain Napier | **Time:** | | **Department Commander:** | Colonel Danzig | **Time:** | |
| **Medical:** | LMHC Dixon | **Time:** | 1030 | **Classification:** | Widau | **Time:** | 1030 |
| **911:** | | **Time:** | n/a | **Fire Rescue:** | | **Time:** | n/a |
| **DIU:** | n/a | **Time:** | n/a | **Adm Invest Div:** | n/a | **Time:** | n/a |
| **Other:** | n/a | **Time:** | n/a | | | | |

## Other

| | |
|---|---|
| **Disciplinary Report.:** | N |
| **Photo(s)** | N |
| **Use Of Force:** | N |
| **Acc Injury** | N |
| **Other** | N |

## Actions

| Date/Time | User | Action |
|---|---|---|
| 12/6/2019 1:58:05 PM | CORPORAL MERRITT 56491 | Submitted |
| 12/6/2019 1:59:18 PM | SERGEANT FRANJESEVIC 55432 | Level 1 Approved |
| 12/6/2019 2:51:09 PM | SERGEANT VIENO 56189 | Level 2 Approved |

## Attachments

| File Name | Comment | User | Date |
|---|---|---|---|
| BelloNogueda #1822742.pdf | Property Inventory | SERGEANT JASON P FRANJESEVIC (55432) | 12/6/2019 1:27:37 PM |
| Bellonogueda Carlos.tif | | ADMINISTRATIVE ASSISTANT MARK J MURPHY (59443) | 12/9/2019 10:54:48 AM |

[ Print ]

**059**

**PINELLAS COUNTY SHERIFF'S OFFICE**
**DEPARTMENT OF DETENTION AND CORRECTIONS**
**INMATE'S PERSONAL PROPERTY INVENTORY FORM**

Name: BELLO NOGUEDA, CARLOS    Docket #: 1822742

Location: 2H2    Date: 12-6-19    Report #: 206012

| NO. | HYGIENE ITEMS | NO. | CLOTHING | NO. | FOOD ITEMS |
|---|---|---|---|---|---|
| | Toothbrush | | Shirts | | Chips |
| | Toothpaste | ✓ | Underwear | | Cookies |
| | Hair Conditioner | | Socks | | Soups |
| | Deodorant | | Thermal Top | | Candy Bars |
| | Brush | | Thermal Bottom | ✓ | Candy Bags |
| | Shampoo | | Shorts | | Coffee |
| | Comb | | Bra | | Pastries |
| | Soap | | Other: | | Condiments |
| | Soap Dish | | | ✓ | Other: |
| | Gel | | | | |
| | Pads/Tampons | | | | |
| | Hair Tie | | | | |
| | Powder | | | | |
| | Cotton Swabs | | | | |
| | Chap Stick | | **PAPERS/BOOKS** | | |
| | Lotion | | Cards | | |
| | Other: | | Letters | | |
| | | | Envelopes | | |
| | | | Legal Papers | | |
| | **MISC. ITEMS** | | Books | | |
| | Radio | | Bible | | |
| | Earbuds | | Discharge Paperwork | | |
| | Batteries | | Bus Pass | | |
| | Cups | | Misc. Paperwork | | **MEDICAL** |
| | Bowls | | Certificate | | Cough Drops |
| | Lids | | Postcards | | Aspirin |
| | Spoon | | Magazines | | Eye Drops |
| | Rosary | | Pictures | | Vitamins |
| ✓ | Other: PENCILS (COLORED) | | Other: | | Glasses |
| | | | | | Brace |
| | | | | | CPAP Machine |
| | | | | | Other: |
| | | | | | |

Inventoried By: _____    Payroll # 6491    Date: 12-6-19

Verified By: _____    Payroll # 5891    Date: 12-6-19

Property Clerk: _____    Payroll # _____    Date: _____

Return county property to issuing department (Property, Laundry, Library, etc.)

Revised 7/24/19

**060**

**PINELLAS COUNTY SHERIFF'S OFFICE**
**DEPARTMENT OF DETENTION AND CORRECTIONS**
**INMATE'S PERSONAL PROPERTY INVENTORY FORM**

Name: _BELLO NOGUEDA, CARLOS_     Docket #: _1822742_

Location: _2H2_     Date: _12-6-19_     Report #: _206012_

| NO. | HYGIENE ITEMS | NO. | CLOTHING | NO. | FOOD ITEMS |
|---|---|---|---|---|---|
| | Toothbrush | | Shirts | | Chips |
| | Toothpaste | ✓ | Underwear | | Cookies |
| | Hair Conditioner | | Socks | | Soups |
| | Deodorant | | Thermal Top | | Candy Bars |
| | Brush | | Thermal Bottom | | Candy Bags |
| | Shampoo | | Shorts | ✓ | Coffee |
| | Comb | | Bra | | Pastries |
| | Soap | | Other: | | Condiments |
| | Soap Dish | | | ✓ | Other: |
| | Gel | | | | |
| | Pads/Tampons | | | | |
| | Hair Tie | | | | |
| | Powder | | | | |
| | Cotton Swabs | | | | |
| | Chap Stick | | **PAPERS/BOOKS** | | |
| | Lotion | | Cards | | |
| | Other: | | Letters | | |
| | | | Envelopes | | |
| | | | Legal Papers | | |
| | **MISC. ITEMS** | | Books | | |
| | Radio | | Bible | | |
| | Earbuds | | Discharge Paperwork | | |
| | Batteries | | Bus Pass | | |
| | Cups | | Misc. Paperwork | | **MEDICAL** |
| | Bowls | | Certificate | | Cough Drops |
| | Lids | | Postcards | | Aspirin |
| | Spoon | | Magazines | | Eye Drops |
| | Rosary | | Pictures | | Vitamins |
| ✓ | Other: _PENCILS_ | | Other: | | Glasses |
| | _(COLORED)_ | | | | Brace |
| | | | | | CPAP Machine |
| | | | | | Other: |
| | | | | | |

Inventoried By: _____     Payroll # _6491_     Date: _12-6-19_

Verified By: _____     Payroll # _5891_     Date: _12-6-19_

Property Clerk: _____     Payroll # _____     Date: _____

Return county property to issuing department (Property, Laundry, Library, etc.)

Revised 7/24/19

**061**

# EXHIBIT "I"

Misgendered and mistreated in jail: A Pinellas transgender woman shares her story

*Tampa Bay Times*

SUBSCRIBE

ADVERTISEMENT



LONG READS

# Misgendered and mistreated in jail: A Pinellas transgender woman shares her story

What Karla Bello endured in the Pinellas County jail is emblematic of the way transgender people are treated while incarcerated, say advocates for transgender rights.

   



Karla Bello, 37, takes a break under the Tarpon Springs home where she lives with a home healthcare client. In November, Bello, a transgender woman, was booked into the Pinellas County jail and placed into male housing, where she said she was repeatedly misgendered and mistreated by jail deputies. [ DOUGLAS R. CLIFFORD | Times ]

By **Kathryn Varn**

Published Mar. 10
Updated Mar. 13

**Click here to read this story in Spanish.**

ADVERT

063



*Tampa Bay Times*                                                                    SUBSCRIBE

When the 37-year-old transgender woman was booked on a charge stemming from unpaid traffic fines, she told a jail worker she was a woman. She had started transitioning in her early 30s.

But she was strip-searched by male deputies and placed in a male cell block. Deputies called her "sir."

She couldn't wear her hair extensions or makeup, nor did she have access to her hormone medication — the basics she needed to treat a medical condition called gender dysphoria. It can occur when one's gender doesn't align with their sex assigned at birth.

ADVERTISEMENT

"It's so stupid to cry about hair and about makeup," she told the *Tampa Bay Times*, her voice breaking. "But when they take who you say you are away — oh my God."



SPONSORED CONTENT

*Tinnitus? When The Ringing Won't Stop, Do This (It's Genius)* ↗

*By Phytage Labs*

By day seven, she was suicidal, under close observation by jail staff.

"I'm going to die in here,'" she remembers thinking. "I'm just going to end my life."

Incarceration is already dehumanizing. But it can be even more unforgiving for those who faced discrimination and marginalization before they were locked up.

What Bello endured is emblematic of the way transgender people are treated while incarcerated, advocates for transgender rights say.

Studies show they are disproportionately locked up and more likely to be abused by staff and fellow inmates. That can lead to trauma and depression and, in

064

*Tampa Bay Times*

SUBSCRIBE

**RELATED:** Florida prisons are miserable. They're even worse for transgender inmates.

Pinellas Sheriff Bob Gualtieri said his jail staff does the best it can to address the needs of inmates, but he acknowledged they at times mistreated Bello over her 11 days in jail — particularly in misgendering her.

The Sheriff's Office encourages deputies to use the names and pronouns true to the individual, he said. But it's not a written policy.

"We don't need to traumatize these people," Gualitieri said, "so I'll look at that."

ADVERTISEMENT



• • •

Born in Mexico, Bello grew up in Wimauma in a Catholic family.

At age 7 or 8, she said, she started to realize what she felt inside didn't align with the way she looked.

Soon after, she stumbled on a drag queen performing on a TV show. The revelation, that she could wear glitzy dresses and bright lipstick, excited her.

Then her mother spoke up:

"Oh, those people are disgusting," Bello recalled her saying.

The reaction shut down her self-exploration for years.

She graduated from Wharton High School in New Tampa in 2000, then enlisted in the Army. Bello tried to bury the sense that she was a woman, hoping it would diminish over time.

She tried dating men while stationed in Germany, but the homophobic ridicule from fellow soldiers was too much to handle. Ultimately, she was honorably discharged, she said, under the military's "don't ask, don't tell" policy, which banned gay and lesbian service members until it was repealed in 2011.



*Karla Bello washes dishes at the home where she lives with a home healthcare client. [ DOUGLAS R. CLIFFORD | Times ]*

A D V E R T I S E M E N T



POWERED BY CONCERT

It took time and prayer — Bello still finds solace in a nondenominational relationship with God — before she reached a point where she believed she could start living as a woman.

She threw out her male clothes and finally started wearing lipstick, just as she'd dreamt of since childhood.

She started hormone therapy about four years ago, at first under the supervision of a doctor. But the transition took a toll on her caregiving business. She said she lost jobs due to discrimination.

She found another way to get hormones, without pricey doctor visits, and shifted her focus to launching her own business.

Despite those setbacks, she felt good.

"I've never felt more comfortable in my skin and happier than when I started taking the hormones," she said.

Then in 2018, cameras caught her running red lights in Tampa and Brandon. She was mailed two tickets, each requiring her to pay a $261 fine.

066

*Tampa Bay Times*

SUBSCRIBE

Eventually, the state suspended her license. When she was pulled over again in October 2019, this time for having a broken taillight, police gave her another ticket for driving with a suspended license.

She was supposed to appear in court Nov. 4.

Bello's life continued to unravel. Friendships and relationships started to fall apart. That included her mother, Bello said, who didn't accept her transition. Bello cut off contact.

ADVERTISEMENT



POWERED BY CONCERT

By the time of her court hearing, Bello said she was deeply depressed. Just getting out of bed was a challenge.

"I didn't feel like anyone loved me," she said.

RELATED: A Pinellas jail deputy broke a prisoner's arm. Does the jail have a problem?

When she didn't make it to her court hearing, authorities issued an arrest warrant.

Later that month, Bello intervened in a family issue involving one of her home healthcare clients. She called the police, knowing the risk she was taking.

Four days after officers responded to her call, one drove by that Gulfport home and checked the license plate on a car in the driveway.

It was Bello's Nissan Cube, and a records search turned up the active warrant. Gulfport police arrested her on a charge of failing to appear in court. She was booked into the Pinellas County jail Nov. 29.

Her bail was set at $513.

• • •

News reports paint a bleak picture of how transgender inmates, particularly women of color, are treated.

A Florida woman was found dead in her cell in 2016 after the state Department of Corrections denied her request for a name change.

*Tampa Bay Times*

SUBSCRIBE

The same year, a lawsuit filed on behalf of 170 trans women alleged systemic abuse behind bars in Colorado.

In 2017, President Barack Obama's administration alleviated some of the risk by allowing transgender inmates to be housed according to their gender identity.

ADVERTISEMENT



POWERED BY CONCERT

Those protections have been weakened under President Donald Trump, said Richard Saenz, a senior attorney for the LGBTQ civil rights organization Lambda Legal. Saenz specializes in criminal justice and police misconduct.

In 2018, the federal Bureau of Prisons changed its transgender offender rules. Now, inmates are housed initially based on one's "biological sex" — a term the government doesn't define, Saenz noted — instead of their gender identity. The new rules also limit transgender inmates' access to hormones and other medical options.

Denying gender dysphoria treatment is a well-documented problem across the country. Courts have repeatedly sided with inmates who have challenged these restrictions, deciding that the rules violate Eighth Amendment protections against cruel and unusual punishment.

Treating gender dysphoria can go beyond hormones and surgery, said Rodrigo Heng-Lehtinen, deputy executive director for policy and action at the National Center for Transgender Equality. It also can include products and procedures that help someone express their gender identity, such as makeup, hair extensions and laser hair removal.

"The stakes are really high," he said. "Things that in the outside world may seem like just a matter of appearance — it can be a matter of life or death."

RELATED: 'This ends now': Florida prison system ordered to accommodate transgender inmate

The new, harsher rules don't apply to inmates in state prisons or, as in Bello's case, county jails, Saenz said. But he said they can set the tone for how trans people are treated in those institutions.

ADVERTISEMENT

068

Ⓒ POWERED BY CONCERT

Florida's prison system determines housing assignments on a case-by-case basis that takes into consideration the inmate's safety and prison security. The Department of Corrections also has a policy for how to identify and treat inmates diagnosed with gender dysphoria.

But there are no consistent rules for how transgender people should be treated in Florida's county jails. The Florida Model Jail Standards Committee decides how prisoners should be treated in them. The committee is made up of three sheriffs, a county commissioner and a county director of corrections.

Those standards do not even mention transgender people.

The issue has not been raised before the committee, said James Aguiar, a Sumter County Sheriff's Office accreditation inspector who works with the group.

Even if there were rules to protect transgender inmates, Aguiar said the jail standards committee has no way to sanction a jail that doesn't comply.

The Prison Rape Elimination Act, a federal law passed in 2003 to protect vulnerable inmates from sexual violence, offers some guidance to prisons and jails for how to treat transgender prisoners. However, advocates say it is often not enforced.

Trans rights activists complain that this has allowed each facility to set its own rules.

"Depending on what your zip code is dictates which rights and protections you have," said Gina Duncan, director of transgender equality for Equality Florida.

ADVERTISEMENT



Ⓒ POWERED BY CONCERT

For example, Pasco County allows transgender inmates to pick the gender of the deputy who will search them, while Hillsborough County has no policies guiding how transgender prisoners should be searched.

069

*Tampa Bay Times*                                                               SUBSCRIBE

In Duval County jails, a policy allows transgender inmates and other at-risk inmates to be kept in an open dorm away from the jail's regular population.

Officer Christian Hancock, a sheriff's spokesman, said inmates are let out of their cells one at a time for limited periods.

Not only are the rules inconsistent, but there's no mechanism for tracking how many trans people cycle through Florida's county jails. None of Tampa Bay's jails keep count.

The state prison system does, although they may be undercounted if inmates don't disclose their gender identity.

The Florida Department of Corrections said last week there were about 410 inmates in state prisons who identified as transgender and about 150 diagnosed with gender dysphoria.

• • •

When Bello was booked into the jail, she was wearing a dress, boots, a cardigan, blond hair extensions and a wire bra, jail records show.

Bras with underwire are prohibited in the jail, so it was confiscated along with everything else, per jail policy.

Bello hasn't changed her name or gender, so her name and sex assigned at birth still show up on arrest documents. The process can cost hundreds of dollars, and Bello hasn't been able to afford it — a common barrier for transgender people who want to change their legal names.

ADVERTISEMENT



⊟ POWERED BY CONCERT

Bello said she told a jail staffer she was a woman, that her name was Karla.

Still, she said, what followed was an "onslaught of misgendering." Deputies used her deadname, or her birth name. Misgendering even extended to her jail records.

It wore her down, she said. She didn't know how else to explain her situation.

She was placed in temporary housing with men. Many inmates leave on bail, but Bello couldn't afford hers, and said she had no one to call for help.

assess whether the inmate poses a threat to others or could be a target for sexual violence. Gender identity and sexual orientation are taken into account.

Bello was labeled a "potential victim," records show. Those inmates have the option of being placed in protective custody, akin to solitary confinement.

In the Pinellas jail, protective custody means living alone, save for time out for showers, an hour of recreation and limited activities, such as religious services or visits from the outside.

Gualtieri said Bello declined when his staff gave her the option of being placed in protective custody. Bello said she wasn't given any such option.

She was placed in a male housing unit. It was uncomfortable, she said, having to change clothes in corners. One inmate used a slur for transgender people against her, she said.

ADVERTISEMENT



POWERED BY CONCERT

She now wishes she could have stayed "anywhere but … with the men."



Karla Bello sorts through her makeup while getting ready for a walk. [ DOUGLAS R. CLIFFORD | Times ]

Why couldn't Bello stay with women, the gender with which she identifies? The jail classification policy calls for assessing the needs of each inmate. But in practice, trans inmates generally have only two options: protective custody, or

SUBSCRIBE

"I know enough about operating that facility and the issues and the challenges that I'm not going to put someone with male genitalia in the female side," he said. "There's no way I'm going to do that and have a situation where people are having sex in the jail."

The sheriff said there have been complaints when trans people were housed with the gender they identify with — but that has happened at Safe Harbor, a homeless shelter his agency runs in the jail complex, he said, not inside the jail itself.

Using only genitalia to determine housing is a violation of the federal Rape Elimination Act. Gualtieri said his agency is not violating federal policy because inmates who don't feel safe have the option of protective custody.

ADVERTISEMENT



Studies, though, show that option puts inmates at risk of severe psychological harm.

Even Gualtieri himself described that option as "hell."

• • •

Bello was not only assigned to male housing but strip-searched by two male deputies.

That violated Sheriff's Office policy. If it had been followed, a female deputy would have searched Bello from the waist up, then a male deputy would have finished the search.

Bello said she would have requested a female deputy had she known that was an option. Instead, she said nothing. She just wanted to get it over with.

"It felt like I didn't have a choice," she said.

When the *Times* asked Gualtieri to review Bello's treatment, he initially said the search was done properly. But when a *Times* reporter pointed out a record that showed otherwise, he said he had based his earlier answer on incorrect information.

Still, he defended his deputies, saying that, dressed in jail scrubs surrounded by other men, Bello "from what everyone is saying presented as a male." He said he would look at ways to help transgender people understand their options while in jail.

072

*Tampa Bay Times*

SUBSCRIBE

---

**RELATED:** Pinellas Sheriff Bob Gualtieri is now the star cop in Florida politics. Who is he, and how did he get there?

---

That explanation did not sit well with Bello. She said she repeatedly told deputies her name and gender. She also pointed out that her gender was clear based on her appearance when she first entered the jail.

ADVERTISEMENT



POWERED BY CONCERT

Bello also struggled to treat her gender dysphoria.

She didn't have a current prescription for hormone therapy, which Gualtieri said is why she couldn't continue the treatment in jail. The sheriff said he wouldn't have had a problem with a jail doctor prescribing them, but Bello wasn't there long enough for that.

When she was booked into the jail she had no money for the commissary, she said, so she couldn't buy a bra to replace the one that was confiscated. She wasn't in jail long enough to obtain a package of necessities for indigent inmates that includes a bra.

Her hair extensions were confiscated. She didn't have access to tweezers to remove facial hair and, unlike the razors that inmates are provided, keep her skin soft and stubble-free. So she turned to toothpaste, letting it dry on her face and plucking each hair with her fingers.

And she didn't have makeup. Gualtieri said no inmates are allowed to wear makeup, regardless of gender identity.

So Bello used colored pencils from the commissary, gifted to her by a departing inmate, to mimic it. Deputies told her to remove it, she said. She thought in vain of the message from an old cosmetics commercial: "When you're having a bad day, just put on red lipstick."

073



Tampa Bay Times                                                    SUBSCRIBE

Karla Bello applies lipstick before taking a walk. [ DOUGLAS R. CLIFFORD | Times ]

ADVERTISEMENT

POWERED BY CONCERT

"I understand it's jail. It's not supposed to be comfortable," Bello said. "But at the same time I'm trying to articulate why it was so wrong and painful and inhumane."

She spiraled into a deep depression and ended up in a single cell, under close observation by jail staff.

Up until that point, she was allowed to continue wearing a binding bottom undergarment called a gaff. But when she was placed under observation, deputies confiscated it as a safety precaution.

It was one blow too many, Bello said. She had a breakdown.

"I was so angry," she said. "I went crazy in there. They made me crazy."

• • •

**Need help?** If you or someone you know is contemplating suicide, reach out to the 24–hour National Suicide Prevention Lifeline at 1-800-273-8255; contact the Crisis Text Line by texting TALK to 741741; or chat with someone online at suicidepreventionlifeline.org. The Crisis Center of Tampa Bay can be reached by dialing 211 or by visiting crisiscenter.com.

• • •

074

*Tampa Bay Times* SUBSCRIBE

On the other side of the jail video screen was Tampa lawyer Rook Elizabeth Ringer, who is also transgender. She heard about Bello's plight from a friend and came to check on her. Bello shared her story.

Ringer reached out to members of Trans Mission Media, a local transgender advocacy organization. The organization has an arm called the Canary Project focused on helping people like Bello, who are awaiting trial in jail with the wrong population.

ADVERTISEMENT



POWERED BY CONCERT

Bello needed their help, Ringer told members Penelope Minot and Stephanie Foglia. Bello's treatment troubled the group.

"Pinellas County and Hillsborough County are supposed to be LGBT-friendly ... then to have these atrocities," Foglia said. "The point is to be treated with dignity. It makes a difference."

Minot started a Facebook fundraiser to raise money to pay Bello's bail. They raised $795 and arranged a place for Bello to stay.

Bello walked out Dec. 10, bewildered but free.

Karla Bello attends a Pinellas County court hearing with her attorney, Rook Elizabeth Ringer. [ MARTHA ASENCIO RHINE | Times ]

075

*Tampa Bay Times*

SUBSCRIBE

"There should be a different way of doing things," she said. Jails "are not supposed to leave you feeling crippled, wanting to take your life."

Since she got out, Bello has moved to Tarpon Springs, into the home of a new client, and is figuring out her next steps. Last week, her license was reinstated after she paid her fines. She also pleaded down her criminal charge to a driving infraction.

On a recent afternoon, Bello sat with Ringer in a Pinellas County courtroom.

ADVERTISEMENT

POWERED BY CONCERT

Long blond hair fell over her shoulders. She wore an electric blue jacket with a black-and-white striped top, black skirt and over-the-knee boots. Pearl bracelets hugged her wrists.

She stared ahead, pursing her lips, shaded bright with pink-purple lipstick.

*Times senior researcher Caryn Baird contributed to this report.*

*Clarification: The Florida Model Jail Standards Committee cannot sanction jails. But jails can violate state laws. An official who advises the committee was imprecise on this point in an earlier version of this story.*

UP NEXT:  Is justice served in '70s murder case by DNA testing?

**KATHRYN VARN**
Breaking News Reporter — Pinellas Sheriff, St. Petersburg Police, St. Petersburg Courts



076

*Tampa Bay Times*

SUBSCRIBE



## YOU MIGHT ALSO LIKE

**World Series: Rays-Dodgers Game 1 live updates**

Oct. 20

SPORTS    RAYS

**One dead when fifth-wheel trailer burns in Pinellas Park early Tuesday**

Earlier today

BREAKING NEWS    NEWS    PINELLAS

*Elvis' Wife Finally Admits What He Used to Ask from Her*
Past Factory

*One Simple Method To Keep Your Blood Sugar Below 100*
WeeklyPenny.com

*Man Who Predicted 2020 Crash Says "Now Is The Time"*
TheLegacyReport.com

Ads by Revcontent

SPONSORED CONTENT

*Forget Expensive Solar Panels. Do This Instead* ↗

By *Push interactive - Easy Solar Savings*



077

**Florida reports 3,377 coronavirus infections Monday, 20 deaths**

Yesterday

NEWS    HEALTH    ARCHIVE    SPECIAL REPORTS    BREAKING NEWS    FLORIDA    HERNANDO    HILLSBOROUGH    LATEST    PASCO    PINELLAS

**Firm behind Florida unemployment mess will get $135 million state contract after all**

Oct. 22

NEWS    FLORIDA POLITICS    LATEST    HEALTH    BREAKING NEWS

**Fact-checking claims about Hunter Biden, Joe Biden, and China | PolitiFact**

Oct. 21

NEWS    FLORIDA    FLORIDA POLITICS    ELECTIONS

**Florida adds 5,558 coronavirus cases, the highest daily record since August**

Oct. 22

NEWS    HEALTH    BREAKING NEWS    FLORIDA    LATEST

**Tight Florida Senate races targeted by dark money group**

Earlier today

*Tampa Bay Times*

SUBSCRIBE

NEWS   FLORIDA POLITICS   ELECTIONS   FLORIDA

## Senate votes to advance Barrett; confirmation expected Monday

Oct. 25

NATION WORLD   NEWS

## Iran may be behind 'spoofed' emails sent to Florida voters, say federal officials

Oct. 21

NEWS   FLORIDA POLITICS   ELECTIONS   FLORIDA

## Florida adds 4,471 coronavirus cases, 76 deaths

Oct. 24

NEWS   HEALTH

## No wrist slaps for illegally cutting down oak trees in Tampa | Editorial

Yesterday

OPINION

079

Tampa Bay Times

SUBSCRIBE

ADVERTISEMENT

ADVERTISEMENT

ADVERTISEMENT

Tampa Bay Times

© 2020 All Rights Reserved | **Tampa Bay Times**

Subscriptions

Newsletters

My Account

CONTACT US

ABOUT US

JOIN US

MEDIA KIT

PLACE AN AD

LEGAL DISCLAIMERS

LEGAL NOTICES

SPECIAL SECTIONS