UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Carlos Bello Nogueda,
  a/k/a Karla Bello,
              Plaintiff,

                                    Case No. 8:20-cv-02005-TPB-AEP

vs.

Robert A. Gualtieri, et al.,
              Defendants.
_____/

## MOTION TO DISMISS SECOND
## AMENDED COMPLAINT OF SHERIFF GUALTIERI

Pinellas County Sheriff Bob Gualtieri, who is sued in his official capacity, moves to dismiss the second amended complaint for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6) and because it is an impermissible shotgun pleading in violation of Fed. R. Civ. P. 8(a)(2) and prolix in violation of Fed. R. Civ. P. 8(d)(1).

## MEMORANDUM OF LAW

### I.    BACKGROUND RELEVANT TO THE CLAIMS AGAINST SHERIFF GUALTIERI

Karla Bello is a transgender woman who is suing Pinellas County Sheriff Bob Gualtieri and six other defendants claiming, among other things, that his policies, practices, and customs concerning the treatment of transgender inmates at the Pinellas County Jail violate the Fourteenth Amendment. Bello was booked into the jail on a bench warrant after she failed to appear in court on a charge of driving on a suspended license (which was suspended after she failed to pay multiple traffic

citations).  Doc. 84, at 10-11 ¶¶ 40-47; id. at 105[1] (capias).  Bello was incarcerated for twelve days.  She was booked on November 29, 2019, id. at 11 ¶ 48, and released on December 10, 2019, id. at 102.

The gravamen of Bello's second amended complaint is that the defendants "repeatedly, willfully, and maliciously deprived [her] of her Fourteenth Amendment rights" by

- refusing "to provide hormone therapy treatment";
- "refusing to provide any medical aid for her serious and debilitating withdrawal symptoms caused by their refusal to provide Plaintiff with her hormones and other medications";
- "forcing her to live in the male population";
- "forcing her to shower with and expose herself and her fully-formed female breasts to members of the male sex, including both" inmates and employees;
- "forced removal of her female undergarments by male Pinellas County Jail employees";
- refusing "to allow the Plaintiff to wear female undergarments";
- "forcible searches by male officers"; and
- "dehumanizing Plaintiff's gender identity by refusal to acknowledge that she is a woman."

Id. ¶¶ 129, 206, 233, 245, 253 & 261.

Bello's official capacity claims against Sheriff Gualtieri are founded on her belief that the Constitution requires that (1) jail inmates must be housed according to their gender identity — i.e., an inmate who identifies as a woman must be housed

---

[1]  Bello filed the second amended complaint and 80 pages of accompanying exhibits collectively under Docket No. 84.  Citations are to the page number of Docket No. 84 as assigned by CM/ECF.

with cisgender women; (2) transgender inmates must be permitted to use "restrooms and other single-sex facilities consistent with their gender identity;" and (3) transgender inmates must be provided with "medical care consistent with their gender identity." Id. at 19 ¶ 88 & 24-25 ¶¶ 108-09.

The "medical care" in issue is hormone replacement therapy — i.e., a medical regimen to treat Bello's gender dysphoria and help her physical appearance align better with her gender identity. Id. at 9-10 ¶¶ 36-39. However, Bello admits that she "has not had access to proper health care for her gender dysphoria" and that, "for several years prior to this action, [she] has been taking hormone replacement therapy . . . medications without a prescription." Id. at ¶¶ 35-36. Other than hormone therapy — which Bello was illegally taking — the second amended complaint does not identify any medical care or treatment that Bello claims was constitutionally required but was denied to her. Bello also admits that despite identifying and living as a female, her birth certificate and other identification documents identify her as "male," id. at 24 ¶ 109 & 49 ¶ 216, which is also how Bello is identified on the traffic tickets that resulted in her incarceration when she failed to pay them, id. at 63, 65 & 67, and on the arrest affidavit that ultimately landed her in jail, id. at 70.

Notably absent from the second amended complaint is mention of Sheriff Gualtieri's policies, practices, or customs concerning the provision of hormone replacement therapy, housing, or bathroom use with respect to transgender inmates. The second amended complaint contains only the generic, conclusory statement — made "on information and belief" — that "the policies, practices, and customs of

3

PCSO were to treat transgender inmates according to their sex assigned at birth, putting transgender women in jail with men, and transgender men in jail with women, regardless of their physical or medical characteristics." Id. at 19 ¶ 88.

In her five claims for relief against Sheriff Gualtieri, Bello seeks monetary damages and declaratory and injunctive relief, id. at 30, 31-32, 37-38, 39 & 41, and specifically an order requiring the Sheriff "to allow individuals, including transgender people, to be assigned to jail housing, and to use single-sex facilities in accordance with their gender identity; and requiring . . . Sheriff Gualtieri . . . to enact and to continue to enforce antidiscrimination protections for transgender people . . . ." Id. at 30. Bello is proceeding on a second amended complaint after the court ordered her amended complaint stricken. Doc. 83, at 3-4.[2] The five individual defendants and Pinellas County have also moved to dismiss. Doc. 85 & 88.

## II.    STANDARD OF REVIEW

To withstand a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must still provide the factual grounds for her entitlement to relief. Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 555). It is not enough for a

---

[2] The court also dismissed ten "Doe" defendants, Doc. 83, at 3, and previously dismissed the Pinellas County Sheriff's Office, Doc. 55, at 2.

complaint to contain mere "labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal quotation omitted) (citing Twombly, 550 U.S. at 545).

In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). And although the well-pled allegations in the complaint are "viewed in the light most favorable to the plaintiff," Watts v. Florida Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007), "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 677 (internal quotation omitted). Even if the facts are well-pled, the court cannot "infer more than the mere possibility of misconduct" if the complaint merely alleges and does not "show" that the pleader is entitled to relief. Id. at 678.

Finally, while a court must generally accept all factual allegations in a complaint as true, it need not accept "conclusory allegations and unwarranted deductions of fact." South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."). "[B]ald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53

5

(2d Cir. 1996).  See also <u>Northern Trust Co. v. Peters</u>, 69 F.3d 123, 129 (7th Cir.

1995) ("[A]s we have noted, several of [the plaintiff's] claims for relief rely solely

upon conclusory statements of law.  Such statements — and their unwarranted

inferences — are not sufficient to defeat a motion to dismiss for failure to state a

claim.").

## III.    BELLO'S FOURTEENTH AMENDMENT CLAIMS AGAINST SHERIFF GUALTIERI MUST BE DISMISSED

The second amended complaint contains five separate Fourteenth

Amendment claims against Sheriff Gualtieri, all of which are confusingly

overlapping but the gist of which is that Bello claims she was discriminated against

during her twelve-day incarceration and that Sheriff Gualtieri's policies, customs,

and practices were the moving force behind allegedly unconstitutional conduct.  See

<u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658 (1978).

Embedded within some of these five Fourteenth Amendment claims is Bello's

claim that she was discriminated against because she was treated differently than

other, similarly situated inmates (i.e., cisgender women).  With respect to Bello's

discrimination claim, there is no authority for the proposition that federal courts can

use Title VII's framework of protected class discrimination to remedy past wrongs

against incarcerated persons.  This is especially the case since <u>Bostock v. Clayton

County</u>, 140 S. Ct. 1731 (2020), the case on which Bello's claim must necessarily lie,

was not decided until after Bello's incarceration ended.  The lack of a legally

cognizable claim aside, the Supreme Court expressly prohibits what Bello attempts to

6

do here: hold Sheriff Gualtieri vicariously liable under the Constitution for the alleged misdeeds of his employees. <u>Monell</u>, 436 U.S. at 691, 694. Indeed, in striking Bello's amended complaint, the Court specifically cautioned Bello that she "cannot base a Section 1983 claim on *respondeat superior*." Doc. 83, at 2.

Bello's traditional <u>Monell</u> claims fare no better. She can establish § 1983 liability against Sheriff Gualtieri in only three ways. First, § 1983 liability attaches when the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," *or* the action is "visited pursuant to governmental 'custom,' even though such custom has not received formal approval through the body's official decision making channels." Id. at 690-91. Second, a § 1983 claim can be made against a municipality based on the failure to adequately train its employees. To establish liability under this theory, Bello must show that Sheriff Gualtieri's failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). Finally, § 1983 liability can be established under a theory of ratification based on a single incident, but only when the "policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis," or when based on a "persistent failure to take disciplinary action against officers." <u>Thomas ex rel. Thomas v. Roberts</u>, 261 F.3d 1160, 1174 n. 12 (11th Cir. 2001), cert. granted, judgment vacated sub nom. <u>Thomas v. Roberts</u>, 536 U.S. 953 (2002), opinion reinstated, 323 F.3d 950 (11th Cir. 2003)).

At the outset, the second amended complaint is silent on Sheriff Gualtieri's policies and the alleged unconstitutionality of the relevant policies.  The second amended complaint details what happened *to Bello*, but does not describe any agency policy let alone how other inmates — whether transgender or cisgender — were treated while incarcerated in the jail.  Furthermore, to the extent Bello claims Sheriff Gualtieri violated the Constitution by failing to prescribe her hormone replacement therapy (when she had never been prescribed it prior to her twelve-day incarceration), by not housing her with cisgender women, and by not allowing her to use the restroom with cisgender women, no precedental court has ever held that such "policies" in a county jail violate the Constitution.  Specifically, no court has ever held that the Constitution prohibits transgender inmates from being housed with cisgender inmates or that the inmates themselves must be allowed to choose with whom they are housed.  Bello's Fourteenth Amendment claims should be dismissed.

Second, in the absence of a policy or custom that is facially unconstitutional, Bello must establish a causal link between agency action taken with deliberate indifference as to its known or obvious consequences and the constitutional deprivation in issue in this case.  City of Canton, 489 U.S. at 387.  In this context, a longstanding practice or "custom" is one that is so "persistent and widespread" that it constitutes a "permanent and well-settled" governmental policy.  Monell, 436 U.S. at 691.  Put another way, a widespread practice of unconstitutional behavior is tantamount to an unofficial municipal custom, practice, or policy.  Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).  To create liability under this

theory, the agency action must be the "moving force" behind the constitutional violation in issue.  Monell, 436 U.S. at 694.  Specifically, a plaintiff must demonstrate a tolerance for the unconstitutional conduct that befell her that was so persistent and widespread throughout the agency that it had the force of an official policy.  See McDowell v. Brown, 392 F.2d 1283, 1289 (11th Cir. 2004); Young v. City of Augusta, 59 F.3d 1160, 1171 (11th Cir. 1995).

Nowhere in the second amended complaint does Bello claim that anything she allegedly endured in the jail happened to anyone other than her.  The Eleventh Circuit has held that prior, similar cases are required to establish custom or practice liability under Monell.  In Gold v. City of Miami, 151 F.3d 1346 (11th Cir. 1998), the Eleventh Circuit held that a plaintiff could not establish a Monell claim if he could not point to any other incidents involving similar facts.  Id. at 1351.  See McDowell, 392 F.3d at 1290-91 (requiring persistent and wide-spread practice; random acts or isolated incidents held insufficient); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1294 (11th Cir. 2004) ("Our precedents are clear that, for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency . . . .").  See also Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming summary judgment to municipal defendant where plaintiff failed to show that any prior uses of force "involved factual situations that are substantially similar to the case at hand").  Lacking such factually supported averments of similar, prior, unconstitutional conduct, Bello's second amended complaint must be dismissed.

9

Bello's claims fare no better under a failure-to-train theory, which is where municipal liability under § 1983 "is at its most tenuous."  Connick v. Thompson, 563 U.S. 51, 61 (2011), citing Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell.").  There are "limited circumstances" where an alleged failure to train can support § 1983 liability.  City of Canton, 489 U.S. at 387.  Bello must prove (1) Sheriff Gualtieri knew of a need to train and supervise in a particular area, (2) he made the deliberate choice not to do so, and (3) his failure to train and supervise constituted a custom or policy that was the moving force behind the deprivation of her constitutional rights.  Gold, 151 F.3d at 1351.  The Supreme Court has emphasized that, to establish Monell liability on this theory, a plaintiff must show a municipality's failure to train its employees in a relevant respect is tantamount to "deliberate indifference to the rights of persons with whom the [untrained employees] will interact."  City of Canton, 489 U.S. at 388.

"Deliberate indifference" is a "stringent," elevated standard, requiring proof that a municipal actor disregarded a known, obvious consequence of his or her action.  Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997); Gold, 151 F.3d at 1351.  To prove deliberate indifference, Bello must show a pattern of similar constitutional violations by untrained employees.  Connick, 563 U.S. at 62.  See also West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising

official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."); Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that establishing a failure to discipline claim requires plaintiff showing agency knew there was a need to control or discipline for unconstitutional behavior and failed to do so).

As noted above, the second amended complaint contains no fact-based averments that Sheriff Gualtieri failed to train, supervise, or discipline his employees in any relevant, material way to the harm that allegedly befell Bello.  Failing this — and because Bello does not aver a pattern of similar, prior incidents that put Sheriff Gualtieri on notice of the need to supervise, train, or discipline — dismissal is warranted.  See, e.g., McDowell, 392 F.3d at 1290, 1302 (necessary to show a persistent and wide-spread practice; random acts or isolated incidents insufficient); Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) (random acts or isolated incidents are insufficient to establish a policy or custom).

Finally, Bello claims that Sheriff Gualtieri ratified the conduct in issue in this case because he failed to discipline the members who committed it.  Under a ratification theory based on a single incident, Sheriff Gualtieri can only be held liable after he had an opportunity to review the relevant subordinates' decisions and agreed with both the decisions and their bases.  See Thomas, 261 F.3d at 1174 n.12.  Sheriff Gualtieri, however, cannot be held liable under § 1983 for a single failure to investigate a constitutional violation.  Salvato v. Miley, 790 F.3d 1286, 1296-98 (11th Cir. 2015).  The approval of the subordinate's decision must occur before the

subordinate acts.  See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 127, (1988)

(plurality opinion); Salvato, 790 F.3d at 1296.  See also Simmons v. Bradshaw, 879

F.3d 1157, 1168 (11th Cir. 2018) (same).  Bello does not aver that Sheriff Gualtieri

reviewed, much less ratified, any part of the conduct in issue in this case.  Dismissal

is warranted.

Finally, it is axiomatic that in the absence of a viable constitutional claim

against an individual defendant, there can be no municipal liability claim against

Sheriff Gualtieri.  Case v. Eslinger, 555 F.3d 1317, 1328 (11th Cir. 2009) (holding

that absent a violation of plaintiff's rights by officer, no damages may be imposed

against municipal employer).  There is no constitutional right to hormone

replacement therapy, social transitioning items, gender-preferred pronouns, or for

transgender inmates assigned male at birth to shower and use the bathroom with

cisgender women in a county jail.  Doc. 88, at § III.  Bello's failure to plead an

actionable constitutional claim against any individual defendant requires dismissal of

her claims against Sheriff Gualtieri.

## IV.    BELLO'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED

To establish entitlement to injunctive relief from a constitutional violation, a

plaintiff must first show that there has, in fact, been a constitutional violation.

Newman v. State of Ala., 683 F.2d 1312, 1319 (11th Cir. 1982) (citing Rizzo v.

Goode, 423 U.S. 362, 377 (1976)).  Once a constitutional violation is established, she

"must then demonstrate the presence of two elements: continuing irreparable injury

if the injunction does not issue, and the lack of an adequate remedy at law." Id. (citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506 (1959)). As noted above, Bello has not pleaded a viable constitutional claim against Sheriff Gualtieri.

Bello also lacks standing to seek injunctive relief. Article III requires Bello to establish (1) a concrete and particularized injury, actual or imminent, (2) traceable to the defendant; and (3) proof that a favorable outcome would redress the harm. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Bello's twelve-day incarceration in the Pinellas County Jail ended almost two years ago. The second amended complaint's bald averment that Bello's alleged injury is "capable of repetition, yet evading review," Doc. 84, at 5 ¶ 17, is entirely unburdened by factual support and is the kind of conclusory allegation that courts disregard on consideration of Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Bello does not make any factual averment about impending future injury or suggest why she might be reincarcerated in the Pinellas County Jail. It is notable that Bello is not even a Pinellas County resident. She lives in Wimauma, in Hillsborough County. Doc. 84, at 2 ¶ 4. There is no underlying unconstitutional conduct and Bello lacks standing to pursue injunctive relief. Her claim should be dismissed.

## V.   THE SECOND AMENDED COMPLAINT REMAINS AN IMPERMISSIBLE SHOTGUN PLEADING AND IS PROLIX

For the reasons set forth in the individual defendants' motion to dismiss, which Sheriff Gualtieri adopts and incorporates into this motion, see Doc. 88, at §§ IV & V, the second amended complaint is an impermissible shotgun pleading and

is prolix in violation of Fed. R. Civ. P. 8.  It should be dismissed for the reasons set forth in that motion.

## VI.    CONCLUSION

Bello's second amended complaint against Sheriff Gualtieri should be dismissed and the Court should grant such other relief as it deems just and appropriate.

**Local Rule 3.01(g) Certification**: Before filing this motion, the undersigned counsel conferred with counsel for the plaintiff by email.  Counsel for the plaintiff opposes the relief sought in this motion.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
FBN: 75948
Pinellas County Sheriff's Office
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:   (727) 582-6459
*prozelle@pcsonet.com*
*rreuss@pcsonet.com*
Attorney for Sheriff Bob Gualtieri

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Paul G. Rozelle

14