UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Carlos Bello Nogueda,
  a/k/a Karla Bello,
                    Plaintiff,

                                                    Case No. 8:20-cv-02005-TPB-AEP

vs.

Robert A. Gualtieri, et al.,
                    Defendants.
_____/

## MOTION TO DISMISS SECOND AMENDED COMPLAINT
## OF THE INDIVIDUALLY NAMED DEFENDANTS

The five remaining individually named defendants — a sergeant, two

deputies, a licensed mental health counselor, and an LPN — move to dismiss

because the second amended complaint, Doc. 84, remains prolix and a shotgun

pleading in violation of Fed. R. Civ. P. 8(a)(2) & 8(d)(1), fails to state a claim on

which relief can be granted under Fed. R. Civ. P. 12(b)(6), and they are entitled to

qualified immunity.

## MEMORANDUM OF LAW

## I.     FACTUAL BACKGROUND

Carlos Bello Nogueda, who is transgender and goes by "Karla Bello," claims

that she was mistreated while incarcerated in the Pinellas County Jail because the

defendants did not provide her with hormone replacement therapy, failed to address

her with feminine pronouns, did not allow her to be housed or to shower with female

inmates, and prohibited her from wearing makeup and female undergarments.

Seeking redress for these grievances, Bello sued Pinellas County, Sheriff Bob Gualtieri, and twelve individually named members of the Pinellas County Sheriff's Office — detention deputies, health care professionals, and classification employees who work at the jail.  Bello amended the complaint soon after filing it, Doc. 33, the defendants moved to dismiss, Doc. 34-43, and the Court struck her amended complaint but granted her leave to amend again, Doc. 83, at 3-4.  The second amended complaint does not include claims for relief against seven of the original twelve individual defendants — Maj. David Danzig, Capt. Jesse Napier, Sgt. Jennifer Vieno, Dep. Steven Cox, Dep. Alvaro Berje, Crystal Widua, and Jane Holler — whose dismissal is now warranted under Fed. R. Civ. P. 21.[1]

Additional pertinent facts and background about Bello's incarceration are set forth in Sheriff Gualtieri's motion to dismiss.  Doc. 87.  Pinellas County has also moved to dismiss.  Doc. 85.  The averments in the second amended complaint concerning the five remaining individually named defendants are as follows:

## A.    Yvette Dixon

Ms. Dixon is a licensed mental health counselor.  Doc. 84, at 3 ¶ 11.  There is only one mention of Ms. Dixon's involvement with Bello in the 61-page, 264 paragraph second amended complaint:

> Inmate Bello-Nogueda was seen by LMHC Dixon in her office on the 6th floor.  Per LMHC Dixon, Bello-Nogueda was placed on Close Observation status.

---

[1]  The Court previously dismissed the Pinellas County Sheriff's Office, Doc. 55, at 2, and 10 unidentified "Doe" defendants.  Doc. 83, at 3.

Doc. 84, at 14-15 ¶ 65 (quoting id. at 120[2]).

Bello nevertheless claims that Ms. Dixon "became aware of [Bello's] use of a bra to properly contain her breasts," id. at 50 ¶ 219, "deliberately and humiliatingly removed [Bello's] female undergarments and prohibited her from any social transitioning whatsoever," id. at 51 ¶ 226, and "refused to provide [Bello] with female undergarments or to recommend that she be permitted access to female clothing and grooming standards," id. at 50-51 ¶ 225.  By not permitting Bello to wear a bra in jail, Bello claims that Dixon "violated [her] Fourteenth Amendment rights by treating transgender people differently than non-transgender people who are similarly situated."  Id. at 49 ¶ 215 (Count VII).  Bello also claims that Ms. Dixon "deprived [her] of her Fourteenth Amendment rights by subjecting her to cruel and unusual punishment . . . ."[3]  Id. at 56 ¶ 253 (Count VIII).

## B.   Cpl. Richard Merritt

Corporal Merritt is a deputy sheriff working at the Pinellas County Jail. Doc. 84, at 3 ¶ 8.  The basis for Bello's suit against Cpl. Merritt is that he "confiscated" Bello's undergarments when she was placed on close observation

---

[2]  Bello filed the second amended complaint and 80 pages of accompanying exhibits collectively under Docket No. 84.  Citations are to the page number of Docket No. 84 as assigned by CM/ECF.

[3]  In Count VIII, Bello claims that Ms. Dixon was involved in "forcing [Bello] to expose herself and her fully-formed female breasts to members of the male sex," "forcible searches by male officers," and assorted other activity for which there are no factual averments concerning Ms. Dixon.  See Doc. 84, at 14-15 ¶ 65 (containing the only mention of Ms. Dixon's involvement with Bello).

status by Ms. Dixon, a mental health counselor.  According to the second amended complaint,

> Inmate Bello-Nogueda was seen by LMHC Dixon in her office on the 6th floor.  Per LMHC Dixon, Bello-Nogueda was placed on Close Observation status.  Utilizing the Attorney Visitation room for privacy, his personal undergarments were confiscated by me [i.e., Cpl. Merritt].  He was then seated adjacent to the Officer's Station in the 6th floor hallway and kept under constant observation.  Once his relocation was scheduled in JIMS, I escorted him to Pre-Housing to await transport to the Healthcare Building.  All of his personal property was inventoried and sent to the Property Room.  Classification Specialist Widau authorized the relocation in JIMS.  Sergeant Franjesevic was notified.

Id. at 14-15 ¶ 65 (quoting id. at 120).

As with Ms. Dixon — the claims against them are identical — Bello claims that Cpl. Merritt took her female undergarments away from her, "prohibited her from any social transitioning whatsoever," and "refused to provide [Bello] with female undergarments or to recommend that she be permitted access to female clothing and grooming standards."  Id. at 50-51 ¶¶ 225-26.  Bello claims that this "violated [her] Fourteenth Amendment rights by treating transgender people differently than non-transgender people who are similarly situated," id. at 49 ¶ 215 (Count VII), and "deprived [her] of her Fourteenth Amendment rights by subjecting her to cruel and unusual punishment . . .," id. at 56 ¶ 253 (Count VIII).

### C.    Deputy Chris Moses

Deputy Moses is a deputy sheriff working at the Pinellas County Jail. Doc. 84, at 3 ¶ 9.  On December 2, 2019 — the third day of Bello's incarceration —

while Ms. Hilery (a nurse and co-defendant in this case) was performing diabetic checks, Bello "became extremely irate yelling that he needs his medication." Id. at 15-16 ¶ 71 (citing id. at 81). Both Deputy Moses and Ms. Hilery instructed Bello to sign up for sick call and Deputy Moses verbally counseled Bello. Id. A few minutes later, Bello complained of chest pains. Id. at 15 ¶ 71; id. at 116. Deputy Moses was advised to send Bello to see the nurse, which he did, pat-frisking her before she left the pod. Id. at 15 ¶ 71.

Bello's only two averments concerning Deputy Moses are that he: (1) "referred to [her] with male pronouns and . . . list[ed] her 'sex' as [male]" in a written report, id. at 13 ¶ 57, and (2) pat-frisked Bello before removing her from the pod to see the nurse, id. ¶ 58. Despite this limited involvement with Bello, Bello claims that Deputy Moses violated the Fourteenth Amendment when he "refused to provide [Bello] with hormone therapy or to recommend that she be permitted access to medical or psychological personnel willing to prescribe HRT." Doc. 84, at 45-47 ¶¶ 199 & ¶¶ 205-06 (Count VI). See id. at 58-59 ¶¶ 260-61 (Count IX; same).

## D.   Darlene Hilery, LPN

The only medical professional Bello is suing is Darlene Hilery, an LPN.[4]  Ms. Hilery is only mentioned twice in the second amended complaint. She is referred to

---

[4]  Bello continues to misidentify Ms. Hilery as an ARNP. Doc. 84, at 3 ¶ 10. As is apparent on the face of the documents Bello attached to all three of her complaints, Ms. Hilery is an LPN. Doc. 1-8, at 2; Doc. 33-1, at 55; Doc. 84, at 116. See Fla. Dep't of Health, License Verification, *https://tinyurl.com/yxgsqdf6* (last checked Nov. 8, 2021).

once in a report made by Deputy Moses, who wrote that he and Ms. Hilery advised Bello to sign up for sick call when she was "extremely irate" and "yelling" about needing her medication.  Doc. 84, at 15-16 ¶ 71 (quoting id. at 81).  The only other mention of her in the second amended complaint is in a report documenting that she evaluated Bello in response to a complaint of chest pains and that Bello was cleared to remain in her current housing assignment (i.e., as opposed to being transferred to the medical unit).  Id. at 13 ¶ 59 (quoting id. at 116).

Bello claims that Ms. Hilery "did not take these medical issues seriously and denied [Bello] hormone therapy or any avenue for allowing HRT while incarcerated," and "refused to provide [her] with hormone therapy or to recommend that she be permitted access to medical or psychological personnel willing to prescribe HRT."  Id. at 44-45 ¶¶ 194, 199.  Bello claims that this violated her rights under the Fourteenth Amendment.  Id. at 47 ¶ 206 (Count VI); see id. at 58-59 ¶¶ 260-61 (Count IX; same).

### E.    Sgt. Jason Franjesevic

Sgt. Franjesevic is a deputy sheriff who works at the Pinellas County Jail. Doc. 84, at 3 ¶ 7.  Bello does not aver that Sgt. Franjesevic ever had any direct involvement with her during her incarceration.[5]  Rather, Sgt. Franjesevic's only

---

[5] In a footnote, Bello claims that Sgt. Franjesevic "acted directly with [her]." Doc. 84, at 19 ¶ 85 n.7.  Nowhere in the second amended complaint, however, does Bello allege any fact showing that Sgt. Franjesevic ever had any contact with her.

involvement with Bello is that he wrote a supplement to Deputy Moses's report (referenced above):

> I was notified and responded.  I agree with the actions taken by staff as outlined in this report.  Inmate Nogueda was medically evaluated for his alleged, "chest pains" by Nurse Hilery and cleared to remain in his current housing assignment.  Kiosk Case Message is attached to this report.  Acting Shift Commander, Sergeant Vieno was notified.

Id. at 13 ¶ 59 (quoting id. at 116).  See also id. at 14 ¶ 60 (same).

Bello claims that Sgt. Franjesevic violated the Fourteenth Amendment by "deliberately mocking [her] severe medical issues" in his written report which, Bello claims, "set the standard for future treatment of [her] requests for [hormone replacement therapy]."  Id. at 45 ¶ 195.  Bello also claims that Sgt. Franjesevic "refused to provide [her] with hormone therapy or to recommend that she be permitted access to medical or psychological personnel willing to prescribe HRT" in violation of the Fourteenth Amendment.  Id. ¶ 199.  See also id. at 58-59 ¶¶ 260-61 (Count IX; same).

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss for Failure to State a Claim

A plaintiff must plead sufficient facts to state a claim that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-62 (2007).  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the plaintiff must still provide the factual grounds for the entitlement to relief.  Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361,

1364 (S.D. Fla. 2007).  It is not enough for a complaint to contain mere "labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal quotation omitted) (citing Twombly, 550 U.S. at 545).

In evaluating the sufficiency of a complaint on a motion to dismiss, the well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.  Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  However, "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "[B]ald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

**B.    Qualified Immunity**

A government official who acts within his or her discretionary authority is immune from suit under § 1983 unless the official's conduct "violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotations omitted), cert. dismissed, Timoney v. Keating, 562 U.S. 978 (2010). Qualified immunity is conferred unless a plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (internal quotation marks omitted).

To strip a government official of qualified immunity, pre-existing law at the time of the alleged acts must have provided fair warning that his or her action was unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  The law that the official seeking qualified immunity allegedly violated "must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law."  Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc), abrogated on other grounds by Hope, 536 U.S. 730 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  An officer is entitled to qualified immunity if "officers of reasonable competence could disagree on th[e] issue . . . ."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  The unlawfulness of the conduct in question must be "apparent."  Bashir v. Rockdale County, 445 F.3d 1323, 1330-31 (11th Cir. 2006).

## III.   BELLO'S FOURTEENTH AMENDMENT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY DO NOT STATE A CONSTITUTIONAL CLAIM AND THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

### A.   Counts VI and IX Against Sgt. Franjesevic, Dep. Moses, and Ms. Hilery for Deliberate Indifference to Serious Medical Need

There are four Fourteenth Amendment claims variously pleaded against the five individually named defendants.  Counts VI and IX are against Sgt. Franjesevic, Dep. Moses, and Ms. Hilery.  The basis for them is that Bello claims these three defendants were deliberately indifferent to her serious medical need by failing to

prescribe her, or ensuring that she was prescribed, hormone replacement therapy.
Doc. 84, at 42-48.

"To set out a claim for deliberate indifference to medical need, [a plaintiff]
must make three showings: (1) he had a serious medical need; (2) the [defendant]
w[as] deliberately indifferent to that need; and (3) the [defendant's] deliberate
indifference and [the plaintiff's] injury were causally related."  Hinson v. Bias, 927
F.3d 1103, 1121 (11th Cir. 2019), cert. denied, 141 S. Ct. 233 (2020).  As the
Eleventh Circuit has explained:

> A serious medical need is one that has been diagnosed by
> a physician as mandating treatment or one that is so
> obvious that even a lay person would easily recognize the
> necessity for a doctor's attention.  In the alternative, a
> serious medical need is determined by whether a delay in
> treating the need worsens the condition.  In either case, the
> medical need must be one that, if left unattended, poses a
> substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and
citation omitted).

No precedental court has ever held that a county jail is constitutionally
required to provide hormone replacement therapy to a transgender inmate, let alone
for an inmate who, like Bello, who was not prescribed hormone replacement therapy
before incarceration.  By her own admission, Bello was taking hormones illegally:
Bello did not have "access to proper health care for her gender dysphoria" before she
was arrested and, "for several years prior to this action, [took] hormone replacement
therapy . . . medications without a prescription."  Doc. 84, at 9-10, ¶¶ 35-36.  Other

than hormone replacement therapy — which Bello was illicitly taking — the second amended complaint does not identify any other medical care or treatment that Bello claims was constitutionally required but was denied her by Sgt. Franjesevic, Dep. Moses, or Ms. Hilery.

Bello's second amended complaint is replete with citations to Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020). Her reliance on that case is misplaced. Keohane involved whether the Constitution requires a prison to provide a transgender prisoner with pharmaceutical therapy for her gender identity disorder and accommodate her social transitioning. The Eleventh Circuit held that the former issue was moot and the latter was not constitutionally required. Keohane, 952 F.3d at 1272, 1277-78. Furthermore, Keohane involved a prisoner who was prescribed hormone replacement therapy by a doctor prior to her fifteen-year incarceration. Id. at 1262. Bello, however, was in jail for twelve days and was "taking hormone replacement therapy . . . medications without a prescription." Doc. 84, at 10 ¶ 36. The Constitution does not require jail staff to maintain an inmate's self-prescribed pharmaceutical regimen.

Simply put, no case has ever held a mental health counselor, a detention deputy, or an LPN — or anyone else — constitutionally liable in connection with the provision of hormone replacement therapy to a transgender person incarcerated in a county jail. "[U]nless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

In the absence of fact-specific case law clearly establishing the rights in question, Bello's only escape from the bar of qualified immunity is to claim that the unlawfulness of the defendants' conduct was readily apparent notwithstanding the lack of case law clearly establishing the right — i.e., that it would have been obvious to everyone that to act as the defendants did under the circumstances violates the Constitution. Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam). However, no case has ever applied the obvious clarity doctrine to the rights of transgender inmates. Indeed, it is not "obvious" that hormone replacement therapy be provided to a county jail inmate who has never been prescribed it. No amount of repleading can alter the state of the law. The defendants are entitled to qualified immunity and this case should be dismissed.

Furthermore, as to Deputy Moses specifically, the second amended complaint does not state a deliberate indifference claim or establish that Deputy Moses acted in derogation of clearly established law. According to the second amended complaint, Deputy Moses provided care and treatment to Bello when she asked for it; he was not indifferent to and did not ignore Bello's medical needs. See Johnson v. Moody, 206 F. App'x 880, 884 (11th Cir. 2006) (per curiam) (holding that immediately reporting incident and escorting inmate to the Health Services Unit did not constitute deliberate indifference). Because Deputy Moses did not violate the Constitution or clearly established law in providing medical care to Bello, any constitutional claim should be dismissed for failure to state a claim and because he is entitled to qualified immunity.

Finally, the claim embedded in Counts VI and IX against Sgt. Franjesevic is especially troubling.  The sole basis for Bello's claim against Sgt. Franjesevic is that he

> participated and further adopted the actions taken by staff in this incident, deliberately mocking the Plaintiff's severe medical issues and minimizing this cruel and unusual treatment in his comments on the report (DDCI-205807), which set the standard for future treatment of the Plaintiff's requests for HRT.

Doc. 84, at 45 ¶ 195.  Bello does not claim that Sgt. Franjesevic ever saw or interacted with her in any way.  All Sgt. Franjesevic did was write a report.  As the Court cautioned Bello in striking her amended complaint, there is no such thing as vicarious constitutional liability.  Doc. 83, at 2 (citing cases).  The lack of personal participation in unconstitutional conduct requires his dismissal.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("[T]he plaintiff in a suit such as the present one must plead that each Government-official defendant, through his own individual actions, has violated the Constitution."); Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (same).

## B. Counts VII and VIII Against Cpl. Merritt and Ms. Dixon

Counts VII and VIII are pleaded against Cpl. Merritt and Ms. Dixon. Count VII is an Equal Protection Clause discrimination claim premised on Bostock v. Clayton County, 140 S. Ct. 1731 (2020).  Bello claims that she was treated differently than other, similarly situated people (i.e., those "assigned female at birth," Doc. 84, at 49 ¶ 217), because she was not permitted to "wear[] female

undergarments consistent with her gender identity . . . ."  Id. at 50 ¶ 217.  See also id. at 50-51 ¶ 225 ("Defendants Merritt and Dixon refused to provide [Bello] with female undergarments or to recommend that she be permitted access to female clothing and grooming standards."); id. at 51 ¶ 226 (Cpl. Merritt and Ms. Dixon "prohibited [Bello] from any social transitioning whatsoever").  Bello also claims that Cpl. Merritt and Ms. Dixon discriminated against her because she was subjected to "forcible searches by male officers" and that they "dehumanize[ed] [Bello's] gender identity by refusal to acknowledge that she is a woman."  Id. at 52 ¶ 233.  Count VIII is based on the same conduct as Count VII.  Compare id. ¶ 245, with id. ¶ 253.

At the outset, concerning Bello's discrimination claim (Count VII), this is not a Title VII case like Bostock.  No precedental court has held that Title VII's disparate impact analysis has any bearing on a prisoner's lawsuit pertaining to her conditions of confinement under § 1983.  Indeed, the converse is true.  Allegations of disparate impact, without more, do not state a cognizable equal protection claim.  Washington v. Davis, 426 U.S. 229, 242 (1976).  Regardless, as noted above, Bello's second amended complaint contains no factual averments that Cpl. Merritt and Ms. Dixon discriminated against her in any way.

Furthermore, no precedental court has ever held that transgender female inmates like Bello are similarly situated to cisgender female inmates for purposes of an equal protection claim.  Nor has any precedental court ever held that a deputy or a licensed mental health counselor working in a county jail violates the Constitution

or clearly established law by engaging in any of the acts or omissions that form the basis for Bello's lawsuit.  The absence of any constitutional authority for these propositions entitles Cpl. Merritt and Ms. Dixon to qualified immunity.

There is also no authority for the proposition that there is a constitutional right to gender-specific undergarments or other social transitioning items in a county jail. Indeed, courts broadly considering the issue have rejected Bello's argument, including the Eleventh Circuit in Keohane v. Florida Dep't of Corr. Sec'y, 952 F.3d 1257 (11th Cir. 2020), which held that the failure of corrections officials to provide social-transitioning self-care items did not show deliberate indifference to a serious medical need and, therefore, was not constitutionally required.  Id. at 1275, 1279. This Court reached a similar conclusion in Hood, finding no "authority indicating that a transgender person has the right to choose the clothing worn while confined . . . ."  Hood v. Department of Children & Families, No. 2:12-cv-637-FTM-29, 2015 WL 686922, at *3 (M.D. Fla. Feb. 18, 2015) (citing Murray v. United States Bureau of Prisons, 106 F.3d 401, 1997 WL 34677, at *2 (6th Cir. 1997) (per curiam)).  The absence of authority, let alone the lack of clearly established law from precedental courts, entitles the defendants to qualified immunity on Bello's claims for relief as a matter of law.

Similarly, any claim based on a defendant misgendering Bello — i.e., referring to her using masculine pronouns — is not constitutionally actionable.  No court has ever held that misgendering someone is unconstitutional.  See United States v. Varner, 948 F.3d 250, 254-55 (5th Cir. 2020) ("[N]o authority supports the

proposition that we may require litigants, judges, court personnel, or anyone else to refer to gender-dysphoric litigants with pronouns matching their subjective gender identity.").  Even were this Court to find such a right in the Constitution, the defendants would be entitled to qualified immunity because the right in question — to be referred to by one's preferred pronouns — was not clearly established in December 2019.  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (holding government employee entitled to qualified immunity unless he violates a constitutional or statutory right that was clearly established at the time of the challenged conduct).

Next, Bello's claim that she was subjected to cross-gender searches or pat-frisking is of no constitutional moment.  Setting aside that nowhere in the second amended complaint does Bello allege that either Cpl. Merritt or Ms. Dixon ever searched her or saw her unclothed, Bello does not aver that anything untoward occurred during any search or pat-frisk.  Rather, Bello claims that a male deputy conducting a pat-frisk on transgender inmate — a male inmate[6] who identifies as female — violates the Constitution.

Suspicionless searches are a fact of life in jail.  Florence v. Board of Chosen Freeholders, 566 U.S. 318, 338-40 (2012) (upholding constitutionality of suspicionless strip searches).  No precedential court has ever held that there is a constitutional right for a trans-person to be free of a cross-gender pat-frisk.  Even the

---

[6] Bello acknowledges that "her birth certificate and other identification documents have 'male' gender markers."  Doc. 84, at 24 ¶ 109 & 49 ¶ 216.  In fact, the unpaid traffic tickets that landed her in jail consistently identify Bello as male, id. at 63, 65 & 67, as does Bello's arrest affidavit, id. at 70.

Ninth Circuit noted that cross-gender searches "cannot be called inhumane and therefore do[ ] not fall below the floor set by the objective component of the eighth amendment." Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997) (quotation omitted).  There is no legal basis from which this Court can conclude that a generic pat-frisk of Bello by a male deputy was unconstitutional.  Even were the Court to find such a right, the defendants would be entitled to qualified immunity because such a right was not clearly established in December 2019.

Finally, as with the claims in Counts VI and IX against Sgt. Franjesevic, Dep. Moses, and Ms. Hilery concerning the provision of hormone replacement therapy, there is nothing "obvious" about a constitutional right to social transitioning items, personal pronoun autonomy, that the Constitution mandates that transgender female inmates be housed with and use the bathroom with cisgender women, or that strip searches of transfem inmates be conducted only by cisgender female deputies.  None of these claimed rights have been established anywhere.  No amount of repleading would enable Bello to change the state of the law in 2019.  Dismissal with prejudice is warranted because further amendment would be futile.  Lucas v. USAA Cas. Ins. Co., 716 F. App'x 866, 870 (11th Cir. 2017) (per curiam) (affirming dismissal where subsequent pleadings did not resolve previously identified deficiencies).

## IV.   THE SECOND AMENDED COMPLAINT REMAINS PROLIX

Prolix pleadings violate Rule 8.  Watts v. Florida Intern. Univ., 495 F.3d 1289, 1299 (11th Cir. 2007).  The Federal Rules require averments to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  The Eleventh Circuit has addressed

unwieldy pleadings "on numerous occasions" and "always with great dismay." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 n.9 (11th Cir. 2002).

Despite dropping claims against seven defendants, the second amended complaint expanded to 264 paragraphs and now contains 80 pages of attachments — 20 pages more than the original complaint or the amended complaint — the vast majority of which is immaterial to any claim for relief.  Bello devotes dozens of paragraphs to gender dysphoria, a discourse replete with references to medical and psychiatric literature and the internet.  Bello cites 68 legal decisions in the second amended complaint including Roe v. Wade, 410 U.S. 113 (1973).  See Doc. 84, at 5 ¶ 17.  Bello consumes 40 pages setting out her nine Fourteenth Amendment claims,[7] much of which is repetitive and all of which is confusing.  For example, it is unclear why five separate and distinct Fourteenth Amendment claims are pleaded against Sheriff Gualtieri and Pinellas County.  The second amended complaint also quotes and attaches newspaper articles.  Id. at 21-22 ¶¶ 95-97; id. at 124-141.  Newspaper articles are constitutionally irrelevant.  Simmons v. Bradshaw, 879 F.3d 1157, 1168 (11th Cir. 2018) (holding that statements at a press conference cannot serve as the basis for Monell liability because they did not occur before the event in question and could not have caused the injury).

---

[7]  Despite dropping five defendants, Bello somehow added two more Fourteenth Amendment claim in the second amended complaint.  The original complaint contained six such claims; the amended complaint, seven; and the second amended complaint contains nine Fourteenth Amendment claims.

For all its verbosity, hardly any of the second amended complaint contains allegations pertinent to the defendants' constitutional liability.  For example, only one sentence mentions Yvette Dixon (and it was a sentence written by someone else in a report).  Id. at 14-15 ¶ 65.  Bello dropped claims against seven individual defendants, but her voluminous averments and attachments concerning their conduct (or lack thereof) — now no longer material to any claim for relief — remain undisturbed.  Indeed, despite this being Bello's third attempt at pleading, the second amended complaint is nearly identical to her two prior efforts.[8]  Dismissal is appropriate.  <u>Gordon v. Green</u>, 602 F.2d 743, 744-45 (5th Cir. 1979) (holding that district courts should be given great leeway in determining whether a party has complied with Rule 8 because they stand "on the firing line [as] the first victims of this paper mill.").

## V.   THE SECOND AMENDED COMPLAINT IS STILL AN IMPERMISSIBLE SHOTGUN PLEADING

A pleading must comply with Fed. R. Civ. P. 8(a)(2) by setting forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Doing so ensures proper notice to each defendant of the precise claims alleged against him.  <u>Seagood Trading Corp. v. Jerrico, Inc.</u>, 924 F.2d 1555, 1576 (11th Cir. 1991).  The

---

[8]  In the second amended complaint, Bello turned three claims against Sheriff Gualtieri and Pinellas County into five, compare Doc. 33, at 19-36, with Doc. 84, at 22-41, and copied several pages of writing from an earlier pleading into her facts section, compare Doc. 62, at 4-5 ¶¶ 18-20, with Doc. 84, at 21-22 ¶¶ 95-97.  The second amended complaint and the amended complaint are otherwise, in all material respects, the same.

Eleventh Circuit has consistently held that shotgun pleadings — complaints "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" — are ripe for dismissal. Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015).

Bello's second amended complaint is a quintessential "shotgun pleading." All claims against all seven remaining defendants are comingled together and incorporate all factual allegations asserted against them, resulting in intertwined and confusing claims for relief that are riddled with the duplicative, immaterial, and irrelevant allegations. Indeed, Bello commits all four sins of impermissible shotgun pleading. In addition to "the mortal sin of re-alleging all preceding counts," her amended complaint commits the "venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action . . . the sin of "not separating into a different count each cause of action or claim for relief . . . [and even] the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1321-23. The second amended complaint should be dismissed.

## VI.   BELLO'S EIGHTH AMENDMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Bello's complaint contained a claim for relief under the Eighth Amendment. See Doc. 1 ¶¶ 140-42. While Bello appears to have abandoned a separately

enumerated Eighth Amendment claim from her second amended complaint — all nine claims for relief arise under the Fourteenth Amendment — the second amended complaint is still replete with Eight Amendment references.  See Doc. 84 ¶ 1 ("This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and under the Eighth and Fourteenth Amendments . . . .").  See also id. ¶¶ 121, 145, 154, 182 & 191.

The Eighth Amendment plays no role in this case; its prohibition against cruel and unusual punishment only applies after conviction.  Whitley v. Albers, 475 U.S. 312, 327 (1986) (noting that Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions"); Ingraham v. Wright, 430 U.S. 651, 671, n. 40 (1977) (noting that Eighth Amendment standards apply "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").  To the extent that Bello seeks relief under the Eighth Amendment, her claims claim should be dismissed for failure to state a claim on which relief can be granted.  Lancaster v. Monroe County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) (holding that treatment of a pre-trial detainee is not governed by the Cruel and Unusual Punishment Clause of the Eighth Amendment, which "governs an official's treatment of a convicted prisoner").

## VII.   CONCLUSION

The plaintiff's claims for relief against Sgt. Franjesevic, Dep. Moses, Ms. Hilery, Cpl. Merritt, and Ms. Dixon should be dismissed with prejudice and the Court should grant such other relief as it deems just and appropriate.

**Local Rule 3.01(g) Certification**: Before filing this motion, the undersigned counsel conferred with counsel for the plaintiff by email.  Counsel for the plaintiff opposes the relief sought in this motion.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
Managing Senior Counsel
FBN: 75948
Pinellas County Sheriff's Office
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:   (727) 582-6459
*prozelle@pcsonet.com*
*rreuss@pcsonet.com*
Attorney for Sgt. Franjesevic, Dep. Moses, Ms. Hilery, Cpl. Merritt, and Ms. Dixon

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 8, 2021, I electronically filed  the foregoing with the  Clerk of the  Court by using the CM/ECF system, which will send  a notice of electronic filing to counsel of record.

/s/ Paul G. Rozelle