UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO <br><br> Plaintiff, <br><br> v. <br><br> ROBERT A. GUALTIERI, in his official capacity as Sheriff of Pinellas County, PINELLAS COUNTY, FLORIDA, et al., <br><br> Defendants. | Case No.: 8:20-cv-02005-TPB-AEP |

## PLAINTIFF'S RESPONSE TO DEFENDANT PINELLAS COUNTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (Dkt. 84) AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Plaintiff, CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO (hereinafter, "Plaintiff" or "Karla"), by and through her undersigned attorney, and hereby responds in opposition to Defendant Pinellas County's Motion to Dismiss Second Amended Complaint (Dkt. 84), (hereinafter, the "Motion to Dismiss") [Dkt. #85], and states as follows:

1.     This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for the Defendants' individual and collective personal, malicious, and unlawful violations under color of state law of Plaintiff's individual rights.

2.     The Defendant, Pinellas County, Florida (hereinafter, the "Defendant") filed the Motion on October 5, 2020.

3.     The Motion argues that the Plaintiff's claims against the Defendant should be dismissed for failure to state a claim for which relief can be granted, based upon their assertion that: (A) the Defendant is not able to be sued, as the Sheriff (Defendant Robert A. Gualtieri, hereinafter, the "Sheriff") is "exclusively responsible" for the operation and maintenance of the County Jail; and (B) the Defendant is not a "policymaker" for the operation and maintenance of the County Jail and cannot therefore be held liable under a theory of *respondeat superior*.

## MEMORANDUM OF LAW

### I.     STANDARD OF REVIEW.

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (*citing* Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well

pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. <u>Quality Foods</u>, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. <u>Quality Foods</u>, 711 F.2d at 995. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> (*quoting* <u>Conley</u>, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* <u>McLain v. Real Estate Board of New Orleans, Inc.</u>, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); <u>Dussouy v. Gulf Coast Investment Corp.</u>, 660 F.2d 594, 602 (5th Cir.1981); <u>Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 540 F.2d 824, 826-827 (5th Cir. 1976).

## II. ANALYSIS.

### A. The Defendant has provided no conclusive legal proof that the Defendant is *not* liable under the law.

First off, the Defendant's arguments are cunning indeed, but not as conclusive as they represent. For example, they argue that, because § 951.062, Fla. Stat. states that sheriffs cease to be liable for actions arising out of the operation and maintenance of the facilities under contract, when a county enters into a contract for the operation and maintenance of county detention facilities, that this leads to an "obvious conclusion" that only the sheriff would have had any such liability prior to the county entering into such a contract. *See*, Motion to Dismiss, p. 8, ¶ 1. Notably, that statute

does not state that the sheriff is the *only* entity with liability, nor apparently is there any *other* statute saying that directly.

Next, the Defendant points to § 30.52, Fla. Stat. states that, "[t]he independence of sheriff shall be preserved" concerning: (1) the purchase of supplies and equipment; (2) selection of personnel; and (3) firing and setting the salaries of personnel. However, this again does not state what the Defendant would *like* it to say, as it apparently only mentions those three specific instances.

In fact, in Cooper v. Dillon, the Eleventh Circuit discussed whether a municipality could still be held liable where they had delegated final policymaking authority to a police chief, and its analysis is as follows:

> Based on the foregoing, we must determine whether Dillon had final policymaking authority for the City of Key West in law enforcement matters and whether his decision to enforce Fla. Stat. ch. 112.533(4) against Cooper was an adoption of "policy" sufficient to trigger § 1983 liability. While Dillon does not address the issue of his policymaking authority under Florida law, he argues that his enforcement of a state law could not subject the municipality to liability. We disagree.

> First, state law demonstrates that Dillon was the ultimate policymaker for police procedure in the City of Key West. The Florida Constitution provides that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government," Fla. Const. art. VIII, § 2(b), and the Florida Constitution was amended to confer such municipal powers on the City of Key West, see id. at art. VIII, § 6(e). Based on this grant of power, the City of Key West adopted a Code of Ordinances which established that the police chief has final policymaking authority for police procedure in the City of Key West. See Key West, Fla., Code of Ordinances § 4.05 (establishing position of police chief as the "head" of the police department and giving him "exclusive control of the stationing and transfer" of police officers). Aside from the powers given to the police chief by

Page **4** of **16**

> Key West ordinance pursuant to the delegation of municipal power in the Florida Constitution, there are other indicia in state law that police chiefs in Florida have final policymaking authority in their respective municipalities for law enforcement matters. *See* Fla. Stat. ch. 166.049 (declaring that the police chief is to determine police procedure for coordinating communication between law enforcement officers); Fla. Stat. ch. 870.042(2) (stating that the police chief can declare a state of emergency in the municipality and assume emergency powers). State and local law thus confirms that Dillon had final policymaking authority for the City of Key West in matters of police procedure and law enforcement and thus his actions could subject the city to § 1983 liability.

403 F.3d 1208, 1221–22 (11th Cir. 2005).

The Eleventh Circuit then concluded that,

> …Dillon's decision to enforce an unconstitutional statute against Cooper constituted a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy." Accordingly, we find that the City of Key West, through the actions of Dillon, adopted a policy that caused the deprivation of Cooper's constitutional rights which rendered the municipality liable under § 1983.

Id., at 1223 (internal citations omitted); *see also*, Vigue v. Shoar, 494 F. Supp. 3d 1204, 1221 (M.D. Fla. 2020) (applying the Cooper decision to sheriffs and county liability).

Sheriffs are "county officers" and can be abolished by the county if the duties are transferred to another office. Fla. Const, art. VIII, § 1 (d); Freyre v. Gee, 8:13-CV-2873-T-27TBM, 2017 WL 1017837, at *11 (M.D. Fla. Mar. 15, 2017), aff'd and remanded sub nom. Freyre v. Chronister, 910 F.3d 1371 (11th Cir. 2018). This suggests that the statutory enumeration of certain duties amounts not to an effort by

the state to exercise control over the sheriff (at least not for all purposes)—the factor relevant to the arm of the state inquiry—but to ensure that the counties, as political subdivisions of the state, carry out some of the state's local business "in their respective counties." Fla. Stat. § 30.15(1), (2); McMillian v. Monroe County, 520 U.S. 781, 791, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (conceding that the fact that "the sheriff's jurisdiction is limited to the borders of his county" was one "important provision[ ] that cut in favor of the conclusion that sheriffs are county officials"); Abusaid v. Hillsborough County Bd. of County Com'rs, 405 F.3d 1298, 1309 (11th Cir. 2005).

Additionally, in Defendant's Exhibit "B", under § 74-62(b)(2), it states:

> The Pinellas County sheriff shall include costs of medical care, treatment, hospitalization and transportation of arrestees in his annual proposed budget of expenditures for the maintenance and operation of the county jails and shall assume the county's responsibility for medical expenses as provided for in F.S. § 901.35, **and indemnify and defend the county for any actions brought against the county for payment of costs of medical care, treatment, hospitalization and transportation of arrestees**, as provided for in F.S. § 901.25. The costs of such care, treatment, hospitalization and transportation shall be paid out of the sheriff's budget from the general revenue fund of the county.

(emphasis added).

As a result, using the same kind of reasoning employed by the Defendant, how could the Sheriff be expected to "indemnify and defend" the Defendant if the Defendant is always unable to be sued with respect to anything occurring at the County Jail, as the Defendant has argued?

Furthermore, nothing in the Defendant's exhibits or arguments proves that the Sheriff was solely responsible for the medical care provided in the County Jail, which

makes up a significant portion of the Plaintiff's claims, and no other Florida statute imposes a statutory duty on sheriffs to provide the medical care within. <u>Race v. Bradford County, Florida</u>, 3:18-CV-153-J-39PDB, 2019 WL 7482235, at *28 (M.D. Fla. Aug. 20, 2019), <u>report and recommendation adopted as modified</u>, 3:18-CV-153-J-39PDB, 2019 WL 7482213 (M.D. Fla. Sept. 26, 2019). Given that many of the actors involved in this case were civilian personnel, rather than deputies of the Sheriff, this distinction is important.

Finally, in <u>Morrill v. Holmes County</u>, the Court analyzed whether a county can be held liable for a sheriff's decisions with respect to the provision of health care in a county jail, and stated:

> Holmes County says it has no control over Sheriff Brown and that Sheriff Brown is solely responsible for the care of inmates. But as discussed, Florida law suggests that a sheriff acts for the county with respect to the daily operations of the county jail. And if Sheriff Brown was in fact the final policymaker with respect to decisions pertaining to mental healthcare, Holmes County can be liable upon the finding of a constitutional violation.

5:15-CV-324-WTH-GRJ, 2017 WL 6330631, at *11 (N.D. Fla. Mar. 10, 2017), <u>report and recommendation adopted sub nom.</u> <u>Morrill v. Holmes County, Florida</u>, 515CV00324WTHGRJ, 2017 WL 6329951 (N.D. Fla. Dec. 11, 2017).

Essentially, "municipal liability may attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." <u>Mandel v. Doe</u>, 888 F.2d 783, 793 (11th Cir. 1989) (*citing* <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701 (1989); <u>City of St.</u>

<u>Louis v. Praprotnik</u>, 485 U.S. 112 (1988); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 469 (1986).

As a result, the Plaintiff argues that the claims against the Defendant should not be dismissed.

**B. The Defendant is well aware of the needs of civil rights laws and protections of transgender individuals, and as such was in a position to ensure that the Sheriff and County Jail contained policies and procedures that are consistent with Pinellas County's human rights ordinances.**

Given that the Defendant has argued as to the applicability and ability of this Court to take notice of Pinellas County, Florida ordinances, and has cited authority both in Fed. R. Evid. 201(c)(2) and in case-law, the Plaintiff hereby attaches as **Exhibit "A"**, and asks this Court to take judicial notice of, Chapter 70 of the Pinellas County Code of Ordinances (hereinafter, the "Human Rights Ordinances") consisting of the Defendant's ordinances with respect to discrimination and human rights.

Section 70-51 of the Human Rights Ordinances defines "gender" as follows:

> Gender includes but is not limited to sex, pregnancy, childbirth or medical conditions related to pregnancy or childbirth, **gender-related self-identity, self-image, appearance, expression or behavior, whether or not such gender-related characteristics differ from those associated with the individual's assigned sex or physiology at birth**, which gender-related identity can be shown by evidence including, but not limited to, medical history, care or treatment of the gender-related identity, consistent and uniform assertion of the gender-related identity or any other evidence that the gender-related identity is sincerely held, part of a person's core identity, or not being asserted for an improper purpose.

**Ex. "A"**, p. 2 (emphasis added). Here, it is clear that the Defendant is describing transgender people.

The Human Rights Ordinances prohibit discrimination against transgender people in employment, housing, and public accommodations. The definition therein of "public accommodations" in § 70-211 is as follows:

> Place of public accommodation means and includes all places included within the meaning of the following: Inns, taverns, roadhouses, hotels, and motels, whether operated for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest; restaurants, eating houses, and any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirits or malt liquors are sold; ice cream parlors, confectioneries, soda fountains, and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind, are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind; dispensaries, clinics, hospitals; bathhouses, swimming pools; laundries and all other cleaning establishments; barbershops, beauty shops; theaters, motion picture houses, airdromes, roof gardens, music halls, racecourses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages; all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; and public halls and public elevators of buildings and structures occupied by two or more tenants, or by the owner and one or more tenants.

**Ex. "A"**, p. 24.

Given the extensive list of places of public accommodations and noting that the Human Rights Ordinances were updated in 2013 to include these transgender protections, it is quite clear that the Defendant was well aware of the importance of

prohibiting discrimination against transgender individuals in all areas of Pinellas County, Florida.

Furthermore, the general purposes of the Human Rights Ordinances are to, "[p]rovide for execution within the county of the policies embodied in the Federal Civil Rights Act of 1964, as amended", and to "[s]ecure for all individuals within the county the freedom from discrimination because of race, color, religion, national origin, gender, sexual orientation, age, marital status, or disability in connection with employment, and thereby to promote the interests, rights and privileges of individuals within the county". § 70-52(a)(1)-(2); **Ex. "A"**, p. 3.

Furthermore, the Human Rights Ordinances "shall be liberally construed to preserve the public safety, health and general welfare, and to further the general purposes stated herein" and the enforcement of the Human Rights Ordinances "may be delegated by interlocal agreement to other units of local government or to nonprofit corporations". § 70-52(b)-(c); **Ex. "A"**, p. 3.

As a result, it is simply inconceivable that the Defendant should permit the Sheriff to run the County Jail in a manner that is not consistent with at the very *least*, the same level of care as a bowling alley or retail establishment. Furthermore, given that "dispensaries, clinics, [and] hospitals" are covered under the requirements of the Human Rights Ordinances, at the very least, this Court should permit this case to go forward such that discovery can be conducted to determine whether the medical and psychiatric care and/or facilities where the Plaintiff was treated during her

confinement at the County Jail would be covered under the auspices of the Human Rights Ordinances.

> **C. The Defendant's failure to ensure that the Sheriff and County Jail and its employees and agents were operating consistently with the Pinellas County Human Rights Ordinances is a legitimate basis for relief under <u>Monell</u>.**

In <u>Monell v. Department of Social Services</u>, the Supreme Court held that local governing bodies (including when sued through local government officials in their official capacities) can be sued "directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 & n.55 (1978).

> [A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

<u>Id.</u>, at 690–91.

There are "several different ways of establishing" liability of a local government body under § 1983. <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016). A local government body "can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)." <u>Id.</u> A local government body can be liable "if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." <u>Id.</u>

And a local government body "can be held liable on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Id. (internal quotation marks and quoted authority omitted).

There are also "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). The inadequacy of training can serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [local government agent] come into contact." Id., at 388. A failure-to-supervise claim and a failure-to-promulgate-policy claim are treated like a failure-to-train claim. See, e.g., Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1189 (9th Cir. 2006).

Nevertheless, in Connick v. Thompson, the Supreme Court emphasized that deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." 563 U.S. 51, 61 (2011) (internal quotation marks and quoted authority omitted). The Court explained that where "policymakers are on actual or constructive notice that a particular omission in their training program causes ... employees to violate citizens' constitutional rights, the [local government body] may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. The Court explained the local government body's "policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the [body]

itself to violate the Constitution." <u>Id.</u>, at 61–62 (internal quotation marks and quoted authority omitted).

The Court added, "[I]n a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." <u>Id.</u> (internal quotation marks and quoted authority omitted). The Court "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." <u>Id.</u> (*citing* <u>City of Canton</u>, 489 U.S. at 390 n. 10). The Court explained, "Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, ... a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights." <u>Id.</u>, at 63–64 (internal quotation marks and quoted authority omitted).

In certain circumstances, "a local government's decision **not** to train certain employees about their legal duty to avoid violating citizens' rights" may rise to the level of an official government policy for purposes of § 1983. <u>Id.</u>, at 61 (emphasis added). Here, the failure of the Defendant to ensure that the Sheriff and County Jail were operating under similar understandings of basic civil and human rights cannot be ignored.

It is simply inconceivable that the Defendant, knowing and recognizing the importance of transgender rights since at least 2013 when the Human Rights Ordinances were enacted, would not know that the basic human rights afforded to all citizens of Pinellas County were being trampled upon in the County Jail, and that the employees of the County Jail were so utterly untrained (or mis-trained) in how to treat transgender inmates and detainees that the behavior described in the Plaintiff's Complaint could occur. As such, the Defendant was aware of the deficiencies, and failed to ensure that the Sheriff appropriately discharged his duties, and at best, failed to ensure that the County Jail was being run properly, or at worst was complicit in the denial of basic human rights in the County Jail. In any case, this is a plausible line of reasoning for liability, and this Court should not dismiss the counts against the Defendant at this early stage.

## **CONCLUSION**

In short, the Defendant has not proved that it is entitled to dismissal, and this Court should not grant the Defendant's requested relief, particularly at such an early stage of these proceedings. In the alternative, and "giving recognition to the well-established principle that liberality in amendments to pleadings are to be favored by the courts", the Plaintiff would request, should this Court determine that the Motion to Dismiss entitles the Defendant to dismissal, that it permit the filing of an amended complaint. Baugher v. Alachua County, 305 So. 2d 838, 839–40 (Fla. 1st DCA 1975).

WHEREFORE, the Plaintiff respectfully requests that this Court deny Defendant Pinellas County's Motion to Dismiss Second Amended Complaint (Dkt. 84) [Dkt. #85], and for any and all other relief as this Court deems in the interests of justice.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 1, 2021, a copy of the foregoing has been furnished by CM/ECF to: Kelly L. Vicari, Esq., Pinellas County Attorney's Office, 315 Court Street, Sixth Floor, Clearwater, Florida 33756, kvicari@pinellascounty.org, eservice@pinellascounty.org, and to Paul G. Rozelle, Esq., Pinellas County Sheriff's Office, 10750 Ulmerton Road, Largo, FL 33778, prozelle@pcsonet.com, amarcott1@pcsonet.com.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
*Attorney for Plaintiff*

# EXHIBIT "A"

ARTICLE II. - DISCRIMINATION

DIVISION 1. - GENERALLY

Sec. 70-36. - Territory embraced.

All territory within the legal boundaries of Pinellas County, Florida, including all unincorporated and incorporated areas, shall be embraced by the provisions of this article.

(Ord. No. 92-14, pt. III, § 7.02, 3-10-92; Ord. No. 93-29, 3-9-93)

**Charter reference—** Conflicts between county and municipal ordinances, §§ 2.01, 2.04.

Sec. 70-37. - Penalty for violation of article.

Violations of this article are punishable as provided in section 1-8.

Secs. 70-38—70-50. - Reserved.

DIVISION 2. - EMPLOYMENT

> *Footnotes:*
> *--- (2) ---*
> ***Cross reference—*** *County affirmative action plan, § 94-71 et seq.*
> ***State Law reference—*** *Employment discrimination, F.S. § 767.10.*

Subdivision I. - In General

Sec. 70-51. - Definitions.

The following words, terms and phrases, when used in this division, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Administrative law judge* means a judge appointed by the State of Florida Division of Administrative Hearings to conduct hearings under this Code.

*Age* means any person being at least 18 years of age or legally emancipated.

*Chairperson* means the duly appointed chairperson or persons of the designated human rights commission.

*Commission* means the official body or bodies given authority by the board of county commissioners to administer this division.

*Conciliation agreement* means an agreement entered into between the complainant and respondent resolving the alleged discriminatory practice.

*Director* means the director of the human rights office.

*Disability* means:

(1) A physical or mental impairment which substantially limits one or more of such person's major life activities;

(2) A record of such an impairment; or

(3) Being regarded as having such an impairment.

An individual having a disability is "qualified" with respect to employment if he can perform the essential functions of the job in question with reasonable accommodations.

*Discriminatory practice* means a practice designated as illegal or unlawful under the terms of this division.

*Employee* means any individual employed by, or seeking employment from, an employer.

*Employer* means a person who employs five or more employees for each working day in each of 13 or more calendar weeks in the current or preceding calendar year and any agent of such a person, but such term does not include:

(1) The United States or a corporation wholly owned by the government of the United States;

(2) An Indian tribe;

(3) A bona fide private membership club; or

(4) The state.

*Employment agency* means a person, or his agent, regularly undertaking to procure employees for an employer or opportunities for employees to work for an employer.

*Gender* includes but is not limited to sex, pregnancy, childbirth or medical conditions related to pregnancy or childbirth, gender-related self-identity, self-image, appearance, expression or behavior, whether or not such gender-related characteristics differ from those associated with the individual's assigned sex or physiology at birth, which gender-related identity can be shown by evidence including, but not limited to, medical history, care or treatment of the gender-related identity, consistent and uniform assertion of the gender-related identity or any other evidence that the gender-related identity is sincerely held, part of a person's core identity, or not being asserted for an improper purpose.

*Hearing officer* means that person selected to administer the conduct of a hearing.

*Human relations* or *rights office* means the enforcement agency or agencies designated or created by the board of county commissioners.

*Labor organization* means:

(1) An organization of any kind representing employees in dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment;

(2) A conference, general committee, system board, or council which is subordinate to a national or international labor organization; or

(3) An agent of a labor organization.

*Major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

*Marital status* means the state of being unmarried, married, or separated, as defined by state law. The term "unmarried" includes persons who are single, divorced, or widowed.

*National origin* means the origin of an ancestor, the country of origin of a person's forebears, naturally, by marriage, or by adoption.

*Religion* means any belief protected by the free exercise clause of the First Amendment to the United States Constitution.

*Sexual orientation* means an individual's actual or perceived heterosexuality, homosexuality, or bisexuality. This definition is not intended to protect any practice prohibited by federal, state, or local law.

*Substantially limited* means to experience difficulty in securing, retaining, or advancing in employment because of a disability.

*Training program* means any plan containing terms and conditions for qualification, recruitment, selection, employment, or training of employees to:

(1)  Enter a specific trade or occupation after completion of a specified training program; or

(2)  Offer a person already either partially or wholly trained in a specified trade or occupation an opportunity to advance himself after completion of a specified training program.

(Ord. No. 92-14, pt. I, § 2.01, 3-10-92; Ord. No. 99-104, § 1, 12-7-99; Ord. No. 08-28, § 1, 4-22-08; Ord. No. 13-21, § 1, 8-20-13)

**Cross reference—** Definitions generally, § 1-2.

Sec. 70-52. - Purposes and intent.

(a)  The general purposes of this division are to:

(1)  Provide for execution within the county of the policies embodied in the Federal Civil Rights Act of 1964, as amended.

(2)  Secure for all individuals within the county the freedom from discrimination because of race, color, religion, national origin, gender, sexual orientation, age, marital status, or disability in connection with employment, and thereby to promote the interests, rights and privileges of individuals within the county.

(b)  This division shall be liberally construed to preserve the public safety, health and general welfare, and to further the general purposes stated herein.

(c)  The enforcement of this division may be delegated by interlocal agreement to other units of local government or to nonprofit corporations.

(Ord. No. 92-14, pt. I, § 1.01, 3-10-92; Ord. No. 08-28, § 2, 4-22-08; Ord. No. 13-21, § 2, 8-20-13)

Sec. 70-53. - Unlawful practices.

(a)  *Unlawful discrimination in employment practices.*

(1)  *Employers.* It is a discriminatory practice for an employer to:

a.  Fail or refuse to hire, discharge, or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of race, color, religion, national origin, gender, sexual orientation, age, marital status, or disability; or

b.  Limit, segregate, or classify an employee in a way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee because of race, color, religion, national origin, gender, sexual orientation, age, marital status, or disability.

c.  The above described prohibited discrimination on the basis of gender includes sexual harassment, including same-gender sexual harassment, and pregnancy discrimination.

(2)  *Employment agencies.* It is a discriminatory practice for an employment agency on the basis of race, color,

religion, national origin, gender, sexual orientation, age, marital status, or disability to:

   a.  Fail or refuse to refer for employment or otherwise discriminate against an individual; or

   b.  Classify or refer for employment an individual on such a discriminatory basis.

(3)  *Labor organizations.* It is a discriminatory practice for a labor organization to:

   a.  Exclude or to expel from membership or otherwise discriminate against any individual on the basis of race, color, religion, national origin, gender, sexual orientation, age, marital status, or disability;

   b.  Limit, segregate, or classify membership or applicants for membership, or to classify or to fail or refuse to refer an individual for employment in a way which would deprive or tend to deprive, limit, or adversely affect an individual's employment opportunities on the basis of race, color, religion, national origin, gender, sexual orientation, age, marital status, or disability; or

   c.  Cause, assist, or attempt to cause or assist an employer to violate this division.

(4)  *Training programs.* It is an unlawful practice for an employer, labor organization, or training committee to discriminate against an individual on the basis of race, color, religion, national origin, gender, sexual orientation, marital status, or disability in a training program providing apprenticeship or other training.

(5)  *Advertising.* It is a discriminatory practice for an employer, labor organization, or employment agency to publish an advertisement relating to employment, indicating a preference, limitation, specification, or discrimination based on race, color, religion, national origin, gender, sexual orientation, marital status, or disability.

(6)  *Discriminatory information gathering.* Except as permitted and required by regulations of the commission, or by applicable federal or state law, it is a discriminatory practice for an employer or employment agency to elicit information about an employee's race, color, religion, gender, sexual orientation, national origin, age, marital status, or disability, or to keep or disclose a record of such information for the purposes of effecting discrimination.

(b)  *Exemptions to employment discriminatory practices.* It is not a discriminatory employment practice for:

(1)  A religious corporation, association, or society to employ individuals of a particular religion to perform work connected with the beliefs, tenets and doctrines of the corporation, association, or society of its religious activities; or

(2)  A religious educational institution or religious organization owned, operated, supervised, or controlled by a religious institution or organization to limit employment or give preference to members of the same religion.

(Ord. No. 92-14, pt. I, § 3.01, 3-10-92; Ord. No. 99-104, § 2, 12-7-99; Ord. No. 08-28, § 3, 4-22-08; Ord. No. 13-21, § 3, 8-20-13)


Sec. 70-54. - Retaliation, coercion, interference, obstruction or prevention of compliance with division.

It is an unlawful discriminatory practice for a person to:

(1)  Retaliate or discriminate against a person because he or she has opposed a discriminatory practice, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this division;

(2)  Aid, abet, incite, or coerce a person to engage in an unlawful discriminatory practice;

(3)  Willfully interfere with the performance of a duty or the exercise of a power by the commission or one of its staff members or representatives; or

(4)  Willfully obstruct or prevent a person from complying with the provisions of this division or an order issued thereunder.

(Ord. No. 92-14, pt. I, § 4.01, 3-10-92; Ord. No. 99-104, § 3, 12-7-99)

Secs. 70-55—70-75. - Reserved.

Subdivision II. - Violations

Sec. 70-76. - Filing of complaints.

(a) Any person alleging that they have been subject to an unlawful discriminatory practice shall file a complaint in writing with the commission through the designated office or offices sworn to or affirmed, which shall state the name and address of the complainant and the person against whom complaint is made. It shall also state the alleged facts surrounding the alleged unlawful discriminatory practice and such other information as the commission may require or deems necessary. A complaint shall be filed within 180 days after the date of the alleged unlawful discriminatory practice in order to be processed under this division. No complaint shall be filed under this division for a claim which has previously been adjudicated under a similar municipal ordinance.

(b) Complaints against Pinellas County or one of its agencies or constitutional officers may be filed with the City of St. Petersburg Office of Human Relations for those complainants residing south of Ulmerton Road, or with the City of Clearwater Office of Community Relations for those complainants residing north of Ulmerton Road. Such complaints shall be dual-filed with the Federal Equal Opportunity Commission (EEOC), under Title VII of the Civil Rights Act of 1964, as amended, and the complaints shall be forwarded, after the initial filing, by the respective cities of St. Petersburg and Clearwater, to the EEOC for its exclusive investigation and handling in accordance with federal rules and regulations.

(c) Notwithstanding the provisions of Pinellas County Code, section 1-4, all complaints against Pinellas County, its agencies, or constitutional officers, which, at the time of the passage of this section, are being processed by the cities of St. Petersburg or Clearwater, in accordance with an interlocal agreement between Pinellas County and those municipalities, including cases filed under this section which have been referred to an administrative hearing by a board of one of those municipalities, and which are pending an administrative hearing, shall be immediately closed and forwarded to the EEOC for further handling and processing, and the cities of Clearwater and St. Petersburg, and any municipal board created by those municipalities, are hereby divested of any further jurisdiction regarding those complaints. Should the cities of St. Petersburg and Clearwater attempt to take any action in contravention of this section, the county attorney shall initiate action in a court of competent jurisdiction to ensure that the provisions of this section are complied with.

(Ord. No. 92-14, pt. I, § 5.0, 3-10-92; Ord. No. 97-20, § 1, 4-8-97)

Sec. 70-77. - Processing of complaints; administrative hearings.

(a) Notwithstanding the provisions of Pinellas County Code, section 1-4, no complaints brought under this section against Pinellas County, its agencies, or constitutional officers, shall be processed, nor shall an administrative hearing be conducted under this section, by any municipal body or board, but said complaints, including complaints which are presently being investigated or have been scheduled for administrative hearings by a municipal body or board, shall be closed and forwarded for further investigation and action by the Federal Equal Opportunity Commission (EEOC), in accordance with its rules and regulations.

(b) Upon the filing of a complaint as set forth in section 70-76, the staff within 90 days shall make such investigation as the director deems appropriate to ascertain facts and issues. If, within 90 days, the complaint is not settled

and if the director shall determine that there are reasonable grounds to believe an unlawful discriminatory practice has occurred, the director shall attempt to conciliate the matter by methods of initial conference and persuasion with all interested parties and such representatives as the parties may choose to assist them and shall have the option of scheduling a hearing date. Conciliation conferences shall be informal, and all reasonable efforts shall be made by the parties thereto to reach a settlement.

(c)  The terms of conciliation agreed to by the parties may be reduced to writing and incorporated into a consent agreement to be signed by the parties, which agreement is for conciliation purposes only and does not constitute an admission by any party that the law has been violated. Consent agreements shall be signed on behalf of the commission by the chairperson or acting chairperson.

(d)  If the director determines that the complaint lacks reasonable grounds upon which to base the violation of this division, the director shall dismiss the case, and inform the parties of his or her findings through the issuance of a written report. A complainant may request reconsideration of a no cause finding within 15 days of receipt of the written report by notifying the director of such request in writing, with the specific grounds therefor included. Within 15 days of receipt of a request for reconsideration, the director shall issue a final determination, unless it is decided that further investigation must be conducted, in which case the final determination shall be issued within 45 days.

(e)  If the director, with respect to a matter which involves a contravention of this division, fails to conciliate a complaint, after the parties, in good faith, have attempted such conciliation, as provided in subsection (b) of this section, the director shall notify the parties within fifteen days that he or she has been unable to conciliate the complaint. The director shall thereafter, within ten days, notify the State of Florida Division of Administrative Hearings that a hearing shall be scheduled with respect to such complaint. The administrative hearing shall be conducted by the administrative law judge within 60 days of the director's request.

(f)  The administrative law judge shall have the powers at any time to administer oaths, issue subpoenas, compel the production of books, papers and other documents and receive evidence.

(1)  Whenever it is deemed necessary to compel the attendance of witnesses or the production for examination of any books, payrolls, personnel records, correspondence, documents, papers, or any other evidence relating to any matter under investigation or in question, the administrative law judge may issue a subpoena or subpoena duces tecum and thereby compel such attendance of witnesses or production for examination of books, papers and records.

(2)  The administrative law judge may issue a subpoena or subpoena duces tecum at the request of any party to a hearing or other proceedings. The issuance of such subpoena and subpoena duces tecum at the request of a party shall depend upon a showing of the necessity therefor.

(3)  Where a subpoena or subpoena duces tecum is applied for and issued at the request of any party to a hearing or other proceeding, the cost of service, witness and mileage fees, if any, shall be borne by the party at whose request it has been issued. Where a subpoena or subpoena duces tecum is issued at the request of the director, the cost of such service, witness, and mileage fees, if any, shall be borne by the commission.

(4)  Depositions of witnesses, including any party, may be taken as prescribed by the Florida Rules of Civil Procedure.

(5)  The administrative law judge may, at any time after the complaint is filed, require any party or witness to answer interrogatories. The procedure for interrogatories shall conform to the Florida Rules of Civil Procedure, as far as is practicable.

(6)  If a person fails to permit access, fails to comply with a subpoena, refuses to have his deposition taken, refuses to answer interrogatories, or otherwise refuses to make discovery, the administrative law judge or

any party may request an order of a court of proper jurisdiction.

(g)  All administrative hearings held pursuant to this division shall be subject to the following:

(1)  All motions upon which a ruling is requested shall be filed prior to the hearing date established by the administrative law judge. Such motions shall be considered and ruled upon by the administrative law judge prior to the start of the hearing. In any case where the administrative law judge is unable to consider such motion prior to the start of a hearing, and in order to prevent delay, such motion may be deferred for later review.

(2)  All motions and orders thereon shall be made a part of the record of such administrative proceedings.

(3)  If there are separately filed cases before the administrative law judge which involve similar issues of law and fact and identity of parties, then such cases may be consolidated for hearing before the administrative law judge.

(4)  Discovery shall be permitted upon motion of any party and shall proceed in the manner provided by the Florida Rules of Civil Procedure.

(5)  The administrative law judge shall order a pre-hearing conference prior to any administrative hearing. Prior to such conference the administrative law judge shall direct that the parties submit a pre-conference statement addressing the issues of law and fact that will be involved in such hearing, identify the witnesses that will testify, and provide a list of all documents or other types of exhibits that will be submitted.

(6)  All parties shall be afforded an opportunity for a hearing after reasonable notice of not less than 14 days; however, the 14-day notice requirement may be waived with the consent of all parties. The notice shall include:

a.  A statement of the time, place and nature of the hearing.

b.  A statement of the legal authority and jurisdiction under which the hearing is to be held.

c.  A reference to the particular sections of the ordinance and rules involved.

d.  A short and plain statement of the matters asserted by all parties of record at the time the notice is given.

(7)  Any requests for subpoenas in any administrative proceeding shall be filed with the administrative law judge. Such request shall set forth the name and address of the person whose attendance is requested and shall describe with particularity any material to be produced. The requesting party shall be responsible for service of any subpoena.

(8)  Any subpoena shall be subject to a motion to quash the same or a motion for protective order which motion shall be determined in the same manner as are other motions.

(9)  The official transcript of a hearing shall be preserved by tape recording, shorthand, court reporter or any similar means or combination. A party may request the commission to provide a court reporter for a hearing where the commission has elected not to do so. In such event, the requesting party shall be responsible for payment of the court reporter's per diem expense and any costs of transcribing the record.

(10)  All parties shall have an opportunity to respond, to present evidence and argument on all issues involved, to conduct cross-examination and submit rebuttal evidence, to submit proposed findings of facts and orders, to file exceptions to any order or administrative law judge's recommended order, and to be represented by counsel. When appropriate, the general public may be given an opportunity to present oral or written communications. If the commission proposes to consider such material, then all parties shall be given an opportunity to cross-examine or challenge or rebut it.

(11)  The record in cases governed by this subsection shall consist only of:

    a. All notices, pleadings, motions, and intermediate rulings;

    b. Evidence received or considered;

    c. A statement of matters officially recognized;

    d. Questions and proffers of proof and objections and rulings thereon;

    e. Proposed findings and exceptions;

    f. Any decision, opinion, proposed or recommended order, or report by the administrative law judge;

    g. All staff memoranda or data submitted to the administrative law judge during the hearing or prior to its disposition, after notice of the submission to all parties, if such communications are public records;

    h. All matters placed on the record after an ex parte communication; and

    i. The official transcript.

(12) Findings of fact shall be based exclusively on the evidence of record and on matters officially recognized.

(13) The administrative law judge shall complete and submit to all parties a recommended order consisting of his findings of fact, conclusions of law, interpretation of administrative rules, recommended remedy, if applicable, and any other information required by law or agency rule to be contained in the final order. The administrative law judge shall allow each party at least ten days in which to submit written exceptions to the recommended order. The recommended order must include specific factual findings by the administrative law judge relating to his or her jurisdiction over the complaint. The administrative law judge shall respond to submitted written exceptions and issue a final order within 30 days of the hearing.

(14) The administrative law judge's final order shall be the final action under this section, and may be appealed by filing a petition for writ of certiorari in the circuit court of the Sixth Judicial Circuit in and for Pinellas County, Florida, within 30 calendar days of the date of the final order.

(h) Notwithstanding any other provisions of this division, if the administrative law judge, human relation employees, or the director, when acting on a charge or complaint, is required to perform some act within a particular time period and the administrative law judge, human relation employees, or the director fails to do the act within the required time period, that failure will not invalidate further proceedings on such charge or complaint and that failure shall not invalidate any of the powers of the administrative law judge, human relation employees, or director, provided that such required act is performed within a reasonable time.

(Ord. No. 92-14, pt. I, § 6.0, 3-10-92; Ord. No. 97-20, § 2, 4-8-97; Ord. No. 99-104, § 4, 12-7-99)


Sec. 70-78. - Enforcement.

(a) The administrative law judge shall have the authority to award actual damages and reasonable costs and attorney's fees incurred by a party which were caused by a violation of this division.

(b) Upon failure of any party to comply with an order of the administrative law judge to pay damages, a "petition for enforcement" may be filed by the board of county commissioners, or the complainant, in a court of competent jurisdiction. A court reviewing a petition for enforcement shall require the responding party to show cause, based upon the record established below, why such order should not be enforced, and shall enforce the order unless there is a showing by the responding party that, based upon the record, there is no competent substantial evidence to support the order and/or the order did comply with the essential requirements of law.

(c) A court which receives a petition for enforcement as described in paragraph (b) above shall direct the responding party to show cause why the administrative law judge's order should not be enforced within 20 days from the date of the petition's filing. In making its decision, the reviewing court shall be limited to the record established

under section 70-77 of this division.

(Ord. No. 92-14, pt. I, § 7.01, 3-10-92; Ord. No. 99-104, § 5, 12-7-99)

Secs. 70-79—70-100. - Reserved.

DIVISION 3. - HOUSING AND PUBLIC ACCOMMODATIONS

> *Footnotes:*
>
> --- *(3)* ---
>
> **State Law reference—** *Fair Housing Act, F.S. § 760.20 et seq.*

Subdivision I. - In General

Sec. 70-101. - Definitions.

The following words, terms and phrases, when used in this division, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Aggrieved person* means any person who:

(1)  Claims to have been injured by a discriminatory housing practice; or

(2)  Believes that he will be injured by a discriminatory housing practice that is about to occur.

*Commission* means the official body or bodies given authority by the board of county commissioners to administer this division.

*Complainant* means a person, including the commission, who files a complaint under this division.

*Conciliation* means the attempted resolution of issues raised by a complaint or by the investigation of the complaint, through informal negotiations involving the aggrieved person, the respondent, and the commission.

*Conciliation agreement* means a written agreement setting forth the resolution of the issues in conciliation.

*Discriminatory housing practice* means an act prohibited by subdivision III of this division.

*Dwelling* means:

(1)  Any building, structure, or part of a building or structure that is occupied as, or designed or intended for occupancy as, a residence by one or more families; or

(2)  Any vacant land that is offered for sale or lease for the construction or location of a building, structure, or part of a building or structure described by subsection (1), above.

*Familial status* means one or more individuals, who have not attained the age of 18 years, being domiciled with:

(1)  A parent or another person having legal custody of such individual or individuals; or

(2)  The designee of such parent or other person having such custody, with the written permission of such parent or other person.

*Family* includes a single individual.

*Gender* includes but is not limited to sex, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth, gender-related self-identity, self-image, appearance, expression or behavior, whether or not such gender-related characteristics differ from those associated with the individual's assigned sex or physiology at birth, which gender-related identity can be shown by evidence including, but not limited to, medical history, care or treatment of the gender-related identity, consistent and uniform assertion of the gender-related identity or any other evidence that the gender-related identity is sincerely held, part of the person's core identity, or not being asserted for an improper purpose.

*Handicap* means a mental or physical impairment that substantially limits at least one major life activity, a record of such an impairment, or being regarded as having such an impairment. The term does not include current, illegal use of or addiction to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)). In this division, a reference to "an individual with a handicap" or to "handicap" does not apply to an individual because of that individual's sexual orientation or because that individual is a transvestite.

*Person* includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under 11 U.S.C. section 101, et seq. (Bankruptcy Code), receivers and fiduciaries.

*Respondent* means:

> (1)  The person or other entity accused of a violation of this division; or
>
> (2)  Any person identified as an additional or substitute respondent under this division or an agent of an additional or substitute respondent.

*Sexual orientation* means an individual's actual or perceived heterosexuality, homosexuality, or bisexuality. This definition is not intended to protect any practice prohibited by federal, state, or local law.

*To rent* means to lease, to sublease, to let, or to otherwise grant for a consideration the right to occupy premises not owned by the occupant.

(Ord. No. 92-14, pt. II, §§ 1.02, 1.03(a), (b), 3-10-92; Ord. No. 92-49, §§ 1, 2, 9-1-92; Ord. No. 08-28, § 4, 4-22-08; Ord. No. 13-21, § 4, 8-20-13)

**Cross reference—** Definitions generally, § 1-2.

Sec. 70-102. - Familial status; application.

The protections afforded against discrimination in this division on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

(Ord. No. 92-14, pt. II, § 1.03, 3-10-92; Ord. No. 92-49, § 2, 9-1-92)

Sec. 70-103. - Purposes and intent.

> (a)  The general purposes of this division are to:
>
> > (1)  Provide for execution within the county the policies embodied in title VIII of the Federal Civil Rights Act of 1968, as amended by the Federal Fair Housing Act Amendments of 1988.
> >
> > (2)  Secure for all individuals within the county the freedom from discrimination because of race, color, religion, national origin, gender, sexual orientation, familial status, or handicap in connection with housing and public accommodations, and thereby to promote the interests, rights and privileges of individuals within the county.
>
> (b)  This division shall be liberally construed to preserve the public safety, health and general welfare and to further

the general purposes stated in this section.

(c)  The enforcement of this division may be delegated by interlocal agreement to fair housing boards or commissions of other units of local government, as provided in section 70-109 of this division.

(Ord. No. 92-14, pt. II, § 1.01, 3-10-92; Ord. No. 08-28, § 5, 4-22-08; Ord. No. 13-21, § 5, 8-20-13)

## Sec. 70-104. - Certain sales and rentals exempted.

(a)  Except for the prohibitions against discriminatory advertising provided in subdivision III of this division, and subject to subsection (c) of this section, subdivision III of this division does not apply to:

(1)  The sale or rental of any single-family house by an owner, provided the following conditions are met:

a.  The owner does not own or have any interest in more than three single-family houses at any one time.

b.  The house is sold or rented without the use of a real estate broker, agent or salesperson or the facilities of any person in the business of selling or renting dwellings.

(2)  Rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such quarters as his residence.

(b)  For the purposes of this section, the term "person in the business of selling or renting dwellings" means any person who:

(1)  Within the preceding 12 months has participated as principal in three or more transactions involving the sale or rental of any dwelling or any interest therein;

(2)  Within the preceding 12 months has participated as agent, other than in the sale of his own personal residence, in providing sales or rental facilities or sales or rental services in two or more transactions involving the sale or rental of any dwelling or any interest therein; or

(3)  Is the owner of any dwelling designed or intended for occupancy by, or occupied by, five or more families.

(c)  The exemption in subsection (a)(1) of this section applies only to one such sale in any 24-month period.

(Ord. No. 92-14, pt. II, § 1.04, 3-10-92; Ord. No. 92-49, § 3, 9-1-92)

## Sec. 70-105. - Religious organization and private club exemptions.

(a)  This division does not prohibit a religious organization, association, or society, or a nonprofit institution or organization operated, supervised, or controlled by or in conjunction with a religious organization, association, or society, from:

(1)  Limiting the sale, rental, or occupancy of dwellings that it owns or operates for other than a commercial purpose to persons of the same religion, unless membership in the religion is restricted on account of race, color, or national origin; or

(2)  Giving preference to persons of the same religion, unless membership in the religion is restricted because of race, color, or national origin.

(b)  This division does not prohibit a private club not open to the public that, as an incident to its primary purpose, provides lodging that it owns or operates for other than a commercial purpose from limiting the rental or occupancy of that lodging to its members or from giving preference to its members.

(Ord. No. 92-14, pt. II, § 1.05, 3-10-92)

## Sec. 70-106. - Housing for older persons exempted.

(a) The provisions regarding familial status in this division shall not apply to housing intended for, and solely occupied by, persons 62 years of age or older. Housing satisfies the requirements of this section even though:

(1) There are persons residing in such housing on September 13, 1988, who are under 62 years of age, provided that all new occupants are persons 62 years of age or older;

(2) There are unoccupied units, provided that all such units are reserved for occupancy by persons 62 years of age or over;

(3) There are units occupied by employees of the housing (and family members residing in the same unit) who are under 62 years of age, provided they perform substantial duties directly related to the management or maintenance of the housing.

(b) The provisions regarding familial status shall not apply to housing intended and operated for occupancy by at least one person 55 years of age or older per unit pursuant to this section.

(c) In order to qualify as housing for older persons under this section, at least 80 percent of the units in the housing facility must be occupied by at least one person 55 years of age or older, except that a newly constructed housing facility for first occupancy after March 12, 1989, need not comply with this section until twenty percent of the units in the facility are occupied.

(d) Housing satisfies the requirements of this section even though:

(1) On September 13, 1988, under 80 percent of the occupied units in the housing facility are occupied by at least one person 55 years of age or older per unit, provided that at least 80 percent of the units are occupied after September 13, 1988, are occupied by at least one person 55 years of age or older.

(2) There are unoccupied units, provided that at least 80 percent of the occupied units are occupied by at least one person 55 years of age or older;

(3) There are units occupied by employees of the housing provider (and family members residing in the same unit) who are under 55 years of age, provided the employees perform substantial duties directly related to the management or maintenance of the housing.

(e) A person shall not be personally liable for monetary damages for a violation of this part if such person reasonably relied in good faith on the application of the exemption under this section relating to housing for older persons. For purposes of this paragraph, a person may show good faith reliance on the application of the exemption only by showing that:

(1) The person has no actual knowledge that the facility or the community is ineligible, or will become ineligible, for such exemption; and

(2) The facility or community has stated formally, in writing, that the facility or community complies with the requirements for such exemption.

(Ord. No. 92-14, pt. II, § 1.06, 3-10-92; Ord. No. 97-20, § 3, 4-8-97)


Sec. 70-107. - Appraisals.

This division does not prohibit a person engaged in the business of furnishing appraisals of real property from taking into consideration factors other than race, color, religion, gender, sexual orientation, handicap, familial status, or national origin.

(Ord. No. 92-14, pt. II, § 1.07, 3-10-92; Ord. No. 08-28, § 6, 4-22-08; Ord. No. 13-21, § 6, 8-20-13)


Sec. 70-108. - Effect of division on other laws.

    (a) This division does not affect a reasonable local or state restriction on the maximum number of occupants permitted to occupy a dwelling.

    (b) This division does not affect a requirement of nondiscrimination in any other state or federal law.

(Ord. No. 92-14, pt. II, § 1.08, 3-10-92; Ord. No. 92-49, § 4, 9-1-92)

Sec. 70-109. - Responsibility for administration of division.

The director of the county human rights office is authorized to administer the provisions of this part. Additionally, the board of county commissioners may designate other fair housing boards or commissions of units of local government within the county as being authorized to administer the provisions of this division. Such authorized boards or commissions may adopt procedural rules for implementation of this division, which are not in conflict with or inconsistent with the provisions of this division. No private organization or entity shall receive such authority.

(Ord. No. 92-14, pt. II, § 2.01, 3-10-92; Ord. No. 99-104, § 6, 12-7-99)

Sec. 70-110. - Cooperation with other entities.

The commission, or its designee under section 70-109, shall cooperate with and, as appropriate, may provide technical and other assistance to federal, state, local, and other public or private entities that are formulating or operating programs to prevent or eliminate discriminatory housing practices.

(Ord. No. 92-14, pt. II, § 2.03, 3-10-92)

Secs. 70-111—70-130. - Reserved.

Subdivision II. - Housing Violations

Sec. 70-131. - Subpoenas; discovery.

The commission, or its designee under section 70-109, may issue subpoenas and order discovery as provided by this division in aid of investigations and hearings as required. Such subpoenas and discovery may be ordered to the same extent and subject to the same limitations as subpoenas and discovery in a civil action under the Florida Rules of Civil Procedure.

(Ord. No. 92-14, pt. II, § 2.04, 3-10-92)

Sec. 70-132. - Complaints—Generally.

The commission, or its designee as provided in section 70-109, shall receive, investigate, seek to conciliate, and act on complaints alleging violations of this division.

(Ord. No. 92-14, pt. II, § 2.02, 3-10-92)

Sec. 70-133. - Same—Investigation, filing, amendment.

    (a) The commission, or its designee under section 70-109, shall investigate alleged discriminatory housing practices.

    (b) A complaint must be:

(1) In writing;

(2) Under oath; and

(3) In the form prescribed by the commission.

(c) An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, whichever is later, file a complaint with the commission alleging the discriminatory housing practice.

(d) Not later than one year after an alleged discriminatory housing practice has occurred or terminated, whichever is later, the commission, or its designee under section 70-109, may file its own complaint.

(e) A complaint under this division may be amended at any time.

(f) On the filing of a complaint under this division the commission shall:

(1) Give the aggrieved person and/or complainant notice that the complaint has been received;

(2) Advise the aggrieved person and/or complainant of the time limits and choice of forums under this division; and

(3) Not later than the 20th day after the filing of the complaint or the identification of an additional respondent under section 70-136 of this division, serve on each respondent:

   a. A notice identifying the alleged discriminatory housing practice and advising the respondent of the procedural rights and obligations of a respondent under this article; and

   b. A copy of the original complaint.

(Ord. No. 92-14, pt. II, § 4.01, 3-10-92)

Sec. 70-134. - Answering complaint.

(a) Not later than the tenth day after receipt of the notice and copy under subsection (f)(3) of section 70-133 of this division, a respondent may file an answer to the complaint.

(b) An answer to a complaint under this division must be:

(1) In writing;

(2) Under oath; and

(3) In the form prescribed by the commission.

(c) An answer to a complaint under this division may be amended at any time.

(d) An answer to a complaint under this division does not inhibit the investigation of the complaint.

(Ord. No. 92-14, pt. II, § 4.02, 3-10-92)

Sec. 70-135. - Investigation of complaints.

(a) For complaints filed with the commission and for all other complaints that the federal government has referred to the commission or has deferred jurisdiction over the subject matter of the complaint to the commission, the commission, or its designee, shall promptly investigate the allegations set forth in the complaint within 30 days.

(b) The commission, or its designee, shall investigate all complaints, and except as provided by subsection (c) of this section, shall complete an investigation not later than the 100th day after the date the complaint is filed, or if it is unable to complete the investigation within the 100-day period, shall dispose of all administrative proceedings related to the investigation not later than one year after the date the complaint is filed.

(c) If the commission, or its designee, is unable to complete administrative disposition within the time periods

prescribed in subsection (b) of this section, the commission shall notify the complainant and the respondent in writing of the reasons for the delay.

(Ord. No. 92-14, pt. II, § 4.03, 3-10-92)

Sec. 70-136. - Additional or substitute respondent.

(a) The commission, or its designee, may join a person not named in a complaint as an additional or substitute respondent if in the course of the investigation it determines that the person should be accused of a discriminatory housing practice.

(b) In addition to the information required in the notice under subsection (f)(3) of section 70-133 of this division, the commission, or its designee, shall include in a notice to a respondent joined under this section an explanation of the basis for the determination that the person is properly joined as a respondent.

(Ord. No. 92-14, pt. II, § 4.04, 3-10-92)

Sec. 70-137. - Conciliation.

(a) The commission, or its designee, as provided in section 70-109, shall, during the period beginning with the filing of a complaint and ending with the filing of a charge or a dismissal by the commission, to the extent feasible, engage in conciliation with respect to the complaint.

(b) A conciliation agreement is an agreement between a respondent and the complainant and is subject to the commission, or its designee's, as provided in section 70-109, approval.

(c) A conciliation agreement may provide for binding arbitration or another method of dispute resolution. Dispute resolution that results from a conciliation agreement may authorize appropriate relief, including monetary relief.

(d) A conciliation agreement shall be made public unless the complainant and respondent agree otherwise, and the commission, or its designee, determines that disclosure is not necessary to further the purposes of this division.

(e) Nothing said or done in the course of conciliation may be made public or used as evidence in a subsequent proceeding under this division without the written consent of the persons concerned.

(f) Failure by the parties to abide by the terms of a signed conciliation agreement under this division shall constitute a separate violation of this section, and will be investigated as such upon the filing of a complaint by either party thereto.

(Ord. No. 92-14, pt. II, § 4.05, 3-10-92; Ord. No. 92-49, § 6, 9-1-92; Ord. No. 99-104, § 7, 12-7-99)

Sec. 70-138. - Temporary or preliminary relief.

(a) If the commission, or its designee, concludes at any time following the filing of a complaint that prompt judicial action is necessary to carry out the purposes of this division, it may authorize a civil action for appropriate temporary or preliminary relief pending final disposition of the complaint, in accordance with F.S. § 760.34(8).

(b) On receipt of the commission's authorization pursuant to this section, the county attorney shall promptly file the action.

(c) A temporary restraining order or other order granting preliminary or temporary relief under this section is governed by the applicable Florida Rules of Civil Procedure.

(d) The filing of a civil action under this section does not affect the initiation or continuation of administrative proceedings under section 70-147 of this division.

(Ord. No. 92-14, pt. II, § 4.06, 3-10-92)

Sec. 70-139. - Investigative report.

    (a)  The commission, or its designee, shall prepare a final investigative report showing:

        (1)  The names and dates of contacts with witnesses;

        (2)  A summary of correspondence and other contacts with the aggrieved person and the respondent showing the dates of the correspondence and contacts;

        (3)  A summary description of other pertinent records;

        (4)  A summary of witness statements; and

        (5)  Answers to interrogatories.

        (6)  After completion of the investigation, the commission, or its designee, shall make available to the aggrieved person and the respondent, at any time, the final investigation report relating to that investigation and other information derived from the investigation, provided the release of such other information does not place an excessive burden on the complainant that might discourage the filing of complaints.

    (b)  A final report under this section may be amended if additional evidence is discovered.

  (Ord. No. 92-14, pt. II, § 4.07, 3-10-92; Ord. No. 99-104, § 8, 12-7-99)

Sec. 70-140. - Reasonable cause determination.

    (a)  The commission, or its designee, shall determine, based on the facts, whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur. For the purposes of this division, "reasonable cause" shall be based upon sufficiently trustworthy information which would lead an impartial observer to a belief that a discriminatory housing practice has occurred or is likely to occur.

    (b)  The commission shall make the determination under subsection (a) of this section not later than the 100th day after the date a complaint is filed unless:

        (1)  It is impracticable to make the determination; or

        (2)  The commission, or its designee, has approved a conciliation agreement relating to the complaint.

    (c)  If it is impracticable to make the determination within the time period provided by subsection (b) of this section, the commission shall notify the complainant and respondent in writing of the reasons for the delay.

    (d)  If the commission, or its designee, determines that reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, it shall, except as provided by section 70-142, immediately issue a reasonable cause finding on behalf of the aggrieved person.

  (Ord. No. 92-14, pt. II, § 4.08, 3-10-92)

Sec. 70-141. - Notice of determination.

    (a)  A reasonable cause finding issued under section 70-140:

        (1)  Must consist of a short and plain statement of the facts on which the commission, or its designee, has found reasonable cause to believe that a discriminatory housing practice has occurred or is about to occur;

        (2)  Must be based on the final investigative report; and

        (3)  Need not be limited to the facts or grounds alleged in the complaint.

    (b)  Not later than the 20th day after the commission, or its designee, issues a reasonable cause finding, the commission shall send a copy of such finding with information concerning the election under section 70-145 of

this division to:

 (1) Each respondent, together with a notice of the opportunity for a hearing provided by section 70-147 of this division; and

 (2) Each complainant on whose behalf the complaint was filed.

(Ord. No. 92-14, pt. II, § 4.09, 3-10-92)

## Sec. 70-142. - Application of land use law.

If the commission determines that a discriminatory housing practice involves the legality of a state or local zoning or other land use law or ordinance, the commission may not issue a charge and shall immediately refer the matter to the county attorney for appropriate action.

(Ord. No. 92-14, pt. II, § 4.10, 3-10-92)

## Sec. 70-143. - Dismissal of complaint.

 (a) If the commission, or its designee, determines that no reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, it shall promptly dismiss the complaint.

 (b) The commission shall make public disclosure of each dismissal under this section.

(Ord. No. 92-14, pt. II, § 4.11, 3-10-92)

## Sec. 70-144. - Pending civil trial.

The commission, or its designee, may not issue a reasonable cause finding under this division regarding an alleged discriminatory housing practice after the beginning of the trial of a civil action commenced by the aggrieved party under federal or state law seeking relief with respect to that discriminatory housing practice.

(Ord. No. 92-14, pt. II, § 4.12, 3-10-92)

## Sec. 70-145. - Election of judicial determination.

 (a) A complainant, a respondent, or an aggrieved person on whose behalf a complaint was filed under this division may elect to have the claims asserted in that charge decided in a civil action as provided by section 70-146 of this division.

 (b) The election under this section must be made not later than the 20th day after the date of receipt by the electing person of service under subsection (b) of section 70-141 of this division or, in the case of the commission, not later than the 20th day after the date the charge was issued.

 (c) The person making the election under this section shall give notice to the commission and to all other complainants and respondents to whom the charge relates.

(Ord. No. 92-14, pt. II, § 4.13, 3-10-92)

## Sec. 70-146. - County attorney action for enforcement.

 (a) If a timely election is made under section 70-145, the commission shall authorize, and not later than the 30th day after the election is made the county attorney shall file a civil action on behalf of the aggrieved person in a court of competent jurisdiction seeking relief as provided by state and/or federal law.

(b)  An aggrieved person may intervene in the civil action filed under this section.

(Ord. No. 92-14, pt. II, § 4.14, 3-10-92)

Sec. 70-147. - Administrative hearing.

(a)  If a timely election is not made under section 70-145, the commission, or its designee, shall provide for a hearing on the charge.

(b)  Except as provided by subsection (d) of this section, the Florida Administrative Procedures Act (F.S. ch. 120) governs hearings under this section.

(c)  When the commission, or its designee, has issued a reasonable cause finding and a judicial election has not been made under section 70-145 nor a settlement agreement entered between the complainant and respondent, the commission or its designee shall arrange for a hearing to be conducted by an administrative law judge from the state division of administrative hearings.

(d)  A hearing under this section may not continue regarding any alleged discriminatory housing practice after the beginning of the trial of a civil action commenced by the aggrieved person seeking relief with respect to that discriminatory housing practice.

(e)  The county attorney shall provide legal representation for the complainant in such administrative hearings under this section.

(f)  The administrative law judge shall issue a final order within 30 days of the hearing conducted under this section. The final order issued by the administrative law judge shall be the final agency action under this section.

(g)  Any party to the complaint shall have the right to petition for judicial review of the administrative law judge's final order in a court of competent jurisdiction. Such review shall be limited to a review of the administrative law judge's final order and the record of the proceedings conducted under this section. A reviewing court may modify, revoke or remand the final order only upon a finding that such order is not supported by substantial competent evidence and/or the proceedings conducted did not comply with the essential requirements of law.

(h)  The commission, or its designee, as well as a complainant, may seek enforcement of a final order issued under this section by filing a petition for enforcement in a court of competent jurisdiction. Such a petition for enforcement may request declaratory relief, temporary or permanent equitable relief, a fine, forfeiture, penalty, and/or issuance of a money judgment for actual damages, attorney's fees and costs, as provided in the final order. A court considering such petition shall grant it unless there is a showing by the respondent, based upon the record of the proceedings which were conducted under this section, that the order is not supported by substantial competent evidence and/or the proceedings conducted did not comply with the essential requirements of law.

(Ord. No. 92-14, pt. II, § 4.15, 3-10-92; Ord. No. 92-49, § 7, 9-1-92; Ord. No. 99-104, § 9, 12-7-99)

Sec. 70-148. - Administrative penalties.

(a)  If the administrative law judge determines at a hearing under section 70-147 of this division that a respondent has engaged in or is about to engage in a discriminatory housing practice, the administrative law judge may order the appropriate relief, including actual damages, reasonable attorney's fees, costs, and other injunctive or equitable relief.

(b)  To vindicate the public interest, the administrative law judge may assess a civil penalty against the respondent in an amount that does not exceed:

(1) Ten thousand dollars if the respondent has been adjudged by an administrative law judge or a court to have committed no prior discriminatory housing practice;

(2) Except as provided in subparagraph (c) below, $25,000.00 if the respondent has been adjudged by an administrative law judge or a court to have committed one other discriminatory housing practice during the five-year period ending on the date of the filing of the charge; and

(3) Except as provided by subsection (c) of this section, $50,000.00 if the respondent has been adjudged by an administrative law judge or a court to have committed two or more discriminatory housing practices during the seven-year period ending on the date of the filing of the charge.

(c) If the acts constituting the discriminatory housing practice that is the object of the charge are committed by the same individual who has been previously adjudged to have committed acts constituting a discriminatory housing practice, whether adjudged by an administrative law judge or court, the civil penalties in subsections (b)(2) and (3) of this section may be imposed without regard to the period of time within which any other discriminatory housing practice occurred.

(d) At the request of the commission, the county attorney shall sue to recover a civil penalty due under this section. Funds collected under this section shall be paid to the board of county commissioners' finance department and shall be used to offset expenses incurred by the commission or county attorney in enforcing this division.

(e) The penalties provided for under this section are applicable regardless of whether the commission or aggrieved party initiated the investigation under this division.

(Ord. No. 92-14, pt. II, § 4.16, 3-10-92; Ord. No. 99-104, § 10, 12-7-99)


Sec. 70-149. - Restriction on sale or rental of property.

If at any time following the issuance of a reasonable cause determination, a respondent intends to enter into a contract, sale, encumbrance, or lease with any person regarding the property which is the subject of a reasonable cause determination, the respondent must provide a copy of the cause determination to such person prior to entering into the contract, sale, encumbrance, or lease. A commission determination of reasonable cause, however, shall not affect a contract, sale, encumbrance, or lease which:

(1) Was consummated before the commission issued the reasonable cause finding; and

(2) Involved a bona fide purchaser, encumbrances, or tenant who did not have actual notice of the charge filed under this division.

(Ord. No. 92-14, pt. II, § 4.17, 3-10-92; Ord. No. 99-104, § 11, 12-7-99)


Sec. 70-150. - Orders involving licensed or regulated business.

If the administrative law judge issues an order with respect to a discriminatory housing practice that occurred in the course of a business subject to a licensing or regulation by a governmental agency, the commission, or its designee, shall, not later than the 30th day after the date of the issuance of the order:

(1) Send copies of the findings and the order to the governmental agency; and

(2) Recommend to the governmental agency appropriate disciplinary action.

(Ord. No. 92-14, pt. II, § 4.18, 3-10-92; Ord. No. 99-104, § 12, 12-7-99)


Sec. 70-151. - Previous order within five years.

If the administrative law judge, issues an order against a respondent against whom another order was issued within the preceding five years under section 70-148 of this division, the commission shall send a copy of each order issued under that section to the county attorney.

(Ord. No. 92-14, pt. II, § 4.19, 3-10-92; Ord. No. 99-104, § 13, 12-7-99)


Sec. 70-152. - Private enforcement.

    (a)   *Civil action.*

        (1)   Under the provisions of this section, an aggrieved person may file a civil action in a court of competent jurisdiction no later than two years after an alleged discriminatory housing practice has occurred. However, the computation of such two-year period shall not include any time during which an administrative proceeding under sections 70-133—70-143 took place with respect to a charge or complaint of such alleged discriminatory housing practice.

        (2)   An aggrieved person may file an action regardless of whether they have filed a complaint under sections 70-133—70-151 of this division, and regardless of the status of any complaint filed under this division.

        (3)   In a civil action under this subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages and may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate.

    (b)   *Intervention by county attorney.* Upon the request of the commission, the county attorney may intervene in an action brought under the provisions of subsection (a) of this section if the commission certifies that the case is of significant public importance to the citizens of the county.

(Ord. No. 92-14, pt. II, §§ 5.01, 5.02, 3-10-92; Ord. No. 05-87, § 1, 12-6-05)


Sec. 70-153. - Enforcement by county attorney.

    (a)   *Pattern or practice cases.*

        (1)   Whenever the commission, or its designee, has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this division, or that any group of persons has been denied any of the rights granted by this division, and such denial raises an issue of general public importance, it shall direct the county attorney to commence a civil action in a court of competent jurisdiction.

        (2)   For the purposes of this section, "reasonable cause" shall be based upon sufficiently trustworthy information which would lead an impartial observer to a belief that a person is engaged in the actions described in subsection (a)(1) of this section.

    (b)   *Subpoena enforcement.* The county attorney, on behalf of the commission, or its designee, may enforce a subpoena issued under this division in appropriate proceedings pursuant to law.

(Ord. No. 92-14, pt. II, §§ 6.01, 6.02, 3-10-92)


Secs. 70-154—70-175. - Reserved.


Subdivision III. - Housing Discrimination

Sec. 70-176. - Sale or rental.

    (a)  A person may not refuse to sell or to rent after the making of a bona fide offer, refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of race, color, handicap, religion, gender, sexual orientation, familial status, or national origin.

    (b)  A person may not discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in providing services or facilities in connection with such sale or rental, because of race, color, handicap, religion, gender, sexual orientation, familial status, or national origin.

    (c)  This section does not prohibit discrimination against a person because the person has been convicted under federal law or the law of any state of the illegal manufacture or distribution of a controlled substance.

(Ord. No. 92-14, pt. II, § 3.01, 3-10-92; Ord. No. 08-28, § 7, 4-22-08; Ord. No. 13-21, § 7, 8-20-13)

Sec. 70-177. - Publication.

    A person may not make, print, or publish or cause to be made, printed, or published any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, gender, sexual orientation, handicap, familial status, or national origin, or an intention to make such a preference, limitation, or discrimination.

(Ord. No. 92-14, pt. II, § 3.02, 3-10-92; Ord. No. 08-28, § 8, 4-22-08; Ord. No. 13-21, § 8, 8-20-13)

Sec. 70-178. - Falsely representing availability.

    A person may not represent to any person because of race, color, religion, gender, sexual orientation, handicap, familial status, or national origin that a dwelling is not available for inspection, sale or rental when the dwelling is available for inspection, sale or rental.

(Ord. No. 92-14, pt. II, § 3.03, 3-10-92; Ord. No. 08-28, § 9, 4-22-08; Ord. No. 13-21, § 9, 8-20-13)

Sec. 70-179. - Entry into neighborhood.

    A person may not, for profit, induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry or prospective entry into a neighborhood of a person of a particular race, color, religion, gender, sexual orientation, handicap, familial status, or national origin.

(Ord. No. 92-14, pt. II, § 3.04, 3-10-92; Ord. No. 08-28, § 10, 4-22-08; Ord. No. 13-21, § 10, 8-20-13)

Sec. 70-180. - Handicap.

    (a)  A person may not discriminate in the sale or rental or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of:

       (1)  That buyer or renter;

       (2)  A person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or

       (3)  Any person associated with that buyer or renter.

    (b)  A person may not discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a handicap of:

(1)  That person;

(2)  A person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(3)  Any person associated with that person.

(c)  For purposes of this section only, discrimination includes:

(1)  A refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by the person if the modifications may be necessary to afford the person full enjoyment of the premises;

(2)  A refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling; or

(3)  In connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after the date of enactment of the federal Fair Housing Amendments Act of 1988 (P.L. 100-430), a failure to design and construct those dwellings in a manner that:

a.  The public use and common use portions of the dwellings are readily accessible to and usable by handicapped persons;

b.  All the doors designed to allow passage into and within all premises within the dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

c.  All premises within the dwellings contain the following features of adaptive design:

1.  An accessible route into and through the dwelling;

2.  Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

3.  Reinforcements in bathroom walls to allow installation of grab bars; and

4.  Usable kitchens and bathrooms so that an individual in a wheelchair can maneuver about the space.

(d)  Compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people, ANSI A117.1-1986, suffices to satisfy the requirements of subsection (c)(3)c of this section.

(e)  As used in this section, the term "covered multifamily dwellings" means:

(1)  Buildings consisting of four or more units if the buildings have one or more elevators; and

(2)  Ground floor units in other buildings consisting of four or more units.

(f)  Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.

(Ord. No. 92-14, pt. II, § 3.05, 3-10-92)


Sec. 70-181. - Residential real estate related transactions.

(a)  A person or entity whose business includes engaging in residential real estate related transactions may not discriminate against a person in making a real estate related transaction available or in the terms or conditions of a real estate related transaction because of race, color, religion, gender, sexual orientation, handicap, familial status, or national origin.

(b)  As used in this section, "residential real estate related transaction" means:

(1)  Making or purchasing loans or providing other financial assistance:

    a.  To purchase, construct, improve, repair, or maintain a dwelling; or

    b.  Secured by residential real estate; or

(2)  Selling, brokering, or appraising residential real property.

(Ord. No. 92-14, pt. II, § 3.06, 3-10-92; Ord. No. 92-49, § 5, 9-1-92; Ord. No. 08-28, § 11, 4-22-08; Ord. No. 13-21, § 11, 8-20-13)

Sec. 70-182. - Brokerage services.

A person may not deny any person access to, or membership or participation in, a multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or discriminate against a person in the terms or conditions of access, membership, or participation therein, on the basis of race, color, religion, national origin, gender, sexual orientation, familial status, or handicap.

(Ord. No. 92-14, pt. II, § 3.07, 3-10-92; Ord. No. 08-28, § 12, 4-22-08; Ord. No. 13-21, § 12, 8-20-13)

Sec. 70-183. - Interference, coercion, or intimidation.

It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this subdivision.

(Ord. No. 92-14, pt. II, § 3.08, 3-10-92)

Secs. 70-184—70-210. - Reserved.

Subdivision IV. - Prohibited Discrimination in Public Accommodations

Sec. 70-211. - Definitions.

The following words, terms and phrases, when used in this subdivision, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Commission* means the official body or bodies given authority by the board of county commissioners to administer this subdivision, as well as the board of county commissioners itself.

*Disability* means:

(1)  A physical or mental impairment which substantially limits one or more of a person's major life activities;

(2)  A record of such an impairment; or

(3)  Being regarded as having such an impairment.

*Gender* includes but is not limited to sex, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth, gender-related self-identity, self-image, appearance, expression or behavior, whether or not such gender-related characteristics differ from those associated with the individual's assigned sex or physiology at birth, which gender-related identity can be shown by evidence including, but not limited to, medical history, care or treatment of the gender-related identity, consistent and uniform assertion of the gender-related identity or any other evidence that the gender-related identity is sincerely held, part of the person's core identity, or not being asserted for an improper purpose.

*National origin* means the origin of an ancestor, the country of origin of a person's forebears, naturally, by marriage, or by adoption.

*Operator* means and includes any owner, lessee, proprietor, manager, superintendent, agent, or occupant of a place of accommodation or an employee or independent contractor of any such person.

*Place of public accommodation* means and includes all places included within the meaning of the following: Inns, taverns, roadhouses, hotels, and motels, whether operated for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest; restaurants, eating houses, and any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirits or malt liquors are sold; ice cream parlors, confectioneries, soda fountains, and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind, are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind; dispensaries, clinics, hospitals; bathhouses, swimming pools; laundries and all other cleaning establishments; barbershops, beauty shops; theaters, motion picture houses, airdromes, roof gardens, music halls, racecourses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages; all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; and public halls and public elevators of buildings and structures occupied by two or more tenants, or by the owner and one or more tenants.

*Sexual orientation* means an individual's actual or perceived heterosexuality, homosexuality, or bisexuality. This definition is not intended to protect any practice prohibited by federal, state, or local law.

(Ord. No. 92-14, pt. II, § 3.01, 3-10-92; Ord. No. 93-29, 3-9-93; Ord. No. 08-28, § 13, 4-22-08; Ord. No. 13-21, § 13, 8-20-13)

**Cross reference—** Definitions generally, § 1-2.

Sec. 70-212. - Purpose and intent.

    (a)  It is the purpose and intent of the board of county commissioners through the passage of this subdivision to assure to the citizens of the county the equal enjoyment of the facilities and services of any public place of accommodation, regardless of their race, color, religion, national origin, gender, sexual orientation, or disability.

    (b)  To the extent that the provisions of this subdivision overlap or conflict with other provisions of this article, such other provisions shall take precedence.

    (c)  The enforcement of this subdivision may be delegated by interlocal agreement to other units of local government or to nonprofit corporations.

(Ord. No. 92-14, pt. III, § 1.01, 3-10-92; Ord. No. 93-29, 3-9-93; Ord. No. 08-28, § 14, 4-22-08; Ord. No. 13-21, § 14, 8-20-13)

Sec. 70-213. - Exemptions from subdivision.

    (a)  The provisions of this subdivision shall not prohibit a religious organization, association, or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society from giving preference to the members of the same religion in the enjoyment of its facilities and services, unless membership in such religion is restricted on account of race, color, gender, sexual orientation, or national origin.

    (b)  The provisions of this subdivision relating to public accommodations do not prohibit discrimination on the basis of gender in rest rooms, shower rooms, bathhouses, and similar facilities which are by their nature simply

private, or dormitory lodging facilities.

(c) The provisions of this subdivision shall not apply to any private club or other establishment which is not, in fact, open to the public, except to the extent that the goods, services, facilities, privileges, advantages, or accommodations of the establishment are made available to the customers or patrons of another establishment which is a place of public accommodation. However, any institution, club, or place of accommodation which has more than 400 members, provides regular meal service and regularly receives payment for dues, fees, use of space, facilities, services, meals or beverages, directly or indirectly, from or on behalf of nonmembers for the furtherance of the trade or business, shall not receive an exemption as a private club under this subdivision.

(d) The provisions of this subdivision shall not be construed as prohibiting the giving of special discounts on goods and services by a place of public accommodation, provided such goods or services are not denied to individuals on the basis of race, color, religion, national origin, gender, sexual orientation, or disability.

(Ord. No. 92-14, pt. III, § 4.01, 3-10-92; Ord. No. 93-29, 3-9-93; Ord. No. 08-28, § 15, 4-22-08; Ord. No. 13-21, § 15, 8-20-13)

Sec. 70-214. - Discrimination prohibited.

(a) It is a violation of this subdivision for an operator of a place of public accommodation, whether personally or through the actions of an employee or independent contractor, to deny or refuse to another person the full and equal enjoyment of the facilities and services of any place of public accommodation on the basis of that person's race, color, religion, national origin, gender, sexual orientation, or disability. For the purposes of this subdivision, the failure by an owner of a public building, or a private building which has restrooms open to the public, to comply with the provisions of F.S. § 553.86, relating to the provision of public restrooms, shall be considered a denial of full and equal enjoyment of the facilities of a place of public accommodation to women on the basis of their gender.

(b) It is a violation of this subdivision for an owner or operator of a place of public accommodation, either personally or through the actions of an employee or independent contractor, to display or publish any written communication which is to the effect that any of the facilities and/or services of a place of public accommodation will be denied to any person or that any such person is unwelcome, objectionable or unacceptable because of that person's race, color, religion, national origin, gender, sexual orientation, or disability.

(Ord. No. 92-14, pt. III, § 2.01, 3-10-92; Ord. No. 93-29, 3-9-93; Ord. No. 08-28, § 16, 4-22-08; Ord. No. 13-21, § 16, 8-20-13)

Sec. 70-215. - Filing of complaints.

Any person alleging that he has been subject to an unlawful discriminatory practice under this subdivision shall file a complaint in writing with the commission through the designated office or offices, sworn to or affirmed, which shall state the name and address of the complainant and the person against whom the complaint is made. It shall also state the alleged facts surrounding the alleged unlawful discriminatory practice and such other information as the commission may require or deem necessary. A complaint shall be filed within 180 days after the date of the alleged unlawful discriminatory practice in order to be processed under this subdivision. No complaints shall be filed under this subdivision for a claim which has previously been adjudicated under a similar municipal ordinance.

(Ord. No. 92-14, pt. III, § 5.01, 3-10-92; Ord. No. 93-29, 3-9-93)

Sec. 70-216. - Processing complaints, administrative hearings and enforcement.

(a) The same process for handling complaints and conducting administrative hearings as is provided for in section

70-77 of this article shall apply to the complaints filed and administrative hearings conducted under this subdivision.

(b) The same authority and procedures for enforcement provided in section 70-78 of this article shall apply to the enforcement of an administrative order issued by the commission for an unlawful discriminatory practice under this subdivision.

(Ord. No. 92-14, pt. III, § 6.01, 3-10-92; Ord. No. 93-29, 3-9-93)

Sec. 70-217. - Refueling assistance for persons with disabilities.

(a) *Title.* This ordinance [Ordinance No. 12-38] shall be known and may be cited as the "Gas Pumping Assistance For Persons With Disabilities Ordinance".

(b) *Definitions.* For purposes of this section, the following terms shall have the meanings given to them below. No attempt is made to define any words which are used in accordance with their established dictionary meaning, except when necessary to avoid misunderstanding. When not inconsistent with the context, words used in the present tense include the future, words in the plural number include the singular number, words in the singular number include the plural number, and the use of any gender shall be applicable to all genders whenever the sense requires. The words "shall", "will", and "must" are mandatory and the word "may" is permissive.

*Assurance of compliance (AC)* means a written agreement between the commission or designee and a gas station retailer, entered into willingly by each party, as provided for in subsection (i) of this section.

*Complainant* means any individual, regardless of whether such individual is a person with a disability, who witnesses or who is subjected to conduct in violation of this subdivision and who files a complaint with the commission or designee stating the information required by subsection (g).

*County* means Pinellas County, Florida, a political subdivision of the State of Florida.

*Day(s)* means calendar day(s).

*Gasoline station* means that portion of property where flammable and combustible liquids used as motor fuels are stored and subsequently dispensed from fixed, approved dispensing equipment into the fuel tanks of motor vehicles by any person.

*Gas station retailer* means:

(1) Any full service gasoline station; or

(2) Any self-service gasoline station that has two or more attendants on duty at any given time during the hours the station is open for business to the public.

*Notice of violation* means a written notice of an alleged violation of this section issued to a gas station retailer by the commission or designee.

*Person or persons* means any individual (including a minor child), firm association, joint venture, partnership, estate, trust, business trust, syndicate, fiduciary, corporation, and any other groups or combination.

*Reasonable cause* means, if given the same set of facts or actions, a reasonable person would conclude that a violation of this section has occurred.

*Repeat violation* means any violation of this section by a gas station retailer committed within five years after (i) such gas station retailer has entered into an AC with respect to a violation of the same or a different provision of this section; or (ii) such gas station retailer has been found to have violated the same or a different provision of this section; or (iii) such gas

station retailer has been convicted, pled nolo contendere or guilty to a violation of the same or different provision of this section in a criminal court; or (iv) such gas station retailer has admitted violating the same or a different provision of this section; or (v) a failure by a gas station retailer to abide by any provision of an AC entered into by the gas station retailer.

(c) *Administration.* For purposes of this section, the powers herein delegated, shall be jointly administered by the Pinellas County Office of Human Rights and the Pinellas County Department of Justice and Consumer Services.

(d) *Accessibility requirements.*

(1) Within 90 days of enactment of this section, all gas station retailers shall be required to prominently display a sign, decal or sticker, no smaller than 15 square inches, on the canopy column of all gasoline pumps clearly stating the telephone number for that gas station retailer, the international symbol of accessibility (ISA), and wording such as "Signal or Call for Assistance" or "Assistance Available - Signal or Call". The sign, decal or sticker must also include the statement "Complaints? Contact the Pinellas County Office of Human Rights", must be on a blue background with white text, and shall be 48 to 54 inches above ground level from the baseline to the character of the text. The telephone number indicated on the sign, decal or sticker shall be operational and answered directly by an attendant of the gas station retailer during the hours the gas station retailer is open for business to the public.

(2) The gas station retailer shall require an attendant to provide refueling assistance to the driver of any motor vehicle properly displaying an exemption parking permit as provided in F.S. §§ 316.1958 or 320.0848, as may be amended, or the driver of any motor vehicle properly displaying a license plate issued pursuant to F.S. §§ 320.084, 320.0842, 320.0843 or 320.0845, as may be amended, or other out of state license plates designating the driver as disabled, when such service is requested during the hours the gas station retailer is open for business to the public.

However, should such assistance be requested during times when a second attendant is not present at a self-service gas station, the gas station retailer is not required to provide the requested assistance. In such case, if a remote or electronic means of communication with the requester exists, the one attendant on duty shall inform the person that he or she is unable to provide such assistance as a result of having only one attendant on duty.

(e) *Prohibited conduct.* It shall be a violation of this section for a gas station retailer to:

(1) Fail or refuse to prominently display a sign, decal or sticker, as described in subsection (d)(1) above; or

(2) Fail to ensure the telephone number indicated on the sign, decal or sticker is operational and answered by an employee of the gas station retailer during hours the gas station retailer is open for business to the public; or

(3) Fail to provide refueling assistance to the driver of any motor vehicle properly displaying an exemption parking permit as provided in F.S. § 316.1958 or § 320.0848, as may be amended, or to the driver of any motor vehicle properly displaying a license plate issued pursuant to F.S. § 320.084, § 320.0842, § 320.0843 or § 320.0845, as may be amended, or other out of state license plates designating the driver as disabled, when such service is requested during the hours the gas station retailer is open to the public unless there is only one attendant on duty at the time of the request; or

(4) Failure to abide by any provision of an AC entered into by such gas station retailer. If a gas station retailer fails to abide by more than one provision of an AC, each such failure shall be a separate violation of this section.

(f) *Dual remedies.* A violation of this section may also constitute grounds for a violation of section 70-214, Prohibited Discrimination in Public Accommodations, of Pinellas County's Human Rights Ordinance, as may be amended. Nothing herein shall prevent any person from exercising any right or seeking any remedy or redress to

which one might be entitled to under that section.

(g)  *Filing of complaints.*

(1)  Any person who witnesses or who is subject to an unlawful practice or conduct in violation of this section may file a complaint with the commission or designee.

(2)  The complaint shall contain the following information:

a.  Name and address of the gas station retailer alleged to have committed the offense;

b.  Date of the alleged offense;

c.  General statement of the facts of the alleged offense;

d.  Name and signature of the complainant;

e.  Such other information as required by the commission or designee.

(h)  *Duties and responsibilities of the commission or designee under this section.*

(1)  The commission or designee shall receive and review complaints of violations of this section to ensure the complaint is in compliance with subsection (g) above.

(2)  The commission or designee may request additional information from the complainant for purposes of processing the complaint.

(3)  The commission or designee shall then reduce the complaint to writing and forward the complaint, within ten days of receipt, for further processing.

(4)  The commission or designee shall administratively track the complaint through the enforcement process until closure of the complaint.

(5)  The commission or designee shall evaluate received complaints of violations of this section, investigate such complaints, including what other measures, if any, a gasoline station retailer has taken to afford accessibility for persons with disabilities, and take such action it deems appropriate with respect thereto, as provided for in this section.

(6)  The commission or designee may also initiate an investigation into any suspected violation of this section and, when warranted, take such action it deems appropriate with respect thereto, as set forth in this section.

(7)  If upon investigation the commission or designee determines that there is reasonable cause to believe that a gas station retailer has violated this section, then the commission, or designee may take one or more of the following actions in accordance with the provisions of this section:

a.  Notify the gas station retailer of the finding of reasonable cause to believe that a violation occurred and allow the gas station retailer a specified period of time to correct the violation, not to exceed 15 days;

b.  Issue a notice of violation to the gas station retailer;

c.  Attempt to conciliate the matter through conference(s) with all interested parties and such representatives as the parties may choose to assist;

d.  Negotiate and enter into an AC with gas station retailer in accordance with subsection (i) of this section;

e.  Utilize county, state, and federal agencies in an effort to resolve complaints filed under this section;

f.  Initiate enforcement actions pursuant to subsection (j);

g.  Refer the matter to appropriate federal and state agencies for criminal prosecution and/or administrative action and file such criminal or administrative complaints with state or federal agencies as may be required.

(i)  *Assurance of compliance.* After receiving and investigating a complaint as set forth in subsection (h) above, if the

commission or designee determines that a violation of this section has occurred that is not a repeat violation, the commission or designee may accept an assurance of compliance (AC) as an alternative to initiating other enforcement action delineated in subsection (h) above. The AC shall be executed by the authorized agent of the gas station retailer responsible for ensuring that no future violations shall occur. Pursuant to the terms of the AC, the responsible gas station retailer shall agree to refrain from and prevent any future violations of this section. If the gas station retailer fails to adhere to the terms of the AC, said failure shall constitute a violation of this section in its own right, as indicated in subsection (e)(4). A notice of violation may be issued for the underlying violation as well as the violation of the AC.

(j)   *Enforcement and penalties.*

(1)   Any violations of this section may be punished as provided in subsections (d) through (i) above.

(2)   In addition to the penalties provided in subsection (1) above, any violations of this section may be punished as provided for in Chapter 2, Article VIII, of the Pinellas County Code.

(k)   *Additional enforcement agencies.* County municipalities may enforce this section as its embraced area is countywide. Code enforcement officers and law enforcement officers may enforce this section in their respective jurisdictions.

(Ord. No. 12-38, § 8-21-12)

Secs. 70-218—70-235. - Reserved.