UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. GUALTIERI, in his official capacity as Sheriff of Pinellas County, PINELLAS COUNTY, FLORIDA, et al.,<br><br>Defendants. | Case No.: 8:20-cv-02005-TPB-AEP |

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS SECOND AMENDED COMPLAINT OF THE INDIVIDUALLY NAMED DEFENDANTS [Dkt. #88] AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Plaintiff, CARLOS RAUL BELLO NOGUEDA, a/k/a KARLA BELLO (hereinafter, "Plaintiff" or "Karla"), by and through her undersigned attorney, and hereby responds in opposition to the Defendants' Motion to Dismiss Second Amended Complaint of the Individually Named Defendants [Dkt. #88] (hereinafter, the "Motion to Dismiss") and states as follows:

### INTRODUCTION AND
### PROCEDURAL DEFICIENCIES OF THE MOTION TO DISMISS

1.     This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for the Defendants' individual and collective personal, malicious, and unlawful violations under color of

state law of Plaintiff's individual rights, while the Plaintiff was a detainee at the Pinellas County Jail (hereinafter, the "Jail").

2.     On September 29, 2021, this Court issued and Order (hereinafter, the "Order") granting the Motion to Dismiss of the Doe Defendants and stuck the First Amended Complaint. [Dkt. #83].

3.     In addition, this Court's Order stated that:

> Second, all thirteen of the individually named defendants are represented by the same attorney, who filed nine separate motions to dismiss. No reason is apparent for the filing of separate motions. Absent some compelling reason, counsel should file a single motion under Rule 12 for the individually named defendants.

[Dkt. #83, pp. 2-3].

4.     The Defendants, Yvette Dixon (hereinafter, "Dixon"), Cpl. Richard Merritt (hereinafter, "Merritt"), Deputy Chris Moses (hereinafter, "Moses"), Darlene Hilery, LPN (hereinafter, "Hilery"), and Sgt. Jason Franjesevic (hereinafter, "Franjesevic"), (hereinafter collectively, the "Defendants") filed the Motion to Dismiss on November 8, 2021.

5.     Additionally, since this Motion to Dismiss is 22 pages long and incorporates aspects[1] of the other Motion to Dismiss of Sheriff Gualtieri [Dkt. #87], which is 14 pages long, the Plaintiff argues that this Motion is procedurally improper pursuant to Local Rule 3.01(a) which states that a motion must be "a single document

---

[1] The Motion to Dismiss states that, "Additional pertinent facts and background about Bello's incarceration are set forth in Sheriff Gualtieri's motion to dismiss. Doc. 87." [Dkt. #88, p. 2]

no longer than twenty-five pages inclusive of all parts".

6.     Regardless, given that the Motion to Dismiss incorporates arguments from the other Defendants' motions to dismiss, the Plaintiff's responses against those incorporated arguments are included herein so as not to require this Court to switch back and forth between various motions.

7.     The Plaintiff argues that it was not in the spirit of this Court's Order to proceed in such a fashion, nor did this Court intend that once again, the Plaintiff has to respond to the same arguments in multiple responses.

<u>**MEMORANDUM OF LAW**</u>

**I.      STANDARD OF REVIEW.**

**A. Motions for Dismiss for Failure to State a Claim.**

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. <u>Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.</u>, 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46, (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. <u>Id.</u> (*citing* <u>Sanjuan v. American Board of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most

favorable to the plaintiff. <u>Quality Foods</u>, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. <u>Quality Foods</u>, 711 F.2d at 995. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> (*quoting* <u>Conley</u>, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* <u>McLain v. Real Estate Board of New Orleans, Inc.</u>, 444 U.S. 232, 246 (1980); <u>Dussouy v. Gulf Coast Investment Corp.</u>, 660 F.2d 594, 602 (5th Cir.1981); <u>Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 540 F.2d 824, 826-827 (5th Cir. 1976).

## II.     ARGUMENT.

### A. The First Amended Complaint is not "prolix", and it is certainly not subject to dismissal based upon Rule 8.

To begin, the Defendants' argument regarding the alleged "prolix" nature of the Complaint does not comport with his arguments regarding a "shotgun pleading". One is left wondering how a detailed, allegedly "prolix" pleading could simultaneously be *too* specific and not specific *enough*, and given the nature of the Defendants' arguments, were it shorter, they would be arguing that it did not set forth sufficient facts.

The Complaint, at 60 pages and 264 paragraphs, is simply a well-researched and detailed explanation of the various issues and complex concepts described therein. Further, the introductory factual allegations are only 22 pages and 97 paragraphs. The rest of the Complaint consists of Counts I to VIII.

In fact, it was necessary to increase the size of the Complaint in order to comply

with this Court's Order, which required that the complaint, "must allege facts showing the direct involvement of each defendant in [each] civil rights violation". [Dkt. # 83, p. 2]. Essentially, this Court appeared to recognize the need for additional fact pleading in this case, so the Defendants' arguments that the additional paragraphs are unnecessary or confusing are not grounded in fact.

In fact, compared to other pleadings deemed "prolix" by this Court, the Complaint does not even come close. For example, this Court found that a complaint consisting of 134 pages and 566 paragraphs long, where the "recitation of the various counts does not begin until page 126, paragraph 526", such was a good example of a "prolix" claim. Lawrie v. The Ginn Companies, LLC, 309-CV-446-J-32JBT, 2010 WL 3746725, at *3 (M.D. Fla. Sept. 21, 2010).

Another example, in Al-Rayes v. Willingham, 3:15-CV-107-J-34JBT, 2016 WL 6080826, at *3 (M.D. Fla. Aug. 15, 2016), report and recommendation adopted, 3:15-CV-107-J-34JBT, 2016 WL 6071636 (M.D. Fla. Oct. 17, 2016), the complaint was deemed "prolix" by this Court where it had 66 pages *but* the first 41 pages and 202 paragraphs preceded any of the counts. The Southern District found that a complaint spanning 142 pages was "prolix". Lawrie v. Ginn Dev. Co., LLC, 3:09-CV-446-J-32JBT, 2014 WL 4788067, at *3 (M.D. Fla. Sept. 19, 2014), aff'd, 656 Fed. Appx. 464 (11th Cir. 2016). The same court found that a complaint consisting of 507 pages (inclusive of exhibits), 341 paragraphs, and 7 counts was also "prolix". Shaprio v. Unum Life Ins. Co. of Am., 17-CV-23992-UU, 2017 WL 10379581, at *1 (S.D. Fla. Nov. 29, 2017).

To the contrary, because of the nature of this suit, it was important to address the medical issues therein, particularly where issues of transgender health and terminology might not be well known to the reader, as well as by laying out as many of the facts of the specific incidents that led to the Counts as could be stated to explain how all of the different Defendants contributed.

Furthermore, the Defendants' arguments about newspaper articles and citation to <u>Simmons v. Bradshaw</u>, 879 F.3d 1157, 1168 (11th Cir. 2018) are misleading, as that case neither addresses "newspaper clippings", nor does it apply to the facts of this case. In fact, the only part of the <u>Simmons v. Bradshaw</u> decision that discusses anything *even remotely connected* to newspaper articles is **in the dissent, not the actual decision,** and there is absolutely nothing in the decision that backs up the Defendants' statement that, "[n]ewspaper articles are constitutionally irrelevant." [Dkt. #88, p. 18]. Notably, the dissent argued that the statements from press releases should have been considered. <u>Id.</u>, at 1174. In any case, the press releases in question were not even close to the kind of evidence presented in this case.

In this case, the newspaper article is provided to show that Defendant Gualtieri admits to a having certain policies and guidelines, written or unwritten, that directly impacted this case. That is relevant – and pretty conclusive – evidence.

## B. The Complaint is not an impermissible "shotgun pleading".

As the Defendants lay out in detail on pages 2 through 7 of the Motion to Dismiss, the Plaintiff has specified which particular claims are presented against which specific actions of each Defendant. The argument that the Complaint is a "shotgun

pleading" is unfounded.

Even if a complaint references previously asserted facts in each count, "that does not necessarily make it a shotgun pleading." Martins v. Royal Caribbean Cruises, Ltd., 174 F.Supp.3d 1345, 1358 (S.D. Fla. 2016). In that case, the court concluded that a complaint which included seven counts, was a total of 123 paragraphs, and incorporated each previous count's allegations by reference, was not a shotgun pleading because it was sufficiently organized. 174 F.Supp.3d at 1358. The first 54 paragraphs established the facts of the case generally at the outset and each count included specific allegations unique to the claim alleged. Id.

Similarly, in Perricone v. Carnival Corp., No. 15-20309-CV-GAYLES, 2016 WL 1161214, at *3 (S.D. Fla. Mar. 24, 2016), the court declined to dismiss a plaintiff's seven-count complaint as a shotgun pleading because the complaint was organized and comprehensible. The first 29 paragraphs detailed the allegations of negligence against the defendants and were incorporated under each count. Id. The court concluded:

> These paragraphs are key to each count of negligence, and any allegations that are relevant only to the specific count are subsequently detailed in their respective counts. This is not a situation where the Complaint is difficult to understand because each claim is repleaded in every count or where Plaintiff's referencing back is disorganized and incomprehensible.

Id.; see also, Broberg v. Carnival Corp., 303 F. Supp. 3d 1313, 1319–20 (S.D. Fla. 2017).

Even if this Court were to find that the Complaint was a "shotgun" pleading,

dismissal with prejudice would not be proper at this stage of the proceedings. The Eleventh Circuit, while consistently condemning shotgun pleadings, "has cautioned that dismissal of a claim should be the last resort." Perricone, 2016 WL 1161214, at *3. The Eleventh Circuit has said, "[w]hen faced with a shotgun complaint, we have encouraged defendants to make motions for more definite statements or courts to demand repleader [] and not, as the case were, to dismiss a complaint with prejudice." Bailey v. Janssen Pharmaceuticals, Inc., 288 Fed.Appx. 597, 603, 2008 WL 2898214 (11th Cir. 2008).

Here, the Complaint actually does not re-allege the preceding counts, but only the initial factual averments, and the Plaintiff argues that – given the intermingled facts of multiple defendants' actions complementing others – it would actually be less organized and more confusing if that were not done. In any case, the Defendants are clearly aware of the allegations as they pertain to each defendant, as they have restated much of the same in their Motion to Dismiss.

### C. Qualified Immunity does not apply to the Defendants.

Here, the Defendants have moved to dismiss based upon the affirmative defense of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); *see also,* Lumley v. City of Dade City, 327 F.3d 1186, 1193-94 (11th Cir. 2003).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his individual capacity involves a two-step analysis. Hope v. Pelzer, 536 U.S. 730 (2002). Before applying the test, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) ).

If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions "violated clearly established constitutional law" or a federal statute. Id.; Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., at 201. Furthermore, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

> **a. However one looks at it, the existing law at the time of the acts and now provided fair warning that the actions were unconstitutional, and therefore Qualified Immunity cannot apply.**

The Defendant argues that the entire case is dependent upon the Supreme Court's decision in Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020), arguing that it was not the law at the time of the incarceration, but *the law at that time was actually more in favor of the Plaintiff*. Specifically, the law in place during the entirety of the time that the Plaintiff was in the Jail was the decision in Keohane v. Jones

(hereinafter, <u>Keohane I</u>), which ordered that the Florida Department of Corrections:

> ...permit Ms. Keohane access to the same undergarments, hair-length policy, and makeup items available for inmates housed in Defendant's female facilities so that she can socially transition to treat her gender dysphoria.

328 F. Supp. 3d 1288, 1318 (N.D. Fla. 2018), <u>vacated sub nom.</u> <u>Keohane v. Florida Dep't of Corr. Sec'y</u>, 952 F.3d 1257 (11th Cir. 2020). As a result, **the state of the law at that time (in December of 2019) was that transgender women <u>must</u> be permitted to access the same undergarments, hair-length policy, and makeup items available for non-transgender women in jail facilities**.

Additionally, the holding in <u>Keohane v. Florida Dep't of Corr. Sec'y</u>, 952 F.3d 1257 (11th Cir. 2020) (hereinafter, <u>Keohane II</u>) did *not* state that the undergarments, hair, and makeup issue (hereinafter, the "social transitioning issue") could lawfully be denied to transgender women. The court found that, because there was at the time a disagreement among the medical staff as to whether the social transitioning issue was medically necessary, their denial of that inmate's ability was "mere negligence" and did not rise to the level of the "deliberate indifference" needed to state a claim for Eighth Amendment cruel and unusual punishment.

In fact, a very telling aspect of the <u>Keohane II</u> decision states as follows:

> The FDC has given Keohane some, but not all, of what she wants—although it has denied her social-transitioning requests (at least as they pertain to clothing and grooming), it has provided mental-health counseling, hormone therapy, the use of female pronouns, safer housing accommodations, and private shower facilities. And like the prison officials in <u>Kosilek</u>, the FDC has struck that balance both because Keohane's treatment team has

> determined that her current regimen is sufficient to treat her gender dysphoria and because it has rationally concluded that her social-transitioning requests—to dress and groom herself as a woman—would present significant security concerns in an all-male prison.

Keohane II, 952 F.3d at 1277. It is all there in black and white: the reason that the Eleventh Circuit found that the social transitioning issue was only "mere negligence" was because **there was already in place "current regimen" that was treating the inmate's gender dysphoria.** Id.

Here, *to the contrary*, **the Defendants refused to treat the Plaintiff's gender dysphoria in <u>any</u> way, and even refused to stop calling her "Sir" and "Mister", deliberately refusing to even acknowledge any aspect of her gender identity whatsoever.** While the defendants in Keohane II might have successfully argued that by treating *some, but not all*, of that inmate's serious medical needs, they had only committed "mere negligence" with respect to social transitioning, that is not in any way applicable to this case, where the Defendants were literally taunting and mocking the Plaintiff's serious medical needs.

To compare to the serious medical need of an injury that is bleeding, the decision in Keohane II is akin to the court saying that, because a medic has already put a bandage on the wound, it was only "mere negligence" for that medic to fail to *also* give the injured person an antibiotic to deal with infection, as the medic was clearly attempting to care for the injured person. Here, the Plaintiff was not treated *at all*.

Furthermore, the time for the Defendants to argue about the Supreme Court's decision in Bostock, and whether it applies to the Fourteenth Amendment claims is

likely not yet upon the parties at this initial stage. However, it should be noted that the Eleventh Circuit upheld *this* Court's decision in <u>Adams by & through Kasper v. Sch. Bd. of St. Johns County, Florida</u>, 318 F. Supp. 3d 1293 (M.D. Fla. 2018), <u>aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns County</u>, 968 F.3d 1286 (11th Cir. 2020), whereupon the Eleventh Circuit discussed the applicability of <u>Bostock</u> outside of the realm of Title VII, stating, "<u>Bostock</u> confirmed that workplace discrimination against transgender people is contrary to law. Neither should this discrimination be tolerated in schools." <u>Id.</u>, at 1310. The decision also affirmed that the actions in that suit were violations of the Fourteenth Amendment. <u>Id.</u>

Furthermore, while the Eleventh Circuit in <u>Keohane II</u> determined that they could no longer address a policy as it had been rescinded as moot, they affirmed that gender dysphoria (the psychological term for being transgender) clearly constitutes a "serious medical need" and stated:

> It seems to us that responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate **is the very definition of "deliberate indifference"**— anti-medicine, if you will.

952 F.3d at 1266–67 (emphasis added).

In addition, the court went on to state that:

> **Unsurprisingly to us, other courts considering similar policies erecting blanket bans on gender-dysphoria treatments—without exception for medical necessity—have held that they evince deliberate indifference to prisoners' medical needs in violation of the Eighth Amendment.** *See, e.g.*, <u>Fields v. Smith</u>, 653 F.3d 550, 559 (7th Cir. 2011); *see also* <u>Hicklin v. Precynthe</u>, No. 4:16-CV-

01357-NCC, 2018 WL 806764, at *11 (E.D. Mo. Feb. 9, 2018); Soneeya v. Spencer, 851 F. Supp. 2d 228, 247 (D. Mass. 2012).

Id., at 1267 (emphasis added). Notably, the case under review by the court in that case, Keohane I, had found a more expansive view of the application of the Eighth Amendment prohibition of cruel and unusual punishment with relation to social transitioning items than the Eleventh Circuit would uphold, but that decision was in place from August 22, 2018 to March 11, 2020, and all of the conduct in this case took place during that time period, so any of the Defendants' claims that they were unaware of the established constitutional rights of the Plaintiff fail as a matter of law. Further, unlike in Keohane II, *this* issue is not "moot".

### D. Counts VI and IX against Defendants Franjesevic, Moses, and Hilery for Deliberate Indifference to Serious Medical Need are sufficiently pleaded.

Contrary to what the Defendants have argued, the three elements of a deliberate indifference to a serious medical need claim are adequately shown.

### a. There is no dispute that gender dysphoria is a serious medical need within the Fourteenth Amendment analysis.

Although the Defendants argue that "no precedential court" has shown that failure to provide hormone replacement therapy is a Fourteenth Amendment violation, here is what the Eleventh Circuit stated in Keohane II, with respect to the serious medical need component:

> Here, as already noted, there's no debate about the objective component. **The [Florida Department of Corrections] admits— and the parties thus agree—that Keohane's gender dysphoria constitutes a "serious medical need."**

952 F.3d at 1266 (emphasis added).

If the Florida Department of Corrections and the Eleventh Circuit recognizes that gender dysphoria is a serious medical need, and they *also* agreed that it was a serious medical need even back in 2018 in <u>Keohane I</u>, then why are the Defendants here trying to argue that they had no duty to do *anything* to treat this serious medical need?

The Defendants seem try to mislead this Court by arguing that there would need to be precedential citations to specifically a "county jail" and by only addressing <u>Keohane II</u> and misstating its rulings. Specifically, the Defendants argue that the issue was "moot" while neglecting to inform this Court that it was only "moot" because the Florida Department of Corrections had recognized its error and stopped refusing to provide that medication.

As a result, it is clear that the Defendants are not entitled to Qualified Immunity based upon their argument that the Defendants were under no duty to provide medical treatment for the Plaintiff's serious medical need of gender dysphoria.

### b. The individual actions of the Defendants are sufficiently pleaded.

With respect to the individual actions of Defendant Moses, he disciplined the Plaintiff for requesting medication [Dkt. #84, ¶ 71], did not take her need for medical care seriously [Dkt. #84, ¶ 193], refused to provide the Plaintiff with her necessary medical care [Dkt. #84, ¶¶ 197, 199, 205-206], causing harm [Dkt. #84, ¶ 200], while he knew that the care was necessary [Dkt. #84, ¶¶ 201, 204].

With respect to the individual actions of Defendant Franjesevic, he mocked the Plaintiff's serious medical need, deliberately misgendered her, and as a supervisor set the standard for how future treatments of this medical condition would be treated. [Dkt. #84, ¶¶ 59, 195]. Furthermore, he specifically "responded" to the incident. [Dkt. #84, ¶ 59].

Notably, the Defendants do not even attempt to claim that Defendant Hilery was not involved in the denial of medical care.

In short, they had a duty to provide medical care to the Plaintiff, but instead they mocked her and her symptoms and refused to provide anything.

### E. Counts VII and VIII against Defendants Merritt and Dixon are sufficiently pleaded.

Next, the Defendants turned to Merritt and Dixon, arguing that the Count VII Equal Protection claim and Count VIII Cruel and Unusual Punishment claim against Merritt and Dixon are insufficient to state a claim. Once again, they try to distinguish their arguments by claiming that "no precedential court" has ever held certain things, in their attempt to pretend that no court has ruled on this issue before. For the record, the Plaintiff can find no precedential support for the idea that a "licensed mental health counselor" (such as Dixon) has *ever* been granted Qualified Immunity.

Furthermore, it should be noted that the unpublished case[2] cited by the Defendant was later affirmed, but *criticized*, by the Eleventh Circuit, which stated that,

---

[2] Hood v. Department of Children & Families, No. 2:12-cv-637-FTM-29, 2015 WL 686922, at *3 (M.D. Fla. Feb. 18, 2015).

"[t]he district court dismissed the claims against Wilkins and Montaldi in their individual capacities *because it found that Hood failed to allege any personal refusals to treat gender dysphoria*" (emphasis added), and that the dismissal with prejudice ruling was in error, thus remanding to the district court for the plaintiff to amend her complaint. Hood v. Dep't of Children & Families, 700 Fed. Appx. 988, 990 (11th Cir. 2017). In Hood, one of the main issues was that *when filed*, the institution did not have *any* treatment program for transgender inmates, but it had later enacted one, making the claims as originally pled "moot". Here, the Defendant argues that they are under **no** obligation to do *anything* for transgender prisoners, not even the basic human decency of referring to the Plaintiff by her proper pronouns (she/her/hers), **which would have cost the Jail and its employees absolutely** *nothing*.

Furthermore, the Defendants' citation to a 1997 Sixth Circuit case is misleading, as in 1997, most people were not even *aware* of the existence of transgender people, and the state of transgender civil rights has changed immensely since then, not to mention the fact that it carries far less weight than the Florida federal cases that they omitted. It would be like citing to pre-Civil Rights Era cases to defend modern defendants.

In fact, the decision in Edmo v. Corizon, Inc., 935 F.3d 757 (9th Cir. 2019), cert. denied sub nom. ID DOC, et al. v. Edmo, Adree, 19-1280, 2020 WL 6037411 (U.S. Oct. 13, 2020), would be a much more applicable ruling to cite with respect to persuasive authority (transgender prisoner must be afforded gender confirmation

surgery).

Additionally, the Defendants argue that, "[n]o court has ever found or held that misgendering someone is unconstitutional" [Dkt. #88, p. 15], and cites to the non-precedential decision in United States v. Varner, 948 F.3d 250, 254-55 (5th Cir. 2020) ("[N]o authority supports the proposition that we may require litigants, judges, court personnel, or anyone else to refer to gender dysphoric litigants with pronouns matching their subjective gender identity."). Not only does this have very little to do with the Defendant's complete failure to address the Plaintiff's gender dysphoria in *any* way, but frankly, the Florida Bar, in Florida Rule of Professional Conduct 4-8:4(d), considers such conduct to be a professional violation.[3]

Furthermore, the Varner case did not involve either Eighth Amendment or Fourteenth Amendment issues, anything to do with "serious medical need", or anything else relevant whatsoever to this case. The Defendants merely plucked their quotation from a discussion of courtroom procedure and planted them into their Motion to Dismiss. Essentially, the Varner decision is completely irrelevant here and brings no arguments of value to this case.

Furthermore, there is a significant amount of irony in the Defendants' constant (and incorrect) refrain of "no precedential court" while then relying upon Fifth Circuit and Sixth Circuit cases that have held completely opposite rulings from those of

---

[3] Notably, the Undersigned affirms to the fact that she received an ethics opinion from the Florida Bar Ethics Hotline in mid-2019, prior to the events in this case, confirming that attorneys commit an ethical violation by intentionally misgendering a transgender litigant, witness, or opposing counsel.

Florida federal courts and the Eleventh Circuit.

Finally, the Defendants' insistence upon being offensive and insulting to the Plaintiff, and all transgender people in general, through its insistence in constantly repeating the refrain that the Plaintiff is a "male inmate" [Dkt. #88, p. 16] is unnecessary and included solely to offend, in violation of this Court's Order, which specifically stated that, "the Court will not condone personal attacks between counsel". [Dkt. #83, p. 3].[4] Although precedential courts have not addressed this issue yet, the Eastern District of Virginia recently held that misgendering showed "sufficient animus" towards a transgender woman to state an Equal Protection claim. Monegain v. Dep't of Motor Vehicles, 491 F. Supp. 3d 117, 144 (E.D. Va. 2020).

F. **The Fourteenth Amendment claims are solidly pleaded, and any references to the Eighth Amendment that are contained in the Complaint are solely in reference to the fact that the standards for cruel and unusual punishment claims are identical.**

Jail guards, deputies, correctional officers, and the like are, "of course, bound by the Eighth Amendment's prohibition against cruel and unusual punishment". Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). However, technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees like the

---

[4] The Defendants are well aware of how offensive it is to refer to a transgender woman as "male", as well as the fact that the undersigned counsel is a transgender woman. This was indisputably a personal attack. The references to the Plaintiff cited in the Complaint were legally necessary and presented in as inoffensive a manner as possible, whereas here the Defendants were clearly making the correlation that a "transgender woman" is actually a "male". [Dkt. #88, p. 16].

Plaintiff. <u>Goebert</u>, 510 F.3d at 1326; <u>Snow ex rel. Snow v. City of Citronelle, Ala.</u>, 420 F.3d 1262, 1268 (11th Cir.2005). However, **"the standards under the Fourteenth Amendment are identical to those under the Eighth"**. <u>Goebert</u>, 510 F.3d at 1326 (emphasis added); <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1115 (11th Cir.2005). Any references to the Eighth Amendment appearing in the Complaint that are outside of the applicability of the standards being identical are unintentional, and it is clear that the Plaintiff is not alleging *counts* based upon the Eighth Amendment, but rather, the Fourteenth Amendment.

As a result, it is disingenuous for the Defendants to demand that, "Bello's Eighth Amendment claims should be dismissed with prejudice" [Dkt. #88, pp. 20-21], as there are no Eighth Amendment claims in the Complaint.

## <u>CONCLUSION</u>

In short, the Defendants have *not* proved that they are entitled to dismissal, and this Court should not grant the Defendants' requested relief, particularly at such an early stage of these proceedings. In the alternative, and "giving recognition to the well established principle that liberality in amendments to pleadings are to be favored by the courts", the Plaintiff would request that if this Court finds any deficiencies in the Complaint, that this Court permit the filing of an amended complaint. <u>Baugher v. Alachua County</u>, 305 So. 2d 838, 839–40 (Fla. 1st DCA 1975).

WHEREFORE, the Plaintiff respectfully requests that this Court deny the Motion to Dismiss Second Amended Complaint of the Individually Named Defendants [Dkt. #88], and for any and all other relief as this Court deems in the

interests of justice.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 6, 2021, a copy of the foregoing has been furnished by CM/ECF to: Kelly L. Vicari, Esq., Pinellas County Attorney's Office, 315 Court Street, Sixth Floor, Clearwater, Florida 33756, kvicari@pinellascounty.org, eservice@pinellascounty.org, and to Paul G. Rozelle, Esq., Pinellas County Sheriff's Office, 10750 Ulmerton Road, Largo, FL 33778, prozelle@pcsonet.com, amarcott1@pcsonet.com.

Respectfully Submitted,

_____
ROOK ELIZABETH RINGER
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
*Attorney for Plaintiff*